SEDGWICK, DETERT, MORAN & ARNOLD LLP
KEVIN J. DUNNE  Bar No. 40030
BRUCE D. CELEBREZZE  Bar No. 102181
LAURA L. GOODMAN  Bar No. 142689
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. CV 08 1365 MEJ<br><br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>JUDGE:  Maria-Elena James<br>CTRM:    B<br>DATE:    May 22, 2008<br>TIME:    10:00 a.m. |

CASE NO. CV 08 1365 MEJ

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION
TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ......................................................................................... 3

    A. Plaintiff's State Farm Policy Requires the Resolution of a Dispute Concerning the Actual Cash Value of Her Automobile Claim Through An Appraisal ................................................................................................... 3

    B. Plaintiff Accepted State Farm's Payment For Her Total Loss Claim And Did Not Request An Appraisal ........................................................... 3

III. ARGUMENT ............................................................................................................... 5

    A. Applicable Legal Standard for Enforcing Arbitration Agreements Under the FAA ................................................................................................ 5

    B. Under California Law, the Policy's Appraisal Provision Constitutes a Valid Agreement to Arbitrate Disputes Regarding Actual Cash Value ...... 6

    C. The FAA Requires the Enforcement of the Policy's Appraisal Provision ....................................................................................................... 9

        1. The FAA Strongly Favors Arbitration ........................................... 9

        2. Under the FAA, A Court Must Order Arbitration Where There Exists a Valid Agreement to Arbitrate Encompassing the Dispute at Issue ........................................................................... 11

    D. The Court Must Stay This Action Pending Appraisal ............................. 13

IV. CONCLUSION .......................................................................................................... 14

CASE NO. CV 08 1365 MEJ

i

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440, 126 S.Ct. 1204 (2006)..................................................................5

*Chiron Corp. v. Ortho Diagnostic Sys. Inc.,*
207 F.3d 1126 (9th Cir. 2000) .......................................................................6, 11

*Circuit City Stores, Inc. v. Adams,*
279 F.3d 889 (9th Cir. 2002) ..............................................................................5

*Circuit City Stores v. Adams,*
532 U.S. 105, 121 S.Ct. 1302 (2001)................................................................10

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213, 105 S.Ct. 1238 (1985)................................................................11

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
725 F.2d 192 (2d Cir. 1984)..............................................................................12

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938, 115 S.Ct. 1920 (1995)..................................................................5

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20, 111 S.Ct. 1647 (1991)..................................................................10

*Goldberg v. State Farm Fire & Cas. Co.,* No. CV 01-11193 LGB,
2002 WL 768893 (C.D.Cal. Apr. 5, 2002) .........................................................8

*Green Tree Financial Corp. v. Randolph,*
531 U.S. 79, 121 S.Ct. 513 (2000)....................................................................10

*In re Cintas Corp. Overtime Pay Arbitration Litig.,* No. C 06-1781 SBA,
2007 WL 1089695 (N.D. Cal. Apr. 11, 2007) ..................................................12

*Ingle v. Circuit City Stores, Inc.,*
328 F.3d 1165 (9th Cir. 2003) ............................................................................5

*Jacobs v. USA Track & Field,*
374 F.3d 85 (2d Cir. 2004)................................................................................12

*Kuehner v. Dickinson & Co.,*
84 F.3d 316 (9th Cir. 1996) ................................................................................9

*Mitsubishi Motors, Inc. v. Soler Chrysler-Plymouth,*
473 U.S. 614, 105 S.Ct. 3346 (1985)................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr.,*
460 U.S. 1, 103 S.Ct. 927 (1983)........................................................................5

# Table of Authorities
## (Continued)

**PAGE**

*PaineWebber Inc. v. Faragalli,*
  61 F.3d 1063 (3d Cir. 1995)..................................................................................12

*Republic of Nicaragua v. Standard Fruit Co.,*
  937 F.2d 469 (9th Cir. 1991) ..................................................................................6

*Rodgriguez de Quijas v. Shearson/Am.Exp.,*
  490 U.S. 477, 109 S.Ct. 1917 (1989)....................................................................10

