1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   KEVIN J. DUNNE  Bar No. 40030
2  BRUCE D. CELEBREZZE  Bar No. 102181
   LAURA L. GOODMAN  Bar No. 142689
3  One Market Plaza
   Steuart Tower, 8th Floor
4  San Francisco, California 94105
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   STATE FARM MUTUAL AUTOMOBILE
7  INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  ARNESHA M. GARNER, on behalf of          CASE NO. CV 08 1365 MEJ
    herself and all others similarly situated,
12                                           **DECLARATION OF THOMAS A. BIANCO**
             Plaintiff,                      **IN SUPPORT OF STATE FARM MUTUAL**
13                                           **AUTOMOBILE INSURANCE**
         v.                                  **COMPANY'S MOTION TO COMPEL**
14                                           **CONTRACTUAL APPRAISAL AND FOR**
    STATE FARM MUTUAL                        **A STAY PENDING APPRAISAL**
15  AUTOMOBILE INSURANCE
    COMPANY,                                 JUDGE:   Maria-Elena James
16                                           CTRM:    B
             Defendant.                      DATE:    May 22, 2008
17                                           TIME:    10:00 a.m.

18

19       I, THOMAS A. BIANCO, hereby declare as follows:

20       1.    I am a Team Manager at the California Centralized Vehicle Total Loss Unit of

21  defendant State Farm Mutual Automobile Insurance Company ("State Farm") and have been

22  employed as a Team Manager in California since 2000.  My office is in Emeryville, California.

23  Prior to becoming a Team Manager in California, I was employed by State Farm as a Property

24  Claims Representative, an Injury Claims Representative, a Subrogation Supervisor, a Property

25  Assistant Claim Superintendent, and a National Catastrophe Team Manager.

26       2.    I submit this Declaration in Support of State Farm's Motion to Compel

27  Contractual Appraisal and For a Stay Pending Appraisal.  I have personal knowledge of the

28  matters stated herein and, if called upon to do so, would testify competently to them.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

3. In the course of my employment at State Farm, I have become familiar with State Farm's procedures for maintaining certain business records, including claims files and copies of insureds' policies, which are maintained as part of State Farm's ordinary course of business.

4. In connection with preparing this Declaration, I reviewed a copy of the claims file of the plaintiff, Arnesha Garner. I also reviewed a certified copy of Ms. Garner's insurance policy.

5. Attached as Exhibit A is a true and correct certified copy of State Farm Policy No. 088-9875-E12-05A (the "Policy") which was issued to plaintiff Arnesha Garner, effective November 12, 2005.

6. The Policy was in effect on April 27, 2007, the date of Ms. Garner's loss.

7. The Policy contains the following appraisal clause under Section IV, Physical Damages Coverages:

**Settlement of Loss – Comprehensive and Collision Coverages**

We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property. If the owner and [State Farm] cannot agree on the actual cash value, either party may demand an appraisal as described below. If the owner keeps the damaged property, we will deduct its value after the *loss* from our payment. . . .

* * *

Appraisal under item 1 above shall be conducted according to the following procedure. Each party shall select an appraiser. These two shall select a third appraiser. The written decision of any two appraisers shall be binding. The cost of the appraiser shall be paid by the person who hired him or her. The cost of the third appraiser and other appraisal expenses shall be shared equally by both parties. . . .

(Ex. A. at 17.)

8. The Policy further provides that "[t]here is no right of action against [State Farm] . . . until all the terms of this policy have been met[.]" (Ex. A. at 23.)

9. Ms. Garner submitted a claim for property damage to her 2005 Ford Escape incurred in an accident on April 27, 2007, which was within the Policy period.

10. State Farm determined that Ms. Garner's vehicle was a "total loss."

**SEDGWICK**
DETERT, MORAN & ARNOLDLLP

1    11.    On May 4, 2007, State Farm contacted Ms. Garner by telephone and informed her

2    that State Farm had determined that her vehicle was a total loss.  State Farm reported its initial

3    total loss evaluation in the same call.  During the call, Ms. Garner advised that some optional

4    features on her automobile, including a CD changer, were missing from State Farm's evaluation.

5    12.    State Farm updated its valuation report with the options reported by Ms. Garner

6    during the May 4, 2007 call.

7    13.    State Farm sent a letter to Ms. Garner dated May 8, 2007 advising Ms. Garner that

8    State Farm had valued her claim at $17,519.72, but that this was subject to a $500 deductible.

9    The settlement calculation amount consisted of an actual cash value of $15,993.29 for Ms.

10    Garner's vehicle plus $1,359.43 in sales tax, and $167.00 in unused license fees, and was

11    reduced by the $500 deductible.   A true and correct copy of the May 8, 2007 letter from State

12    Farm to Ms. Garner informing her of this valuation is attached as Exhibit B.

13    14.    On May 8, 2007, State Farm wrote to Ms. Garner explaining that if it could not

14    conclude the total loss claim based on this valuation, the dispute should be resolved through an

15    appraisal as described in Section IV, Physical Damages Coverages, of the Policy.  A true and

16    correct copy of the May 8, 2007 letter from State Farm to Ms. Garner informing her of the

17    available appraisal process is attached as Exhibit C.

18    15.    In the May 8, 2007 letter advising Ms. Garner of the appraisal process, State Farm

19    offered Ms. Garner payment in advance of an appraisal without prejudice to her right to receive

20    additional money if appraisal resulted in a determination that the actual cash value of the vehicle

21    was greater than determined by State Farm.  (Ex. C. at p. 2.)  The letter further advised Ms.

22    Garner that State Farm would promptly pay any higher amount determined through appraisal and

23    would not seek reimbursement of overpayment if the appraisal award was less than the payment.

24    (Ex. C. at p. 2.)

25    16.    On May 12, 2007, Ms. Garner authorized State Farm to pay $14,991.30 to Ford

26    Motor Credit, the lender holding a lien on Ms. Garner's vehicle.  A true and correct copy of the

27    Authorization for Payoff signed by Ms. Garner is attached as Exhibit D.

28    17.    On May 15, 2007, with Ms. Garner's written Authorization for Payoff, State Farm

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1   paid $14,991.30 to Ford Motor Credit and the remaining balance of $2,028.42 to Ms. Garner.

2       18.    On October 11, 2007, State Farm refunded to Ms. Garner her $500 deductible

3   which State Farm had subsequently recovered from the other party to the April 27, 2007 accident.

4       19.    In February 2008, State Farm provided Ms. Garner's personal injury attorney, at

5   his request, with a copy of its valuation report and photographs of Ms. Garner's vehicle.

6       20.    There is no record in the claims file showing that Ms. Garner ever responded to

7   State Farm's May 8, 2007 letter concerning an appraisal.

8       21.    There is no record in the claims file indicating that Ms. Garner disagreed with

9   State Farm's revised actual cash value determination.

10      22.    To the best of my knowledge, State Farm's first notice that Ms. Garner disagrees

11  with State Farm's total loss valuation was when State Farm received a copy of the complaint

12  filed in this action.

13      I declare under penalty of perjury in accordance with 28 U.S.C. § 1746 that the foregoing

14  is true and correct and that this declaration was executed on this 14th day of April 2008, at

15  Castro Valley, California.

16

17  *Thomas A. Bianco*

    THOMAS A. BIANCO

18

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

28

# EXHIBIT A

# CERTIFICATE

I, the undersigned, do hereby certify that I am the custodian of record

pertaining to the issuance of policies issued by the State Farm Mutual

Automobile Insurance Company of Bloomington, IL.

I further certify that the attached policy, number 088 9875-E12-05A is a copy of

the policy issued to Garner, Arnesha of 2924 Griffith Street, San Francisco,

California, 94124-3722 together with any endorsements, issued subsequently,

based on our available records.

The policy was in effect on the loss date of April 27, 2007.

March 19, 2008
Rohnert Park, California

Anne Cuellar, CPCU
Team Manager

**State Farm Mutual Automobile Insurance Company**
6400 State Farm Drive
Rohnert Park CA 94926

31043-3-P          MUTL  VOL

## DECLARATIONS PAGE

NAMED INSURED          05-2012-333P

GARNER  ARNESHA
2924 GRIFFITH ST
SAN FRANCISCO CA  94124-3722

POLICY NUMBER   88 9875-E12-05A
POLICY PERIOD NOV 12 2005 to MAY 12 2006

STATE FARM PAYMENT PLAN NUMBER
1011575902
AGENT
ROGER WILSON
801 WOODSIDE ROAD
SUITE 12
REDWOOD CITY, CA 94061-3751

PHONE:(650)365-1432

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**SEPARATE STATEMENT ENCLOSED IF AMOUNT DUE.**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|------|------|-------|------------|-------------------|-------|
| 2005 | FORD | ESCAPE | SPORT WG | 1FMYU04155KB19440 | 1B0HA31A |

| SYMBOLS | COVERAGES | PREMIUMS |
|---------|-----------|----------|
| | See policy for coverage details. | 2005 FORD |
| A3 | Bodily Injury/Property Damage Liability | $567.98 |
| | Limits of Liability-Coverage A-Bodily Injury | |
| | Each Person, Each Accident | |
| | $30,000    $60,000 | |
| | Limits of Liability-Coverage A-Property Damage | |
| | Each Accident | |
| | $25,000 | |
| C | Medical Payments | $50.75 |
| | Limit of Liability-Coverage C | |
| | Each Person | |
| | $5,000 | |
| D250 | $250 Deductible Comprehensive | $159.39 |
| G500 | $500 Deductible Collision | $526.44 |
| R1 | Car Rental/Travel Expenses | $16.80 |
| | Limits of Liability-Car Rental Expense | |
| | Each Day    Each Occurrence | |
| | $25    $500 | |
| U | Uninsured Motor Vehicle | $45.78 |
| | Limits of Liability | |
| | Each Person, Each Accident | |
| | $30,000    $60,000 | |
| U1 | Uninsured Motor Vehicle Property Damage | $4.97 |
| | Loss of Earnings | $4.90 |
| | Persons Insured-Coverage Z | |
| | GARNER ARNESHA | |
| | Total premium for this policy period NOV 12 2005 to MAY 12 2006 | $1,176.01  This is not a bill. |

### IMPORTANT MESSAGES

Your policy consists of this declarations page, the policy booklet - form 9805A, and any endorsements that apply, including those issued to you with any subsequent renewal notice.

Replaced policy number 0889875-05.

### EXCEPTIONS AND ENDORSEMENTS (See individual endorsement for details.)

FINANCED- FORD MOTOR CREDIT - LIEN INSURANCE SERVICE CENTER, PO BOX 390910,
MINNEAPOLIS MN 55439-0910
6127FF     AMENDMENT OF DEFINED WORDS; INSUREDS DUTIES; WE MAY;
           UNINSURED/UNINSURED MOTOR VEH PD; PHYSICAL DAMAGE COV;
           CONDITIONS; MTRCYCLE COV AND TRAILER END
6893PP     AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES
6905A.1    AMENDMENT OF DEFINED WORDS. LIABILITY, MEDICAL PAYMENTS
           UNINSURED MOTOR VEHICLE AND PHYSICAL DAMAGE COVERAGES AND
           CONDITIONS.

