1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   KEVIN J. DUNNE  Bar No. 40030
2  BRUCE D. CELEBREZZE  Bar No. 102181
   LAURA L. GOODMAN  Bar No. 142689
3  One Market Plaza
   Steuart Tower, 8th Floor
4  San Francisco, California 94105
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   STATE FARM MUTUAL AUTOMOBILE
7  INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 ARNESHA M. GARNER, on behalf of       CASE NO. CV 08 1365 MEJ
   herself and all others similarly situated,
12                                        **APPENDIX OF UNPUBLISHED**
                Plaintiff,                **AUTHORITIES IN SUPPORT OF STATE**
13                                        **FARM MUTUAL AUTOMOBILE**
          v.                              **INSURANCE COMPANY'S MOTIONS TO**
14                                        **DISMISS THE COMPLAINT AND TO**
   STATE FARM MUTUAL                      **COMPEL APPRAISAL AND FOR STAY**
15 AUTOMOBILE INSURANCE                   **PENDING APPRAISAL**
   COMPANY
16                                        JUDGE:   Maria-Elena James
                Defendant.                CTRM:    B
17                                        DATE:    May 22, 2008
                                          TIME:    10:00 a.m.
18

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP   28
                                          CASE NO. CV 08 1365 MEJ

For the convenience of the Court, Defendant State Farm Mutual Automobile Insurance Company respectfully submits true and correct copies of the following unpublished federal cases, cited in its memoranda of points and authorities in support of its Motion to Dismiss the Complaint and Motion to Compel Appraisal and For a Stay Pending Appraisal, and in its Request for Judicial Notice:

| Exhibit No. | Case |
|---|---|
| 1 | *Advertising Display Systems 1, LLC v. City and County of San Francisco et al.,* No. C 06-1020 SBA, 2006 WL 1646138 (N.D.Cal. June 14, 2006) |
| 2 | *Goldberg v. State Farm Fire & Cas. Co.,* No. CV 01-11193 LGB, 2002 WL 768893 (C.D.Cal. Apr. 5, 2002) |
| 3 | *In re Cintas Corp. Overtime Pay Arbitration Litig.,* No. C 06-1781 SBA, 2007 WL 1089695 (N.D.Cal. Apr. 11, 2007) |
| 4 | *Roque v. Applied Materials, Inc.,* No. CV 03-1564-ST, 2004 WL 1212110 (D.Or. Feb. 20, 2004) |
| 5 | *Visa USA, Inc. v. Maritz, Inc.,* No. C 07-05585 JSW, 2008 WL 744832 (N.D.Cal. Mar. 18, 2008) |

DATED: April 14, 2008              SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
Kevin J. Dunne
Bruce D. Celebrezze
Laura L. Goodman
Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

SEDGWICK
DETERT, MORAN & ARNOLD LLP

CASE NO. CV 08 1365 MEJ

1

APPENDIX OF UNPUBLISHED AUTHORITIES IN SUPPORT OF STATE FARM'S MOTIONS TO DISMISS
AND TO COMPEL APPRAISAL AND FOR STAY PENDING APPRAISAL

# Exhibit 1

Westlaw.

Not Reported in F.Supp.2d                                           Page 1
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

Advertising Display Systems 1, LLC v. City and
County of San Francisco
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
ADVERTISING DISPLAY SYSTEMS 1, LLC,
Plaintiff,
v.
CITY AND COUNTY OF SAN FRANCISCO et
al., Defendants.
No. C 06-1020 SBA.

June 14, 2006.

Gerald M. Murphy, Luce Forward Hamilton &
Scripps LLP, San Francisco, CA, for Plaintiff.
Kristen A. Jensen, City Attorney's Office, San
Francisco, CA, for Defendants.

### ORDER

SANDRA BROWN ARMSTRONG, District Judge.
*1 This matter comes before the Court on the mo-
tion of defendants City and County of San Fran-
cisco, Department of Building Inspection, San
Francisco Planning Department, San Francisco
Planning Director and San Francisco Zoning Ad-
ministrator (collectively, "Defendants") to dismiss
the complaint of plaintiff Advertising Display Sys-
tems 1, LLC ("Plaintiff") for lack of jurisdiction
and failure to state a claim [Docket Nos. 6, 15].
Having read and considered the arguments presen-
ted by the parties in their papers, the Court finds
this matter appropriate for disposition without a
hearing. The Court hereby GRANTS Defendants'
Motion to Dismiss [Docket Nos. 6, 15] and
GRANTS in part and DENIES in part the parties'
requests for judicial notice [Docket Nos. 8, 18].

### BACKGROUND

Plaintiff Advertising Display Systems 1
("Plaintiff") is an outdoor advertising company.

Verified Petition for Writ of Mandate and Com-
plaint for Damages, Declaratory Relief and Prelim-
inary and Permanent Injunction ("Petition") at ¶ 3.
On September 28, 2001, Plaintiff entered into a
lease agreement for general advertising at the real
property situated at 2599 San Bruno Avenue, San
Francisco, California ("2599 San Bruno") with Mi-
chael and Vivian Anthony, the owners of the prop-
erty. The property has an existing general advert-
ising sign structure pursuant to a permit issued on
June 4, 1963. That permit is owned by the property
owner. Id. at ¶ 16.Viacom Outdoor, Inc. claims that
it owns the existing sign. See Defendants' Request
for Judicial Notice in Support of Motion to Dismiss
("Defendants' RJN"), Ex. B. FN1 The term of the
lease between Plaintiff and the owners is 20 years.
It will commence when the replacement sign is con-
structed in place of the existing sign and an advert-
ising copy is placed thereon. Petition at ¶ 15. On
August 25, 2004, Plaintiff, as agent for Michael and
Vivian Anthony, applied for a permit to replace the
existing sign structure with a new structure. On
December 13, 2004, defendant the City of San
Francisco (the "City") issued the replacement per-
mit, but suspended it on March 3, 2005, pending
Plaintiff's application for a "demolition permit" to
remove the existing sign. Id. at ¶ 17.Plaintiff filed
for a demolition permit.FN2 Id. at ¶ 18.To date, the
City has neither approved nor disapproved the de-
molition permit application nor rescinded its sus-
pension of Plaintiff's replacement permit. Id.

> FN1. Defendants ask the Court to take ju-
> dicial notice of correspondence sent to
> Plaintiff by the San Francisco Zoning Admin-
> istrator because it is maintained in the reg-
> ular course of business as an official record
> of the City and County of San Francisco.
> See Defendants' RJN, Exs. A and B. Judi-
> cial notice of these official records is prop-
> er. See Western Federal Sav. & Loan Ass'n
> v. Heflin Corp., 797 F.Supp. 790, 792
> (N.D.Cal.1992) (taking judicial notice of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

documents contained in the records of the Santa Clara County Recorder).

FN2. Plaintiff does not allege when it applied for a demolition permit.

Plaintiff entered into similar lease agreements with the owners of two other properties. On January 1, 2004, Plaintiff entered into a lease agreement for general advertising at the real property situated at 240 Stockton Street, San Francisco, California ("240 Stockton") with Bentley Properties, the owner of the property. The 240 Stockton has an existing sign structure built pursuant to a permit issued on February 14, 1946. *Id.* at ¶ 22.The permit is owned by the property owner. *Id.* It is unknown who owns the existing sign structure.[FN3] The term of the lease between Plaintiff and the property owner is 20 years. *Id.* at ¶ 2 1. It will commence when the replacement sign is constructed in place of the existing sign and an advertising copy is placed thereon. *Id* . On October 6, 2004, Plaintiff, as agent for Bentley Properties, applied for a permit to replace the existing structure with a new structure. In January 2005, as a condition of approval of the permit, the City required Plaintiff to file for a demolition permit to remove the existing sign structure. On February 1, 2005, Plaintiff applied for the demolition permit. To date, the City has neither approved nor denied Plaintiff's demolition or replacement permits. *Id.* at ¶ 23.

FN3. Defendants maintain that the existing structure is owned by Clear Channel Outdoor. *See* Defendants' Motion to Dismiss at 5. Defendants rely on Exhibit B to its Request for Judicial Notice. However, Exhibit B does not refer to the 240 Stockton property.

**2** Similarly, on October 24, 2001, Plaintiff entered into a lease agreement for general advertising at the real property situated at 2985 San Bruno Avenue, San Francisco, California ("2985 San Bruno") with Wisfe Aishe, the owner of the property. The 2985 San Bruno has an existing structure built pursuant

to permit issued on September 12, 1957. That permit is owned by the property owner.*Id.* at ¶ 37.Clear Channel Outdoor claims that it owns the existing sign structure. *See* Defendants' RJN, Ex. B. The term of the lease between Plaintiff and the property owners is 20 years. It will commence when the replacement structure is constructed in place of the existing structure and an advertising copy is placed on it. *Id.* at ¶ 36.

On October 14, 2004, Plaintiff, as agent for Wisfe Aishe, applied for a permit to replace the existing structure with a new structure. *Id.* at ¶ 38.On December 16, 2004, the City of San Francisco Planning Department approved the permit application and forwarded it to the Building Department for permit issuance. On January 18, 2005, the Planning Department suspended its approval pending the application by Plaintiff for a demolition permit to remove the existing structure. On February 1, 2005, Plaintiff applied for the demolition permit. To date, the City has neither approved the demolition permit application nor rescinded the prior permit approval. *Id.*

On February 14, 2006, Plaintiff filed a verified petition for writ of mandate and complaint for damages, declaratory relief and preliminary and permanent injunction against the City and County of San Francisco, the Department of Building Inspection, the San Francisco Planning Department, the San Francisco Planning Director, the San Francisco Zoning Administrator (collectively, "Defendants") and Does 1 through 100. Plaintiff asserts causes of action for writ of administrative mandamus, writ of traditional mandamus, declaratory relief, and injunctive relief against all Defendants, and for inverse condemnation and violation of 42 U.S.C. section 1983 against the City. On April 4, 2006, Defendants moved to dismiss for lack of jurisdiction and failure to state a claim.

*LEGAL STANDARD*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

Page 3

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."*Tosco Corp. v. Communities for a Better Env't,* 236 F.3d 495, 499 (9th Cir.2001)." 'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.' " *Id.* (quoting *Smith v. McCullough,* 270 U.S. 456, 459 (1926)). Subject matter jurisdiction does not exist over claims which are not ripe for adjudication. *Cardenas v. Anzai,* 311 F.3d 929, 933 (9th Cir.2002).

### A. Rule 12(b)(6)

*3 Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v.. McKeithen,* 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). The court does not accept as true conclusory legal allegations cast in the form of factual allegations.*Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

### ANALYSIS

### A. Federal Claims

### (i) Standing

### (a) Standing Based on Agency Relationship

Plaintiff asserts a 42 U.S.C. section 1983 claim against the City for violating Plaintiff's procedural and substantive due process rights by depriving it of substantially all reasonable use of the replacement permits due to arbitrary and capricious action by the City. *See* Petition at ¶¶ 68-72. Plaintiff alleges that it applied for replacement permits as an agent of the property owners. *Id.* at ¶¶ 17, 23, and 38.Defendants maintain that Plaintiff has no standing to assert this claim as an agent of the property owners. Defendants argue that a section 1983 claim sounds in tort, and tort claims are not assignable under California law.

The Supreme Court has construed claims brought under section 1983 as tort claims for personal injuries. *Pony v. County of Los Angeles,* 433 F.3d 1138, 1143 (9th Cir.2006) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999). Thus, the court should look to California tort law for guidance. *Id.* The right to sue in tort for personal injury is non-assignable under California law. *Id.* Furthermore, courts have held that a section 1983 claim must be based upon a violation of Plaintiff's personal rights, not the rights of someone else. *See Rose v. City of Los Angeles,* 814 F.Supp. 878, 881 (C.D.Cal .1993) ("[A] § 1983 claim must be based upon a violation of Plaintiff's personal rights, and not the rights of someone else."); *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir.1990) (same); *Eaton v. City of Solon,* 598 F.Supp. 1505, 1514 (N.D.Ohio 1984).

In *Eaton,* the plaintiff asserted Section 1983 and 1985 claims, as well as state law claims against the City of Solon, Ohio, based on its failure to issue a building permit for a single family home. 598 F.Supp. at 1506-1507. The plaintiff did not own a parcel of property where she proposed to build a home. However, she alleged that she was an author-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

ized agent and representative of the owners the property. She attached a power of attorney to her brief showing that she was authorized to build the house and file necessary applications and legal proceedings in the process of building it. The court noted that a section 1983 cause of action is personal to the person who alleges that his or her constitutional rights are violated, and it cannot be delegated to another person. Accordingly, the court held that the plaintiff had no standing to bring the section 1983 claim. *See id.* at 1514.

*4 Here, Plaintiff alleges that it applied for replacement permits as an agent of the property owners and that its substantive and procedural due process rights were violated because it was deprived of substantially all reasonable use of the replacement permits due to arbitrary and capricious action by the City. Because the section 1983 claim is not assignable, Plaintiff lacks standing to assert it.

