David M. Birka-White (State Bar No. 85721)
Stephen Oroza (State Bar No. 84681)
Thomas D. Hicks (State Bar No. 238545)
BIRKA-WHITE LAW OFFICES
744 Montgomery Street, Fourth Floor
San Francisco, California 94111
Telephone: (415) 616-9999
Facsimile: (415) 616-9494

Attorneys for Plaintiff Arnesha Garner

(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA GARNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. C 08-01365 CW<br><br>**PLAINTIFF'S OPPOSITION TO STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM [FED.R.CIV.P. 12(b)(6)]**<br><br>Date: May 22, 2008<br>Time: 10:00 a.m.<br>Dept.: |

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

   A. Legal Standard ..............................................................................................2

   B. The Court May Not Take Judicial Notice Of The DMV Letter Attached To State Farm's Request For Judicial Notice.................................................................3

   C. Even If The Court Could Take Notice Of The DMV Letter, The Letter Does Not Establish That The Total Loss Regulation Is Not Effective ....................................4

   D. The Motion To Dismiss Based Upon The Policy Appraisal Provision Is Without Merit ..................................................................................................................6

      1. The Motion To Dismiss Is Without Merit Because The Court Cannot Assess And State Farm Cannot Conclusively Negate Plaintiff's Defenses To Arbitration ....................6

      2. The Motion To Dismiss Is Without Merit Because Nothing In The Policy Requires Plaintiff To Seek An Appraisal..............................................................................7

      3. The Motion To Dismiss Without Merit Because The Appraisal Provision Does Not Apply To The Claims Asserted Herein................................................................8

      4. Nothing In The Total Loss Regulation Supports State Farm...................................13

   E. If The Court Determines That Plaintiff's Claims Need To Be Stated With Greater Particularity, They Should Be Given Leave To Amend.......................................14

III. CONCLUSION....................................................................................................14

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alvary v. United States*, 302 F.2d 790 (2d Cir.1962) ............................................. 3

*Colonial Mortgage Bankers Corp.*, 324 F.3d 12 (1st1st Cir. 2003) ........................ 6

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .............. 14

*First Options of Chicago, Inc. v. Kaplan*, (1995) 514 U.S. 938 (1995) .................. 8

*Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982) ..................... 4

*McDonnell v. Dean Witter Reynolds, Inc.*, 620 F. Supp. 152 (D.Conn. 1985) ...... 6

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ........ 14

*Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) .... 14

*Pina v. Henderson*, 752 F.2d 47 (2d Cir. 1985) ...................................................... 3

*United States v. Wilson*, 631 F.2d 118 (9th Cir.1980) ........................................... 3

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) .................................. 2

*Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278 (S.D.Fla. 2005) ..... 6

## STATE CASES

*Bono v. David*, 147 Cal. App. 4th 1055 (2007) ..................................................... 8

*Community Assisting Recovery, Inc., v. Aegis Security Insurance Company*, 92 Cal. App. 4th 886 (2001) ............................................................. 11, 12, 13

*Efund Capital Partners v. Pless*, 150 Cal. App. 4th 1311 (2007) .......................... 5

*Goldberg v State Farm*, 2002 WL. 768893 ......................................................... 10

*Hanke, supra*, 335 Ill. App. at 1169-70 [782 N.E.2d at 332-33] ......................... 10

*Jefferson Insurance Co. v. Sup. Ct.*, 3 Cal. 3d 398, 403(1970) .................... 9, 11, 12

*Kacha v. Allstate Insurance Co.*, 140 Cal. App. A4th 1023, 1026 (2006) .............. 6

*Medical Staff of Doctors Medical Center in Modesto v. Kamil*, (2005) 132 Cal. App. 4th 679 (2005) ..................................................................................... 8

*Rosenthal v Great Western Financial Securities Corporation*, 14 Cal. 4th 394 (1996) ................ 6

*Safeco Insurance Co. of America v. Sharma*, 160 Cal. App.A3d (1984) .............. 4

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

Page

*Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1176 [782 N.E.2d 322, 327] (2002) .................................................................10