*Shearson/American Express, Inc. v. McMahon,*
  482 U.S. 220, 107 S.Ct. 2332 (1987)..........................................................9, 10, 13

*Simula, Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999) ............................................................................5, 11

*Sovak v. Chugai Pharm. Co.,*
  280 F.3d 1266 (9th Cir. 2002) ................................................................................6

*United Computer Sys. v. AT & T Corp.,*
  298 F.3d 756 (9th Cir. 2002) ................................................................................11

*Wagner v. Stratton Oakmont, Inc.,*
  83 F.3d 1046 (9th Cir. 1996) ................................................................................13

*Wolsey, Ltd. v. Foodmaker, Inc.,*
  144 F.3d 1205 (9th Cir. 1998) ................................................................................5

## STATE CASES

*Appalachian Ins. Co. v. Rivcom Corp.,*
  130 Cal.App.3d 818, 182 Cal.Rptr. 11 (1982).......................................................6

*Broughton v. Cigna Healthplans of California,*
  21 Cal.4th 1066, 90 Cal.Rptr.2d 334 (1999)........................................................10

*Coast Plaza Doctors Hosp. v. Blue Cross of California,*
  83 Cal.App.4th 677, 99 Cal.Rptr. 809 (2000)......................................................13

*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.,*
  92 Cal.App.4th 886, 112 Cal.Rptr.2d 304 (2001)..................................................8

*Erickson v. Aetna Health Plans of Cal., Inc.,*
  71 Cal.App.4th 646, 84 Cal.Rptr.2d 76 (1999)......................................................9

*Heritage Provider Network, Inc. v. Super. Ct.,*
  158 Cal.App.4th 1146, 70 Cal.Rptr.3d 645 (2008)..............................................13

**Table of Authorities**
**(Continued)**

PAGE

*Lambert v. Carneghi*,
 158 Cal.App.4th 1120, 70 Cal.Rptr.3d 626 (2008)..........................................................6

*Louise Gardens of Encino Homeowners Ass'n v. Truck Ins. Exch.*,
 82 Cal.App.4th 648, 98 Cal.Rptr.2d 378 (2000)..............................................................6

*Michael v. Aetna Life & Cas. Ins. Co.*,
 88 Cal.App.4th 925, 106 Cal.Rptr.2d 240 (2001)............................................................6

*Roque v. Applied Materials, Inc.*,
 2004 WL 1212110 (D. Or. 2004)...................................................................................12

*Unetco Indus. Exch. v. Homestead Ins. Co.*,
 57 Cal.App.4th 1459, 67 Cal.Rptr.2d 784 (1997)............................................................8

*Visa USA, Inc. v. Maritz, Inc.*, No. C 07-05585 JSW,
 2008 WL 744832 (N.D. Cal. 2008)................................................................................11

*Warren-Guthrie v. HealthNet*,
 84 Cal.App. 4th 804, 101 Cal.Rptr.2d 260 (2000)...........................................................9

**FEDERAL STATUTES**

9 U.S.C. § 2 ..........................................................................................................................10

9 U.S.C. §§ 2-4 ......................................................................................................................2

9 U.S.C. § 3 ..........................................................................................................................13

9 U.S.C. § 4 ..........................................................................................................................12

9 U.S.C. § 1 *et seq*................................................................................................................14

**STATE STATUTES**

Cal. Civ. Proc. Code § 1280(a)..........................................................................................2, 6

Cal. Civ. Proc. Code § 1281 ..................................................................................................6

Cal. Code Regs., tit. 10, § 2695.8(c)...................................................................................7, 9

Cal. Code Regs., tit. 10, § 2695.8(c) (2003) .........................................................................7

Cal. Code Regs., tit. 10, § 2695.8(c) (2006) .........................................................................7

Cal. Ins. Code § 2071(a) ........................................................................................................7

Cal. Ins. Code § 11580.2........................................................................................................7

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 22, 2008 at 10:00 a.m., or as soon thereafter as the matter may be heard, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, defendant State Farm Mutual Automobile Insurance Company ("State Farm") will, and hereby does, move to compel appraisal and to stay this litigation pending the results of such appraisal. This motion is made pursuant to the provisions of the policy, California Code of Regulations, title 10, section 2695.8(c), and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, on the grounds set forth herein.