Agent:     ROGER WILSON

Telephone: (650)365-1432

Prepared   NOV 16 2005      2012-163

02157/01009
155-3866 CA.2  05-2002 (01a025fc)       (01a025ic)
                       (01a025bo)

DOCUMENT  1 OF  2                                                    03/18/08
                                                                    09:01:42
                                                                    AUC000A0
                          Echo Policy Transactions

          Request type: Original

          Policy number: 188 8086-B10-05
          Insured's name: GARNER, ARNESHA

          Accessed by: BVPA                      Entered by: BVPA
                Date: 08-17-07                         Date: 08-17-07


          Changes include: LIEN

          Effective date: 08-15-07                      Time: 11:21 AM
                App date: 08-15-07            Received date: 08-16-07
                  Source: Echo Agent
                Sales_ID:

Add Lienholder

                Code: 30709

Agent Information

          Agent's name: WILSON, ROGER L            Agt-AFO: 2012-F163
                Phone: 650-365-1432               Initials: GD


                                                  PAGE  1 OF  1
                      Next: _____ +
     F2=Addl F keys   F4=Prompt   F7=Bkwd   F8=Fwd   F18=Next Doc   F19=Last doc

```
DOCUMENT  2 OF  2                                              03/18/08
                                                              09:01:48
                                                              AUC000A0
                              Auto Application
ADDED NEW VEHICLE TRANSACTION ORIGINAL              SF Mutual

Policy No/Car No: 188 8086 05                    Purch Dt: 08-04-2007
        Qual No: 183 3379 05
       Eff Date: 08-10-2007
       App Date: 08-09-2007 11:17 AM            Agt-AFO: 2012-F163
      Recd Date: 08-13-2007

        Repl No:                                Eapp no: 053 2012 V29
---------------------------------------------------------------------


Veh in household: 03                        App orig: ECHO AGENT
                                            Sales_ID:
  With SF Ins Cos:

Name and Mailing Address                    New Named Insd:

  GARNER,ARNESHA                            Rating zip: 94124
  2924 GRIFFITH ST
  SAN FRANCISCO   CA 94124-3722
        Phone type: HOME                    Phone#: 415-424-8606

Prior Insurance

        Reason Purchased
        Within 30 days: NEW TOY




                                            PAGE   1 OF  4
              Next: _____ +
  F2=Addl F keys  F4=Prompt  F7=Bkwd  F8=Fwd  F18=Next Doc  F19=Last doc
```

```
DOCUMENT  2 OF  2                                      03/18/08
                                                       09:01:54
                                                       AUC000A0

Drivers/Violations/Accidents or Losses

   Principal Operator First:  ARNESHA     Last: GARNER       SS#:
   License No:                            Marital stat: SINGLE
   Birthdate: 09-12-1978 Sex:

   Occ: MAIL CARRIER                 Occ Stat: EMPLOYED
   Employer      11111
                 11111
                 REDWOOD CITY    CA  94111

Class

   Avg weekly wrk/school: 40      MLD: RENT         Multicar: YES
              Ann mil: 10000   Class: 1B
              Odometer: 70224
         Use of vehicle: WORK/SCHOOL

     If this vehicle is not used for commuting, how does the insured get to and
       from work/school:

     Cal good drvr disc: YES


     Addl HH class chg: NO

     YLR: 11
```

```
                          Next: ____ +
F2=Addl F keys  F4=Prompt  F7=Bkwd  F8=Fwd  F18=Next Doc  F19=Last doc
```

```
DOCUMENT  2 OF  2                                          03/18/08
                                                          09:01:55
                                                          AUC000A0
Vehicle

            Year: 1999            Vin: 2C3HD46JX X H788326
            Make: CHRYSLER    PP2 IRG: 019
            Model: CONCORDE       LRG: 05
      Body Style: "LXI" 4D SED 6C Prior Dam: NO        Veh insp by: KM
Veh safety disc:  C - 20%

            Date Purchased: 08-04-2007
      Effective Date of Policy: 08-10-2007

SFPP

    Add to SFPP acct no: 1011575902

Coverage Information

    Coverages                 Limits or Deductible      Premium
    BI                        30/60                      177.21
    PD                        25                           0.00
    MED                       $5,000                       27.44
    COMP                      $250 DED                     85.92
    COLL                      $500 DED                    206.03
    R1                        80%/500                      16.80
    UBI                       30/60                        22.51
    UPD                                                     2.74
    Z                                                       4.80

    S & Z Coverage

      Name                        S     Z

      ARNESHA                            Y

Answer  Question

    YES    Is each person named for coverage Z regularly employed?
                                                      PAGE  3 OF  4
                   Next: _____ +
    F2=Addl F keys  F4=Prompt  F7=Bkwd  F8=Fwd  F18=Next Doc  F19=Last doc
```

```
DOCUMENT  2 OF  2                                    03/18/08
                                                     09:01:56
                                                     AUC000A0

            Premium:        $543.45

Controlling Driver Record Information
   Controlling driver record: SR
         First name & initial:  ARNESHA
                 Last name: GARNER

Underwriting Questions

   ANSWER

   NO     Violations, accidents, or losses not listed for any driver in the
             last 10 years?

          Registered owner of the veh: APPLICANT

   NO     Household members age 13 and over who are not yet licensed?

Agent Information

          Agent's name: WILSON, ROGER L
               Phone: 650-365-1432                Initials: KM

                    Policy booklet delivered dt: 08-10-07
```

## 6127FF AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

   a. The definition of *Newly Acquired Car* is changed to read:

   > *Newly Acquired Car* means a *car* newly owned by or newly leased to *you* or *your spouse*. A *car* ceases to be a *newly acquired car* on the earlier of:
   >
   > 1. the effective date and time of a policy, including any binder, issued by us or any other company that describes the *car* as an insured vehicle; or
   >
   > 2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or *your spouse*.
   >
   > If *you* or *your spouse* want coverage for a *car* newly owned by or newly leased to *you* or *your spouse* and it:
   >
   > 1. replaces *your car*, then *you* must ask us to insure that *car* within 14 days after it is delivered to *you* or *your spouse* and pay us any added amount due. The added amount due will be calculated based on the date the replacement *car* is delivered to *you* or *your spouse*.
   >
   > 2. does not replace *your car*, then *you* or *your spouse* must apply to us for a separate policy to insure that added *car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.
   >
   > If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the

   *newly acquired car* is delivered to *you* or *your spouse*.

   b. The definition of *Relative* is changed to read:

   > *Relative* as used in Sections I, II, IV and V means a *person* who is related to *you* or *your spouse* by blood, marriage, adoption, or registered domestic partnership as qualified by California law and who resides primarily with *you*. It includes *your* or *your spouse's* unemancipated child away at school who is neither married nor a registered domestic partner as qualified by California law.
   >
   > As used in Section III, *relative* means a *person* who is related to *you* or *your spouse* by blood, marriage, adoption, or registered domestic partnership as qualified by California law and who resides primarily with *you* or *your spouse*. It includes *your* or *your spouse's* unemancipated child away at school who is neither married nor a registered domestic partner as qualified by California law.

   c. The definition of *Spouse* is changed to read:

   > *Spouse* as used in Sections I, II, IV and V means *your*:
   >
   > 1. husband;
   >
   > 2. wife; or
   >
   > 3. registered domestic partner as qualified by California law
   >
   > who resides primarily with *you*.
   >
   > As used in Section III, *spouse* means *your* husband, *your* wife, or *your* registered domestic partner as qualified by California law.

   d. The definition of *Your Car* is changed to read:

   > *Your Car* means the vehicle described on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

6127FF

If *you* ask us to replace the *car* shown on the Declarations Page with a *car* newly owned by or newly leased to *you* or *your spouse*, the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date such newly owned or newly leased *car* is delivered to *you* or *your spouse*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

2. **REPORTING A CLAIM — INSURED'S DUTIES**

The following is added:

A *person* or organization making claim under this policy must, when we require, give us proof of loss on forms we furnish.

A *person* making claim under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must provide written authorization for us to obtain:

1. medical bills;

2. medical records;

3. wage, salary, and employment information; and

4. any other information we deem necessary to substantiate the claim.

If an injured *person* is a minor, unable to act, or dead, then his or her legal representative must provide us with the written authorization.

If the holder of the information refuses to provide it to us despite the authorization, then our request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to us.

3. **SECTION II — MEDICAL PAYMENTS — COVERAGE C**

a. The following paragraph:

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

is changed to read:

Expenses are reasonable only if they are the lowest of any one of the following charges:

1. the usual and customary fees charged by a majority of healthcare providers who provide similar medical services in the geographical area in which the charges were incurred;

2. the fees agreed to by both the injured *person's* healthcare provider and us; or

3. the fees agreed upon between the injured *person's* healthcare provider and a third party when we have a contract with such third party.

b. The following is added:

We have the right to:

1. obtain and use:

   a. peer reviews; and

   b. medical bill reviews

   of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained;

2. use a medical examination of the injured *person* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the medical expenses and services are reasonable and necessary for the *bodily injury* sustained; and

3. enter into a contract with a third party that has an agreement with the injured *person's* healthcare provider to charge fees as determined by that agreement.

c. The following is added to **Deciding Amount**:

Arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

6127FF

d. The following is added to When Someone May Be Legally Liable For the Bodily Injury:

> We will not pay any medical expenses under Medical Payments Coverage that have already been paid by or on behalf of a party who is legally liable to the *person* for whom such medical expenses would have otherwise been payable under the Medical Payments Coverage of this policy.

e. The following provision under What Is Not Covered:

> THERE IS NO COVERAGE FOR MEDICAL EXPENSES FOR *BODILY INJURY* TO THE EXTENT WORKERS' COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE;

is changed to read:

> THERE IS NO COVERAGE FOR MEDICAL EXPENSES FOR *BODILY INJURY* IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *BODILY INJURY*;

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U AND UNINSURED MOTOR VEHICLE PROPERTY DAMAGE – COVERAGE U1**

a. The following is added to Deciding Fault and Amount Under Coverage U and Deciding Fault and Amount Under Coverage U1:

> Arbitrators shall have no authority to decide any questions of law or conduct arbitration on a class-wide or class-representative basis.

b. The following is added to When Coverage U Does Not Apply:

> THERE IS NO COVERAGE FOR *BODILY INJURY* TO AN *INSURED* WHILE *OCCUPYING* A MOTOR VEHICLE IF THE OWNER OR DRIVER HAS UNINSURED MOTOR VEHICLE COVERAGE OR OTHER SIMILAR COVERAGE ON THAT MOTOR VEHICLE WITH LIMITS OF LIABILITY EQUAL TO OR GREATER THAN THE LIMITS OF LIABILITY PROVIDED BY THE UNINSURED MOTOR VEHICLE COVERAGE OF THIS POLICY.
>
> This exclusion does not apply to an *insured* while *occupying your car* or a *newly acquired car*.

5. **SECTION IV — PHYSICAL DAMAGE COVERAGES**

**COMPREHENSIVE – COVERAGE D, COLLISION – 80% – COVERAGE F, and COLLISION – COVERAGE G**

a. The following language:

> If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

is changed to read:

> If *you* and we agree, windshield glass will be repaired instead of replaced.

b. The following is added:

> *You* agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

c. The following is added to Settlement of Loss – Comprehensive and Collision Coverages:

> Appraisers shall have no authority to decide any questions of law or conduct appraisal on a class-wide or class-representative basis.

6. **CONDITIONS**

Item 6. is changed to read:

6. **Premium**

> The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.
>
> The premium for this policy is based upon information State Farm has received from *you* or other sources. *You* must inform us if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions we ask regarding information used to determine the premium, including the following:

a. *Your car*, or its use, including annual mileage;

b. The *persons* who regularly drive *your car*, including newly licensed family members;

c. *Your* marital status; or

d. The location where *your car* is primarily garaged.

Page 3 of 4

6127FF

If the above information or any other information used to determine the premium is incorrect, incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period. If we decrease the premium during the policy period, then we will provide a refund or a credit in the amount of the decrease. If we increase the premium during the policy period, then *you* must pay the amount of the increase.

If *you* do not provide us information used to determine the premium when we ask, we will notify *you* in writing of our intent to increase the premium due to *your* failure to provide the requested information. If *you* do not respond within 21 days after the date we mail or deliver the notice we may increase the premium during the policy period.

7. **MOTORCYCLE COVERAGE ENDORSE-MENT and TRAILER ENDORSEMENT**

The definition of *newly acquired car* in the above item 1. replaces the definition of *newly acquired car* in both the **MOTORCYCLE COVERAGE** endorsement and the **TRAILER ENDORSEMENT** if either endorsement is a part of *your* policy. In addition, under the **TRAILER ENDORSEMENT**, *"car"* as found in the definition of *newly acquired car* is changed to include a trailer newly owned by or newly leased to *you* if it is of the same type as the trailer described on the declarations page.