### (b) Actual and Imminent Injury Requirement

Furthermore, Plaintiff lacks standing to assert both its section 1983 claim and its Takings Clause claim because it failed to adequately allege injury. To establish standing, Plaintiff must show that: (1) there is an actual and imminent injury, which is concrete and particularized, not hypothetical or conjectural; (2) the injury is fairly traceable to the City's actions; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The burden of showing standing rests on Plaintiff. *See id.*

Defendants claim that Plaintiff's alleged injury is hypothetical and conjectural, because the lease rights on which Plaintiff relies on to challenge the City's conduct are conditioned on future events, specifically, on the removal of the existing signs owned by other parties, who object to such removal, and the construction and placement of the replacement signs.

Defendants are correct. Plaintiff's Petition on its face shows that the terms of the leases between Plaintiff and property owners have not commenced yet. Since the lease terms have not commenced, Plaintiff has not been injured by the City's actions of depriving it of a property interest without due process of law and/or without just compensation. Additionally, any future injury is hypothetical, because the existing sign structures have not been demolished, the replacement structures have not been constructed, and no advertising has been placed on the replacement structures. In fact, there is a dispute whether or not Plaintiff is entitled to construct replacement structures in place of existing structures. *See* Defendants' RJN, Exs. A and B. Plaintiff has a burden of showing standing. *See Lujan,* 504 U.S. at 560-61. It has not done so.[FN4] Accordingly, the Court grants Defendants' Motion to Dismiss based on lack of jurisdiction.[FN5]

> FN4. Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff relies on *Valley Outdoor Inc. v. City of Riverside,* 446 F.3d 948 (9th Cir.2006), asserting that the case addressed "a similar issue" with respect to standing. It did not. In *Valley Outdoor,* the parties did not contest that the plaintiff was injured, and that the injury was traceable to the City of Riverside's actions. The only disputed question was whether it was likely that the injury would be redressed by a favorable decision. *Id.* at 953-954.Second, Plaintiff relies on *Alamo Land & Cattle Co. v. Arizona,* 424 U.S. 295, 303 (1976) in arguing that its leasehold interest is a protected property interest that gives it standing. *Alamo Land & Cattle* concerned a lease that had commenced but was cut short by the condemnation. *Id.* It stands for a proposition that a holder of an unexpired leasehold interest in land is entitled under the Fifth Amendment to just compensation for the value of that interest when it is taken upon condemnation by the United

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

State, however, it does not stand for a proposition that a holder of a lease that has not commenced and is contingent on a series of events has a sufficient property interest to provide it standing to sue.

FN5. Plaintiff requests an evidentiary hearing and an opportunity to conduct discovery if the Court finds disputed factual issues it deems relevant to the issue of jurisdiction. However, all of the facts relevant to the issue of standing have been alleged by Plaintiff in its Petition. Accordingly, the evidentiary hearing is unnecessary.

**(ii) Substantive Due Process Claim**

Even if the Court found that Plaintiff has standing, the Court would dismiss Plaintiff's substantive due process claim as barred by the Ninth Circuit decision in *Armendariz v. Penman,* 75 F.3d 1311 (9th Cir.1996)*(en banc).* In *Armendariz,* the Ninth Circuit held that where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, rather than a more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claim. 75 F.3d at 1319. Here, Plaintiff alleges a violation of substantive due process as follows: "[b]y depriving Plaintiff of substantially all reasonable use of the Replacement Permits based on arbitrary and capricious government action, City violated Plaintiffs' substantive due process guarantees found in the Fifth and Fourteenth Amendments."Petition at ¶ 71. This type of conduct is governed by the Takings Clause.FN7Accordingly, even if Plaintiff had standing to bring his substantive due process claim, the Court would find that the claim was preempted by the Takings Clause. *See Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura,* 371 F.3d 1046, 1054 (9th Cir.2004) (appellant was not allowed to style a takings claim as a substantive due process claim because the alleged violations were addressed by the explicit textual provisions of the Fifth Amendment Takings

Clause); *Patel v. Penman,* 103 F.3d 868, 875 (9th Cir.1996) (plaintiff's substantive due process claim was preempted by the Takings Clause); *Buckles v. King County,* 191 F.3d 1127, 1137 (9th Cir.1999) (plaintiffs were precluded from asserting a substantive due process claim instead of, or in addition to, a takings claim where plaintiffs challenged rezoning of their property on various grounds); *Weinberg v. Whatcom County,* 241 F.3d 746, 749 n. 1 (9th Cir.2001) (dismissing a substantive due process claim because it was subsumed into a takings claim).

FN6. Plaintiff bases its 42 U.S.C. section 1983 claim on the City's alleged violations of its procedural and substantive due process rights. *See* Petition at ¶¶ 68-72.

FN7. Plaintiff avers that *Armendariz* is not controlling here because its substantive due process claim is based on that the City's failure to act. Specifically, Plaintiff argues that "the City has deprived [Plaintiff] of its property rights by *failing to act.*There has been no formal exercise of the City's power of eminent domain, yet the end result if [sic] the same-the loss of property through a private taking without due process and without compensation. Thus, we have a unique situation where the City's conduct is violative of both the substantive due process clause of the 14th Amendment and the takings clause of the 5th Amendment, as properly pled in the Petition at par. 19, 24, 39, 41, 44, 47, 48, 49, 54, 64, 65, 70."*See* Opp. at 13 (emphasis in original). Plaintiff neither explains how the City's failure to act makes its situation unique nor cites any authorities for this proposition. The Court cannot accept as true its conclusory allegations. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

**(iii) Violation of the Takings Clause**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

**\*5** In addition, even if the Court found that Plaintiff has standing, it would dismiss Plaintiff's takings claim as unripe. The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation."It is made applicable to the States by the Due Process Clause of the Fourteenth Amendment. *Dolan v. Tigard,* 512 U.S. 374 (1994). Takings claims fall within two categories: physical taking and regulatory taking. *Yee,* 503 U.S. at 522-23. "A regulatory taking occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property."*Levald v. City of Palm Desert,* 998 F.2d 680, 684 (9th Cir.1993). Where the government regulates the use of property, "compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole."*Yee v. City of Escondido,* 503 U.S. 519, 522-23 (1992).

In addition, takings claims are divided into "facial" and "as-applied." In a facial challenge, a plaintiff claims that the mere enactment of a statute constitutes a taking. In an as-applied challenge, a plaintiff claims "that the particular impact of a government action on a specific piece of property requires the payment of just compensation."*Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494 (1987). The facial and as-applied claims raise different ripeness issues. *Levald,* 998 F.2d at 686.

In a facial regulatory takings claim, a plaintiff must establish that his or her claim is ripe by demonstrating that he or she has exhausted available state remedies for compensation unless doing so would be futile. *Ventura Mobilehome Communities,* 371 F.3d at 1052 (discussing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194-195 (1982)). In an as-applied regulatory taking claim, a plaintiff must establish that his or her claim is ripe by demonstrating that: (1) he or she

has obtained a final decision from the governmental authority charged with implementing the regulations (a "final decision" prong); and (2) exhausted available state remedies for compensation unless doing so would be futile (a "state remedies" prong).*Id.* Thus, in both types of claims a plaintiff must show exhaustion of available state remedies unless doing so would be futile.

Plaintiff alleges that the "City's failure to issue replacement permits has taken the Plaintiff's property without payment of just compensation...."*See* Petition at ¶ 65. Whether Plaintiff's claim is construed as a facial or as-applied, Plaintiff still must satisfy the second ripeness requirement by showing it exhausted available state remedies for compensation. Plaintiff has neither alleged that it sought compensation in the state court nor that doing so would be futile.[FN8]Accordingly, its takings claim is not ripe for review.

> FN8. In fact, it would not have been futile for Plaintiff to seek remedies in state court. The City's alleged failure to issue replacement permits took place in 2005. California started recognizing actions for inverse condemnation based on regulatory takings after the Supreme Court decided *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304 (1987). Thus, after 1987, California's inverse condemnation procedures were found adequate to address a regulatory takings claim. *See San Remo Hotel v. City and County of San Francisco,* 145 F.3d 1095, 1102 (9th Cir.1998).

**\*6** Plaintiff argues that the *Williamson County* state remedies bar does not apply to its case based on the exception set out in the Ninth Circuit decision in *Armendariz.*In *Armendariz,* plaintiffs alleged a scheme by defendants to evict tenants, deprive plaintiffs of rental income that could have been used to bring the buildings into compliance with housing code, prevent owners from learning what repairs were necessary to come into compliance and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

Page 7

invent new violations after plaintiffs had conducted repairs that would bring their properties into compliance. The alleged purpose of this scheme was to deprive the plaintiffs of their property, either by forced sale, driving down the market value of the properties so a shopping-center developer could buy them at a lower price, or by causing the plaintiffs to lose their properties by foreclosure. The court held that if the plaintiff could prove those allegations, that would constitute a "private taking." The court noted that the exhaustion of available state remedies requirement does not apply where the plaintiff alleges a "private taking." *Id.* at 1321 n. 5. Since a "private taking" is unconstitutional even if compensated, a plaintiff alleging such a taking, does not need to seek compensation in state court before filing a federal takings claim. *Id.* However, the court specifically distinguished the plaintiff's alleged scheme from a factual scenario in which the city council had by ordinance declared that a shopping center on the plaintiff property would serve a public use by increasing legitimate business traffic in the area and providing jobs for neighborhood residents. *Id.* at 1321.That scenario would not allege a private taking.

Plaintiff cannot avail itself of this exception, because it has failed to allege a "private taking." In its Petition, Plaintiff simply avers that the City's failure to issue replacement permits constitutes a taking. In opposition to Defendants' Motion to Dismiss, Plaintiff develops its theory more fully. Specifically, Plaintiff alleges that the City unofficially adopted a new policy of not issuing any new replacement permits and has intentionally refused to act on Plaintiff's replacement permit applications until the proposed amendment to the Planning Code drafted by Supervisor Aaron Peskin ("Peskin amendment") can be enacted, at which time the City will undoubtedly use the new legislation to deny Plaintiffs permits.[FN9]*See* Plaintiff's Opposition at 8. Furthermore, according to Plaintiff, the proposed Peskin amendment will make it almost impossible to obtain a replacement permit for lawfully existing signs, and therefore it constitutes a

private taking because it will be used to secure monopoly of private parties Viacom Outdoor, Inc. and Clear Channel Outdoor, to discretely prevent property owners from negotiating with competitors to increase rent stream and property value. *See* Plaintiff's Opposition at 14.

> FN9. On December 13, 2005, Supervisor Aaron Peskin submitted draft legislation drafted by the San Francisco City Attorney to the Board of Supervisors, which, if approved would amend the Planning Code with respect to replacement permits issuance, but would provide that any replacement permit issued before the effective date of the proposed amendment to the Planning code would not constitute a violation of the Code. *See* Petition at ¶ 14. In the Petition, Plaintiff does not explain how this draft legislation is relevant to its claims.

> Plaintiff requests the Court to take judicial notice of the proposed Peskin amendment. *See* Plaintiff's Request for Judicial Notice ("Plaintiff's RJN"), Ex. A. Judicial notice of this document is appropriate. *See Castaic Lake Water Agency v. Whittaker Corp.,* 272 F.Supp.2d 1053, 1060 (C.D.Cal.2003) (taking judicial notice of two Environmental Protection Agency's draft re- ports).

Plaintiff's argument is nothing more than speculation. Although the facts alleged by Plaintiff are assumed true under a motion to dismiss, the Court is not required to accept as true unwarranted deductions of fact or unreasonable inferences. *See Manufactured Home Communities Inc. v. City of San Jose,* 420 F.3d 1022, 1035 (9th Cir.2005). The proposed amendment has not been adopted yet. Even if it were adopted, it would not constitute a private taking. The proposed amendment states that it intends to enhance the City's livability and quality of life by reducing the proliferation of general advert-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 1646138)

ising signs in the City and the resulting clutter, blight and other problems. These objectives will be accomplished by prohibiting the replacement of signs on the same site after they have been removed, which will reduce over time the total number of general advertising signs in the City. *See* Plaintiff's RJN, Ex. A at 2. An allegation involving such an amendment is not sufficient to allege a private taking. *See Armendariz,* 75 F.3d at 1321 (distinguishing a scenario involving a city council adopting an ordinance); *see also Berman v. Parker,* 348 U.S. 26, 32 (1954) ("the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation"); *Lingle v. Chevron U.S.A Inc.,* 544 U.S. 528, 538 (2005) (" 'government regulation-by definition-involves the adjustment of rights for the public good' "). For the foregoing reasons, even if the Court found that Plaintiff had standing to bring its takings claim, the Court would dismiss the claim as unripe.

**B.** *State Law Claims*

**(i) Exercise of Supplemental Jurisdiction**

\*7 In addition to federal claims, Plaintiff asserts the state claims for writ of administrative mandamus, writ of traditional mandamus, declaratory relief, injunctive relief, and a takings claim under the California Constitution. When no federal cause of action remains, district courts usually decline supplemental jurisdiction over the state claims. *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims."). Additionally, local zoning and planning disputes represent an area upon which the federal courts ought not to enter unless no alternative to the adjudication is open. *See Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1094 (9th Cir.1976). Accordingly, the Court declines to exercise jurisdiction over Plaintiff's state claims.