**STATUTES, CODES & PUBLICATIONS**

California Unfair Competition Law, *Business and Professions Code* § 17200, et seq ..................5

Fed.R.Civ.P. 12(b)(6)..................................................................................................6, 7

Fed.R.Civ.P. 15(a) ........................................................................................................14

Fed.R.Evid. 201(b).........................................................................................................3

10 CCR § 2695.8(b)........................................................................................................1

10 CCR § 2965.8 (c).....................................................................................................13

Insurance Code § 790.03(h)...........................................................................................8

Insurance Code § 2070..................................................................................................11

Insurance Code § 2071........................................................................................11, 12, 13

Insurance Code § 790.03(h)..........................................................................................

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

## I. INTRODUCTION

State Farm Mutual Automobile Insurance Company ("State Farm") moves the Court to dismiss Plaintiff's Complaint on what are essentially two grounds: (1) that 10 CCR § 2695.8(b) (the "Total Loss Regulation") which underlies Plaintiff's claims against State Farm was "not in force as to State Farm at the time in question" and therefore cannot have been violated by State Farm; and (2) Plaintiff has failed to comply with an appraisal provision in the insurance policy which is the subject of this litigation.

The first of these grounds is premised on State Farm's claim that, under a stipulated order entered in litigation between an insurance industry association and then-Insurance Commissioner John Garamendi, the Total Loss Regulation was stayed until sixty (60) days after certain sales information became available from the California Department of Motor Vehicles ("DMV"). This issue is self-evidently a factual question which cannot be resolved on a motion under Rule 12(b)(b)(6).

State Farm bases this portion of its motion on facts it alleges are subject to judicial notice. While Plaintiff does not believe that the facts relied upon by State Farm are the proper subject of judicial notice, the documents identified by State Farm in alleged support of those facts do not support the claim that the Total Loss Regulation is not in effect.

Further, if the Court may properly take judicial notice of the facts stated in the DMV correspondence proffered by State Farm, Plaintiff has additional correspondence from the DMV demonstrating that the relevant automobile sales data has been available from the DMV since at least 2004, that other valuation companies already have the information and that the valuation company employed by State Farm did not even request the information until September 2007, after the events alleged in this case occurred. This correspondence demonstrates that there is a genuine factual dispute over this issue which cannot be resolved on a motion under Rule 12(b)(6).[1]

---

[1] As detailed below, this correspondence also demonstrates that the correspondence relied upon by State Farm may not be the subject of judicial notice for the purposes relevant to this motion because it is not information "whose accuracy cannot reasonably be questioned" as required by Fed.R.Evid. 201(b).

PLAINTIFF'S OPPOSITION TO STATE FARM'S MOTION TO DISMISS -CASE NO. C 08-01365 CW — - 1 -

The second ground – Plaintiff's alleged failure to comply with the appraisal provision –is already before the Court in a more appropriate context.[2] In the context of a motion to dismiss under Rule 12(b)(6), it is impossible for the Court to consider adequately Plaintiff's defenses to arbitration because Plaintiff is not required to plead them in the Complaint. Therefore the Court has no pleading whose sufficiency it can assess to determine whether plaintiff has a defense to arbitration.

Alternatively, the motion to dismiss should be denied for the same reason. Because the alleged arbitrability of this case is an affirmative defense, State Farm has the burden of demonstrating that – on the face of the Complaint – the defense applies. This would require State Farm to anticipate and negate any potential defenses to arbitration that Plaintiff could assert

Even if the question of arbitrability could be decided by the Court on the pleadings, State Farm would still not prevail. State Farm has not cited to any provision of the Complaint or requested judicial notice of any fact which suggests that either party requested an appraisal, a prerequisite to its assertion of the defense.

Finally, even if all of the forgoing were insufficient, the appraisal provision in this case is not applicable because it does not apply to the claims asserted and because the issues raised in the Complaint could not be determined by appraisers.

Accordingly, Plaintiff requests that State Farm's motion to dismiss be denied in its entirety.