Plaintiff Arnesha Garner alleges that State Farm paid her less than the actual cash value of her automobile, which was deemed a "total loss" following an accident that occurred on April 27, 2007. Plaintiff's State Farm insurance policy does not permit her to file a lawsuit in the event that she disputes State Farm's calculation of actual cash value. Her policy requires, compliant with an effective California Department of Insurance regulation, that any such disagreements be resolved through binding appraisal. State Farm moves to enforce the insurance contract to resolve plaintiff's actual cash value dispute through appraisal. In addition, State Farm moves for an order staying this litigation until after the conclusion of the appraisal process.

State Farm's motion will be, and is, based upon this notice of motion and motion, the accompanying memorandum of points and authorities in support, the accompanying Declaration of Thomas A. Bianco, the accompanying Declaration of Laura L. Goodman, the pleadings and records on file in this action, and on all such further oral and documentary evidence and argument as may be presented to the Court at or before the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Arnesha Garner, purporting to represent a class of similarly situated plaintiffs, has filed this action against State Farm alleging that the amount State Farm paid for her total loss automobile following an accident that occurred on April 27, 2007, was less than the actual cash value to which she was entitled.

CASE NO. CV 08 1365 MEJ

1

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

In filing this action, plaintiff has disregarded that her State Farm insurance policy, and every other automobile insurance policy issued by State Farm in California during the limitations period, contains a binding appraisal clause providing a contractual mechanism - available to both the insured and insurer - to resolve disputes over actual cash value. Moreover, under the terms of plaintiff's policy, appraisal is a condition precedent to her bringing a legal action against State Farm.

Under California law, pursuant to the California Arbitration Act (the "CAA"), the appraisal provision contained in plaintiff's State Farm California automobile insurance policy constitutes a valid agreement to arbitrate plaintiff's actual cash value dispute. The CAA provides that, in California, an enforceable arbitration "agreement" includes "agreements providing for valuations, *appraisals*, and similar proceedings . . . ." Cal. Civ. Proc. Code § 1280(a) (emphasis added) And under the Federal Arbitration Act ("FAA"), which governs the interpretation and enforceability of agreements to arbitrate, the Court must order plaintiff to submit to a binding appraisal and stay this litigation pending conclusion of the arbitration. 9 U.S.C. §§ 2-4.

Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and for unjust enrichment are based on State Farm's valuation of plaintiff's total loss automobile claim.[1] Appraisal will determine the adequacy of the amount of that valuation and could moot this litigation.

Thus, State Farm hereby moves this Court, pursuant to the CAA and FAA, for an order compelling appraisal of the monetary relief claims in plaintiff's complaint and to stay this litigation pending the results of such appraisal.

---

[1] Plaintiff alleges causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, statutory claims for restitution and injunctive relief under California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* ("UCL"), and a cause of action for unjust enrichment and the imposition of a constructive trust. Compl. ¶¶ 35-59.

II. STATEMENT OF FACTS

A. Plaintiff's State Farm Policy Requires the Resolution of a Dispute Concerning the Actual Cash Value of Her Automobile Claim Through An Appraisal

State Farm issued automobile policy number 088-9875-E12-05A to plaintiff effective November 12, 2005. (Declaration of Thomas A. Bianco, filed and served herewith, ¶ 5 and Ex. A.) The policy was in effect on the date of loss, April 27, 2007. (*Id.* at ¶ 6 and Ex. A.) The policy contains the following appraisal clause, under Section IV, Physical Damages Coverages, explaining how plaintiff and State Farm must resolve any differences between them in the event of a dispute over the actual cash value of a total loss vehicle:

Settlement of Loss – Comprehensive and Collision Coverages

**We have the right** to settle a loss with you or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property. **If the owner and [State Farm] cannot agree on the actual cash value, either party may demand an appraisal as described below.** If the owner keeps the damaged property, we will deduct its value after the *loss* from our payment. . . .