**6905A.1 AMENDMENT OF DEFINED WORDS, LIABILITY, MEDICAL PAYMENTS, UNINSURED MOTOR VEHICLE AND PHYSICAL DAMAGE COVERAGES AND CONDITIONS**

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **DEFINED WORDS**

   The following definition is added:

   *Fungi* – means any type or form of fungus or fungi and includes:

   1. mold;
   2. mildew; and
   3. any of the following that are produced or released by fungi:
      a. mycotoxins;
      b. spores;
      c. scents; or
      d. byproducts.

2. **SECTION I — LIABILITY — COVERAGE A**

   Under the paragraph that reads "In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident":

   a. item 3.c. is deleted.
   b. item 4. is changed to read:

      4. The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

         a. loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request:

            (1) an arbitration;
            (2) a mediation; or
            (3) a trial of a civil suit.

         b. reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

3. **SECTION II — MEDICAL PAYMENTS — COVERAGE C**

   The following is added to **What Is Not Covered**:

   a. THERE IS NO COVERAGE FOR *BODILY INJURY* THAT RESULTS FROM EXPOSURE TO *FUNGI*.

   b. THERE IS NO COVERAGE FOR *BODILY INJURY* THAT RESULTS FROM:

      (1) NUCLEAR REACTION;

      (2) RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

      (3) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U AND UNINSURED MOTOR VEHICLE PROPERTY DAMAGE — COVERAGE U1**

   The following changes are made to UNINSURED MOTOR VEHICLE – COVERAGE U:

   a. The following is added to "*Uninsured Motor Vehicle* under coverage U – means:"

      4. a land motor vehicle owned by or leased to an injured *insured* when that vehicle is being operated, or caused to be operated, by a *person* without that *insured's* consent in connection with criminal activity that has been documented in a police report and the injured *insured* is not a party to such activity.

   b. Item 2. under "An *uninsured motor vehicle* under coverage U does not include a land motor vehicle:" is changed to read:

      2. owned or operated by *you*, *your spouse*, any *relative* or any resident of *your* household (except

5.

6905A.1

for a vehicle as described in item 4. above);

c.  **When Coverage U Does Not Apply**

(1)  The following is added to item 2.b.:

This does not apply to *bodily injury* to an *insured* through being struck by a motor vehicle owned by or leased to that *insured* when that vehicle is being operated, or caused to be operated, by a *person* without that *insured's* consent in connection with criminal activity that has been documented in a police report and the injured *insured* is not a party to such activity.

(2)  Item 3. is changed to read:

THERE IS NO COVERAGE:

3.  TO THE EXTENT IT BENEFITS:

a.  ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

b.  A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

c.  ANY GOVERNMENTAL BODY OR AGENCY.

**SECTION IV — PHYSICAL DAMAGE COVERAGES**

The following is added to **When The Physical Damage Coverages Do Not Apply:**

a.  THERE IS NO COVERAGE FOR *LOSS* TO ANY VEHICLE DUE TO *FUNGI.* THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. WE WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI.* OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY VEHICLE THAT ARE DUE TO THE EXISTENCE OF *FUNGI.*

b.  THERE IS NO COVERAGE FOR *LOSS* TO ANY VEHICLE THAT RESULTS FROM:

(1)  NUCLEAR REACTION;

(2)  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

(3)  THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

6.  **CONDITIONS**

Item d. of condition 2., **Suit Against Us**, is changed to read:

There is no right of action against us:

d.  under uninsured motor vehicle coverage unless within two years from the date of the accident:

(1)  suit for *bodily injury* has been filed in the proper court against the uninsured motorist;

(2)  an agreement as to the amount due under this coverage has been made; or

(3)  the *insured* or his or her representative has formally started arbitration proceedings by making a written request, sent to us by certified mail, return receipt requested.

If a suit has been filed against the uninsured motorist, written notice of the suit must be given to us within a reasonable time after the *insured* knew or should have known that the motorist was uninsured; but we may not require that this notice be given earlier than two years from the date of the accrual of the cause of action on which the claim is based.

This provision does not limit a right of action resulting from *bodily injury* caused by an *underinsured motor vehicle.*

### 6893PP AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as your policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that **SECTION IV — PHYSICAL DAMAGE COVERAGES** of *your* policy is changed as follows:

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1** and **CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2** are deleted and replaced by the following:

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.**

   a. If:

      (1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* the daily rental charge up to that dollar amount; or

      (2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* that percentage of the daily rental charge

   when *you* rent a *car* from a car rental agency or *car business*. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

   If *you* choose not to rent a *car*, we will pay *you* $10 for each complete 24 hour period that *your car* is not drivable. *You* must report to us the period of time that *your car* was not drivable.

   We will pay only if *your car* is not drivable because of a *loss* which

would be payable under coverage D, F or G.

   b. Payment will be made for a period that:

      (1) starts:

         (a) when *your car* is not drivable due to the *loss*; or

         (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

      (2) ends:

         (a) when *your car* has been repaired or replaced; or

         (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

         (c) five days after we offer to pay for the *loss* if:

            (i) *your car* was stolen and not recovered; or

            (ii) we declare that *your car* is a total loss;

      whichever comes first.

   If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

2. **Travel Expenses.** If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and

which would be payable under coverage D, F or G, we will pay *you* for expenses incurred by *you*, *your spouse* and any *relative* for:

a.  commercial transportation fares to continue to *your* destination or home;

b.  extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

c.  meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3.  **Rental Car – Repayment of Deductible Amount Expense.** We will pay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or *car business*.

**Total Amount of Expenses Payable – Coverage R1**

1.  The most we will pay for "Car Rental Expense" incurred in any one occurrence is shown on the declarations page under "Limits of Liability – Car Rental Expense, Each Occurrence".

2.  The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

3.  The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

*Edward B Rust, Jr*
Chief Executive Officer

## WHAT IT IS AND WHERE YOU CAN FIND IT — THE INDEX

**PAGE NO.**

4    Reporting a Claim — Insured's Duties — What to do if *you* have an accident, claim or are sued.

2    Defined Words

3    Declarations Continued

4    When and Where Your Coverage Applies

4    Financed Vehicles — Coverage for Creditor

### Coverages

6    **A — Liability** — When there is damage to others.

9    **C — Medical Payments** — When there are medical and funeral expenses.

11    **U — Uninsured Motor Vehicle** — When the other car or driver is not *insured* or is un-insured and there is *bodily injury* to an *insured*.

14    **U1 — Uninsured Motor Vehicle Property Damage** — When the other car or driver is not *insured* and there is *property damage*.

16    **D — Comprehensive** — When *your car* is damaged except by collision or upset. Any deductible amount is shown by the number beside the "D" on the declarations page.

16    **F — Collision — 80%** — When *your car* is damaged by collision or upset.

16    **G — Collision** — When *your car* is damaged by collision or upset. The deductible is shown by the number beside "G" on the declarations page.

18    **H — Emergency Road Service** — When *your car* breaks down or needs a tow.

18    **R — Car Rental Expense** — When you need to rent a *car* because of damage to *your car*.

18    **R1 — Car Rental and Travel Expenses** — When you need to rent a *car* and pay extra travel expenses because of damage to *your car*.

21    **S — Death, Dismemberment and Loss of Sight** — Pays for death of or certain injuries to *persons* named.

21    **T — Total Disability** — Pays *weekly indemnity* to *persons* named.

22    **Z — Loss of Earnings** — Pays loss of *weekly earnings* to *persons* named.

### Conditions

23    1.   Policy Changes

23    2.   Suit Against Us

24    3.   Our Right To Recover Our Payments

24    4.   Cancellation

25    5.   Renewal

25    6.   Premium

25    7.   Concealment or Fraud

26    **Mutual Conditions**

Policy Form 9805A

**PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE. (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)**

Authorized Representative



State Farm Mutual Automobile Insurance Company, Home Office, Bloomington, Illinois
The address of the Regional Office issuing this policy is shown at the top of the Declarations Page.

# YOUR
# STATE FARM
# CAR
# POLICY

**WARNING**

Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

California
Policy Form 9805A

# STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
## BLOOMINGTON, ILLINOIS
## A MUTUAL COMPANY

## DEFINED WORDS
## WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Bodily Injury* – means bodily injury to a *person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four wheels, which is designed for use mainly on public roads. It does not include:
1. any vehicle while located for use as a dwelling or other premises; or
2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to test, road test, sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the *person*, *persons* or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled **Premium** of the Conditions section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a replacement car or an *additional car*.

*Replacement Car* – means a *car* newly owned by or newly leased to *you* or *your spouse* that replaces *your car*. This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:
1. ask us to insure it within 30 days after its delivery to *you* or *your spouse*; and
2. pay us any added amount due.

*Additional Car* – means an added *car* newly owned by or newly leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars*; or
2. it is other than a *private passenger car* and we insure all *cars* owned by or leased to *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:
1. 12:01 A.M. Standard Time at the address shown on the declarations page on the 31st day after the delivery of the *car* to *you* or *your spouse*; or
2. the effective date and time of a policy that describes the *car* or its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage not otherwise provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned by, registered to or leased to:
1. *you*, *your spouse*;
2. any *relative* unless at the time of the accident or loss:
   a. the *car* currently is or has within the last 30 days been insured for liability coverage; and
   b. the driver is an *insured* who does not own or lease the *car*.

*Non-owned car* does not include a *car* which has been operated or rented by or in the possession of an *insured* during any part of each of the last 21 or more consecutive days. The *insured* is an *insured* under one or more other car policies issued by us. The 21 day limit is increased by an additional 21 days for each such additional policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Occupying* – means in, on, entering or alighting from.

*Person* – means a human being.

*Private Passenger Car* – means a *car*:
1. with four wheels;
2. of the private passenger or station wagon type; and
3. designed solely to carry *persons* and their luggage.

*Relative* – as used in Sections I, II, IV and V means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you*. It includes *your* unmarried and unemancipated child away at school.

As used in Section III, *relative* means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you* or *your spouse*. It includes *your* unmarried and unemancipated child away at school.

As used in Section III, *spouse* means *your* husband or wife.

*Temporary Substitute Car* – means a *car* not owned by, registered to or leased to *you* or *your spouse*, if it replaces *your car* for a short time. Its use has to be with the consent of its owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or loss. A *temporary substitute car* is not considered a *non-owned car*.

*Utility Vehicle* – means a motor vehicle with:
1. a pickup, panel or van body; and
2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* – means the named insured or named insureds shown on the declarations page.

*Your Car* – means the *car* or the vehicle described on the declarations page.

## DECLARATIONS

We, the State Farm Mutual Automobile Insurance Company, agree to insure *you* according to the terms of this policy based:
1. on *your* agreement to pay the required premium for the coverages *you* chose; and
2. in reliance on *your* statements in these declarations.

*You* agree, by acceptance of this policy that:
1. the statements in these declarations are *your* statements and are true; and
2. we insure *you* on the basis *your* statements are true; and
3. this policy contains all of the agreements between *you* and us or any of our agents.

## DECLARATIONS CONTINUED

Unless otherwise stated in the exceptions space on the declarations page, *your* statements are:
1. Ownership. *You* are the sole owner of *your car*.
2. Insurance and License History. Neither *you* nor any member of *your* household within the past three years has had:
   a. vehicle insurance canceled by an insurer; or
   b. a license to drive or vehicle registration suspended, revoked or refused.
3. Use. *Your car* is used for pleasure and business.

# WHEN AND WHERE COVERAGE APPLIES

## When Coverage Applies

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you pay* the renewal premium. The current policy period begins before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

## Where Coverage Applies

The coverages *you* chose apply:

1. in the United States of America, its territories and possessions or Canada; or
2. while the insured vehicle is being shipped between such ports.

The liability, physical damage coverages also apply in Mexico within 50 miles of the United States border. A physical damage coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, dismemberment and loss of sight, total disability and loss of earnings coverages apply anywhere in the world.