*CONCLUSION*

For all the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants Motion to Dismiss [Docket Nos. 6, 15] is GRANTED. The Court hereby DISMISSES Plaintiff's Verified Petition for Writ of Mandate and Complaint for Damages, Declaratory Relief and Preliminary and Permanent Injunction. Because amendment would be futile, Plaintiff's federal claims are DISMISSED WITH PREJUDICE. The Court declines to exercise jurisdiction over Plaintiff's state claims, thus, they are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED THAT Defendants' Request for Judicial Notice [Docket No. 8] is GRANTED as to documents contained in Exhibits A and B of the Request, and DENIED AS MOOT with respect to all other documents.

IT IS FURTHER ORDERED THAT Plaintiff's Request for Judicial Notice [Docket No. 18] is GRANTED as to the document contained in Exhibit A of Plaintiff's Request, and DENIED AS MOOT with respect to all other documents.

IT IS FURTHER ORDERED THAT the parties' Stipulated Request for Rescheduling of Case Management Conference [Docket No. 23] is DENIED AS MOOT. The Clerk is directed to close the file and to terminate any pending matters.

IT IS SO ORDERED.

N.D.Cal.,2006.
Advertising Display Systems 1, LLC v. City and County of San Francisco
Not Reported in F.Supp.2d, 2006 WL 1646138 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 2

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 768893 (C.D.Cal.)
(Cite as: 2002 WL 768893 (C.D.Cal.))

Page 1

**H**Only the Westlaw citation is currently available.

United States District Court, C.D. California.
Norman J. GOLDBERG, Plaintiff,
v.
STATE FARM FIRE AND CASUALTY CO., an
Illinois Mutual Co., Defendants.
**No. CV 01-11193 LGB (EX).**

April 5, 2002.

Richard I Fine, Richard I Fine & Associates, Beverly
Hills, for Norman J Goldberg, an individual,
plaintiffs.

Howard O Boltz, Jr, Bryan Cave, Santa Monica,
James R Robie, Pamela E Dunn, Robie & Matthai,
Los Angeles, for State Farm Fire & Casualty
Company, an Illinois Mutual Company, defendants.

ORDER GRANTING MOTION TO DISMISS

BAIRD, District J.

I. INTRODUCTION

**\*1** Plaintiff Norman Goldberg ("Plaintiff" or
"Goldberg") seeks compensatory and punitive
damages against Defendant State Farm Fire &
Casualty Company ("State Farm") for its alleged
refusal to pay Plaintiff the "actual cash value" loss
under his State Farm Earthquake Policy ("Policy").
On behalf of others similarly situated, Plaintiff also
seeks class certification for each of his four claims: 1)
breach of contract, 2) contractual breach of implied
covenant of good faith and fair dealing 3) tortious
breach of covenant of good faith and fair dealing
under tort, and 4) unfair practices under California
Insurance Code § 790.3 (" § 790.3"). By the instant
motion, State Farm seeks to dismiss all of Plaintiff's
claims.

II.   FACTUAL   AND   PROCEDURAL
BACKGROUND

Sometime prior to the 1994 Northridge Earthquake,
Plaintiff purchased a "State Farm Earthquake Policy"
("Policy") from State Farm. Compl. at 6. This Policy

covered Plaintiff's personal and real property losses
in an event of an earthquake. *Id.* Specifically, it
provided replacement cost benefits if the damaged
property is repaired or replaced; otherwise, payment
is based on the "actual cash value" of the loss. *Id.*

On January 17, 1994, the "Northridge Earthquake"
occurred, damaging Plaintiff's property. Compl. at 5.
Subsequently, Plaintiff claimed under the Policy. *Id.*
State Farm claimed to pay Plaintiff the monies owed
as "actual cash value". *Id.* at 3. However, Plaintiff
asserts that State Farm failed to pay the full amount
of "actual cash value" required under the Policy by
deducting depreciation from the payment to Plaintiff.
*Id.* at 5. Further, Plaintiff alleges that no provision of
the Policy allowed for such deduction. *Id.* at 6.

On December 7, 2001, Plaintiff sent a letter to State
Farm, demanding that it pay Plaintiff the withheld
depreciation from the actual cash value payment.
Compl. ¶ 6. Two weeks later, State Farm responded
with a refusal to pay such monies. *Id.*

Plaintiff filed this action in the United States District
Court of the Central District of California on
December 28, 2001. Compl. at 1. On February 14,
2002, State Farm filed the current motion to dismiss
all claims against it, asserting that these claims are
invalid as a matter of law. Def.'s Mot. To Dismiss at
1. The Court is in receipt of State Farms's moving
papers, and has received Plaintiff's opposition, filed
on March 4, 2002. Pl.'s Opp. at 1.

III. LEGAL STANDARD: FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for
dismissal when a complaint fails to state a claim upon
which relief can be granted. *See* Fed.R.Civ.P.
12(b)(6). A complaint fails to state a claim if it does
not allege facts necessary to support a cognizable
legal claim. *See Balistreri v. Pacifica Police Dept.,*
901 F.2d 696, 699 (9th Cir.1990); *Robertson v. Dean
Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th
Cir.1984).

**\*2** In reviewing a Rule 12(b)(6) motion, the court

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 768893 (C.D.Cal.)
**(Cite as: 2002 WL 768893 (C.D.Cal.))**

must presume the truth of the factual allegations in the complaint, and draw all reasonable inferences in favor of the non-moving party. *See Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *see also Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Dismissal under Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957))(dismissal appropriate only where "plaintiff can prove no set of facts in support of his claim which would entitle him to relief")); *see also Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's claim. *See Usher,* 828 F.2d at 561.

IV. ANALYSIS

State Farm attacks Plaintiff's four asserted causes of action and the class action allegations. The Court will address each cause of action, and the relevant arguments concerning the dismissal of each claim.

A. Breach of Contract and Bad Faith Claims

Plaintiff's breach of contract and bad faith claims are controlled by a recent California Court of Appeals decision. See *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.,* 92 Cal.App. 4th 886, 112 Cal.Rptr.2d 304 ("*CAR* ") (2001). The Court concludes that the *CAR* decision bars these asserted claims by Plaintiff.

Plaintiff's central contention is that State Farm failed to pay Plaintiff the full "actual cash value" of his property loss as provided under the Policy. Compl. at 9. Specifically, Plaintiff asserts that State Farm calculated "actual cash value" based on a replacement cost less depreciation method, instead of "fair market value" as required by *Jefferson Ins. Co. v. Superior Court,* 3 Cal.3d 398, 402 (1970). Pl's Opp. at 5. Both Plaintiff and State Farm concede that California Insurance Code § 2071 ("Section 2071") governs Plaintiff's Policy. [FN1] Pl's Opp. at 5; Def.'s Mot. To Dismiss at 10.

FN1. Because Plaintiff relied heavily on

*Jefferson,* a decision interpreting Section 2071; Plaintiff consistently premised his arguments under this section, and Plaintiff's Policy essentially quotes the same appraisal language used in Section 2071, the Court treats Plaintiff's Policy as one governed by Section 2071. *See* Pl's Opposition at 3-7; Compl. Exh. 1 at 5.

Because Plaintiff's Policy is governed by Section 2071, State Farm argues that the recent *CAR* decision disposes of Plaintiff's lawsuit. Def.'s Mot. To Dismiss at 10. The Court agrees. The *CAR* case involves a highly similar situation. In that case, the plaintiff filed a complaint against 194 companies that issued insurance policies pursuant to Section 2071. *CAR* 92 Cal.App. 4th at 890. Relying on Section 2071, the plaintiff claimed that these insurers unfairly adjusted property loss claims on the basis of replacement cost less depreciation rather than on the basis of fair market value in violation of *Jefferson. Id.*

The *CAR* court determined that Section 2071 requires appraisal for resolution of contested claims and found that the appraisal term created an arbitration agreement. *Id.* at 892. More importantly, it held that notwithstanding how the insurer approaches valuation of a loss claim, the Legislature has provided the remedy of appraisal to which the parties must resort for determination of the amount of the loss. *Id.*

*3 The *CAR* court carefully reviewed the complaint to determine whether it stated a cause of action and, if not, whether there was a reasonable possibility that it could be amended to do so. *Id.* at 891. Specifically, it considered whether the defendants engaged in any acts which breached the insurance contract. *Id.* at 894.

After reviewing the complaint, the California Court of Appeal determined that the plaintiff failed to "allege facts showing [defendants's] business practice is unfair, unlawful, or fraudulent". *Id.* Further, the *CAR* court found there was no possibility that the plaintiff could amend the complaint to state a cause of action and no legal authority supporting the viability of new causes of action. *Id.* Thus, the court sustained defendants' demurrer without leave to amend because plaintiff failed to first exhaust the statutory remedy of an appraisal. *Id.*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 768893 (C.D.Cal.)
(Cite as: 2002 WL 768893 (C.D.Cal.))

Page 3

Here, the Court finds Section 2071's appraisal remedy applicable to the current action. CAR 92 Cal.App. 4th at 894;see also Cheeks v. California Fair Plan Ass'n 61 Cal.App. 423 (1998). Like in CAR, Plaintiff filed a lawsuit without first exhausting the appraisal remedy provided in his Policy. See Compl., Exh. 1 at 5. Because Plaintiff's Policy includes an appraisal provision quoting almost the same language used in Section 2071, the CAR reasoning applies. [FN2]Id.

> FN2. The Court notes that Section 2071 includes the language "actual cash value or the amount of the loss" while the appraisal provision in Plaintiff's Policy omits the term "actual cash value." However, because neither party argued that this distinction creates a difference, the Court will treat the appraisal provision in Plaintiff's Policy as the equivalent of its counterpart in Section 2071.

However, Plaintiff asserts that his breach of contract and bad faith claims survive CAR because interpretation of contract terms is beyond the proper power of the appraiser. Pl's Opp. at 7. The Court finds this argument unpersuasive. As mentioned earlier, the CAR court explicitly considered a breach of contract theory and held the complaint did not allege "any facts which might have been a breach of the standard form policy" (emphasis added). CAR 92 Cal.App. 4th at 894. Additionally, it determined that plaintiff's failure to demand an appraisal precluded its claims of bad faith and fair dealing. Id. Since Plaintiff's allegations raise the same issues, the Court follows CAR's reasoning.

Plaintiff's allegations have two components: a challenge to the amount determined by State Farm and a challenge to State Farm's interpretation of the contract. Both are intertwined because Plaintiff ultimately premises his breach of contract and bad faith claims on State Farm's failure to pay Plaintiff the full amount due under the Policy. Compl. at 9-12. This is the same situation found in Jefferson, where the court reversed an appraiser's value determination for adopting a faulty contract interpretation. Jefferson 3 Cal.3d at 403. CAR takes the position that the Jefferson decision was appropriate because the insured went through the appraisal process. CAR 92

Cal.App. 4th at 894. The Court reads this as a requirement to give the appraiser the first opportunity to address the valuation issue, and only if the appraiser errs should the issue be brought before a court. Plaintiff has failed to follow procedure. Thus, the Court finds that Plaintiff has failed to state a claim to which he may be entitled to relief.

*4 The Court therefore GRANTS State Farm's motion to DISMISS the breach of contract and covenant of good faith and fair dealing claims against it.

B. Unfair Practices Under California Insurance Code § 790.3

For purposes of this motion, Plaintiff has conceded that his claim under § 790.3 is not a separate cause of action. Pl.'s Opp. at 11. This claim thus rises or falls with the breach of contract and bad faith claims. The Court's DISMISSAL of Plaintiff's bad faith and unfair dealing claims therefore eliminates Plaintiff's § 790.3 claim.

C. Class Certification and Judicial Notice

Because the Court DISMISSES all of Plaintiff's claims against State Farm, it need not address the issue of class certification as to the class allegations.

Further, the Court's DISMISSAL also leaves Defendant's request for judicial notice of insurance guides and court orders moot. Thus, the Court will not consider the merits of this request.

D. Dismissal Without Prejudice

Although the Court finds that Plaintiff is unlikely to plead any set of facts that will create a cause of action, the Court recognizes the "extreme liberality of the Federal Rules of Procedure's pleading requirements" and GRANTS Plaintiff one last opportunity to amend his complaint. See Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir.1991). Thus, the Court DISMISSES Plaintiff's complaint, WITHOUT PREJUDICE and WITH LEAVE TO AMEND THE COMPLAINT within Thirty (30) days of the filing of this order. Should Plaintiff fail to AMEND the complaint, the DISMISSAL will be granted WITH PREJUDICE.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 768893 (C.D.Cal.)
**(Cite as: 2002 WL 768893 (C.D.Cal.))**

V. CONCLUSION

Based on the foregoing reasons, the Court:
  1) DISMISSES all claims against State Farm WITHOUT PREJUDICE;
  2) DENIES class certification for all claims in the complaint; and
  3) GRANTS Plaintiff LEAVE TO AMEND THE COMPLAINT WITHIN Thirty (30) DAYS OF THE FILING OF THIS ORDER.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 768893 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**Exhibit 3**

Westlaw.