## II.   ARGUMENT

### A.   Legal Standard

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court "must presume all actual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

---

[2] *State Farm Mutual Automobile Insurance Company's Motion To Compel Contractual Appraisal And For A Stay Pending Appraisal* (the "State Farm Appraisal Motion") set for hearing contemporaneously with this motion.

**B. The Court May Not Take Judicial Notice Of The DMV Letter Attached To State Farm's Request For Judicial Notice**

State Farm relies upon Fed.R.Evid. 201(b) in support of its requests for judicial notice.[3] Fed.R.Evid. 201(b).states that:

> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Where a party requests judicial notice of a fact crucial to the case, courts should evaluate the request for judicial notice with extreme care. For example, in *Pina v. Henderson*, 752 F.2d 47 (2d Cir. 1985) the court held:

> Although the district court's finding that Patrolman Dietl was acting as an arm of the prosecution was not clearly erroneous, the district court did err in judicially noticing that Officer Dietl had prepared a written report and that this report incorporated Abreu's statement that "he alone" stole the car. Rule 201(b) of the Federal Rules of Evidence permits judicial notice of an adjudicative fact when the fact is:
>
> one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> This Rule was not meant to expand the use of judicial notice. Instead, it continues "the tradition ... of caution in requiring that the matter be beyond controversy." Advisory Committee Note to Subdivision (b).
>
> The more critical an issue is to the ultimate disposition of the case, the less appropriate judicial notice becomes. [Citations omitted.] A court should not go outside the record to supply a fact that is an essential part of a party's case unless the fact is clearly beyond dispute. *United States v. Wilson*, 631 F.2d 118 (9th Cir.1980); *see also Alvary v. United States*, 302 F.2d 790, 794 (2d Cir.1962).
>
> The existence and the content of Dietl's report are not matters beyond dispute. Whether the report was even prepared is not a proper subject of judicial notice. New York City police practice and the extent of individual adherence to it are not so readily determinable by resort to unimpeachable sources as to meet the second test of Rule 201, and they are not so universally known as to meet the first test.

*Pina v. Henderson, supra*, 752 F.2d at 48.

---

[3] *Defendant State Farm Mutual Automobile Insurance Company's Request For Judicial Notice In Support of Motion To Dismiss Plaintiff's Complaint* (the "*Request for Judicial Notice*")

Exhibit 4 to the *Request for Judicial Notice* is a letter which purports to be from Tuan Quan of the DMV to Jason Gray, alleged to be an officer of Mitchell, Inc. ("Mitchell"). The letter (the "DMV Letter") is proffered by State Farm as proof that "at the time State Farm adjusted Plaintiff's total loss claim, the actual sales data was still not available from the Department of Motor Vehicles" and that "[a]s such, section 2985.2(b) did not apply to State Farm at the time plaintiff's vehicle total loss insurance claim was adjusted and paid." *State Farm Mutual Automobile Insurance Company's Notice Of Motion And Motion To Dismiss Plaintiff's Complaint For Failure To State A Claim [Fed.R.Civ.P. 12(b)(6)]; Memorandum Of Points And Authorities In Support Thereof* ("State Farm Dismissal Motion") at 2.

There are a number of reasons why the DMV Letter does not logically support this factual assertion beyond reasonable dispute (*infra* at 5-6). In addition, however, in objecting to the taking of judicial notice, Plaintiff is also entitled to introduce evidence to demonstrate that the fact is in reasonable dispute and to object to the lack of authentication of the proffered document. *See Hardy v. Johns–Manville Sales Corp.*, 681 F2d 334, 347-348 (5th Cir. 1982).

First, the DMV Letter is not properly authenticated. It is not proffered either by the author or the recipient and there is nothing in the pleadings to suggest that the letter is complete or accurate. Second, attached to the Declaration of David M. Birka-White as Exhibit "1" is a letter from Roger J. Sato, Senior Staff Counsel at the DMV. The letter states that Mitchell first requested the sales data in September of 2007, after Plaintiff's claim was adjusted and that the information was provided to CCC, another valuation company, as early as October 2004.

This evidence demonstrates that the proffered evidence is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and should not be accepted for the purpose for which it was proffered.