\* \* \*

Appraisal under item 1 above shall be conducted according to the following procedure. Each party shall select an appraiser. These two shall select a third appraiser. The written decision of any two appraisers shall be binding. The cost of the appraiser shall be paid by the person who hired him or her. The cost of the third appraiser and other appraisal expenses shall be shared equally by both parties. . . .

(Bianco Decl., ¶ 7 and Ex. A. at 17-18 (emphasis added)).

The policy also provides that plaintiff cannot bring a lawsuit against State Farm until she first complies with the policy's provisions. The "Conditions" section of the policy states that, "There is no right of action against [State Farm] . . . until all the terms of this policy have been met[.]" (Bianco Decl., ¶ 8 and Ex. A. at 23).

B. Plaintiff Accepted State Farm's Payment For Her Total Loss Claim And Did Not Request An Appraisal

On April 27, 2007, plaintiff was involved in an automobile accident. (Cpt., ¶ 18.)

CASE NO. CV 08 1365 MEJ

3

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Plaintiff submitted a claim to State Farm for property damage to her vehicle. (Cpt. ¶ 19; Bianco Decl., ¶ 9.) State Farm determined that plaintiff's car was a "total loss." (Cpt., ¶18; Bianco Decl., ¶ 10.) On a May 4, 2007 telephone call, State Farm advised plaintiff of its initial report and valuation. At this time plaintiff identified a couple of items, including a CD changer, that were not contained in the initial valuation. (Bianco Decl., ¶ 11.) Based on plaintiff's representations, State Farm updated its valuation report and on May 8, 2007, State Farm notified plaintiff that it had valued her claim, less a $500 deductible, at $17,019.72. (Bianco Decl., ¶¶ 12-13.) This amount consisted of an actual cash value of $15,993.29 for plaintiff's vehicle plus $1,359.43 in sales tax, and $167.00 in unused license fees, and was reduced by the $500 deductible. (Cpt., ¶ 19; Bianco Decl., ¶ 13 and Ex.B.)

On May 8, 2007, State Farm wrote to plaintiff explaining that if it could not conclude the total loss claim based on this valuation, the dispute should be resolved through an appraisal. (Bianco Decl., ¶ 14 and Ex. B.) State Farm explained the appraisal process as described in Section IV, Physical Damages Coverages, of the Policy. (Bianco Decl., ¶ 14 and Ex. B.) State Farm offered payment in advance of an appraisal without prejudice to plaintiff's right to receive additional money if appraisal resulted in a determination that the actual cash value of the vehicle was greater than determined by State Farm. (Bianco Decl., ¶ 15 and Ex. B.) Plaintiff was informed that State Farm would promptly pay any higher amount determined through appraisal and would not seek reimbursement of overpayment if the award was less than the payment. (*Id.*)

With plaintiff's written consent, on May 15, 2007 State Farm paid $14,991.30 to the lender holding a lien on plaintiff's vehicle. (Bianco Decl., ¶ 16.) The remaining balance of $2,028.42 was paid to plaintiff on the same date. (Bianco Decl., ¶ 17.) In addition, on October 11, 2007, State Farm refunded to plaintiff her $500 deductible which State Farm had subsequently recovered from the other party to the accident. (Bianco Decl., ¶ 18.)

In February 2008, State Farm also provided to plaintiff's personal injury attorney, at his request, a copy of the valuation report and photographs of Ms. Garner's vehicle. (Bianco Decl., ¶ 19.) State Farm never received any response to its communication about appraisal. (Bianco

Decl., ¶ 20.) State Farm did not know that plaintiff disagreed with its revised actual cash value determination until it received a copy of this lawsuit filed on March 10, 2008. (Bianco Decl., ¶ 22.)

On April 9, 2008, State Farm wrote to plaintiff's counsel formally requesting that plaintiff submit to the agreed-upon binding appraisal process, and agree to stay this action pending the outcome of such appraisal. (Declaration of Laura L. Goodman, ¶ 3 and Ex. A.) On April 14, 2008 plaintiff's counsel responded, advising that plaintiff would not agree to appraisal. (Goodman Decl., ¶ 4 and Ex. B.)