## FINANCED VEHICLES

The coverage for the creditor's interest only is valid until we terminate such coverage. We will not terminate such coverage because of:

1. any act or negligence of the owner or borrower; or
2. a change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or
3. an error in the description of the vehicle.

The date of termination of the creditor's interest will be at least 20 days after the date we mail or electronically transmit the termination notice.

## REPORTING A CLAIM — INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible. The notice must give us:

   a. *your* name; and
   b. the names and addresses of all *persons* involved; and
   c. the hour, date, place and facts of the accident or *loss*; and
   d. the names and addresses of witnesses.

2. **Notice to Us of Claim or Suit**

   If a claim or suit is made against an *insured*, that *insured* must send us at once every demand, notice or claim made and every summons or legal process received. That *insured* also shall answer questions under oath when asked by us, as often as we reasonably ask, and sign copies of the answers.

3. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the property also shall:

   a. make a prompt report to the police when the *loss* is the result of theft or larceny.
   b. protect the damaged vehicle. We will pay any reasonable expense incurred to do so.
   c. show us the damage, when we ask.
   d. provide us records, receipts and invoices, or certified copies of them. We may make copies.

   (1) report a "hit-and-run" accident to the police within 24 hours and to us within 30 days.
   (2) let us see the insured *car* the *person* occupied in the accident.
   (3) send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

4. **Other Duties Under Medical Payments, Uninsured Motor Vehicle, Death, Dismemberment and Loss of Sight, Total Disability and Loss of Earnings Coverages**

   Any *person* who suffers a *bodily injury* which results in a medical payments coverage claim or an uninsured motor vehicle coverage claim must notify us of the claim in writing as soon as reasonably possible after the *person's* first examination or treatment resulting from the *bodily injury*. Another *person* may be the required notice on behalf of the injured *person*.

   The *person* making claim also shall:

   a. under the medical payments, uninsured motor vehicle, death, dismemberment and loss of sight, total disability and loss of earnings coverages:
   (1) give us all the details about the death, injury, treatment and other information we need to determine the amount payable.
   (2) be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the *person* upon written request. The *person* or his or her legal representative if he or she is dead or unable to act, shall authorize us to obtain all medical reports and records.

   (3) answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

   b. under the uninsured motor vehicle coverage:
   (1) report a "hit-and-run" accident to the police within 24 hours and to us within 30 days.
   (2) let us see the insured *car* the *person* occupied in the accident.
   (3) send us at once a copy of all suit papers if the *person* sues the party liable for the accident for damages.

   c. under the death, dismemberment and loss of sight, total disability and loss of earnings coverages, give us proof of claim on forms we furnish.

   d. under uninsured motor vehicle property damage coverage report the accident to us within 30 days.

5. **Insured's Duty to Cooperate With Us**

   a. The *insured* shall cooperate with us and, when asked, assist us in:
   (1) making settlements;
   (2) securing and giving evidence;
   (3) attending, and getting witnesses to attend, hearings and trials.

   b. The *insured* shall not, except at his or her own cost, voluntarily:
   (1) make any payment or assume any obligation to others; or
   (2) incur any expense, other than for first aid to others.

# SECTION I — LIABILITY — COVERAGE A

*You* have this coverage if "A" appears in the "Coverages" space on the declarations page.

We will:

1. pay *damages* which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use,

   caused by accident resulting from the ownership, maintenance or use of *your car*; and

2. defend any suit against an *insured* for such *damages* with attorneys hired and paid by us. WE WILL NOT DEFEND ANY SUIT AFTER WE HAVE PAID THE AP-PLICABLE LIMIT OF OUR LI-ABILITY FOR THE ACCIDENT WHICH IS THE BASIS OF THE LAWSUIT; OR

   b. DEFEND THIS POLICY.

In addition to the limits of liability we will pay for an *insured* any costs listed below resulting from such accident.

1. Court costs of any suit for *damages* that we defend.

2. Interest on *damages* owed by the *insured* due to a judgment and accruing:

   a. after the judgment, and until we pay, offer or deposit in court, the amount due under this coverage; or

   b. before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage, but only on that part of the judgment we pay.

3. Premiums or costs of bonds:

   a. to secure the release of an *insured's* property attached under a court order;

   b. required to appeal a decision in a suit for *damages* which we have not paid our limit of liability. This does not apply to the suit; and

   c. up to $250 for each bail bond needed because of an accident or related traf-fic law violation.

2. ...We have no duty to furnish or apply for any bonds. The amount of any bond we pay for shall not be more than our limit of liability.

4. Expenses incurred by an *insured*:

   a. for loss of wages or salary up to $100 per day when we ask the *insured* to attend the trial of a civil suit.

   b. for first aid to others at the time of the accident.

   c. at our request.

We have the right to investigate, negotiate and set-tle any claim or suit.

### Coverage for the Use of Other Cars

The liability coverage extends to the use, by an *in-sured*, of a *newly acquired car*, a *temporary sub-stitute car* or a *non-owned car*.

### Trailer Coverage

The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability. These trailers are not described in the dec-larations and no extra premium is charged.

2. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*, if the following trailers are de-scribed on the declarations page and extra premium is paid:

   a. trailers designed to be pulled by a pri-*vate passenger car* or a *utility vehicle*:

   (1) if designed to carry persons; or

   (2) while used with a motor vehicle whose use is shown as "commer-cial" on the declarations page (trailers used even if not de-scribed and no extra premium paid); or

   (3) while used as premises for office, store or display purposes; or

### Who is an *insured*

When we refer to *your car*, *insured* means:

1. *you*;

2. *your spouse*;

3. their *relatives*;

4. any *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds*.

When we refer to a *non-owned car*, *insured* means:

1. the first *person* named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above persons.

### When we refer to *your car* or a *temporary substitute car*, *insured* means:

THERE IS NO COVERAGE FOR *NON-OWNED CARS*:

1. IF THE DECLARATIONS STATE THE "USE" OF *YOUR CAR* IS OTHER THAN "PLEASURE AND BUSINESS"; OR

2. WHILE:

   a. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*; OR

   b. USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not ap-ply to a *private passenger car* driven or *occupied* by the first *person* named or his or her *relatives*.

5. any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

### Limits of Liability

The amount of *bodily injury* liability coverage shown on the declarations page under "Limits of Liability - Coverage A – *Bodily Injury*, Each Per-son. Each *Accident*." Under "Each Person" is the amount of coverage for all *damages* due to *bodily injury* to one *person*.

"Each *Accident*" is the total amount of coverage, subject to the amount shown under "Each Person," for all *damages* due to *bodily injury* to two or more *persons* in the same accident.

The amount of property damage liability coverage shown on the declarations page under "Limits of Liability - Coverage A – Property Damage, Each *Accident*."

We will pay *damages* for which an *insured* is le-gally liable up to these amounts.

The limits of liability are not increased because more than one *person* or organization may be an *insured*.

A motor vehicle and attached trailer are one vehi-cle. Therefore, the limits are not increased.

The liability coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

### When Coverage A Does Not Apply

In addition to the limitations of coverage in Who Is an *insured* and Trailer Coverage:

THERE IS NO COVERAGE:

1. WHILE ANY VEHICLE INSURED UN-DER THIS SECTION'S:

   a. RENTED OR LEASED TO OTHERS FOR A CHARGE. This does not apply to the use on a share expense basis of:

   (1) a *private passenger car*; or

6

9805A

7

9805A

(2) a *utility vehicle*, if all passengers are riding in that area of the vehicle designed by the manufacturer of the vehicle for carrying passengers.

c. BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED BY ANY *PERSON* IN ANY WAY IN A *CAR BUSINESS*. This does not apply to:

   (1) *you* or *your spouse*;
   (2) any *relative*;
   (3) any resident of *your* household; or
   (4) any agent, employee or partner of *you, your spouse*, or any *relative* or such resident.

   This coverage is excess for (3) and (4) above.

2. **Other Liability Coverage Available From Other Sources**

   **If There Is Other Liability Coverage**

   1. **Policies Issued by Us to You, Your Spouse, or Any Relative**

      If two or more vehicle liability policies issued by us to *you, your spouse*, or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

   2. **Temporary Substitute Car, Non-Owned Car, Trailer**

      Subject to items 1 and 2, if a *temporary substitute car*, a *non-owned car* or a trailer described for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it; or

   3. Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

   a. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

      then this coverage is excess over such insurance or self-insurance.

   4. **Newly Acquired Car**

      THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE LIABILITY COVERAGE ON A *NEWLY ACQUIRED CAR*.

1. **Out-of-State Coverage**

   If an *insured* under the liability coverage is in another state of Canada and, as a nonresident,

3. **FOR ANY** *BODILY INJURY* **TO:**

   a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THAT EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.

   b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is neither covered nor required to be covered under any workers compensation insurance.

4. **FOR:**

   a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; or

   b. ANY *PERSON* WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

4. **FOR ANY DAMAGES TO PROPERTY OWNED BY, RENTED TO, IN THE CHARGE OF OR TRANSPORTED BY AN** *INSURED*. **THIS INCLUDES BUT IS NOT LIMITED TO A VEHICLE OPERATED BY AN INSURED.** But coverage applies to a rental:

   a. residence; or
   b. private garage damaged by a *car* we insure.

5. FOR ANY OBLIGATION OF AN *INSURED*, OR HIS OR HER INSURER, UNDER ANY WORKERS' COMPENSATION OR DISABILITY OR SIMILAR LAW.

6. FOR LIABILITY ASSUMED BY THE *INSURED* UNDER ANY CONTRACT OR AGREEMENT.

7. FOR *BODILY INJURY* TO ANY *INSURED*.

becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a. the coverage will be interpreted to give the coverage required by the law; and

b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

2. **Financial Responsibility Law**

   When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required. The *insured* agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a *person* collect more than once.

**SECTION II — MEDICAL PAYMENTS — COVERAGE C**

*You* have this coverage if "C" appears in the "Coverages" space on the declarations page.

**Medical Expenses**

We will pay reasonable medical expenses incurred for *bodily injury* caused by accident, for services furnished within three years of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.

REASONABLE MEDICAL EXPENSES DO NOT INCLUDE EXPENSES:

1. FOR TREATMENTS, SERVICES, PRODUCTS OR PROCEDURES THAT ARE:

   a. EXPERIMENTAL IN NATURE, FOR RESEARCH, OR NOT PRIMARILY DESIGNED TO SERVE A MEDICAL PURPOSE; OR

   b. NOT COMMONLY AND CUSTOMARILY RECOGNIZED THROUGHOUT THE MEDICAL PROFESSION AND WITHIN THE UNITED STATES AS APPROPRIATE FOR THE TREATMENT OF THE *BODILY INJURY*; OR

2. INCURRED FOR:

   a. THE USE OF THERMOGRAPHY OR OTHER RELATED PROCEDURES OF A SIMILAR NATURE; OR

b. THE PURCHASE OR RENTAL OF EQUIPMENT NOT PRIMARILY DESIGNED TO SERVE A MEDICAL PURPOSE.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical area in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the *bodily injury* sustained in the accident. We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the *bodily injury* sustained.

The *bodily injury* must be discovered and treated within one year of the date of the accident.

**Persons for Whom Medical Expenses Are Payable**

We will pay medical expenses for *bodily injury* sustained by:

1. a. the first *person* named in the declarations.

b. his or her *spouse*, and

c. their *relatives*.

These *persons* have to sustain the *bodily injury*:

a. while they operate or *occupy* a vehicle covered under the liability section; or

b. through being struck, as a *pedestrian*, by a motor vehicle or trailer.

A *pedestrian* means a *person* not an occupant of a motor vehicle or trailer.

2. any other *person* while *occupying*:

a. a vehicle covered under the liability or medical payments section of this policy. Such vehicle has to be used by a *person* who is insured under the liability coverage, or

b. a *non-owned car*. The *bodily injury* has to result from such use. If *you* or a *relative* are named in the declarations, his or her *spouse* or their *relatives*.