Slip Copy                                                                      Page 1
Slip Copy, 2007 WL 1089695 (N.D.Cal.)
**(Cite as: Slip Copy)**

**H**In re Cintas Corp. Overtime Pay Arbitration
Litigation
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
In re CINTAS CORP. OVERTIME PAY
ARBITRATION LITIGATION.
**No. C 06-1781 SBA.**

April 11, 2007.

Mark C. Dosker, Squire Sanders & Dempsey LLP,
San Francisco, CA, for Plaintiff.
Steven Wayne Pepich, Lerach Coughlin Stoia Geller
Rudman & Robbins LLP, San Diego, CA, for
Defendants.

**AMENDED SUGGESTION OF REMAND
ORDER**

SAUNDRA BROWN ARMSTRONG, United States
District Judge.

*BACKGROUND*

*1 *Veliz v. Cintas,* No. 03-1180 SBA, was filed in
May 2003 as a class action and collective action on
behalf of Service Sales Representatives (SSR's)
employed by Cintas. The SSR's sought overtime and
back pay under the Fair Labor Standards Act (FLSA)
and various state laws.

Cintas moved to compel arbitration and, on April 5,
2004, this Court issued an Order compelling 56 of the
65 Plaintiffs subject to Cintas' Motion to arbitrate
their claims. On May 4, 2004, Plaintiffs filed a
Demand for Classwide Arbitration with the American
Arbitration Association (AAA) in San Francisco.
This Demand was filed by Veliz and nine other
named claimants, "on behalf of themselves and all
others similarly situated."Dosker Decl. Ex. 1. The
letter attached to the AAA form stated that "[t]his
demand for arbitration is also made on behalf of all
individuals who filed, or who hereafter file, Consents
to sue in *Veliz, except those* whom Judge Armstrong
has ruled may litigate their FLSA claims in federal
court."Pepich Decl. Ex. N. Cintas did not object to

the clause construction phase of the arbitration taking
place in San Francisco.[FN1]*See id.*Ex. P.

> FN1. The AAA's Rules provide for four
> phases in a demand for class or collective
> arbitration: (1) the clause construction
> phase, in which the arbitrator decides
> whether the parties' contract allows for class
> actions, (2) the class certification phase, (3)
> the class notification phase, and (4) the
> merits phase.

On May 4, 2005, this Court issued an Order
clarifying its April 5 Order. In the clarification, the
Court held that the question of whether the
agreements at issue permit arbitration on a class or
collective basis is for the Arbitrator, not the Court, to
decide in the first instance. *Id.* May 4, 2005 Order at
9-10 (citing *Green Tree Financial Corp. v. Bazzle,*
539 U.S. 444, 452-53, 123 S.Ct. 2402, 156 L.Ed.2d
414 (2003)). Whether the *Veliz* Plaintiffs who are
parties to the arbitration are permitted to arbitrate
their claims on a class or collective basis is a question
still pending before the Arbitrator.[FN2]

> FN2. The Arbitrator issued a Clause
> Construction Award, and the parties filed
> cross-motions to confirm in part and vacate
> in part the award. On December 5, 2005,
> this Court remanded to the Arbitrator for
> clarification of the award. On December 20,
> 2005, Cintas filed a Notice of Appeal of that
> Order.

Approximately 2,400 Plaintiffs opted in to the
litigation. On June 6, 2005, Cintas filed a Motion to
Stay further litigation under Section 3 of the FAA as
to approximately 1,900 of these Plaintiffs, who had
signed arbitration agreements and who had not
already been compelled to arbitrate. On February 14,
2006, this Court granted the motion, and stayed
further proceedings until each of these Plaintiffs
(hereinafter "Stay Motion Plaintiffs") had arbitrated
their disputes with Cintas "in accordance with the
terms of the agreement" into which they entered.[FN3]

> FN3. In so ruling, the Court held that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1089695 (N.D.Cal.)
**(Cite as: Slip Copy)**

Stay Motion Plaintiffs' arbitration agreements are enforceable. *See, e.g.,* Request for Judicial Notice Ex. 4 (transcript of hearing on Motion to Stay at 6).

Soon thereafter, Cintas filed 70 separate actions in different district courts, each of which is a motion to compel arbitration by Cintas against a *Veliz* Plaintiff. The Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred these actions to this Court for "coordinated or consolidated pretrial proceedings ." In other words, the instant MDL consists of 71 actions, the first-filed of which is *Veliz v. Cintas.* Every Respondent in the MDL cases is one of the Plaintiffs in *Veliz.*[FN4] Cintas seeks to compel these individuals to arbitrate their claims, not in the Northern District of California, but in the district where the motion to compel was filed and where the individual is or was employed by Cintas.

> FN4. Approximately 1,800 *Veliz* Plaintiffs are Respondents in the 70 actions of which the MDL is composed. Each action involves a subset of the 1, 800 individuals who signed agreements with the same place-of-arbitration clause.

*2 The MDL Panel's Transfer Order states that resolution of the 70 actions will require the Court "to construe identical contractual arbitration clauses to determine i) whether the parties named in each motion to compel are refusing to arbitrate within the meaning of § 4 of the Federal Arbitration Act, and/or ii) whether the parties are complying with that obligation by seeking to arbitrate collectively in an arbitration already occurring in the Northern District of California involving a subset of the *Veliz* plaintiffs." Transfer Order at 1-2.

On October 27, 2006, this Court ordered the parties to file briefs in support of their respective positions on those questions. Based on the briefing, the Court now finds that it is appropriate to REMAND the MDL cases to the transferor courts for further proceedings.[FN5]

> FN5. On January 9, 2007, Respondents filed an application for leave to file a reply brief [Docket No. 23]. Although the Court's Order regarding briefing did not give Respondents an opportunity to reply, leave to file is

GRANTED. However, having read and considered the arguments made in Respondents' reply brief, the Court's decision on this matter is unchanged.

## *ANALYSIS*

### 1. Requests for Judicial Notice

Cintas requests judicial notice of the following documents contained in the record of *Veliz v. Cintas,* No. 03-1180 SBA: (1) this Court's September 26, 2005 Order, docket no. 500; (2) a stipulation and joint statement of the parties in response to the September 26, 2006 Order, docket no. 501; (3) excerpts from the transcript of a hearing before this Court on October 18, 2005; (4) excerpts from the transcript of a hearing before this Court on October 27, 2005; (5) this Court's February 14, 2006 Order, docket no. 516; (6) this Court's May 4, 2005 Order, docket no. 426; (7) a minute entry recording the results of the hearing before this Court on October 27, 2005, docket no. 514; (8) this Court's April 5, 2004 Order, docket no. 140; (9) a one-page excerpt from Veliz's Opposition to Cintas' Motion to Stay Proceedings, docket no. 477; and (10) a one-page excerpt from Veliz' Motion Concerning Compliance with Court Orders, docket no. 451.

Under Federal Rule of Evidence 201(b), the Court may take judicial notice of documents "capable of accurate and ready determination." A court may take judicial notice of its own records in other cases. *United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980). Accordingly, the Court GRANTS Cintas' Request for Judicial Notice with respect to these documents.

Cintas also requests judicial notice of a copy of each Respondent's employment agreement, which was submitted as an exhibit in each of the 70 MDL cases. "Such documents are part of the files that are in the record of this Court in the cases which are Member Cases under the above-captioned Lead Case and which are listed on the Appendix hereto." Request for Judicial Notice (RJN) at ¶ 9. Finally, Cintas requests judicial notice of the Stipulation and Order "which addresses service of process among other matters" on file in 67 of the 70 MDL cases. RJN at ¶ 10. Cintas includes an exemplar of such Stipulation and Order, which was filed in the United States District Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1089695 (N.D.Cal.)
(Cite as: Slip Copy)

for the District of Rhode Island, Case No. 06-112S.Cintas "offers to put into the Court's Lead Case file copies of all the items referred to in paragraphs 9 and 10," but suggests granting judicial notice "so as to avoid filling the Court's files with copies that together would be quite voluminous and duplicative."*Id.* at ¶ 13.

**\*3** Because these documents are part of this Court's files, they are certainly "capable of accurate and ready determination."Respondents have voiced no objection. Therefore, Cintas' Request for Judicial Notice is GRANTED.

Cintas submitted a supplemental Request for Judicial Notice along with its reply brief. In it, Cintas requests judicial notice of twelve other documents contained in the record of *Veliz v. Cintas.*For the same reasons stated above, the request is GRANTED.

**2. Questions posed by this Court's October 28, 2006 Order**

i. Are the parties named in each Motion to Compel refusing to arbitrate within the meaning of § 4 of the FAA?

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."9 U.S.C. § 4.

Each of the transferor courts in this MDL, in deciding whether Cintas has the right to move to compel arbitration, would have to decide whether Respondents have refused to arbitrate. *See PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1066 (3d Cir.1995) (holding that "an action to compel arbitration under the Federal Arbitration Act accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute"); *Kim v. Colorall Technologies, Inc.,* 2000 WL 1262667 at \*1

(N.D.Cal.2000) (Walker, J.) (citing *PaineWebber* ). Accordingly, the MDL panel has instructed this Court to make that determination.

Cintas argues that the Respondents have failed, neglected, or refused to arbitrate because they have sought to litigate their claims in the *Veliz* action. In support of this theory, Cintas points to case law holding that when a party commences litigation in court, that constitutes a refusal to arbitrate. *See PaineWebber,* 61 F.3d at 1068;*Roque v. Applied Materials, Inc.,* 2004 WL 1212110 at \*4 (D.Or.2004) ("By filing a complaint in court, a party gives the adverse party actual notice of a refusal to arbitrate sufficient to satisfy § 4 of the FAA."). According to Cintas, by filing consents to sue (and thus becoming party Plaintiffs) in the *Veliz* action, Respondents have "commenced litigation." They have also done so by seeking "affirmative relief in litigation in the *Veliz* Action by moving for an Order seeking to preemptively invalidate or otherwise not have to comply with the place-of-arbitration term in each of their arbitration agreements."Cintas' Brief at 11. Here, Cintas is referring to the fact that Respondents, in their capacity as *Veliz* Plaintiffs, resisted Cintas' Motion to Stay and urged this Court to compel arbitration in this district. See RJN Ex. 5 (February 14, 2006 Order).

**\*4** Further, Cintas points out that prior to this Court's April 5, 2004 Order compelling arbitration, the *Veliz* Plaintiffs vigorously opposed enforcement of the arbitration agreements. Finally, Cintas asserts that Respondents have refused to arbitrate by stating repeatedly in the *Veliz* action that they object to, and reserve rights to seek appellate relief against, having to arbitrate. For example, at the October 27, 2005 hearing on Cintas' Motion to Stay, the following exchange took place:
Court: Why are you asking me to compel arbitration for 1700 people that there is no dispute must arbitrate other than a strategic desire to have them in one location, which I don't consider the court objective here.
Mr. Pepich: Because, your honor, we would not agree with Cintas that these people have to arbitrate.

Mr. Pepich acknowledged that the Court's April 5 Order extended to the opt-in Plaintiffs, but stated that he disputed the Court's analysis. RJN Ex. 4. *See also* RJN Ex. 10 (Plaintiffs' Opposition to Cintas' Motion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 4
Slip Copy, 2007 WL 1089695 (N.D.Cal.)
**(Cite as: Slip Copy)**

to Stay, stating that "Even though plaintiffs' cross-motion applies the Court's prior arbitrability rulings, plaintiffs expressly reserved any and all appellate rights with respect to those arbitrability issues, including whether Cintas' arbitration agreements are unconscionable and unenforceable in whole or in part.").

Respondents deny that they are refusing to arbitrate within the meaning of § 4. On the contrary, Respondents assert, "[t]hey are actively seeking to arbitrate in the Northern District of California in connecting with the presently pending arbitration."Respondents' Brief at 2.

Cintas provides no legal authority for the notion that the *Veliz* Plaintiffs' response to Cintas' Motion to Stay constitutes a refusal to arbitrate-this is properly characterized not an affirmative initiation of litigation, but rather as an attempt to control the place of arbitration. However, the reasoning of *PaineWebber* and *Roque* persuades this Court that the MDL Respondents' decision to affirmatively opt in to the *Veliz* litigation as Plaintiffs rather than pursuing arbitration constitutes a refusal to arbitrate. *See First Family Financial Services v. Fairley,* 173 F.Supp.2d 565, 572 (S.D.Miss.2001) ("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim" in court). Further, Cintas is correct that Respondents only attempted to join the ongoing arbitration in this District after this Court rejected their argument (advanced in their capacity as *Veliz* plaintiffs) that the arbitration clauses should not be enforced. Cintas is also correct that Respondents have voiced their resistance to arbitration at various stages of the *Veliz* litigation.