    C.    **Even If The Court Could Take Notice Of The DMV Letter, The Letter Does Not Establish That The Total Loss Regulation Is Not Effective**

Even if the Court could properly take judicial notice of all of the evidence submitted by State Farm, the evidence does not support its motion to dismiss because the inferences

drawn therefrom do not support the claim that the Total Loss Regulation is not effective. At most, the evidence proffered establishes that an order was entered in litigation in June of 2004 which stayed then effect of the Total Loss Regulation until 60 days after "sales price data" became available from the DMV. The DMV Letter establishes – at most – that Mitchell applied for some data some time before the letter was sent (in November of 2007) and that Mitchell did not at that time have access to the data described in the letter. These facts, even if taken as true, do not establish that the Total Loss Regulation was not effective.

Although there are untold factual assumptions the Court would have to make in order to draw the inference requested by State Farm, the following partial list makes it clear that the evidence proffered by State Farm does not come close to establishing that the Total Loss Regulation is not effective:

1. The Total Loss Regulation regulates the conduct of insurers. It is effective against *State Farm*, not Mitchell. Nothing establishes that State Farm did not have access to vehicle sales data at any time.

2. The stipulated order states that the Total Loss Regulation would be effective sixty (60) days after the DMV sales data became available. The DMV Letter suggests that Mitchell first applied for the data some time in 2007. It does not state, or even suggest, that the DMV *did not have* the information earlier, could not make it available earlier or that that Mitchell could not have requested it earlier.

3. State Farm's argument assumes that under the stipulated order, the Total Loss Regulation would become effective at different times for different carriers depending upon when the carrier first requested the data and when the DMV provided it. It is more plausible that the date when the "sales price data becomes available from the Department of Motor Vehicles" is the date when the DMV has the data, not the various different dates when an insurers request or obtain it. Nothing in the record suggests when this event occurred.

4. No evidence establishes that the sales data referred to in the DMV Letter was the sales data referred to in the stipulated order.

5.  No evidence in the record establishes that State Farm was a plaintiff in the litigation or entitled to the benefit of whatever grace period it provides.

The Complaint alleges that State Farm is required to comply with the Total Loss Regulation. The evidence submitted by State Farm makes clear that it was generally effective when the acts complained of occurred and nothing alleged in the Complaint or in any matters of which the Court may take notice establishes any facts which would support the granting of State Farm's motion.

### D. The Motion To Dismiss Based Upon The Policy Appraisal Provision Is Without Merit

#### 1. The Motion To Dismiss Is Without Merit Because The Court Cannot Assess And State Farm Cannot Conclusively Negate Plaintiff's Defenses To Arbitration

A party who asserts that a claim is subject to arbitration or appraisal has the burden of proving the existence of the arbitration agreement and that the dispute is covered by the agreement. *Rosenthal v Great Western Financial Securities Corporation*, 14 Cal.4th 394, 413-14 (1996). Accordingly, the right to arbitrate a dispute is an affirmative defense and must be pleaded by the party claiming the right. *McDonnell v. Dean Witter Reynolds, Inc.*, 620 F.Supp. 152, 155-56 (D.Conn. 1985). If the defense is raised, the burden then shifts to the plaintiff to prove a ground for denial of arbitration, such as waiver or unconscionability. *Rosenthal v Great Western Financial Securities Corporation, supra*, 14 Cal.4th at 413-14

In order for a party moving to dismiss a complaint under Rule 12(b)(6) based on an affirmative defense:

> Two conditions must be met. The first condition is that the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice. The second condition is that the facts so gleaned must conclusively establish the affirmative defense

*In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

Plaintiffs are not required to negate affirmative defenses in their complaint. *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F.Supp.2d 1278, 1286 (S.D.Fla. 2005). Therefore, defenses to arbitration such as fraud, forfeiture or unconscionability will not even

be put at issue when a motion under Rule 12(b)(6) is filed. Under the circumstances, it will rarely be possible for a court to consider a motion to dismiss based on the affirmative defense of arbitrability. There is no pleading asserting defenses to arbitration which the court can assess for its sufficiency.