### III.  ARGUMENT

#### A.  Applicable Legal Standard for Enforcing Arbitration Agreements Under the FAA

The United States Supreme Court has explained that, on a motion to compel arbitration pursuant to the FAA, a court must consider state and then federal substantive law in a two-step analysis. First, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995). *See also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) ("In construing an arbitration agreement, courts must 'apply ordinary state-law principles that govern the formation of contracts.'"). Therefore, here, the Court must begin by applying California law to determine the validity and scope of the agreement to arbitrate. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

Once a viable arbitration agreement is found under state law, all questions regarding the interpretation and enforceability of the agreement are determined under the body of federal substantive law created by the FAA. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204 (2006); *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 22-24, 103 S.Ct. 927 (1983). The Ninth Circuit has held that "[f]ederal substantive law governs the question of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (noting

that the FAA "embodies a clear federal Policy in favor of arbitration").[2] *See also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474-75 (9th Cir. 1991).

B. <u>Under California Law, the Policy's Appraisal Provision Constitutes a Valid Agreement to Arbitrate Disputes Regarding Actual Cash Value</u>

Under California law, an appraisal clause contained in an insurance contract is a binding agreement to arbitrate. The CAA states that an enforceable arbitration "agreement" includes "agreements providing for valuations, *appraisals*, and similar proceedings . . . ." Cal. Civ. Proc. Code § 1280(a) (emphasis added). Section 1281 of the CAA provides that: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Civ. Proc. Code § 1281.

"It is well settled that 'an agreement to conduct an appraisal contained in a policy of insurance constitutes an agreement within the meaning of [Code of Civil Procedure] section 1280, subdivision (a), and therefore is considered to be an arbitration agreement subject to the statutory contractual arbitration law.'" *Lambert v. Carneghi*, 158 Cal.App.4th 1120, 1129, 70 Cal.Rptr.3d 626 (2008) (*quoting Louise Gardens of Encino Homeowners Ass'n v. Truck Ins. Exch.*, 82 Cal.App.4th 648, 658, 98 Cal.Rptr.2d 378 (2000)). *See also Michael v. Aetna Life & Cas. Ins. Co.*, 88 Cal.App.4th 925, 934, 106 Cal.Rptr.2d 240 (2001) (reversing trial court's order vacating appraisal award and finding that "[a]n agreement providing for an appraisal is therefore considered to be an arbitration agreement subject to statutory contractual arbitration law in the California Arbitration Act"); *Appalachian Ins. Co. v. Rivcom Corp.*, 130 Cal.App.3d 818, 824, 182 Cal.Rptr. 11 (1982) ("an agreement providing for an appraisal is included within the concept of agreements to arbitrate"). As such, the appraisal provision contained in plaintiff's policy that "[i]f the owner and [State Farm] cannot agree on the actual cash value, either party may demand

---

[2] *See also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that "the strong default presumption is that the FAA, not state law, supplies the rules for arbitration"); *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (holding that "federal law of arbitrability under FAA governs the allocation of authority between courts and arbitrators").

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

an appraisal. . ." constitutes an enforceable binding arbitration agreement under California law. (*See* Bianco Decl., Ex. A. at 17-18.)

Furthermore, the regulations enacted by the California Department of Insurance expressly provide for appraisal of disputes involving valuation of total loss automobile insurance claims. Cal. Code Regs., tit. 10, § 2695.8(c) (2006).[3] Specifically, the regulation permits automobile insurers to utilize one of the following procedures in the event an insured challenges the actual cash value received in a total loss settlement. It provides that, in the event of a dispute concerning actual cash value, the insurer shall (1) locate a comparable automobile for the gross settlement amount determined by the company at the time of settlement; or (2) pay the insured the difference between the amount of the gross settlement and the cost of the comparable automobile which the insured has located; or (3) "*invoke the appraisal provision of the insurance policy.*" Cal. Code Regs., tit. 10, § 2695.8(c) (emphasis added).

The requirement of arbitration as a means to resolve insured-insurer disputes is prevalent throughout California insurance statutes. For example, the appraisal provision required for valuation of property insurance losses by California Insurance Code § 2071, similar to that contained in the State Farm policy, provides:

> In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. . . . The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.