**Deciding Amount**

The amount due under this coverage shall be decided by agreement between the *person* making the claim and us. If there is no agreement as to the amount due and the coverage, it shall be decided by arbitration upon written request of the *person* making claim or of us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on us, the *person* making claim, any assignee of the *person* making claim, and any *person* or organization expressly or impliedly making claim for the rendition of medical services. The arbitrators' decision shall be limited to whether or not the amount due being equal to the cost of necessary medical expenses only. The arbitrators shall not award punitive damages or non-compensatory damages.

The cost of the arbitrator and any expert witness shall be paid for by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the *person* making claim resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

**Payment of Medical Expenses**

We may pay the injured *person* or any *person* or organization performing the services.

**Limit of Liability**

The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under "Limit of Liability – Coverage C – Each Person." If the amount shown is $3,000 or more, except in New York, we pay for funeral services $3,000 per person.

A motor vehicle and attached trailer are one vehicle as respects limits.

**If There Are Other Medical Payments Coverages**

1. **Non-Duplication**

No *person* for whom medical expenses are payable under this coverage shall recover more than once for the same medical expense under this or similar vehicle insurance.

2. **Policies Issued by Us to You, Your Spouse or Relatives**

If two or more policies provide medical payments coverage issued by us to *you*, *your spouse* or *your relatives*, provide vehicle medical payments coverage and apply to the same *bodily injury* sustained:

a. while *occupying* a *non-owned car*, a *temporary substitute car*; or

b. as a *pedestrian*

the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

3. Subject to items 1 and 2 above:

a. If a *temporary substitute car*, a *non-owned car* or a trailer has other vehicle medical payments coverage on it, or

b. if other vehicle medical payments coverage applies to *bodily injury* sustained by a *pedestrian*

this coverage is excess.

THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER VEHICLE MEDICAL PAYMENTS COVERAGE ON A *NEWLY ACQUIRED CAR*.

**When Someone May Be Legally Liable For the Bodily Injury**

If the *person* to or for whom we make payment recovers proceeds from any party liable for the *bodily injury*, that *person* shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment.

**What Is Not Covered**

THERE IS NO COVERAGE:

1. WHILE A *NON-OWNED CAR* IS USED:

a. BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A CAR BUSINESS; OR

b. IN ANY OTHER BUSINESS OR JOB. This does not apply when the first *person* named in the declarations, his or her *spouse* or any *relative* is operating or occupying a *private passenger car*.

2. WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY ANY MOTOR VEHICLE OR TRAILER:

a. DESIGNED MAINLY FOR USE OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

b. LOCATED FOR USE AS A RESIDENCE OR PREMISES; OR

c. THAT RUNS ON RAILS OR CRAWLER-TREADS.

3. FOR *BODILY INJURY* DUE TO WAR OF ANY KIND.

4. FOR MEDICAL EXPENSES FOR *BODILY INJURY*:

a. SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY VEHICLE OWNED BY OR LEASED FOR *YOUR SPOUSE* OR ANY *RELATIVE*, WHICH IS NOT INSURED UNDER THIS COVERAGE; OR

b. TO THE EXTENT WORKERS' COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE; OR

c. SUSTAINED BY ANY *PERSON*, other than the first *person* named in the declarations, his or her *spouse* or their *relative*, WHILE *OCCUPYING* A VEHICLE:

(1) RENTED OR LEASED TO OTHERS; OR

(2) USED TO CARRY *PERSONS* FOR A CHARGE. This does not apply on a share expense basis.

**SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U AND UNINSURED MOTOR VEHICLE PROPERTY DAMAGE — COVERAGE U1**

**UNINSURED MOTOR VEHICLE — COVERAGE U**

You have this coverage if "U" appears in the "Coverages" space on the declarations page.

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by an *uninsured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

IF THE DAMAGES ARE CAUSED BY AN *UNINSURED MOTOR VEHICLE*, THERE IS NO COVERAGE UNTIL:

1. THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS TO OTHER *PERSONS*; OR

2. SUCH LIMITS OF LIABILITY OR RE-MAINING PART OF THEM HAVE BEEN OFFERED TO THE *INSURED* IN WRITING

**Uninsured Motor Vehicle** under coverage U means:

1. a land motor vehicle, the ownership, maintenance or use of which is:
   a. not insured or bonded for bodily injury liability at the time of the accident; or
   b. insured or bonded for bodily injury liability at the time of the accident, but:
      (1) the limits of liability are less than the limits of liability required by the financial responsibility act of the state where *your car* is mainly garaged; or
      (2) the insuring company:
         (a) denies coverage; or
         (b) refuses to admit coverage except conditionally or with reservation; or
         (c) is or becomes insolvent within one year of the accident; or

2. an *underinsured motor vehicle* as defined; or

3. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:
   a. the *insured*; or
   b. the vehicle the *insured* is occupying and causes *bodily injury* to the *insured*.

An *uninsured motor vehicle* under coverage U does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. owned or operated by *you*, *your spouse*, any *relative* or any resident of *your* household;

3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

4. owned by any government or any of its political subdivisions or agencies;

5. that is any equipment or vehicle designed or modified for use primarily upon public roads, except while actually upon public roads; or

6. while located for use as premises.

**Underinsured Motor Vehicle** — means a land motor vehicle, the ownership, maintenance or use of which is:

1. insured or bonded for bodily injury liability at the time of the accident; but
2. the limits of liability are less than the limits of liability of this coverage.

**Who Is an Insured Under Coverage U**

*Insured* — means the *person* or *persons* covered by uninsured motor vehicle coverage.

This is:
1. the first *person* named in the declarations;
2. his or her *spouse*;
3. their *relatives*; and
4. any other *person* while *occupying*:
   a. *your car*, a *temporary substitute car*, a *newly acquired car* or a trailer attached to such a *car*. Such vehicle has to be used within the scope of the consent of *you* or *your spouse*; or
   b. a *car* not owned by or leased to *you*, *your relative*, or any *relative* or a trailer attached to such a *car*. If *has* to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent.

Such *person occupying* a public or livery conveyance is not an *insured*.

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

**Deciding Fault and Amount Under Coverage U**

Two questions must be decided by agreement between the *insured* and us:

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and
2. If so, in what amount?

If there is no agreement, upon written request of the *insured* or us, these questions will be decided by arbitration as provided by section 1280.2 of the California Code. The *insured's* written request must be sent to us by certified mail, return receipt requested. The arbitration judgment may be filed in any court having jurisdiction. Both parties will share the cost of arbitration equally. Attorney fees and fees for medical and other expert witnesses are not considered costs of arbitration.

We are not bound by any judgment against any *person* or organization obtained without our written consent.

**Payment of Any Amount Due Under Coverage U**

We will pay any amount due:
1. to the *insured*;
2. to a parent or guardian if the *insured* is a minor or an incompetent *person*;
3. to the surviving *spouse*; or
4. at our option, to a *person* authorized by law to receive such payment.

**Limits of Liability Under Coverage U**

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U". Under "Each Person", the amount of coverage for all damages due to *bodily injury* to one *person* is the most we will pay for all damages due to *bodily injury* to one *person*. "*Bodily injury* to one *person* includes all damages resulting from *bodily injury* to that *person*". Under "Each Accident" is the total amount of the *insured's* damages for *bodily injury* reduced by the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*.

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured*:
   a. for *bodily injury* under the liability coverage of this policy; or
   b. under any workers' compensation, disability benefits, or similar law.

3. The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical or dental expenses paid under the medical payments coverage.

4. The limits of liability are not increased because:
   a. more than one vehicle is insured under this policy; or
   b. more than one *person* is insured at the time of the accident.

6. If the damages are caused by an *uninsured motor vehicle*, other than an *underinsured motor vehicle*, any amount payable under this

7. If the damages are caused by an *underinsured motor vehicle*, the most we will pay will be the lesser of:
   a. the limits of liability of this coverage reduced by the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or
   b. the amount of the *insured's* damages for *bodily injury* reduced by the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*.

coverage shall be reduced by any amount paid or payable to or for the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*.

**When Coverage U Does Not Apply**

THERE IS NO COVERAGE:

1. FOR ANY *INSURED* WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO IS OR MAY BE HELD LEGALLY LIABLE AND THEREBY IMPAIRS OUR RIGHT TO RECOVER OUR PAYMENTS. This does not apply to a settlement for damages resulting from *bodily injury* caused by an *underinsured motor vehicle*.

2. FOR *BODILY INJURY* TO AN *INSURED*:
   a. WHILE *OCCUPYING* A MOTOR VEHICLE:
      (1) OWNED BY *YOU*, *YOUR SPOUSE* OR ANY *RELATIVE*; OR
      (2) LEASED TO *YOU*, *YOUR SPOUSE* OR ANY *RELATIVE* UNDER A WRITTEN CONTRACT FOR SIX MONTHS OR LONGER.
      This does not apply if the motor vehicle is insured for this coverage under the policy; or
   b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY OR LEASED TO *YOU*, *YOUR SPOUSE* OR ANY *RELATIVE*.

exceed the limit of liability of the single policy providing the highest limit of liability on a primary basis.

3. **TO THE EXTENT IT BENEFITS:**

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY.

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, OR DISABILITY BENEFITS OR SIMILAR LAW.

   c. ANY GOVERNMENTAL BODY OR AGENCY.

4. FOR *BODILY INJURY* TO THE IN-SURED WHILE *OCCUPYING* A MO-TOR VEHICLE OWNED BY AN IN-SURED AND USED BY AN INSURED FOR PUBLIC OR LIVERY PURPOSES.

**If There Is Other Uninsured Motor Vehicle Coverage:**

1. If uninsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, *persons* covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

2. Subject to item 1 above, any coverage applicable under this policy shall apply:

   a. on a primary basis if the *insured* sustains *bodily injury* while *occupying your car*, or while not *occupying* a motor vehicle or trailer.

   b. on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by you or *relative*, *spouse*, or any *relative*.

3. Subject to items 1 and 2 above, if this policy and one or more other policies provide coverage for *bodily injury*:

   a. On a primary basis, we are liable only for our share. Our share is that percent of the damages payable on a primary basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on a primary basis.

   b. The total damages payable from all policies that apply on a primary basis shall not

---

14
9805A

---

exceed the amount by which the limit of the single policy providing the highest limit of liability on an excess basis exceeds the limit of liability of the single policy providing the highest limit of liability on a primary basis.

THERE IS NO COVERAGE IF:

1. THE OWNER OR DRIVER OF THE UN-IDENTIFIED OR *MOTOR VEHICLE* IS NOT IDENTIFIED; OR

2. THE *UNINSURED MOTOR VEHICLE* IS NOT IDENTIFIED BY ITS LICENSE NUMBER.

**UNINSURED MOTOR VEHICLE PROPERTY DAMAGE – COVERAGE "U1"**

You have this coverage if "U1" appears in the "Coverages" space in the declarations page. The amount of coverage applicable to *your car* is shown in the provision titled "Limits of Liability and Settlement of Loss".

We will pay damages for *property damage you* are legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *property damage* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*.

*Property Damage* — means damage to *your car* or a *newly acquired car* and the ownership, maintenance or use of which is:

1. insured under the liability coverage of this policy; or

2. If so, in what amount?

**THIS COVERAGE DOES NOT APPLY IF THERE IS OTHER UNINSURED MOTOR VEHICLE COVERAGE ON A *NEWLY AC-QUIRED CAR*.**

An *uninsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. 20% of the first $250 of the *loss* which is not payable under coverage U1 if you carry coverage F on *your car*; or

3. the amount of the deductible and 20% of the amount of the loss in excess of such deductible if you carry coverage GG on *your car*; or

4. owned by any government or any of its political subdivisions or agencies;

5. that:

   a. operates on crawler-treads or rails; or

   b. is a farm-type tractor or equipment designed for use principally off public roads;

6. while located for use as premises.