However, Cintas' stronger argument is that Respondents have refused to arbitrate within the meaning of section 4 by pursuing arbitration in the Northern District of California, rather than the fora specified in their arbitration agreements.

ii. Are the parties complying with their obligation to arbitrate by seeking to arbitrate collectively in an arbitration proceeding already occurring in the Northern District of California involving a subset of the *Veliz* plaintiffs?

*5 Cintas argues that by attempting to arbitrate in San Francisco, Respondents have refused to arbitrate.

Cintas argues that an attempt to arbitrate in a forum other than the one identified in the place-of-arbitration clause is a refusal to arbitrate "in accordance with the terms of the agreement."Cintas' Brief at 12-13. In support of this theory, Cintas relies on *Bear, Stearns & Co., Inc. v. Bennett,* 938 F.2d 31, 32 (2nd Cir.1991). In that case, the agreement specified New York City as the place of arbitration. Bennett filed a demand for arbitration in Florida, and Bear Stearns filed a petition in the Southern District of New York to compel arbitration in New York City. Without explicitly addressing whether Bear Stearns was "aggrieved" within the meaning of section 4 or Bennett had refused to arbitrate, the court granted the petition to compel, because "Congress has directed the district courts to order that arbitration proceed 'in accordance with the terms of the agreement.' " *Id.* Cintas also relies on *Sterling Financial Investment Group, Inc. v. Hammer,* 393 F.2d 1223 (11th Cir.2004), in which the agreement specified Florida as the place of arbitration but one party initiated arbitration in Texas. The court held that the district court properly stayed the Texas arbitration and compelled arbitration in Florida pursuant to section 4, but again, the court did not say anything about whether the party had unequivocally refused to arbitrate.

*Bear Stearns* and *Sterling* provide support for Cintas' position that Respondents' efforts to arbitrate in California constitute refusal to arbitrate within the meaning of section 4 of the FAA. Although Cintas does not identify any cases in which a party agreed to proceed with arbitration in a forum other than that designated in the contractual place-of-arbitration clause, but resisted arbitration in the contractually-specified forum, and the court squarely held that the party had "refused" to arbitrate within the meaning of section 4, this Court is persuaded that such conduct transgresses section 4.

Respondents argue that they have not refused to arbitrate by pursuing collective arbitration in San Francisco. They point out that each of the Motions to Compel Arbitration at issue in this MDL state that "Plaintiffs in the Northern California Action ... did not deny that they were required to arbitrate their FLSA claims against Cintas" and that they have "stated on the record in the Northern California Action that they would seek to have the claims heard in arbitration in Northern California."Thus,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Respondents contend, Cintas has, in essence, admitted that they are not refusing to arbitrate. Further, Respondents cite several cases holding that where a party agrees to arbitrate in one venue, the opposing party is not "aggrieved" for purposes of § 4 because there is no refusal to arbitrate. *See, e.g., Broadcort Capital Corp. v. Dutcher,* 859 F.Supp. 1517, 1520 (S.D.N.Y.1994) (holding that, where party refused to arbitrate in one forum but was attempting to proceed with arbitration in another forum, there was no refusal to arbitrate); *Scan-Graphics, Inc. v. Photomatrix Corp.,* 1992 WL 2231 (E.D.Pa.1992) (same). However, neither of these cases, nor the other cases cited by Respondents, involved arbitration agreements with place-of-arbitration clauses. Thus, they are not directly applicable to the instant case.

*6 Because there does not appear to be any controlling Supreme Court or Ninth Circuit authority, the Court must decide which is more persuasive: the cases cited by Respondents, which stand for the proposition that so long as the party is amenable to arbitration somewhere, he or she has not refused to arbitrate and a motion to compel should not be entertained; or the cases cited by Cintas, which stand for the proposition that a party refuses arbitration when he or she attempts arbitration in a forum other than that specified in the arbitration agreement, and/or when he or she initiates litigation in court. In the Court's view, the latter are more consistent with the language of section 4, which speaks of a party's failure or refusal to arbitrate *under a written agreement for arbitration.* If the written agreement contains a place-of-arbitration clause, then logically, a party's attempt to arbitrate elsewhere is a refusal to arbitrate under the agreement. This interpretation is also more consistent with the Supreme Court's admonition that private agreements to arbitrate should be enforced according to their terms. *See Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

Accordingly, the Court finds that Respondents have refused to arbitrate within the meaning of section 4 of the FAA.

Respondents have also included, as part of their brief in response to this Court's Order, a Motion to Dismiss Cintas' motions to compel arbitration.

According to Respondents, the issue of where they may arbitrate is squarely within the authority of the Arbitrator. *See Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452-53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (holding that aside from certain "gateway matters," such as the validity and applicability of the arbitration clause, issues of contract interpretation and arbitration procedures should be left to the arbitrator to decide); *Richard C. Young & Co., Ltd. v. Leventhal,* 389 F.3d 1, 4-5 (1st Cir.2004) (holding that a dispute over the interpretation of a forum selection clause must be decided by the arbitrator: "[s]ince the dispute between the parties is concededly arbitrable, determining the place of the arbitration is simply a procedural matter and hence for the arbitrator").

Respondents argue that this Court should dismiss the motions to compel for lack of subject matter jurisdiction, because "neither this Court nor any of the 70 courts where these petitions were originally filed has subject matter jurisdiction to decide in the first instance the clause construction issue at the heart of Cintas' 70 petition cases." Respondents' Brief at 12. In other words, Respondents argue that it is clear that they must arbitrate, the only question is where, and that is a question for the arbitrator to answer. In support of this theory, Respondents cite a case in which a petition to compel arbitration was dismissed under Federal Rule of Civil Procedure 12(b)(1), because the court found that the adverse party had not failed, neglected, or refused to arbitrate. *Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd.,* 200 F.Supp.2d 102, 104 (D.Conn.2002). This case does not support Respondents' argument, because the Court has held that Respondents have failed, neglected or refused to arbitrate. Next, Respondents contend that the Court could dismiss under Rule 12(b)(3), on the ground that the issues raised by Cintas are reserved for the arbitrator. They cite several out-of-circuit district court cases in support of this theory. *See, e.g., Metropolitan Life Ins. Co. v. O'Malley,* 392 F.Supp.2d 1042, 1044-45 (N.D.Ill.2005). However, that case did not involve dismissal of a petition to compel arbitration, and Respondents mischaracterize its holding. The case stands for the straightforward principle that where the parties have agreed to arbitrate, federal court is an improper venue and the case should be dismissed; it did not hold that the location of arbitration must be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1089695 (N.D.Cal.)
(Cite as: Slip Copy)

Page 6

decided by the arbitrator and not the Court, as Respondents suggest. *See* Respondents' Brief at 13.

**\*7** Further, the 1,800 Respondents are *not* parties to the ongoing San Francisco arbitration. At most, 102 *Veliz* Plaintiffs compelled to arbitrate by this Court are part of the ongoing arbitration.[FN6] The arbitrator held in the initial clause construction award that the 1,900 opt-in Plaintiffs could not become parties to the arbitration in this district, because that would be inconsistent with the place-of-arbitration term in their agreements. Although this Court has remanded to the arbitrator for clarification of the award (and Cintas has appealed that Order), that portion of the award was not unclear, and the arbitrator may not revisit it. Thus, the interpretation of *Respondents'* arbitration agreements is not before the arbitrator, and the *Bazzle* line of cases is inapposite.

> FN6. Cintas argues that only ten *Veliz* Plaintiffs are parties to the arbitration, because only ten individuals were named in the Demand for Arbitration. However, these individuals purported to demand arbitration on behalf of themselves and all others similarly situated–which would arguably include all 56 *Veliz* Plaintiffs compelled to arbitrate. The *Veliz* Plaintiffs never moved for leave to amend the Demand for Arbitration. *See* Dosker Decl. at ¶ 17; *id.* at Ex. 6.

Respondents also argue that this Court should invoke the doctrine of judicial estoppel. This doctrine bars litigants from asserting inconsistent positions in the same litigation. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001). According to Respondents, "Cintas' current position that the clause construction issue should be resolved in 70 different jurisdictions is clearly inconsistent with its previous position that the clause construction issue should be decided in the San Francisco arbitration."Respondents' Brief at 16. Cintas asserts that this argument misrepresents the record, in that it has always maintained that there can be no class or collective arbitration because the place-of-arbitration term in each agreement is enforceable. "Thus, while Cintas agreed that, if the AAA held clause construction proceedings as to the ten (10) individual named claimants ... it could do so in San Francisco, it was certainly not giving up any statutory rights in the

bargain-and certainly gave up nothing vis-a-vis those who are now Respondents here but who have never been parties to the *Veliz* Arbitration."Cintas' Reply at 14. The Court agrees with Cintas and will not apply judicial estoppel here: the fact that Cintas agreed to clause construction proceedings in San Francisco for the original group of *Veliz* Plaintiffs compelled to arbitrate is not inconsistent with its current position that the opt-in Plaintiffs (MDL Respondents) should not be allowed to arbitrate collectively in San Francisco.

Moreover, given that Respondents have refused to arbitrate with the meaning of section 4, the transferor courts do have jurisdiction over the petitions to compel arbitration, and Respondents' Motion to Dismiss must be denied on the merits.

Thus, Respondents' Motion to Dismiss the 70 MDL cases is DENIED.

### CONCLUSION

The Court holds that Respondents are refusing to arbitrate within the meaning of section 4 of the FAA.

Accordingly, the Court finds and rules as follows:

(1) Common discovery and other coordinated pretrial proceedings in the cases listed on Schedule A have been completed. All remaining issues are case-specific, and best determined by the transferor court.

**\*8** (2) The cases will not benefit from further coordinated proceedings as part of MDL 1781, and are ready to be remanded to their respective transferor jurisdictions.

Pursuant to Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the Court issues its Suggestion of Remand Order in the cases listed on Schedule A.

The Clerk is ORDERED to provide copies of this Order to the Clerk of the Judicial Panel on Multidistrict Litigation and to the clerks of the transferor district courts.

IT IS SO ORDERED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1089695 (N.D.Cal.)
**(Cite as: Slip Copy)**

N.D.Cal.,2007.
In re Cintas Corp. Overtime Pay Arbitration
Litigation
Slip Copy, 2007 WL 1089695 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 4**

## Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)**

**C**
Roque v. Applied Materials, Inc.
D.Or.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
Gregory ROQUE, Plaintiff,
v.
APPLIED MATERIALS, INC., Defendant.
**No. CV 03-1564-ST.**

Feb. 20, 2004.

Richard C. Busse, Busse & Hunt, Portland, OR, for Plaintiff.
Carol A. Noonan, Carol J. Bernick, Davis Wright & Tremaine, LLP, Portland, OR, for Defendant.

### FINDINGS AND RECOMMENDATION

STEWART, Magistrate J.

### INTRODUCTION

*1 On November 14, 2003 plaintiff, Gregory Roque ("Roque") filed this action against defendant, Applied Materials, Inc. ("Applied"), alleging that he was the victim of discrimination in his employment because: (1) he has an actual or perceived disability, in violation of the Americans with Disability Act ("ADA"), 42 USC §§ 12101-12213 and ORS 659A.100-659A.145; and (2) he used medical leave, pursuant to the Family Medical Leave Act ("FMLA"), 29 USC §§ 2601-2654, and the Oregon Family Leave Act ("OFLA"), ORS 659A.150-659A.186. Roque also asserts a tort claim for wrongful discharge.

On December 15, 2003, Applied filed a Motion to Dismiss or in the Alternative to Abate and Compel Arbitration (docket # 7), arguing that Roque's claims are governed by an arbitration clause in his employment agreement with Applied.

This court has federal question jurisdiction over the ADLA and FMLA claims pursuant to 28 USC §

1331 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1367.

Now before this court is defendant's Motion to Dismiss or in the Alternative to Abate and Compel Arbitration (docket # 7). For the reasons that follow, defendant's motion should granted and this case should be dismissed in favor of arbitration.

### FACTUAL BACKGROUND

Roque began his employment with Applied on October 30, 2000. On September 23, 2000, Roque was presented by Applied with a standard form document entitled "Employee Agreement." Roque Aff, ¶ 2. The Employee Agreement and other documents were given to Roque in a room of approximately 150-200 people and he was rushed through the paperwork in an "assembly line fashion." *Id.*"[E]veryone was to sign and then the documents were passed to the left. There was very little time, if any, given to explain or ask for clarification of the particular documents before [Roque] had to sign."*Id.*

Pages one, two, three, and five of the Employee Agreement contain various restrictions on, and duties of, the employee, such as to protect Applied's confidential information, patents, trade secrets, *etc.* and to not engage in solicitation of its employees for a period of one year after termination of employment. Defendant's Ex 1, pp. 1-3, 5. Page four contains a page long paragraph 6 ("the Arbitration Provision") that states in pertinent part: "[A]ny controversy or claim arising out of or relating to my employment or the termination of my employment as against [Applied], and as against me, shall be finally settled by binding arbitration[.]"*Id* at 4. It also states that "[t]he parties are each waiving their rights to trial by jury, in exchange for arbitration," and further specifies that such claims subject to arbitration shall include, "but are not limited" to:

any claims under (as amended) Title VII of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act ["ADEA"], the Rehabilitation Act of 1973, the [ADA], the [FMLA], the Employee Retirement Income Security Act of 1974, and any other federal, state or local statute, regulation or common law doctrine, including contract or tort, regarding employment discrimination, the terms and conditions of employment or termination of employment.