Alternatively, since the moving party has the burden of demonstrating that it is entitled to prevail on the defense based on the pleadings and matter subject to judicial notice alone, unless the defendant anticipates and defeats any potential defenses to arbitration, the motion should be denied.

### 2. The Motion To Dismiss Is Without Merit Because Nothing In The Policy Requires Plaintiff To Seek An Appraisal

The appraisal provision in the State Farm policy states that "either party may demand an appraisal." State Farm argues that every claim asserted in the Complaint fails because "Plaintiff does not, and cannot, allege that she has complied with the policy's appraisal provision." *State Farm Dismissal Motion* at 7.

As detailed below, Plaintiff believes that the appraisal provision does not cover the claims asserted in this case. Even if this proposition were incorrect, however, there is nothing in the Complaint or in any matter of which the Court may take judicial notice which suggests that Plaintiff is required to "comply" with the appraisal provision by seeking an appraisal of the claims in this case.

As noted, the appraisal provision states that either party "may" request an appraisal if there is a dispute over the "actual cash value" of the vehicle. Even assuming that this litigation were such a dispute, there is nothing in the provision which states that the insured "must" request an appraisal. Since the policy does not require that Plaintiff seek an appraisal of her claims, there is no basis for the claim that she has "not complied with the policy's appraisal provision" or that she must "exhaust a contractual remedy" before bringing suit. Nor is there any basis for asserting that Plaintiff has not complied with some "term of the policy" which must be met before suit is brought under the policy.

### 3. The Motion To Dismiss Without Merit Because The Appraisal Provision Does Not Apply To The Claims Asserted Herein

The question of whether parties to a contract agreed to arbitrate a particular question is decided based on ordinary state law contract law principles. *Efund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1321 (2007); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And while California law favors arbitration agreements, "[t]here is no public policy requiring persons to arbitrate disputes they have not agreed to arbitrate." *Efund Capital Partners v. Pless, supra,* 150 Cal.App.4th at 1320; *Bono v. David*, 147 Cal.App.4th 1055, 1063 (2007); *Medical Staff of Doctors Medical Center in Modesto v. Kamil*, 132 Cal.App.4th 679, 684 (2005).

#### a. The State Farm Appraisal Provision Does Not Cover This Dispute

The appraisal provision in the State Farm policy is triggered only if "the owner and we cannot agree on the actual cash value." This provision contemplates a good faith dispute between experts about how to apply an agreed-upon legal standard of value, an issue which can be addressed by appraisers. That is not the problem posed by this case.

Plaintiff alleges that State Farm: (1) makes settlement offers related to automobile total loss claims which it knows violate its policy and California law; and (2) makes intentionally confusing and misleading statements to its customers in order to conceal these violations. The Complaint states causes of action for breach of contract, breach of the covenant of good faith and fair dealing and violation the California Unfair Competition Law, *Business and Professions Code* § 17200, et seq. (the "UCL").

The Complaint further alleges that:

> State Farm employed Mitchell to perform total loss valuations with full knowledge that Mitchell would not value such claims appropriately, but would instead return valuations that were improperly reduced as previously alleged. State Farm knew and intended that by employing Mitchell valuations State Farm would breach its contractual duties to its policyholders, as well as the covenant of good faith and fair dealing, and that State Farm would be in violation of Insurance Code § 790.03(h) and the Total Loss Regulation. The intentional wrongdoing of State Farm was carried out for the purpose of paying its policyholders less than the full value of their total loss claims through the use of improper adjustments.

. . .

> State Farm presented the Valuation to Plaintiff and the Class members as accurate and fair when, in actuality, State Farm knew the Valuations to be inaccurate, unfair and not in compliance with the Total Loss Regulation. State Farm used the Mitchell Valuation for the purpose of deceiving Plaintiff and members of the Class members into accepting less than the full value to which they were entitled in settlement of their claims

*Complaint,* ¶¶ 45 and 47.