Cal. Ins. Code § 2071(a). *See also* Cal. Ins. Code § 11580.2 (requiring arbitration of uninsured

---

[3] The prior version of § 2695.8 likewise provided that an insurer may invoke the appraisal provision to resolve an actual cash value dispute. Cal. Code Regs., tit. 10, § 2695.8(c) (2003).

CASE NO. CV 08 1365 MEJ

7

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

motorist disputes).

California courts have consistently rejected attempts by insureds, like plaintiff here, to avoid the contractual appraisal process. For example, in *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal.App.4th 886, 112 Cal.Rptr.2d 304 (2001) ("*CAR*"), the court dismissed a Business & Professions Code section 17200 lawsuit brought by a non-profit corporation against 194 insurers alleging undervaluation of property loss claims, in part because such disputes were subject to binding appraisal pursuant to provisions of the policies. In *CAR*, plaintiff claimed that the property insurers were improperly settling property damage claims on the basis of replacement cost less depreciation, rather than on the basis of fair market value. In affirming the sustaining of a general demurrer for the insurers, the Court of Appeal explained that "[t]he appraisal term creates an arbitration agreement subject to the statutory contractual arbitration law." *Id.* at 893. *See also Unetco Indus. Exch. v. Homestead Ins. Co.*, 57 Cal.App.4th 1459, 1465-66, 1469, 67 Cal.Rptr.2d 784 (1997) (recognizing that "appraisal . . . is a favored means of dispute resolution" and affirming an insurer's motion to compel appraisal on all valuation disputes arising from earthquake damage to insured's property).

The *CAR* court held that appraisal, not a lawsuit, was the appropriate mechanism through which to resolve a dispute about "actual cash value." 92 Cal.App.4th at 895. Relying on California Insurance Code § 2071, the court reasoned that "notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of the loss." *Id.* at 893. In other words, claims relating to an insurer's valuation of an insured's claim are to be determined in the first instance through the appraisal provisions of the insurance policy.

Similarly, in *Goldberg v. State Farm Fire & Cas. Co.*, No. CV 01-11193 LGB, 2002 WL 768893 (C.D.Cal. Apr. 5, 2002)[4], the court held that an appraisal provision contained in a property insurance policy required plaintiff to exhaust the appraisal remedy before filing a

---

[4] For the Court's convenience, State Farm has filed and served an Appendix of Unpublished Authorities concurrently herewith.

CASE NO. CV 08 1365 MEJ

8

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

lawsuit. *Id.* at *3. In *Goldberg*, plaintiff alleged that State Farm had refused to pay him the "actual cash value" of a loss under his earthquake policy. *Id.* at *1. State Farm argued that *CAR* controlled and plaintiff was required to submit to appraisal, as provided in the policy and by statute, to determine the amount of loss. *Id.* at *2. The court agreed, finding that the appraisal provision required plaintiff to exhaust that remedy before filing a lawsuit. 2002 WL 768893 at *3.

In promulgating Fair Claims Settlement Practices regulation § 2695(c), the California Department of Insurance has likewise sanctioned appraisal as a remedy for a dispute regarding the valuation of a total loss claim. Section 2695(c) permits an insurer to "invoke the appraisal provision of the insurance policy" in the event of a disagreement over its valuation of an insured's total loss automobile claim. Cal. Code Regs., tit. 10, § 2695.8(c). Therefore, the appraisal process contained in the State Farm automobile policies is sanctioned by law as well as contract.

C.   The FAA Requires the Enforcement of the Policy's Appraisal Provision

As discussed above, in a diversity case, once it is determined that the parties agreed to an appraisal clause, the issue of the enforceability of the clause is determined under federal substantive law.

1.   The FAA Strongly Favors Arbitration

The United States Congress has expressed a clear preference for the enforcement of arbitration agreements through the enactment of the FAA. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337 (1987) (holding that FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate.") (internal citation omitted); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (FAA "created a rule of contract construction favoring arbitration").