**Deciding Fault and Amount Under Coverage U1**

Two questions must be decided by agreement between you and us:

1. Are you legally entitled to collect damages for *property damage* from the owner or driver of the *uninsured motor vehicle*; and

2. If so, in what amount?

A land motor vehicle, which strikes *your car* or a *newly acquired car*, and the ownership, maintenance or use of which is:

   a. not insured or bonded for property damage liability at the time of the accident; or

   b. insured or bonded for property damage liability at the time of the accident, but

   a. the limit of liability for *property dam-age* is less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

   b. the insuring company;

---

15
9805A

---

**Payment of Any Amount Due Under Coverage U1**

We will pay any amount due:

1. to *you*; or

2. at our option, to a *person* authorized by law to receive such payment.

If there is no agreement, upon written request of you or us, these questions must be decided by arbitration as provided by Section 11580.26 of California Insurance Code. The arbitration shall be filed in any court having jurisdiction. Both parties will share the cost of arbitration equally. Attorney fees and fees for other expert witnesses are not considered costs of arbitration.

We are not bound by any judgment against any *person* or organization obtained without our written consent.

(1) denies coverage;

(2) refuses to admit coverage except conditionally or with reservation; or

(3) is or becomes insolvent.

**Limits of Liability and Settlement of Loss Under Coverage U1**

1. The most we will pay is:

   a. the amount of the deductible if you carry coverage G on *your car*; or

   b. 20% of the first $250 of the *loss* which is not payable under coverage U1 if you carry coverage F on *your car*; or

   c. the amount of the deductible and 20% of the amount of the loss in excess of such deductible if you carry coverage GG on *your car*; or

   d. $3500 if you do not carry collision coverage on *your car*. Subject to the limit of liability, we have the right to settle with *you* for the *property damage* in one of the following ways:

   (1) pay up to the actual cash value;

   (2) pay to repair or replace the property or designed part if you carry coverage with like kind and quality. If the repair or replacement results in better than like kind and quality, *you* must pay for the amount of the betterment;

   (3) take the property at an agreed value, but it cannot be abandoned to us.

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured*.

This is the amount of coverage for all *property damage* as the result of one accident.

   a. by or for any *person* or organization who is or may be held legally liable for the *property damage*; or

   b. under any other policy of vehicle liability insurance.

3. The limits of liability are not increased because:

   a. more than one vehicle is insured under this policy; or

   b. more than one *person* is insured at the time of the accident.

**When Coverage U1 Does Not Apply**

THREE IS NO COVERAGE IF YOU SETTLE WITHOUT OUR WRITTEN CONSENT WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE BODILY INJURY AND IMPAIR OUR RIGHT TO RECOVER OUR PAYMENTS.

## SECTION IV — PHYSICAL DAMAGE COVERAGES

*Loss* — means, when used in this section, each direct and accidental loss of or damage to:

1. *your car;*
2. its equipment which is common to the use of *your car* as a vehicle;
3. clothes and luggage insured; and
4. a detachable living quarters attached or removable from *your car* for storage, sleeping or housekeeping. *You* must have told us about the living quarters before the *loss* and paid any extra premium needed.

*Loss* does not include any reduction in the value of any vehicle or detachable living quarters after it has been repaired, as compared to its value before it was damaged.

**COMPREHENSIVE — COVERAGE D.** *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible amount is shown by the number beside "D".

1. *Loss* to *Your car.* We will pay for *loss* to *your car* EXCEPT *LOSS* CAUSED BY *COLLISION*, but only for the amount of each such *loss* in excess of the deductible amount, if any. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield, and *you* agree to have such repair made, we will pay the full cost of repairing the wind-shield glass regardless of *your* deductible.

Breakage of glass, or *loss* caused by being hit by a bird or an animal is payable under this coverage.

**If There Is Other Uninsured Motor Vehicle Property Damage Coverage**

If other uninsured motor vehicle property damage coverage applies to property damage, this coverage applies only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all such coverage that applies to the accident.

2. We will repay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* tell us of the theft and ending when we offer to pay for the *loss.*

The daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under Car Rental and Travel Expenses Coverage and not both. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount paid to less than $225, then we will pay under Comprehensive Coverage.

**COLLISION — 80% — COVERAGE E.** "E" appears in the "Coverages" space on the declarations page.

We will pay for *loss* to *your car* caused by *collision.*

**COLLISION — COVERAGE F.** *You* have this coverage if "G" appears in the "Coverages" space on the declarations page.

We will pay 80% of the first $250 and 100% over that amount of *loss* to *your car* caused by *collision.* If we offer to pay for the repair of damaged wind-shield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision loss* is with another motor vehicle insured by us, we will pay 100% of the *loss.*

**COLLISION — COVERAGE G.** *You* have this coverage if "G" appears in the "Coverages" space on the declarations page. The deductible amount is shown by the number beside "G".

We will pay for *loss* to *your car* caused by *collision* in excess of the deductible amount. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible. If the *collision* is with another motor vehicle insured with us, we will not pay *your* deductible. If it's $100 or less as we pay *your* deductible.

*Loss* caused by *collision* does not include *loss* due to:

1. missiles or falling objects;
2. windstorm or hail;
3. earthquake, water or flood;
4. theft or larceny;
5. malicious mischief or vandalism; or
6. riot or civil commotion.

*Collision* — means *your car* upset or hit or was hit by a vehicle or other object.

**Clothing and Luggage — Comprehensive and Collision Coverages**

Clothes and luggage are covered only if *your car* is damaged and insured with *us*, his or her *spouse*, and their *relatives.* These items have to be covered under this policy for:

1. Comprehensive, and the *loss* caused by fire, lightning, flood, falling objects, ex-plosion, earthquake or theft. If the *loss* is insured with us under Comprehensive, or
2. Collision, and the *loss* caused by *collision.*

We will pay up to $200 for *loss* to clothes and lug-gage in excess of any deductible amount shown for comprehensive or collision. $200 is the most we will pay in any one occurrence even though more than one *person* has a *loss.* This coverage is excess over any other coverage.

**Limit of Liability — Comprehensive and Collision Coverages**

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or
2. the cost of repair or replacement. The cost of repair or replacement do not include any reduction in the value of or not include after it has been repaired, as compared to its value before it was damaged.

Actual cash value is determined by the market value, age and condition at the time the *loss* oc-curred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement is based upon one of the following:

1. the cost of repair or replacement agreed upon by *you* and us;
2. a competitive bid approved by us; or
3. an estimate written based upon the pre-vailing competitive price. The prevailing competitive price is the price charged by a majority of the repair market in the area where the *car* is to be repaired as deter-mined by a survey made by us. If *you* ask, we will identify some facilities that will perform the repairs at the prevailing com-petitive price. We will include in the esti-mate parts sufficient to restore the vehicle to its pre-loss condition. *You* agree with us that these parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

**Settlement of Loss — Comprehensive and Collision Coverages**

We have the right to settle a *loss* with *you* or the owner of the property in one of the following ways:

1. pay the agreed upon actual cash value of the property at the time of the *loss* in ex-change for the damaged property. If the owner and we cannot agree on the actual cash value, either party may demand an appraisal as described below. In the event appraisal is demanded, the actual cash value, either party may include the actual cash value, either party may demand an appraisal as described below. If the owner keeps the damaged property, we will de-duct its value after the *loss* from our pay-ment. The damaged property cannot be abandoned to us;
2. pay:
   a. repair the damaged property or part.
   b. replace the damaged property or part. If the repair or replacement results in bet-terment, you must pay for the amount of betterment.
3. return the stolen property and pay for any damage due to the theft.

Appraisal under item 1 above shall be con-ducted according to the following procedure. Each party shall select an appraiser. These two shall select a third appraiser. The written deci-sion of any two appraisers shall be binding. The cost of the appraiser shall be paid for any party who hired him or her. The cost of the third appraiser and other appraisal expenses

shall be shared equally by both parties. We do not waive any of our rights by agreeing to an appraisal. If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the appraisal process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

The Settlement of Loss provision for comprehensive and collision coverages incorporates the Limit of Liability provision of those coverages.

If we can pay the loss under either comprehensive or collision, we will pay under the coverage where you collect the most.

When there is loss to your car, clothes and luggage in the same occurrence, any deductible will be applied first to the loss to your car. You pay only one deductible.

EMERGENCY ROAD SERVICE – COVERAGE H. You have this coverage if "H" appears in the "Coverages" space on the declarations page.

We will pay the fair cost you incur for your car for:

1. mechanical labor up to one hour at the place of its breakdown;

2. towing to the nearest place where the necessary repairs can be made during the regular business hours if it will not run;

3. towing it out if it is stuck on or immediately next to a public highway;

4. delivery of gas, oil, battery or tire. WE DO NOT PAY THE COST OF THE GAS, OIL, BATTERY OR TIRE.

5. locksmith services, up to one hour, to open your car if your key is lost, stolen or locked inside your car. We will pay only the cost of labor.

CAR RENTAL EXPENSE – COVERAGE R. You have this coverage if "R" appears in the "Coverages" space on the declarations page.

We will repay you up to $10 per day when you rent a car from a car rental agency or garage due to a loss to your car, starting:

1. when it cannot run due to the loss; or

2. if you can run, when you leave it at the shop for agreed repairs;

and ending when:

1. it has been repaired or replaced, or

2. we offer to pay for the loss, or

3. you incur 30 days rent,

whichever comes first.

CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1. You have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. Car Rental Expense.

   a. If:

      (1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay the daily rental charge up to that dollar amount; or

      (2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay you that percentage of the daily rental charge.

   when you rent a car from a car rental agency or car business. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

   If you choose not to rent a car, we will pay you for each complete 24 hour period of time the loss that your car is not drivable. You must report to us the period of time your car was not drivable.

   b. We will pay only if your car is not drivable because of a loss which would be payable under coverage D, F or G.

   Payment will be made for a period that:

   (1) starts:

      (a) when your car is not drivable due to the loss; or

      (b) if your car is drivable, when you leave it at the shop for agreed repairs; and

   (2) ends:

      (a) when your car has been repaired or replaced, or

      (b) when we offer to pay for the loss, if your car is repairable but you choose to delay repairs; or

      (c) five days after we offer to pay for the loss if:

         (i) your car was stolen and not recovered; or

         (ii) we declare that your car is a total loss.

   whichever comes first.

2. Travel Expenses. If your car is to a loss which occurs more than 50 miles from home and which would be payable under coverage D, F or G, we will pay for expenses incurred by you, your car and any relative for:

   a. commercial transportation fares to continue to your original destination or home;

   b. extra meals and lodging needed when the loss to your car causes a delay ending your trip or the return to your original route. The expenses must be incurred between the time of the loss and arrival at your destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by you or a person away from home to drive your car from the place of repair to your destination or home.

3. Rental Car – Repayment of Deductible Amount Expense. We will pay the expense of the deductible amount you are required to pay the owner under comprehensive or collision coverage on a substitute car rented from a car rental agency or car business.

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where you collect the most.

Total Amount of Expenses Payable – Coverage R1

1. The most we will pay for Car Rental Expense incurred in any one occurrence is shown on the declarations page under "Limits of Liability – Car Rental Expense, Each Occurrence".

2. The most we will pay for Travel Expenses incurred in any one occurrence is $400.

3. The most we will pay for Rental Car – Repayment of Deductible Amount Expense incurred in any one occurrence is $400.

Trailer Coverage

1. Owned Trailer

   Your trailer is covered:

   a. when it is described on the declarations page of the policy, and

   b. for the coverages shown as applying to it.

2. Non-Owned Trailer or Detachable Living Quarters

   Any physical damage coverage in force on your car applies to a non-owned:

   a. trailer, if it is designed for use with a private passenger car; or

   b. detachable living quarters unit used by the first person named in the declarations, this or her spouse or their relatives.

   The most we will pay for this non-owned trailer or detachable living quarters is this non-owned trailer or unit is $2500.

   A non-owned trailer or detachable living quarters unit is one that:

   a. is not owned by or registered in the name of:

      (1) you, your spouse, any relative;

      (2) any other person residing in the same household as you, your spouse or any relative; or

      (3) an employer of you, your spouse or any relative; and

   b. has not been owned or rented by or in the possession of you, your spouse or any relative during any part of each of the last 21 or more consecutive days. If you are insured by one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

Coverage for the Use of Other Cars

The coverages in this section you have on your car on the policy extend to a loss to a newly acquired car, a temporary substitute car or a non-owned car. These coverages extend to a non-owned car while it is driven by or in the custody of an insured.