*2 *Id.*

With respect to remedies, the Arbitration Provision provides that:

the parties will have the same statutory remedies in arbitration as to those statutory claims as they would otherwise have had if such a claim had been filed in a court of law, including, where authorized by statute, compensatory and punitive damages, injunctive relief and attorneys' fees.

*Id.*

The Arbitration Provision requires Applied to pay all costs of the American Arbitration Association ("AAA") and the arbitrator "less those amounts [Roque] would otherwise be required to pay were his claims litigated in a court of law."*Id.* Depositions may be taken and discovery obtained as provided in the Federal Rules of Civil Procedure ("FRCP"), "subject to the limitation by the arbitrator to a reasonable amount necessary for both parties to be able to present their claims and defenses."*Id.* Finally, the Arbitration Provision does not apply to:

claims for workers compensation or unemployment compensation or to claims for injunctive relief arising out of or related to misappropriation of trade secrets or confidential information, unfair competition or breach of any non-competition or non-solicitation agreement[.]

*Id.*

No one explained the Arbitration Provision to

Roque and he was not given an opportunity to refuse to agree to it or to negate any of its terms. Roque Aff, ¶ 3. Roque signed the Employee Agreement and initialed each of its five pages. Defendant's Ex 1.

*DISCUSSION*

Applied argues that the Employee Agreement requires Roque's claims to be submitted to arbitration because they arise out of his employment relationship, which is purportedly governed by the Arbitration Provision. Therefore, Applied argues that the Federal Arbitration Act ("FAA"), 9 USC §§ 1-16, requires dismissal of this case in favor of arbitration, or alternatively, a stay of the case pending the outcome of arbitration.

Roque counters that: (1) a Motion to Dismiss is not the appropriate mechanism for testing the validity of the Arbitration Provision; (2) Applied has not served him properly under the FAA and the FRCP; (3) the Arbitration Provision is not enforceable because it is unconscionable; and (4) even if arbitration is required, this case should be stayed and not dismissed.

*I. Enforceability of the Arbitration Clause*

*A. Applicable Law*

The FAA provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, binding, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 USC § 2. If an issue is referable to arbitration under a written agreement, then the court is required to direct that issue to arbitration and stay the trial of the remaining issues until arbitration is complete. 9 USC § 3. Where "the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."9 USC § 4. If made, an agreement to ar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

Page 3

bitrate shall be "rigorously enforce[d]." *Dean Witter Reynolds, Inc., v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

*3 The district court must order arbitration under § 4 of the FAA if it is satisfied that:

> the making of the agreement for arbitration ... is not in issue.... Therefore, the district court "can only determine whether a written arbitration agreement exists, and if it does, enforce it 'in accordance with its terms.'"

*Howard Elec. & Mech. v. Briscoe Co.,* 754 F.2d 847, 849 (9th Cir1985) (citations omitted).

The Supreme Court held in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 122-23, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), that an agreement to arbitrate claims arising out of an employment contract, such as the Employee Agreement in this case, is not exempt from the FAA. In reaching this conclusion, the Court noted the benefits of enforcing arbitration provisions in the employment context. *Id* at 123 ("[A]rbitration agreements allow parties to avoid the cost of litigation, a benefit that may be of particular importance in employment litigation....") . However, as provided under § 2 of the FAA, employment contracts containing arbitration agreements are subject to "such grounds as exist at law or in equity for the revocation of any contract."*See id* at 112. When these grounds exist, such as unconscionability, courts may refuse to enforce arbitration agreements. *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir2003).

Therefore, under the FAA and relevant case law, this court must compel arbitration of the claims if: (1) the parties have entered into a valid agreement to arbitrate; (2) the claims fall within the scope of the agreement; and (3) for federal statutory claims, the party opposing arbitration has not met his burden of proving that Congress intended to preclude a waiver of judicial remedies. *See Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-27, 105 S.Ct. 3346, 87 L.Ed.2d 444

(1985); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Torrance v. Aames Funding Corp.,* 242 F Supp2d 862, 868 (D.Or.2002).

The Court has repeatedly affirmed that all doubts as to the scope of arbitrability must be resolved in favor of arbitration. *Volt Info. Sci. v. Bd. of Tr. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475-76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

B. *Procedural Compliance with the FAA*

This court must first address whether Applied has fulfilled the following procedural requirements of § 4 of the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

1. *Use of a Motion to Dismiss*

*4 Roque argues that Applied's Motion to Dismiss based on a contractual arbitration clause is not authorized by any of the seven explicitly enumerated

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

Page 4

defenses in FRCP 12(b). Instead, Roque asserts that § 4 of the FAA requires Applied to "petition" this court (or any applicable federal district court) in a statutory proceeding brought under the FAA itself.

Roque is incorrect. If a claim must be submitted to arbitration because the standards set forth in the FAA are met (*e.g.* it is a valid, enforceable arbitration clause), then the FAA removes a district court's subject matter jurisdiction to hear the claim. A motion to dismiss can be based on a lack of subject matter jurisdiction under FRCP 12(b)(2). Therefore, Applied's Motion to Dismiss pursuant to FRCP 12(b) is one means to raise its arbitration defense. In effect, Applied's motion is a petition to this court within the meaning of § 4 of the FAA.

2. *Service on Roque*

Roque next argues that Applied did not give him five days' written notice of its application, as required by § 4 of the FAA. Roque's argument fails for two reasons.

First, the five day notice period in § 4 of the FAA requires the party opposing arbitration to be given five days' notice before a hearing is held regarding the application for arbitration. It does not require that the party be given five days' notice from the date the application is made. *See Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 526 (1st Cir1985) (holding that service and notice satisfied the FAA's five day notice requirement when "as of January 18 [the date the defendant received the application], [defendant] was on notice that a hearing on the order compelling arbitration could be held by the district court any time after January 23 [five days after the date the application was received]"). Here Applied served notice of its Motion to Dismiss in the manner provided by FRCP 12 on December 15, 2003. At that point, the FAA's five day notice requirement was satisfied as long as the hearing on Applied's motion was scheduled for December 20, 2003, or later. The hearing on the motion was

scheduled for January 20, 2004 (docket # 11). Therefore, Roque was given proper service under § 4 of the FAA.

Second, the notice and service provision in § 4 of the FAA is unnecessary where the party opposing arbitration has initiated litigation. *See First Family Fin. Serv., Inc. v. Fairley,* 173 F Supp2d 565, 572 (S.D.Miss.2001) ("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim in state court that one has contractually agreed to arbitrate"). The purpose of the notice and service provision is to give the adverse party an opportunity to unequivocally refuse to arbitrate. "The statutory procedure [of § 4] ensures that there is a genuine dispute as to whether to arbitrate. Where an application for arbitration is in fact filed, and five days' written notice of the demand is given, the court will not be involved unless the responding party fails to agree to the demand."*All Saint's Brands, Inc. v. Brewery Group Denmark, A/S,* 57 F Supp2d 825, 828 (D.Minn.1999). By filing a complaint in court, a party gives the adverse party actual notice of a refusal to arbitrate sufficient to satisfy § 4 of the FAA. *Id* ("We conclude that the notice requirement could be satisfied by a Complaint itself"); *see also Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192 (2d Cir.1984) (Mansfield, J., concurring) ("I would note in this regard that the plaintiff's failure to provide the five-day written notice required by § 4 would not prevent the district court from proceeding in this case, since [the defendant] clearly had received actual notice of the demand to arbitrate").

C. *Unenforceable Contract of Adhesion*

*5 As a threshold issue, Roque contends that the Arbitration Provision is an unenforceable contract of adhesion. Under Oregon law, a contract of adhesion is a form contract imposed by a party with superior bargaining power and not subject to negotiation. *Collins v. Farmers Ins. Co. of Or.,* 312 Or. 337, 362, 822 P.2d 1146, 1160 (1991) (citing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

cases). Applied responds that whether the Employee Agreement was an unenforceable contract of adhesion must be decided by the arbitrator, not this court.

Where a court is called upon to determine the "threshold question of arbitrability," the court should consider only "the validity and scope of the arbitration clause itself," and not the contract as a whole. *Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 475 (9th Cir1991), *cert denied,* 503 U.S. 919, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992). However, a court may resolve the claim that an arbitration clause contained in a contract was procured through fraud. *Moseley v. Electronic & Missile Facilities, Inc.,* 374 U.S. 167, 171, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963) (holding that when the petitioner "attacked not only the subcontracts, but also the arbitration clauses contained therein, as having been procured through fraud," the district court must determine whether there was fraud in the inducement of the arbitration clause); *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 286-87 (9th Cir1988), *overruled on other grounds by Tichnor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 941-42 (9th Cir2001) (holding that when plaintiff claimed fraud in the inducement of both the arbitration clause and the contract as a whole, the claim of fraud in the inducement of the arbitration "bears directly on the validity of their assent to the arbitration clause" which "is therefore not suitable for arbitration and the courts 'may proceed to adjudicate it' ").

If Roque were challenging the entire Employee Agreement as a contract of adhesion, rather than the Arbitration Provision in particular, then the arbitrator, not the court, must decide the validity of the Employee Agreement. *See Torrance,* 242 F Supp2d at 871-71 ("to the extent the plaintiffs claim the entire refinancing transaction was an unenforceable contract of adhesion, they attack the contract as a whole, rather than the arbitration clause in particular"). However, Roque is not arguing that the entire Employee Agreement is unenforceable. Instead, he

is contesting only the Arbitration Provision contained in the Employee Agreement. Therefore, this court is empowered under § 2 of the FAA to determine the validity of the Arbitration Provision.

### D. *Validity of the Arbitration Provision*

#### 1. *Legal Standard*

In determining the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir), *cert denied,* 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002), citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Accordingly, this court must apply Oregon contract law. Additionally, under Oregon law, unconscionability is a legal issue that must be assessed at the time the contract was formed. *Best v. U.S. Nat'l Bank,* 303 Or. 557, 560, 739 P.2d 554, 556 (1987).

**\*6** Oregon has a dearth of case law concerning unconscionability in employment contracts. However, both Oregon and California have relied on UCC § 2-302 (Unconscionable Contract or Clause) in interpreting unconscionability in contracts of other types. *Compare W.L. May Co. v. Philco-Ford Corp.,* 273 Or. 701, 707, 543 P.2d 283, 286-87 (1976) *with A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 186 Cal.Rptr. 114, 121-22 (Cal 1982). As a result, Roque urges this court to adopt California's test for ascertaining unconscionability.

Under California law, unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Ingle,* 328 F.3d at 1170. Thus, in California, the test to determine if a contract to arbitrate is unconscionable is whether there is "*both* procedural and a substantive element of unconscionability." *Id,* quoting *Fergeson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 783 (9th Cir2002) (emphasis

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)**

added). Courts can use a sliding scale in which the greater the unreasonableness of the substantive terms, the less procedural unconscionability is required to find the contract unenforceable. *Id.* at 1171.

However, it is unnecessary for this court to decide whether Oregon would adopt the California test to evaluate an arbitration clause in an employment contract. As discussed below, the Arbitration Provision is procedurally unconscionable, but lacks any substantive unconscionability. Therefore, even under California precedents using a sliding scale approach, the Arbitration Provision is enforceable regardless of the manner in which it was presented to Roque.

### 2. *Procedural Unconscionability*

The Arbitration Provision here is procedurally unconscionable under California precedents. "[W]hen a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, 'oppression, and, therefore, procedural unconscionability, are present." ' *Id* at 1172, quoting *Fergeson,* 298 F.3d at 784,*Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1100, 118 Cal.Rptr.2d 862 (Cal Ct App 4th 2002). In this case, Applied had superior bargaining power as an employer presenting Roque, a potential employee, with a form "as is" Arbitration Provision. Roque was presented with this Arbitration Provision in a room full of hundreds of people and asked to sign it in a rushed, assembly line fashion. He had no meaningful opportunity to negotiate its terms. Therefore, the Arbitration Provision was procedurally unconscionable.

### 3. *Substantively Unconscionable Due to Lack of Mutuality*

Roque asserts that the Arbitration Provision is substantively unconscionable by overly favoring Applied. The Arbitration Provision states that any employment-related controversy "as against Applied ... and against [Roque], shall be finally settled by binding arbitration," thereby clearly demonstrating that the provision requires both the employer and the employee to arbitrate all employment related disputes, whether brought by or against the employee. Nonetheless, Roque believes that in reality the Arbitration Provision applies only to claims by employees, while excluding an employer's claims against an employee. As support, Roque notes that each of the statutory claims specifically mentioned in the Arbitration Provision involve causes of action that can only be brought by an employee against an employer, such as ADA and ADEA claims.