These issues are not "appraisable." Even if an appraisal provision is treated in some sense as an agreement to arbitrate, there is a crucial difference between appraisal and arbitration. Appraisers may not determine questions of law, such as coverage questions, or interpret policy provisions. *Jefferson Ins. Co. v. Sup. Ct.*, 3 Cal.3d 398, 403 (1970); *Kacha v. Allstate Ins. Co.*, 140 Cal.App4th 1023, 1026 (2006); *Safeco Ins. Co. of America v. Sharma*, 160 Cal.App3d 1060, 1063 (1984).

An appraiser could not even decide whether or not "actual cash value" must be based upon asking or selling price, since this question is a question of law. For example, in *Jefferson Ins. Co. v. Sup.Ct.*, the California Supreme Court vacated an appraisal because the appraisers used the wrong standard to determine the "actual cash value" of an insured property loss. *Jefferson Ins. Co. v. Sup .Ct., supra*, 3 Cal.3d at 403.

Much less could an appraiser determine whether State Farm's claim valuation violates the law or its efforts to conceal this violation from its insureds are a breach of the covenant of good faith and fair dealing. Nor would the appraiser have right to decide whether State Farm's conduct violates the UCL, whether State Farm's disclosure concerning the valuation complies with the Total Loss Regulation or any number of other issues.

In a case virtually identical to this case, the Illinois Court of Appeals denied a petition to compel appraisal because the dispute was outside the scope of the appraisal clause. The Court described the claims asserted in that case as follows:

> Plaintiff accuses defendant of engaging in a fraudulent scheme that included defendant contracting with third-party vendors to provide defendant with biased, below-market estimates of total-loss-vehicle values. . . . *Plaintiff claims that defendant used these estimates, which were arrived at by using valuation reports generated by a computer software program that systematically undervalued the actual cash value of total-loss vehicles, to defraud its insureds in connection with the insureds' claims for the total loss of their vehicles.* Plaintiff charges defendant with intentionally reducing its overall total-loss claims payouts at the expense of its insureds by using these biased reports,

> which at first blush appear independent and unbiased. *According to plaintiff, defendant relies on these reports to demonstrate the purported "reasonableness" of what it determines to be the actual cash value of the totaled vehicle so that the insureds either will not challenge the valuation amount or will settle for an amount greater than the valuation but less than the actual cash value of the vehicle.* Plaintiff further alleges that a part of the fraudulent scheme includes a policy provision which requires the parties to submit to an appraisal if requested by either the insured or the insurer.

*Travis v. American Mfrs. Mut. Ins. Co.*, 335 Ill.App.3d 1171, 1177 [782 N.E.2d 322, 327] (2002) (emphasis added.)("*Travis*"). The court held:

> The parties disagree on whether their dispute involves "the amount of loss" and whether it falls within the scope of the appraisal provision. *We conclude, as did the trial court, that plaintiff's complaint raises much more than a dispute over the actual cash value of her vehicle, that is, the amount of loss, and that the issues raised by the complaint do not fall within the scope of the appraisal clause and could not, in any event, be resolved through the appraisal process.*

*Id.* at 1176 [782 N.E.2d at 326](emphasis added). In a virtually identical case, *Hanke v. American Intern. South Ins. Co*, 335 Ill.App.3d 1164, 1168-69 [782 N.E.2d 328, 332] (2002) ("*Hanke*"), the court reached the same result.[4]

The appraisal provisions in *Travis* and *Hanke* were essentially identical to that involved in this case. *Travis, supra*, 335 Ill.App.3d at 1176 [782 N.E.2d at 326]; *Hanke, supra*, 335 Ill.App.3d at 1166 [782 N.E.2d at 330]. Like California and federal law, Illinois has a strong public policy favoring informal dispute resolution. *Hanke, supra,* 335 Ill. App. at 1169-70 [782 N.E.2d at 332-33]. Nonetheless, the court in *Hanke* held that the dispute was outside the scope of the appraisal provision because "the instant case presents much more than a disagreement between the parties concerning the actual cash value of plaintiff's truck." *Id.* at 1169 [782 N.E.2d at 332-33].