Section 2 of the FAA, applicable to all agreements affecting interstate commerce,[5]

---

[5]   A policy of insurance is within the scope of the FAA as affecting interstate commerce.

CASE NO. CV 08 1365 MEJ

9

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The United States Supreme Court has held that section 2 of the FAA "is a congressional declaration of a liberal federal Policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927 (1983).

The FAA was passed to ensure that courts would honor the contractual agreements of parties who choose to resolve their disputes by means of the informal arbitration procedure. *See Mitsubishi Motors, Inc. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625-626, 105 S.Ct. 3346 (1985). As explained by the United States Supreme Court, the FAA was intended "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647 (1991)

The United States Supreme Court has repeatedly held that arbitration may resolve statutory claims as well as those purely contractual, and that by agreeing to arbitration, the parties do not forego substantive rights, but merely agree to resolve them in a different forum.[6] *See also*

---

*See Erickson v. Aetna Health Plans of Cal., Inc.*, 71 Cal.App.4th 646, 651, 84 Cal.Rptr.2d 76 (1999); *Warren-Guthrie v. HealthNet*, 84 Cal.App.4th 804, 101 Cal.Rptr.2d 260 (2000), *overruled on another point in Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal.4th at 393, fn. 8, 25 Cal.Rptr. 3d 540 (2005).

[6] *See, e.g., Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627, 105 S.Ct. 3346, 3354 (1985) (claims regarding federal antitrust statutes subject to arbitration); *McMahon v. Shearson/Am. Express*, 482 U.S. 220, 107 S.Ct. 2332 (1987) (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act claims subject to arbitration); *Rodgriguez de Quijas v. Shearson/Am.Exp.*, 490 U.S. 477, 109 S.Ct. 1917 (1989) (claims arising from Securities Act of 1933 arbitrable); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647 (1991) (Age Discrimination in Employment Act (ADEA) claim arbitrable); *Circuit City Stores v. Adams*, 532 U.S. 105, 121 S.Ct. 1302 (2001) (California FEHA claim arbitrable under FAA); *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513 (2000) (claims arising under a statute designed to further important social policies may be arbitrated).

*Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066, 1075, 90 Cal.Rptr.2d 334 (1999) (holding that UCL claims for monetary relief are arbitrable).

    2.    <u>Under the FAA, A Court Must Order Arbitration Where There Exists a Valid Agreement to Arbitrate Encompassing the Dispute at Issue</u>

Section 4 of the FAA provides, in pertinent part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Once a court is satisfied that a contract provides for arbitration, the court *must* order the parties to proceed to arbitration. *Id.*

The court's role under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). The Ninth Circuit explained that "[i]f the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*; *see also United Computer Sys. v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002) ("a district court must issue an order compelling arbitration if the . . . two-pronged test is satisfied"); *Visa USA, Inc. v. Maritz, Inc.*, No. C 07-05585 JSW, 2008 WL 744832, at *3 (N.D. Cal. Mar. 18, 2008) (same and granting motion to compel arbitration). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238 (1985); *see Chiron*, 207 F.3d at 1130; *Simula*, 175 F.3d at 719.

Here, the appraisal clause contained in plaintiff's State Farm California policy clearly satisfies the two-pronged test prescribed by the Ninth Circuit in *Chiron*. First, the Policy's appraisal provision constitutes a clear "written agreement for arbitration" of disputes concerning the actual cash value of a total loss automobile that, as discussed above, is valid under California law. (Bianco Decl., Ex. A. at 17-18; section III, B. *supra*.) Second, plaintiff's claim for breach

of contract, bad faith, and unjust enrichment (and possibly violation of section 17200) are all based on the allegation that State Farm improperly determined the actual cash value of plaintiff's vehicle. The Policy states that "[i]f the owner and [State Farm] cannot agree on the actual cash value, either party may demand an appraisal as described below." (Bianco Decl., Ex. A. at 17-18.) This language establishes that the appraisal agreement "encompasses the dispute at issue" and satisfies the second prong of the enforcement test.