**Insured** – as used in this provision means:

1. the first **person** named in the declarations;
2. his or her **spouse**; or
3. their **relatives**.

**When the Physical Damage Coverages Do Not Apply**

THERE IS NO COVERAGE FOR:

1. **A NON-OWNED CAR:**
   a. IF THE DECLARATIONS STATE THE "USE" OF **YOUR CAR** IS OTHER THAN "PLEASURE AND BUSINESS"
   b. WHILE BEING REPAIRED, SERVICED OR USED BY ANY **PERSON** WHILE THAT **PERSON** IS WORKING IN ANY **CAR BUSINESS**; OR
   c. WHILE USED IN ANY OTHER BUSINESS OR OCCUPATION. This does not apply to a **private passenger car** driven or **occupied** by the first **person** named in the declarations, his or her **spouse** or their **relatives**.

2. ANY VEHICLE WHILE:
   a. RENTED OR LEASED TO OTHERS; OR
   b. USED TO CARRY **PERSONS** FOR A CHARGE. This does not apply to the use on a share expense basis.

3. **LOSS TO ANY VEHICLE DUE TO:**
   a. WAR OF ANY KIND;
   b. TAKING BY ANY GOVERNMENTAL AUTHORITY;
   c. AND LIMITED TO WEAR AND TEAR, FREEZING, MECHANICAL OR ELECTRICAL BREAKDOWN OR FAILURE. This does not apply when the **loss** is the result of a theft covered by this policy. Nor does it apply to emergency road service; OR
   d. CONVERSION, EMBEZZLEMENT OR SECRETION BY ANY **PERSON** WHO HAS THE VEHICLE DUE TO ANY LIEN, RENTAL, LEASE OR SALES AGREEMENT.

4. TIRES unless:
   a. stolen, or damaged by fire or vandalism; or
   b. other **loss** covered by this section happens at the same time.

5. TAPES OR DISCS FOR RECORDING OR REPRODUCING SOUND.
6. ANY LASER OR RADAR DETECTOR.
7. **YOUR CAR** WHILE SUBJECT TO ANY LIEN, LEASE OR SALES AGREEMENT NOT SHOWN IN THE DECLARATIONS.

**If There Is Other Coverage**

1. Policies Issued by Us to You, Your Spouse or ...
   If two or more vehicle policies issued by us to **you**, **your spouse** or any **relative** apply to the same **loss** or occurrence, we will pay under the policy with the highest limit.

2. Coverage Available From Other Sources
   Subject to item 1, if other coverage applies to the **loss** or expenses, we will pay only our share. Our share is that percent the limit of liability of this policy bears to the total of all coverage that applies.

3. **Temporary Substitute Car, Non-Owned Car or Trailer**
   Subject to items 1 and 2, if a **temporary substitute car**, a **non-owned car** or trailer designed for use with a **private passenger car** has other coverage on it, then this coverage is excess.

4. **Newly Acquired Car**
   THIS INSURANCE DOES NOT APPLY IF THERE IS SIMILAR COVERAGE ON A **NEWLY ACQUIRED CAR**.

**No Benefit to Bailee**

These coverages shall not benefit any carrier or other bailee for hire liable for loss.

20
9805A

---

**SECTION V.—DEATH, DISMEMBERMENT AND LOSS OF SIGHT—COVERAGE S, TOTAL DISABILITY—COVERAGE T AND LOSS OF EARNINGS—COVERAGE Z**

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT—COVERAGE S**

If "S" is shown in the "Coverages" space on the declarations page each **insured** has the coverage.

We will pay the amount shown in the schedule that applies for death, or **loss**, caused by accident. The **insured** must be struck by a land motor vehicle or trailer. The death or **loss** must be the direct result of the accident and not due to any other cause. The death or **loss** must occur within 90 days of the accident.

**Insured** – means a **person** listed under "Persons Insured" on the declarations page.

**Loss** – means the loss of:
1. the foot or hand, cut off through or above the ankle or wrist; or
2. the whole thumb or finger; or
3. all sight.

**The Most We Pay**

The most we will pay because of the death of, or **loss** to, the **insured**, except as provided below, is shown under "Amount" next to his or her name on the declarations page.

The amount shown in the schedule for death or **loss** is doubled for an **insured** who, at the time of the accident is using vehicle's complete restraint system as recommended by the vehicle's manufacturer.

If the **insured** dies as a result of this accident, any payment made or due for **loss** reduces the amount of the death payment.

**SCHEDULE**

If amount under $ in declarations is

| | $5,000 | $10,000 |
| --- | --- | --- |
| Death | $5,000 | $10,000 |

**Loss of:**

| | | |
| --- | --- | --- |
| hands, feet, sight of eyes, one hand & one foot, or one hand or one foot & sight of one eye | 5,000 | 10,000 |
| one hand or one foot, or sight of one eye | 2,500 | 5,000 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 |
| any two fingers | 1,000 | 2,000 |

**Payment of Any Amount Due**

We will pay any amount due:
1. to the **insured**;
2. to a parent or guardian if the **insured** is a minor or an incompetent **person**;
3. to the surviving **spouse**; or
4. at our option, to any **person** or organization authorized by law to receive such payment.

Any payment made is to its extent a complete discharge of our obligations. We are not responsible for the way the money is used.

**Autopsy**

We have the right to have an autopsy made where it is not forbidden by law.

**TOTAL DISABILITY—COVERAGE T**

If "T" is shown in the "Coverages" space on the declarations page each **insured** has the coverage.

We will pay the **insured weekly indemnity** because of his or her continuous **total disability**. The **total disability** must:
1. result directly and independently of all other causes from **bodily injury** caused by accident, while **occupying** or through being struck by a land motor vehicle or trailer;
2. start within 20 days from the date of the accident; and
3. be for seven or more consecutive days.

**Insured** – means a **person** shown under "Persons Insured" – Coverage T on the declarations page.

**Total Disability** – under coverage T means:
1. during the first year from the start of the **insured's** disability, the **insured** is continuously unable to work in his or her occupation; and
2. after the first year, the **insured** is continuously unable to work in a gainful occupation for which he or she is reasonably fitted by education, training or experience.

21
9805A

**Weekly Indemnity** – means the amount we pay for each week the *insured* sustains *total disability*. It is the lower of:

1. two-thirds of the *insured's* average weekly earnings on the date of the accident. Average weekly earnings is the *insured's* total earnings for the 52 weeks just prior to the date of the accident, divided by 52.

2. the amount shown on the declarations page for the *insured*, or

**Limits of Liability**

The maximum number of weeks for which we will pay *weekly indemnity* to an *insured* is 260 weeks of continuous *total disability* due to one accident.

**Payment of Any Amount Due**

Subject to proof of continued *total disability*, when we ask for it, *weekly indemnity* is payable to an *insured* every four weeks.

**Death During Total Disability**

The time limitation for death under coverage S, when an *insured* under both coverages S and T sustains death during a period of continuous *total disability*, is extended to one year from the date of accident.

**LOSS OF EARNINGS – COVERAGE Z**

If "Z" is shown in the "Coverages" space on the declarations page each *insured* has the coverage.

We will pay the *insured* 85% of his or her loss of *weekly earnings*. The loss has to be due to continuous *total disability* that is:

1. the direct result of *bodily injury* caused by accident; and

2. sustained while *occupying* or through being, struck by, a land motor vehicle or trailer.

**When Total Disability Applies**

The *insured's total disability* must be for a period of at least 30 consecutive days starting within 20

days after the accident. We will not pay for the first seven days of the 30 day period.

Payments owed will be paid every two weeks. Proof of continued *total disability* must be given to us when we ask for it.

**Limits of Liability**

We will pay up to $250 for each full work week of *total disability* and pro rata for less than a week. Subject to the limit per week, we will pay up to $15,000 total for all loss of earnings due to any one accident.

*Insured* – means a *person* shown under "Persons Insured – Coverage Z" on the declarations page.

**Total Disability** – under coverage Z, means the *insured*, while living, is not able to do the usual work or any other work for which he or she is reasonably fitted by education, training or experience.

**Weekly Earnings** – means all earnings for the *insured's* services before any deductions. When *weekly earnings* cannot be determined on a weekly basis an average will be used. The average is the earnings for the 52 weeks just prior to the accident divided by 52.

**When Coverages S, T and Z Do Not Apply**

THESE COVERAGES DO NOT APPLY TO:

1. AN *INSURED* WHILE ON THE JOB, OPERATING, *OCCUPYING*, LOADING, OR UNLOADING:
   a. AN EMERGENCY VEHICLE; OR
   b. A VEHICLE USED IN THE *IN-SURED'S* BUSINESS OR JOB.

   But it does not apply if the vehicle is:
   (1) a *private passenger car* or school bus; or
   (2) the pickup or van type, with a Gross Vehicle Weight of 10,000 pounds or less, which not used for delivery.

2. AN *INSURED* WHILE:
   a. ON THE JOB IN ANY *CAR BUS-INESS*; OR
   b. *OCCUPYING* ANY:
      (1) VEHICLE WHILE USED IN A RACE; OR
      (2) MILITARY VEHICLE.

3. AN *INSURED* WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A MOTOR VEHICLE OR TRAILER:
   a. WHICH RUNS ON RAILS OR CRAWLER-TREADS;
   b. DESIGNED FOR USE MAINLY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   c. LOCATED FOR USE AS PREMISES.

4. THE DEATH OF, LOSS TO OR *TOTAL DISABILITY* OF AN *INSURED* DUE TO:
   a. DISEASE except pus forming infection due to *bodily injury* received in the accident; or
   b. SUICIDE OR ATTEMPTED SUICIDE WHILE SANE OR INSANE; OR
   c. WAR OF ANY KIND.

**CONDITIONS**

1. **Policy Changes**
   a. **Policy Terms.** The terms of this policy may be changed or waived only by:
      (1) an endorsement issued by us; or
      (2) the revision of this policy form to give broader coverage without an extra charge; any coverage you carry is liable to pay that broader coverage. We will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

   b. **Change of Interest.** No change of interest in this policy is effective, unless we consent in writing. However, if *you* die, we will protect the named *insured*, except under death, dismemberment and loss of sight, total disability and loss of earnings coverages:
      (1) *your* surviving *spouse*;
      (2) any *person* with proper custody of *your car*, a newly acquired car or a temporary substitute car until a legal representative is qualified; and then

   c. the legal representative while acting within the scope of his or her duties.

   d. **Consent of Beneficiary.** Consent of the beneficiary under death, dismemberment and loss of sight coverage is not needed to cancel or change the policy.

   **Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

2. **Suit Against Us**
   a. There is no right of action against us:
      (1) until all the terms of this policy have been met; and
      (2) under the liability coverage, until the amount of damages an *insured* is legally liable to pay has been finally determined by:
         (1) judgement after actual trial, and appeal if any; or
         (2) agreement between the *insured*, the claimant and us.

   b. If a judgement is secured against the *insured* or his or her estate based on a *bodily injury* that is also covered by this policy, a suit may be brought against us under this policy by a judgment creditor.

   c. Bankruptcy or insolvency of the *insured* or of his or her estate shall not relieve us of our obligations.

   d. Under uninsured motor vehicle, medical payments, any physical damage, death, dismemberment and loss of sight, total disability and loss of earnings coverages, until 30 days after we get the *insured's* notice of accident or loss.
      (1) suit for *bodily injury* has been filed in the proper court against the uninsured motorist; or
      (2) an agreement as to the amount due under this coverage has been made, or

(3) the **insured** or his or her representative has formally started arbitration proceedings by making a written request, sent to us by certified mail, return receipt requested.

If a suit has been filed against the uninsured motorist, written notice of the suit must be given to us within a reasonable time after the **insured** knew or should have known the motorist was uninsured, but we may not require that this notice be given earlier than one year from the date of the actual or alleged cause of action on which the claim is based.

This provision does not limit a right of action resulting from **bodily injury** caused by an **underinsured motor vehicle**.

3. **Our Right to Recover Our Payments**

a. Death, dismemberment and loss of sight, total disability and loss of earnings coverage payments are not recoverable by us.

b. If the uninsured motor vehicle coverage payments are caused by an **uninsured motor vehicle**, other than an **underinsured motor vehicle**:

(1) we are subrogated to the proceeds of our settlement. If the injured **person** recovers from any party liable for the **bodily injury**, we shall:
   (a) keep these rights in trust for us;
   (b) execute any legal papers we need; and
   (c) when we ask, take action through our representative to recover our payment.

(2) if the **person** to or for whom we have made payment has not recovered from any party at fault, he or she shall:
   (a) keep these rights in trust for us;
   (b) execute any legal papers we need; and
   (c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any recovery.

c. Under uninsured motor vehicle coverage, if the damages are caused by an **underinsured motor vehicle**:

(1) we are entitled to the extent of our payments, to the proceeds of any settlement the **insured** makes with any party liable for the **bodily injury**, other than payments from bodily injury liability bonds or policies made prior to our payment.

(2) If the **insured** has not been fully compensated for the **bodily injury** by the party at fault, and we make payment before the **bodily injury**, the **insured** shall:
   (a) keep these rights in trust for us;
   (b) execute any legal papers we need; and
   (c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any such recovery.

d. Under uninsured motor vehicle property damage coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the **insured** recovers from any party liable for the **property damage**.

(2) if **you** or the **person** to or for whom we have made payment has not recovered from any party at fault, he or she shall:
   (a) keep these rights in trust for us;
   (b) execute any legal papers we need; and
   (c) when we ask, take action through our representative to recover our payments.

We are to be repaid our payments, costs and fees of collection out of any recovery.

4. **Cancellation**

**How You May Cancel. You** may cancel **your** policy by notifying us in writing of the date to cancel, which must be later than the date **you** mail us notice. We may waive this requirement by confirming the date and time of cancellation to **you** in writing.

**How and When We May Cancel.** We may cancel **your** policy by written notice, mailed or delivered to **your** last known address. The notice shall give the date cancellation is effective.

If we mail or deliver a notice of cancellation to **you** during the first 59 days following the policy effective date, the cancellation notice will be mailed or delivered to **you** at least 10 days before the cancellation effective date.

After the policy has been in force for more than 59 days, or if the policy is a renewal policy, the notice of cancellation will be mailed or delivered to **you** at least:

a. 10 days before the cancellation effective date if the cancellation is because **you** did not pay the premium; or

b. 20 days before the cancellation effective date if the cancellation is because of any other reason as allowed by statute.

The mailing of the notice shall be sufficient proof of notice.

a. If we mail or deliver a notice of cancellation to **you** within the 59 day policy effective date, we will not cancel **your** policy before the end of the current policy period unless:

b. **you, your spouse**, any **relative** or any other **person** who usually drives **your car** becomes subject to the 180 day period following the date the **policy** becomes effective, if the **insured's** license under:

(1) suspension, if such suspension is not removed prior to the date cancellation becomes effective and is based on a reason other than **your** failure to make a filing required by the California Insurance or Vehicle Codes, if a request for such a filing was made by an insured; or

(2) revocation, for any reason other than an insurer's failure to make a filing required by the California Insurance Code, during the policy period or, if the policy is a renewal, during the policy's first 180 day period immediately preceding the effective date.

**Return of Unearned Premium. If you** cancel, premium may be earned on a short rate basis. If we cancel, premium will be earned on a pro-rata basis. Any unearned premium may be returned thereafter. Delay in the return of unearned premium does not affect the cancellation.

5. **Renewal**

Unless we mail or deliver to **you** a notice of cancellation or a notice of our intention not to renew the policy to expire at the end of the current policy period, we agree to renew the policy when **your** payment of the renewal premium when due. It is agreed that the renewal premium will be based upon the rates in effect, the coverages carried,

applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal.

Other elements that may affect **your** premium include, but are not limited to:

a. drivers of **your car** and their ages and marital status;

b. **your car** and its use;

c. eligibility for discounts or other premium credits;

d. applicability of a surcharge based either on accident history, or on other factors.

A notice of our intention to not renew will be mailed or delivered to **your** last known address at least 30 days before the end of the policy period. The mailing of the notice shall be sufficient proof of notice.

6. **Premium**

The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

The premium for this policy is based on information for this policy received from **you** and other sources. If the information is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period based upon the corrected, completed or changed information.

**You** agree that if this information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period or is determined to be different than that used to determine the premium, State Farm will refund or credit to **you** any decrease in premium and **you** will pay for any increase in premium when due.

7. **Concealment or Fraud**

There is no coverage under this policy **if you** or any **insured** under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured named in the declarations is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is nonassessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

SECRETARY

PRESIDENT

26
9805A

27
9805A

# EXHIBIT B

COPY

Emeryville Operations Center
PO Box 6405
Rohnert Park, CA 94927-6405
877 587 6200 Fax 800 440 6176

May 8, 2007

Arnesha Garner
2924 Griffith St
San Francisco, CA 94124-3722

RE:  Our Insured:   Arnesha Garner
     Claim Number:  05-5395-790
     Date of Loss:  April 27, 2007

Dear Ms. Garner:

The enclosed material from MITCHEL1, an independent vehicle
evaluation company, was used to establish the settlement amount
of your 2005 Ford Escape.

The settlement amount was established as follows:

| | |
|---|---|
| Actual Cash Value/Base Price | $15,993.29 |
| **Plus:**  Sales Tax | +$1,359.43 |
| Unused License Fees | +$167.00 |
| Total | $17,519.72 |
| **Less:**  Deductible | -$500.00 |
| Payment to Lien Holder | -$14,991.30 |
| **Settlement Amount** | $2,028.42 |

The DMV requires that all documents be <u>unaltered</u> and <u>signed</u>
<u>exactly</u> as your name appears on the title and registration.
Please sign these documents as ARNESSHA M GARNER.

     Vehicle/Vessel Transfer Form
     Application for Vehicle License Fee Refund Form
     Authorization for Pay Off

Ms. Garner, we have extended your rental through May 14, 2007.

Please contact us if you have any questions.

Sincerely,

HOME OFFICES:    BLOOMINGTON, ILLINOIS 61710

COPY

Arnesha Garner
Page 2
May 8, 2007


Daphne L. Scales x6656
Claim Representative
(877) 587-6200

State Farm Mutual Automobile Insurance Company

# EXHIBIT C

COPY

Emeryville Operations Center
PO Box 6405
Rohnert Park, CA 94927-6405
877 587 6200 Fax 800 440 6176

May 8, 2007

Arnesha Garner
2924 Griffith St
San Francisco, CA 94124-3722

RE:  Insured:       Arnesha Garner
     Claim Number:  05-5395-790
     Date of Loss:  April 27, 2007

Dear Ms. Garner:

We have determined that your vehicle is a total loss and have
offered settlement.  State Farm is committed to paying the amount
reasonably owed as soon as practicable.  We believe our offer
represents an appropriate assessment of the actual cash value of
your vehicle.  However, it appears we are unable to conclude this
claim based on our offer.

Your policy contains an appraisal provision which states in part:

   We have the right to settle a loss with you or the owner of
   the property in one of the following ways:

   1.  pay the agreed upon actual cash value of the property at
       the time of the loss in exchange for the damaged property.
       If the owner and we cannot agree on the actual cash value,
       either party may demand an appraisal as described below.
       If the owner keeps the damaged property, we will deduct
       its value after the loss from our payment.  The damaged
       property cannot be abandoned to us;

   Appraisal under item 1 above shall be conducted according to
   the following procedure.  Each party shall select an
   appraiser.  These two shall select a third appraiser.  The
   written decision by any two appraisers shall be binding.  The
   cost of the appraiser shall be paid by the party who hired him
   or her.  The cost of the third appraiser and other appraisal
   expenses shall be shared equally by both parties.  We do not
   waive any of our rights by agreeing to an appraisal.

   If you give us your consent, we may move the damaged property,
   at our expense, to reduce storage costs during the appraisal

HOME OFFICES:    BLOOMINGTON, ILLINOIS 61710

COPY

Arnesha Garner
Page 2
May 8, 2007

process.  If you do not give us your consent, we will pay only
the storage costs which would have resulted if we had moved
the damaged property.

We hereby request to be named as our appraiser.  Since it may be
some time before the appraisal is complete, we will tender
$17,019.72, which represents the amount of our evaluation of
actual cash value less your $500.00 deductible, subject to the
conditions outlined below.  This payment is in advance of the
appraisal, without prejudice to your right to receive a higher
amount if so determined by the appraiser(s).  Your claim will
remain open until the appraisal process is complete and your
claim is settled.  By advancing the amount of our evaluation, you
may be able to proceed with purchase of another vehicle without
waiting for the appraisal results.

Our records indicate your vehicle has a lien held by FORD MOTOR
CREDIT.  Under the terms of the policy, we must pay the lien in
full, subject to and limited by the actual cash value, before we
make any payment to you.  Our advance payment is conditioned on
your agreement that if we pay the lien, you will do everything
necessary to transfer ownership to us, including signing the
title.  If this is acceptable, please contact us to complete the
necessary paperwork.  If our evaluation exceeds the amount due on
the lien, you will be paid directly any amount in excess of the
lien.

We believe our evaluation represents the actual cash value of
your vehicle.  In the event you recover a higher amount from the
appraiser(s), we will take a credit for the above amount and
promptly pay any additional amount legally due.  Should the
appraiser(s) award less than our payment, we will not seek
reimbursement of any overpayment.  Any additional forms,
including releases, will be completed after the appraisal is
complete.

We are required by California Insurance Regulations, Section
2695.7(b)(3), to advise you if you believe this claim, or any
part of this claim, has been wrongfully denied or rejected, you
may have the matter reviewed by the California Department of
Insurance, Claims Services Bureau, 300 South Spring Street, Los
Angeles, California 90013, telephone 1-800-927-4357.

Your correspondence is important to us.  In order to ensure we
can identify and match all documents to your claim file, please
include your claim number on all correspondence.

If you wish to discuss this matter further, please contact us.

COPY


Arnesha Garner
Page 3
May 8, 2007


Sincerely,


Daphne L. Scales x6656
Claim Representative
(877) 587-6200

State Farm Mutual Automobile Insurance Company

DS

# EXHIBIT D

# State Farm Insurance Companies



Emeryville Operations Center
PO Box 6405
Rohnert Park, CA 94927-6405
877 587 6200 Fax 800 440 6176

May 10, 2007

Arnesha Garner
2924 Griffith St
San Francisco, CA 94124-3722

## FILE COPY

MAY 15 2007

RE: Insured:      Arnesha Garner
    Claim Number:   05-5395-790
    Date of Loss:  April 27, 2007       **EMERYVILLE OC**

Dear Arnesha Garner:

### AUTHORIZATION FOR PAYOFF

I, Arnesha Garner, hereby authorize State Farm Mutual Automobile
Insurance Company to forward payment to FORD MOTOR CREDIT in the
amount of $14,991.30 as payoff for my 2005 Ford Escape, VIN
1FMYU04155KB19440, Loan No. 039864525.

I also hereby authorize the above-named lienholder to mail the
Certificate of Ownership or Lien Satisfied on the above-described
vehicle directly to State Farm Mutual Automobile Insurance
Company.

California law provides you with a two-year statute of
limitations for your bodily injury claim.  This means in order to
protect your interests in this matter, you must settle your
bodily injury claim or file a lawsuit within two years from the
date of injury.

Signed: _Arnesha Garner_
        _2924 Griffith St_
        _SF CA 94124_
                Address

        _5-12-07_
                Date

Sincerely,

_Daphne Scales_
Daphne L. Scales x6656
Claim Representative
(877) 587-6200

05-5395-790  DF

HOME OFFICES:  BLOOMINGTON, ILLINOIS 61710-0001