**\*7** Furthermore, the first three pages of the Employee Agreement place various duties on an employee to protect confidential information, patents, trade secrets, *etc.* and not to engage in solicitation of Applied's employees for a period of one year after termination of employment. Yet the last paragraph of the Arbitration Provision specifically indicates that its terms do not apply to claims for injunctive relief arising out of misappropriation of trade secrets or confidential information, unfair competition, or breach of any non-competition or non-solicitation agreement. Roque argues that a comparison of these employee duties with the Arbitration Provision's exceptions further demonstrates a lack of mutuality of obligation.

#### a. *Oregon Law*

In asserting that this lack of mutuality is unconscionable, Roque relies primarily on *Ingle, supra,* which held unconscionable an arbitration provision in an employment application that lacked mutuality of obligation. In reaching that conclusion, the Ninth Circuit applied California law which requires "some modicum of bilaterality" in an arbitration agreement.*Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal 4th 83, 117, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 770, 6 P.3d 669, 692 (2000)."[W]ithout at least some reasonable justification for such one-sidedness based on 'business

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

Page 7

realities," ' the California Supreme Court has reasoned that arbitration is "less a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Id.* Oregon rejects California law on this point, holding instead that equivalent obligations are not required for a contract to be enforceable. *Torrance,* 242 F Supp2d at 872, citing *Davis v. Dean Vincent, Inc.,* 255 Or. 233, 240, 465 P.2d 702, 705 (1970) ("mutuality of remedy (as distinguished from mutuality of obligation) is no longer required"); *Tiggelbeck v. Russell,* 187 Or. 554, 583, 213 P.2d 156, 169 (1949) ("The rule which required that there must have been mutuality of remedy at that time when the contract was entered into, or the contract will not afterward be specifically enforced, has been repudiated for all practical purposes"). Mutuality of obligation means that "each party is under a legal duty to the other; each has made a promise and each is an obligor." *Id,* citing *Pac. Pines Constr. Corp. v. Young,* 257 Or. 192, 196, 477 P.2d 894, 896 (1970), quoting 1A Corbin, CONTRACTS § 152, p. 4.

Here, mutuality of obligation exists because Applied agreed to give Roque a job in exchange for: (1) Roque agreeing to arbitrate any of his employment-related claims; and (2) subjecting most of Applied's employment-related claims to arbitration. This is not a particularly uneven tradeoff. But even if it were, the requirement of consideration is met despite one party being more obligated than the other.

b. *California Law*

Even under California law on mutuality of obligation, the Arbitration Provision is acceptable. First, "the list of legal claims the arbitration agreement covers is telling" when determining whether it is unconscionable or not. *Ingle* 328 F.3d at 1174 n. 8. Here, the Arbitration Provision specifically applies to "any" employment-related claim brought by or against Applied, unlike the one involved in *Ingle. Id* at 1173 ("Circuit City's arbitration agreement applies only to 'any and all employment-related legal

disputes, controversies or claims of an Associate,' thereby limiting its coverage to claims brought by employees"). Furthermore, the Arbitration Provision explicitly states that the statues listed are examples of the types of claims to which it applies, but its scope is "not limited to" claims brought under these statutes (nor does it limit common law actions). Therefore, the Arbitration Provision does not lack mutuality of obligation by only specifically mentioning employee claims.

*8 Second, Roque is incorrect when he argues that the Arbitration Provision could only realistically regulate employee claims. Although it lists no statutes where an employer can bring claims against an employee, very few federal statutes provide an employer with a specific cause of action against an employee. Therefore, the absence of their listing is not surprising. Furthermore, Applied could still bring numerous potential claims against Roque that would be governed by the Arbitration Provision, despite the specific exclusions for an employer's claims for injunctive relief related to trade secrets, confidential information, non-solicitation, *etc.*The other claims Applied could bring include: damages related to disclosure of trade secrets, confidential information, *etc.* and breach of the non-solicitation agreement; breach of contract; conversion; breach of fiduciary duty or duty of loyalty; intentional interference with contract; intentional interference with prospective economic advantage; or indemnification. Additionally, despite exceptions to the Arbitration Provision for claims for injunctive relief related to the use of confidential information, trade secrets, *etc.,* none of these claims could be heard by a jury. Thus, the tradeoff between a court hearing and arbitration is not particularly substantial. Finally, despite the injunctive relief exceptions, the Arbitration Provision excludes several specific claims an employee could bring, such as workers and unemployment compensation claims. Because the exemptions flow to both sides, the parties' obligations are mutual even under California law.[FN1]

FN1. Even under California law there can

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

be "some reasonable justification for such one-sidedness based on business realities;" the principle of mutuality of obligation does not require the parties to have made identical promises to each other. *See Torrance,* 242 F Supp2d at 872. An employer has a strong interest in maintaining its confidential information or protecting its employees from solicitation. Therefore, it does not strike this court as unreasonable or overly oppressive for an employment agreement to forego arbitration of claims for injunctive relief regarding such matters in favor of permitting claims in a court of law where an employer might get swifter (and more complete) injunctive relief. This is especially so where claims for damages regarding such matters are still subject to arbitration, as in the Arbitration Provision, and there have been other trade-offs to bar arbitration for certain claims to which swift relief from an established administrative framework would likely be important to an employee (unemployment and workers compensation).

4. *Other Arguments for Substantive Unconscionability*

Roque does not raise any further arguments for substantive unconscionability. As a result, this court will not review every potentially applicable unconscionability precedent for him, but does note that the Arbitration Provision lacks the terms found unconscionable in *Torrance* and *Ingle,* whether applying Oregon or California law.

In *Torrance,* this court found the arbitration agreement unconscionable because it placed a limitation on statutorily-granted damages, required the plaintiffs to pay a portion of the arbitrator's fees, and required the proceedings to be kept confidential. 242 F Supp2d at 873-76. Here, the Arbitration Provision has no limit on statutorily-granted damages. In fact, it specifically states that the parties will have the same remedies for their statutory

claims in arbitration as they would otherwise have in a court. The Arbitration Provision also does not require the employee to pay any of the arbitration costs, other than those he would be required to pay were his claims litigated in court. This requirement does not seem unreasonable because it ensures the employee gets the same opportunity, at the same costs, to arbitrate his claims as he would to litigate them.[FN2] *See Circuit City Stores, Inc. v. Adams,* 279 F.3d at 895, citing *Cole v. Burns Int'l Sec. Serv.,* 105 F.3d 1465, 1482 (D.C.Cir.1997) (focusing on whether "an employee who is made to use arbitration as a condition of employment "effectively may vindicate [his or her] statutory cause of action in the arbitral forum""). Finally, the Arbitration Provision does not require arbitration proceedings be kept confidential, unlike the provision found unacceptable in *Torrance.*

> FN2. The requirement that Roque pay no arbitration costs, except the amount he would otherwise have to pay were his claims litigated in court, would be upheld even under California law. *Ingle* rejected an arbitration provision that required the employee to split the costs of the arbitration with the employer, which is wholly different than just requiring him to pay the same costs as he would pay in court. *See Ingle,* 328 F.3d at 1177-78 ("Under California law, 'when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court' " (quoting *Armendariz,* 24 Cal 4th at 110-11, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 764-65, 6 P.3d 669, 687-88) (emphasis in original)).

**\*9** In *Ingle,* applying California law, the Ninth Circuit found an arbitration clause unreasonable because (in addition to the reasons discussed previ-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)

ously) it set a different statute of limitations than set by statute or common law, prohibited class actions, required a filing fee, limited available remedies, and allowed the employer to unilaterally modify the terms of the arbitration agreement. 328 F.3d at 1175-79. The Arbitration Provision here contains none of these terms.

## II. *Scope of the Arbitration Clause and Waiver of Judicial Remedies*

Because the Arbitration Provision is valid, this court must next determine whether the claims Roque asserts are within its scope. Furthermore, with respect to the federal statutory claims, Roque has the burden of proving that Congress intended to prevent judicial remedies from being waived through the use of an arbitration clause.

The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *See Gilmer*, 500 U.S. at 26. In determining the scope of an arbitration clause, the court applies state law principles of contract interpretation "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities ... in favor of arbitration."*Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir1996); *accord Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 914 (9th Cir1993), *cert denied,*512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The court must bear in mind, however, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit."*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *accord, AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Here the language of the Arbitration Provision applies to "any controversy or claim arising out of or relating to [Roque's] employment or the termination of [Roque's] employment[.]" Defendant's Ex 1, p.

4. This is sufficiently broad to cover all of Roque's claims in this case. *See Torrance*, 242 F Supp2d at 877 (finding that an arbitration clause covering "anything arising out of, in connection with, or relating to [the securities transaction in question]" would cover all of the plaintiffs' claims). In fact, it is difficult to imagine any broader phraseology. Moreover, Roque has not even attempted to prove that any of the claims are unsuitable for arbitration if the Arbitration Provision is valid and enforce- able.

Finally, Roque has failed to demonstrate that Congress intended to prevent the waiver-using arbitration-of the judicial remedies for any of the federal statutory claims he is asserting. In fact, the statutory claims may be the subject of an arbitration agreement "[s]o long as the prospective litigant effectively may vindicate [his] statutory cause of action in the arbitral forum [.]"*Gilmer*, 500 U.S. at 26-28 (ADEA subject to arbitration pursuant to NYSE Rule 347); *see also Mitsubishi Motors Corp.*, 473 U.S. 614 at 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (holding that federal antitrust claims can be subject to arbitration).

## III. *Dismissal Versus Abatement Pending Arbitration*

*10 This court next must decide whether to dismiss this case in favor of arbitration or to issue a stay pending the completion of arbitration. Roque argues that the express language of § 3 of the FAA ("the court ... shall on application of one of the parties stay the trial of the action until such arbitration has been had ....) requires this court to stay the case pending arbitration.

The Ninth Circuit has explicitly found that § 3 of the FAA gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude dismissal when all claims are barred by an arbitration clause. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir1988); *see also Martin Marietta Aluminum, Inc.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 1212110)**

*v. Gen. Elec. Co.,* 586 F.2d 143 (9th Cir1978) (holding that judge had discretion to grant summary judgment when all the plaintiff's claims were barred by an arbitration clause). Other courts are in accord. *See e.g. Alford v.. Dean Witter Reynolds,* 975 F.2d 1161, 1164 (5th Cir1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"); *Fedmet Corp. v. M/V Buyalyk,* 194 F.3d 674, 678 (5th Cir1999); *Bercovitch v. Balwin Sch., Inc.,* 133 F.3d 141, 156 n. 21 (1st Cir1998) ("[A] court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable").

This court recognizes that other courts have chosen to stay a case pending arbitration rather than dismiss it, even when confronted with an arbitration clause that covers all the plaintiff's claims. *See e.g., Bosinger v. Phillips Plastics Corp.,* 57 F Supp2d 986, 993 n. 7 (S.D.Cal.1999). However, this court recommends dismissal because the Arbitration Provision requires arbitration of all of Roque's claims. Nothing will remain for the court to resolve after arbitration.

### RECOMMENDATION

For the reasons set forth above, this court recommends that defendant's Motion to Dismiss or in the Alternative to Abate and Compel Arbitration (docket # 7) be GRANTED and the case be DISMISSED.

D.Or.,2004.
Roque v. Applied Materials, Inc.
Not Reported in F.Supp.2d, 2004 WL 1212110 (D.Or.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 5**

Westlaw.

Slip Copy                                                         Page 1
Slip Copy, 2008 WL 744832 (N.D.Cal.)
**(Cite as: Slip Copy, 2008 WL 744832)**

Visa USA, Inc. v. Maritz Inc.
N.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
VISA USA, INC., Plaintiff,
v.
MARITZ INC., d/b/a Maritz Loyalty Marketing,
Defendant.
No. C 07-05585 JSW.

March 18, 2008.

Roderick Manley Thompson, Diego F. Acevedo, Helen E. Dutton, Robert C. Holtzapple, Farella Braun & Martel LLP, San Francisco, CA, for Plaintiff.
Ronald Stanley Katz, Ryan S. Hilbert, Manatt,Phelps & Phillips LLP, Palo Alto, CA, for Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO STAY ACTION, DENYING DEFENDANT'S MOTION TO STAY ARBITRATION, DENYING PLAINTIFF'S MOTION FOR DISCOVERY AND DENYING AS MOOT MOTION TO DISMISS**

JEFFREY S. WHITE, District Judge.
*1 Now before the Court are several motions: (1) a motion to stay action and to compel arbitration filed by Plaintiff Visa U.S.A., Inc .'s ("Visa"); (2) a motion to stay arbitration pending determination of arbitrability filed by Defendant Maritz Inc., d/b/a Maritz Loyalty Marketing ("Maritz"); (3) a motion for additional discovery filed by Maritz; and (4) Visa's motion to dismiss Maritz's fraud counterclaims. Having carefully considered the motions and the relevant legal authority, the Court hereby GRANTS Visa's motion to stay the action and compel arbitration, DENIES Maritz's motion to stay arbitration, DENIES Maritz's motion for additional discovery, and DENIES Visa's motion to dismiss as moot, without prejudice.

**BACKGROUND**

In April 2006, Maritz and Visa entered into a Master Services Agreement ("MSA") pursuant to which Maritz was obligated to develop, deploy, operate and maintain for Visa and its member banks a points-based software rewards program for use by Visa's cardholders ("the Rewards Program"). The MSA does not contain an arbitration provision and specifies that "[t]he Parties shall act in good faith and reasonably in interpreting this Agreement and the Related Agreements and resolving any disputes that arise thereunder."(Declaration of Roderick M. Thompson in support of Opposition ("Thompson Opp. Decl."), Ex. B.) The MSA also stated that "Time is of the essence of this Agreement," and provides for liquidated damages of $70,000 per day of delay in the launch date of September 30, 2006. (*Id.,* Ex. B at ¶ R.) The MSA also stated that "Maritz acknowledges that the successful completion of each Deliverable in accordance with the Milestone Schedule is critical to the commercial viability of the Rewards Program."(*Id.,* Ex. B at ¶ 3.10.)

By letter dated April 20, 2007, Visa terminated the MSA and expressly "[r]eserved all rights relating to or arising out of the [MSA] and any Related Agreement, including, without limitation, claims Visa has against Maritz for Maritz's breaches of the Agreement (including any Related Agreement), Maritz's non performance or delay in performing any obligations due under the Agreement (including any Related Agreement), and Visa's right to liquidated damages."(*Id.,* Ex. C.) Maritz's in-house counsel, Steven Gallant, subjectively considered the 'reservation of rights' language in Visa's termination letter to be "simply standard language to preserve Visa's ability to object to the amount that Visa would have to pay to Maritz."(Declaration of Steve Gallant in support of Motion to Stay Action ("Gallant Decl."), ¶ 6.[FN1])

    FN1. The Court notes Visa's evidentiary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 744832 (N.D.Cal.)
(Cite as: Slip Copy, 2008 WL 744832)

objections to portions of the Gallant Declaration. However, even considering all the evidence propounded by Defendant, the Court would still come to the same conclusion. Therefore, the Court need not rule on the evidentiary objections at this time.

On May 7, 2007, Gallant responded to the termination letter, claiming that was itself owed more than $5 million and stating that "[a]s Visa has reserved all of its rights relating to or arising out of the Agreement or any Related Agreement, Maritz does the same."(Thompson Opp. Decl., Ex. D.)

Visa responded by letter dated June 5, 2007, that it "anticipates providing additional information to Maritz as to the nature and amount of Visa's claims at the appropriate time."(*Id* ., Ex. D.) Visa explained that once the new vendor's transition was complete, "we will be prepared to discuss your letter as part of the process of resolving our claims."(*Id.*, Ex. E.)

**\*2** On July 2, 2007, Visa wrote another letter, reiterating its commitment to discuss "Maritz's claims, as well as the nature and amount of Visa's claims" and stating that "[i]t is now timely to establish a procedure for efficiently documenting, discussing and resolving all remaining claims."(*Id.*, Ex. F.) The letter proposed a three-stage process whereby the parties would first engage in direct negotiations and then non-binding mediation. If neither method resolved the parties' claims, "the parties will submit the matter to confidential and binding arbitration."(*Id.*) The letter further stated that "[i]t is important to have this agreement on process in place *before* we commence negotiations so that both sides will know the alternative to a negotiated resolution."(*Id.* (emphasis added).)

The executed agreement dated July 9, 2007 ("Letter Agreement"), provided that the parties "agreed that our clients' respective claims for damages resulting from alleged breaches of the Agreement and related claims will all be resolved outside of

court."(Declaration of Ryan S. Hilbert ("Hilbert Decl."), Ex. D.) The parties further agreed to "the dispute resolution framework ... [direct negotiations followed by mediation and then] ... [b]inding arbitration pursuant to the AAA Commercial Rules."(*Id* .) The letter also set out that "[t]o the extent [the parties] are unable to agree on any aspect of the [three-tiered dispute resolution] procedure, such disagreement will be resolved by the applicable rules and procedures of the American Arbitration Association."(*Id.*)

On July 10, 2007, Mr. Gallant sent by email the executed agreement setting out the agreed-upon dispute resolution process and stated that "attached is an executed agreement outlining the procedures for resolving any differences that may exist between Visa and Maritz."(*Id.*, Ex. G.) There were a number of conversations and communications between the parties during this time, and, in his declaration submitted to conjunction with these motions, Mr. Gallant states that "[a]t no time during any of these discussion or communications did Mr. Thompson [counsel for Visa] say or indicate that Visa was claiming that Maritz was in default, or that Visa would claim that Maritz should pay Visa anything, much less that Visa was owed tens of millions of dollars."(Gallant Decl., ¶ 15.)

A few weeks after signing the Letter Agreement, Gallant returned from a planned vacation and, for the first time on July 23, 2007, requested from Visa an estimate as to the size of Visa's claim. Visa's outside counsel responded that Visa's claim was considerable and in the range of tens of millions of dollars. (Declaration of Roderick M. Thompson in support of Motion to Stay ("Roderick Decl."), ¶ 9.) Gallant was surprised by the magnitude of Visa's claim. (*Id.; see also* Gallant Decl., ¶¶ 23-26.)

Thereafter, on July 23, 2007, Gallant sent an email message to counsel for Visa and stated that "I would like to make reference in here that our previous agreement is null an [sic] void but that the parties will endeavor to reach resolution on ADR procedures it [sic] in the next ten or so

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 744832 (N.D.Cal.)
(Cite as: Slip Copy, 2008 WL 744832)

days."(Roderick Opp. Decl., Ex. G.) Again, on August 8, 2007, Gallant sent an email message to Visa indicating that "Maritz had originally agreed to arbitrate without *ANY* understanding of the magnitude of Visa's purported claims and as I have said to you repeatedly there was no meeting of the minds between Maritz and Visa with respect to the circumstances surrounding Maritz' agreement to mediate. What we are committed to is seeking to determine if there is a business resolution to this matter that might include arbitration...."(*Id.,* Ex. I (emphasis in original).) Although counsel for Visa responded that he "disagree[d] with Maritz' position that the attached July 9, 2007[L]etter [A]greement is not enforceable," Maritz maintained the position that "Although I suppose it goes without saying, we do disagree with your view of the binding effect of the [L]etter [Agreement] you attached."(Roderick Decl., Ex. J.)

**\*3** On November 2, 2007, Visa submitted an arbitration demand to the AAA.(*Id.,* Ex. K.) Maritz responded by letter to the AAA stating that the parties did not have a valid agreement to arbitrate and that AAA therefore lacked jurisdiction over the matter. (*Id.,* Ex. L.) Again, on November 26, 2007, Maritz wrote to the AAA contending that the Letter Agreement was invalid and unenforceable and that it was "induced by [Visa's counsel] and Visa's fraudulent conduct."(*Id.,* Ex. M.) By letter dated November 30, 2007, the AAA rejected Maritz's procedural challenge and, in the absence of a Court order to the contrary, directed the arbitration to proceed and provided that any jurisdictional challenge could be raised before the arbitrator. (*Id.,* Ex. N.) Maritz continued to resist efforts to resolve the parties' dispute in arbitration.

On November 28, 2007, Visa filed a petition to compel arbitration. On December 12, 2007, Maritz filed a cross-motion to stay arbitration pending determination of arbitrability. Because the case had been reassigned to the undersigned, on January 4, 2008, Visa re-noticed their motion to stay the action and to compel arbitration. In addition, Maritz

filed an improper administrative request for additional discovery and the Court required further briefing on the motion. Lastly, because an answer to the counterclaims was outstanding, on February 21, 2008, Visa filed a motion to dismiss Maritz's fraud counterclaims.

## ANALYSIS

### A. Legal Standards Applicable to Motions to Compel Arbitration .

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000)."Under § 4 of the FAA, a district court must issue an order compelling arbitration is the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue."*United Computer Systems v. AT & T Corp.,* 298 F.3d 756, 766 (9th Cir.2002). The parties in this case do not dispute that the claims at issue would fall within the scope of the Letter Agreement; the only issue is whether the agreement to arbitrate is valid and enforceable.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 744832 (N.D.Cal.)
(Cite as: Slip Copy, 2008 WL 744832)

Page 4

made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). That the Court must order arbitration is true "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."*Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

**\*4** Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract.*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (noting that arbitration "is a matter of consent, not coercion"). Thus, as with any contract, an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally."*Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir.2003.) Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Prima Paint,* 388 U.S. at 403-404 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

Here, Maritz contends that the Arbitration Agreement is unenforceable because it was obtained by fraud. The resolution of a claim that a contract containing an arbitration agreement is unenforceable requires a two-part analysis. First, the Court must determine whether the alleged fraud induced the party to enter the entire agreement or whether the fraud was directed only at the arbitration provision. *See Prima Paint,* 388 U.S. at 403-04 ("if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language

does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *see also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Next, the Court must consider whether the parties' agreement reserved for the arbitrator questions regarding the validity of the agreement itself. *Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 207 (2d Cir.2005). While the Federal Arbitration Act contains the general presumption that arbitrability should be decided by the court, both state and federal cases hold that the issue may be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement that the parties intended that the question of arbitrability should be decided by the arbitrator. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Contec,* 398 F.3d at 208. Moreover, the cases hold that where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules-such as the Commercial AAA Rules-that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator. *See, e.g., Poponin v. Virtual Pro, Inc.,* 2006 WL 2691418, \*9 (N.D.Cal. Sept.20, 2006); *Anderson v. Pitney Bowes, Inc.,* 2005 WL 1048700, \*2-4 (N.D.Cal. May 4, 2005); *Terminix Int'l Co. v. Palmer Ranch Ltd.,* 432 F.3d 1327, 1332 (11th Cir.2005).

**\*5** Visa contends that Maritz, upon disclosure of the amount actually at stake challenged the Letter Agreement as a whole. Based upon this contention, Visa argues that the issue of fraud in the inducement must be determined by the arbitrator. *See Buckeye Cashing,* 546 U.S. at 449 (reiterating that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.") Although the contemporaneous correspondence from Maritz's general counsel does indeed suggest that Maritz objected to the entire Letter Agreement, there is no authority for the argument that Maritz's original objections

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

have any estoppel effect on their current position. Maritz now maintains that it objects merely to the provision in the Letter Agreement relating to arbitration, and has in fact, carried out its obligations under the Agreement to participate in the first two stages of the alternative dispute resolution procedures-negotiation and mediation-both of which were unsuccessful. Because the Court does not find the early representations of Maritz's objections to the Letter Agreement as a whole binding on Defendant, the Court does not find that, on this basis, the issue of fraud in the inducement must be determined by the arbitrator.

However, the Letter Agreement clearly and unequivocally reserved for the arbitrator all questions regarding its validity. The Letter Agreement specifically provides that "[t]o the extent [the parties] are unable to agree on any aspect of the [dispute resolution] procedure, such disagreement will be resolved by the applicable rules and procedures of the American Arbitration Association. ('AAA')." (Hilbert Decl., Ex. D.) The AAA Commercial Rules provide that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."AAA Commercial Rule R-7(a). By the explicit incorporation of the AAA rules, the parties clearly and unmistakenly agreed that questions of arbitrability would be submitted to arbitration for resolution. *See, e.g., Poponin,* 2006 WL 2691418 at *9 (where the arbitration agreement incorporated ICC Rules that provide for the arbitrator to decide arbitrability, the presumption that courts decide arbitrability falls away, and the issue of validity of agreement to arbitrate is decided by the arbitrator); *Anderson,* 2005 WL 1048700 at *2-4 (court conducts facial and limited review of the contract to determine only whether the parties have in fact clearly and unmistakenly agreed to commit the question of arbitrability to the arbitrator); *see also Terminix,* 432 F.3d at 1332 (holding that by incorporating the AAA rules, including [Rule 7], into their agreement, the parties clearly and unmistakably agreed that the arbitrator

should decide whether the arbitration clause is valid.") Here, the Court finds the two references to the AAA Rules and the explicit agreement to arbitrate disagreements on any aspect of the dispute resolution procedure mandates the conclusion that the issue of the inducement to enter the agreement must be submitted to the arbitrator for determination. *See Contec,* 398 F.3d at 208 (holding that where "parties explicitly incorporate rules that empower the arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.")

*6 Accordingly, the Court GRANTS Visa's motion to stay the action and to compel arbitration and DENIES Maritz's motion to stay arbitration pending determination of arbitrability. In addition, because the Court has determined that arbitration is the correct forum to resolve arbitrability, the Court finds that Maritz's request for additional discovery is improper and DENIES it as well. Lastly, the Court DENIES Visa's motion to dismiss the fraud counterclaims, without prejudice to refiling should the arbitration panel determine that the parties' dispute are not properly subject to arbitration.

### CONCLUSION

For the foregoing reasons, the Court Court GRANTS Visa's motion to stay the action and compel arbitration, DENIES Maritz's motion to stay arbitration, DENIES Maritz's motion for additional discovery, and DENIES Visa's motion to dismiss as moot, without prejudice.

**IT IS SO ORDERED.**

N.D.Cal.,2008.
Visa USA, Inc. v. Maritz Inc.
Slip Copy, 2008 WL 744832 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.