///

///

---

[4] The only difference between *Hanke*, on one hand, and this case and *Travis*, on the other, is that the second amended complaint in *Hanke* specifically alleged that the appraisal remedy was used to further the fraud. Plaintiff makes the same argument in connection with this motion and, given State Farm's current motion, is likely to amend the Complaint to allege the use of the appraisal process as part of its claims under the UCL and for breach of the covenant of good faith and fair dealing.

PLAINTIFF'S OPPOSITION TO STATE FARM'S MOTION TO DISMISS -CASE NO. C 08-01365 CW

- 10 -

### b. State Farm's Reliance On *CAR* Is Misplaced.

State Farm's reliance on *Community Assisting Recovery, Inc., v. Aegis Security Insurance Company*, 92 Cal.App.4th 886 (2001)("*CAR*") is misplaced. State Farm argues that *CAR* dismissed the claims in that case "because of the plaintiff's failure to follow the appraisal provision in an insurance policy." *State Farm Dismissal Motion* at 11. This assertion is plainly false.

The court in *CAR did not decide that the plaintiff's claims were subject to appraisal or dismiss the claim because plaintiff failed to follow the appraisal provision of the policy.* The plaintiff in *CAR*, like the Plaintiff here, alleged that the insurers adjusted property loss claims using the wrong standard. The court in *CAR* held that, under the statutorily-mandated terms of the policy in that case, the insurer could adjust claims using the standard challenged by the plaintiff (or any other) and *thus the plaintiff had no claim at all.* The court had no occasion to consider whether, *if plaintiff had a claim*, the claim *would have been* subject to appraisal.

*CAR* involved a form of insurance policy mandated by Insurance Code § 2071.[5] The plaintiff in *CAR* filed a class action challenging the practice of "adjusting property loss claims on the basis of replacement cost less depreciation rather than on the basis of fair market value, in violation of the mandates set forth in [*Jefferson Ins. Co. v. Sup. Ct., supra*, also a case interpreting a § 2071 policy]." *CAR, supra*, 92 Cal.App.4th at 891. The trial court sustained the defendants' demurrer without leave to amend and the Court of Appeal affirmed.

Under the policy mandated by § 2071, "the insured carries the initial responsibility to determine the 'actual cash value,' or the fair market value of the property at the time of the loss." *Id.* at 893-94. The court held that the insurer then has the right to counter that value

---

[5] Insurance Code § 2070 provides, in pertinent part: "All fire policies on subject matter in California shall be on the standard form, and, except as provided by this article shall not contain additions thereto. No part of the standard form shall be omitted therefrom except that any policy providing coverage against the peril of fire only, or in combination with coverage against other perils . . . ." Insurance Code § 2071 specifies the standard form of the policy.

with a value based on replacement cost less depreciation (or some other method) and that any remaining disagreement over the value, no matter how calculated, has to be addressed in the manner specified by the Legislature:

> The Legislature has provided more than one measure to adjust claims under section 2071, "actual cash value" being only one. It is the initial responsibility of the insured to identify the "actual cash value" of the property damaged and, if the insured disagrees with a value suggested by the carrier, the appraisal process provides the means by which the dispute is to be settled. In light of the scheme provided by section 2071, plaintiff has failed to demonstrate an unlawful or unfair practice.

*Id.* at 895.

The plaintiff's entire case was premised on the assertion that *Jefferson* prohibits the adjustment of claims based on replacement value less depreciation. The *CAR* court held that the Supreme Court in *Jefferson* did not "suggest that insurers in the future would be guilty of unlawful acts by adjusting the claim for some amount other than fair market value, replacement cost, or cost of repair" and that it therefore could not "conclude that a practice by one or more carriers of using the 'replacement cost less depreciation' valuation is an 'unfair practice.'" *Id.* at 893-94.

By contrast, *its is unlawful for State Farm to adjust a total loss claim based on something other than the asking price or actual sales price of comparable vehicles.* And it is unfair, unlawful and fraudulent to represent that the value is lawful and to intentionally obscure how the value was calculated. Nothing in *CAR* suggests that such a dispute would have been resolvable by appraisers.

Further, because an insurer whom issues a policy governed by § 2071 is free to make loss valuation proposals using any recognized method, appraisals under § 2071 policies will *always* be a dispute limited to value, an issue the appraisers can resolve. It will *never*, as in this case, involve a question of whether the adjustment method itself was consistent with the insurer's legal obligations. Thus, the *CAR* court's statements about appraisal make sense in the context of a § 2071 policy. There is, however, nothing in *CAR* even to suggest that bad faith or consumer fraud claims related under any policy are subject to whatever appraisal provisions may exist in that policy.

Finally, the *CAR* court noted that the "complaint does not allege that [the insurer] . . . deceived . . . the insureds to settle" for an incorrect amount or "that they engaged in any acts which might have been a breach of the . . . policy." The Complaint in this case makes precisely these allegations. *E.g.*, *Complaint*, ¶¶ 45 and 47.[6]

### 4. Nothing In The Total Loss Regulation Supports State Farm

Although State Farm does not refer to 10 CCR § 2965.8(c) in its argument, it recites its terms in the Statement of Facts as though it were relevant to this motion. Section 2965.8(c) requires an insurer to reopen its claim file "if notified by the insured within thirty-five (35) calendar days after the insured receives the claim payment or final settlement offer that he or she cannot purchase a comparable automobile for the gross settlement amount." If this occurs, the insurer can locate a comparable or replacement vehicle (§ 2965.8(c)(1)), pay the insured the difference between the value of a car found by the insured and the amount offered by the insurer (§ 2965.8(c)(2)) or invoke the appraisal provisions of the policy (§ 2965.8(c)(3)).

First, the appraisal option specified in § 2965.8(c) is not mandatory. It is one of only three options given to the insurer. Second, it is not alleged in the Complaint that the situation described in § 2965.8 (c) occurred in this case and there is nothing in the Complaint or any other matter of which the Court may take notice which demonstrates that State Farm gave the required notice. Third, Plaintiff does not argue that appraisal provisions are invalid *per se* so the fact that they might be used in appropriate circumstances is irrelevant to the issues presented here.

### E. If The Court Determines That Plaintiff's Claims Need To Be Stated With Greater Particularity, They Should Be Given Leave To Amend

---

[6] State Farm's reliance on the unreported District Court decision in *Goldberg v State Farm*, 2002 WL 768893, is likewise misplaced. Citing *CAR*, the court in *Goldberg* dismissed a case premised on State Farm's alleged failure to pay "actual cash value" on claims governed by Insurance Code § 2071. The Court held: "Because Plaintiff's Policy is governed by Section 2071, State Farm argues that the recent CAR decision disposes of Plaintiff's lawsuit. Def.'s Mot. To Dismiss at 10. The Court agrees." *Id.* at *2. For the reasons stated above, this case is not governed by § 2071 or affected by the decision in *CAR*.

The Ninth Circuit has held that even if a complaint is dismissed for failure to state a claim, leave to amend the complaint should almost always be granted:

> After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party. Fed.R.Civ.P. 15(a). Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (*quoting Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). While Plaintiff believes that her claims are stated sufficiently, if the Court disagrees with respect to any such claim, Plaintiff respectfully requests that she be allowed to amend her claims to cure any deficiencies which the Court finds in the Complaint.

### III. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that State Farm's motion to dismiss be denied in its entirety.

Dated: April 30, 2008                    BIRKA-WHITE LAW OFFICES

By: _____/S/_____
    Stephen Oroza

David M. Birka-White (State Bar No. 85721)
Stephen Oroza (State Bar No. 84681)
Thomas D. Hicks (State Bar No. 238545)
BIRKA-WHITE LAW OFFICES
744 Montgomery Street, Fourth Floor
San Francisco, Califorornia 94111
Telephone: (415) 616-9999
Facsimile: (415) 616-9494

BIRKA-WHITE LAW OFFICES

By: _____/S/_____
    Jeffrey B. Cereghino

Jeffrey B. Cereghino (State Bar No 99480)
BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507
Telephone: (925) 838-2090
Facsimile: (925) 820-5592

Attorneys for Plaintff Arnesha Garner