Moreover, plaintiff's commencement of this action against State Farm constitutes an "unequivocal[] refusal to arbitrate" since it "unambiguously manifest[s] an intention not to arbitrate the subject matter of the dispute." *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995) (indicating that the filing of a complaint constitutes a failure or refusal to arbitrate under the terms of 9 U.S.C. § 4); *accord Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) (commencement of litigation would permit order to compel arbitration under section 4); *Jacobs v. USA Track & Field*, 374 F.3d 85, 88-89 (2d Cir. 2004) (same).[7] Plaintiff also refused to comply with State Farm's subsequent request that plaintiff engage in the appraisal process to resolve her dispute regarding the actual cash value of her total loss automobile. (Goodman Decl., ¶¶ 3-4 and Exs. A and B.)

In addition, by enforcing this arbitration agreement and directing the parties to appraisal, the court will prevent wasteful and unnecessary litigation of plaintiff's actual cash value dispute. Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and for unjust enrichment are based on State Farm's valuation of plaintiff's total loss automobile claim. If plaintiff (or any similarly situated insured) seeks appraisal under her California State Farm policy, that procedure will establish whether State Farm determined a sufficient amount for the actual cash value of the total loss vehicle and could moot the entire

---

[7] *See also In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C 06-1781 SBA, 2007 WL 1089695 (N.D. Cal. Apr. 11, 2007) (noting the holding of the district court in *Roque v. Applied Materials, Inc.*, 2004 WL 1212110 at *4 (D. Or. 2004) that "'By filing a complaint in court, a party gives the adverse party actual notice of a refusal to arbitrate sufficient to satisfy § 4 of the FAA.'").

litigation. Therefore, for the all the foregoing reasons, under the FAA the Court should enforce plaintiff's agreement to arbitrate her dispute over the actual cash value of her total loss claim.[8]

D.  The Court Must Stay This Action Pending Appraisal

The FAA requires that the Court stay this litigation until the appraisal of the actual cash value of plaintiff's automobile is concluded. 9 U.S.C. § 3. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement* . . . .

9 U.S.C. § 3 (emphasis added).

The United States Supreme Court has held that section 3 of the FAA "provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement . . . ." *Shearson*, 482 U.S. at 226. *See also Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996) ("[t]he Federal Arbitration Act requires a court to stay an action whenever the parties to the action have agreed in writing to submit their claims to arbitration").

As California courts have noted when considering an analogous provision of the California Arbitration Act, the failure to grant a stay pending appraisal would "undermine the very statutory purpose of the agreement to arbitrate." *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal.App.4th 677, 693, 99 Cal.Rptr. 809 (2000). *See Heritage Provider Network, Inc. v. Super. Ct.*, 158 Cal.App.4th 1146, 1152, 70 Cal.Rptr.3d 645 (2008) ("'[i]n the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective'") (*quoting Federal Ins. Co. v. Superior Ct.*, 60 Cal.App.4th 1370, 1375, 71 Cal.Rptr.164 (1998)).

The FAA therefore requires that this action be stayed pending the appraisal of plaintiff's total loss dispute. Moreover, as noted above, the appraisal of plaintiff's valuation claim may

---

[8]  State Farm seeks to determine, through the appraisal process provided for in the policy, the actual cash value of plaintiff's vehicle.

CASE NO. CV 08 1365 MEJ

13

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  well moot this entire litigation. The interests of judicial economy and the strong public policy
2  favoring arbitration agreements are thus fully served through a stay of this litigation,

## IV.   CONCLUSION

Plaintiff's State Farm policy expressly provided that, in the event she disputed a State Farm total loss valuation, the parties would utilize an appraisal to resolve their differences. The policy also requires plaintiff's compliance with all of the policy's provisions before commencing litigation. For the reasons set forth herein, State Farm requests that the Court compel appraisal of any claims relating to valuation of plaintiff's total loss automobile claims pursuant to the provisions of the policy, California Code of Regulations, title 10, section 2695.8(c), and the FAA (9 U.S.C. § 1 *et seq.*). State Farm further requests an order staying this litigation pending the conclusion of such appraisal.

DATED: April 14, 2008

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
Kevin J. Dunne
Bruce D. Celebrezze
Laura L. Goodman
Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY