David M. Birka-White (State Bar No. 85721)
Stephen Oroza (State Bar No. 84681)
Thomas D. Hicks (State Bar No. 238545)
BIRKA-WHITE LAW OFFICES
744 Montgomery Street, Fourth Floor
San Francisco, CA 94111
Telephone: (415) 616-9999
Facsimile: (415) 616-9494

Attorneys for Plaintiff Arnesha Garner

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA GARNER, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>　　　　　　Defendants. | Case No.  No. C 08-01365 CW<br><br>**PLAINTIFF'S APPENDIX OF OUT OF STATE CASES FILED IN SUPPORT OF PLAINTIFF'S OPPOSITION TO STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL**<br><br>**JUDGE:** Claudia Wilken<br>**DATE:** May 22, 2008<br>**TIME:** 10:00 am<br>**COURTROOM:** 2, 2nd Floor |

For the convenience of the Court, Plaintiffs file this Appendix of Out-Of-State Cases in connection with Plaintiff's Opposition to Defendant State Farm Mutual Automobile Insurance Company's Motion to Dismiss Plaintiff's Complaint For Failure To State A Claim and Opposition to Defendant State Farm Mutual Automobile Insurance Company's Motion to Compel Contractual Appraisal And Or A Stay Pending Appraisal in the above-referenced matter:

///

///

///

1  Dated: May 1, 2008                          BIRKA-WHITE LAW OFFICES

2

3

4                                             By: _____
                                                      David M. Birka-White
5

6                                             David M. Birka-White (State Bar No. 85721)
                                              Stephen Oroza (State Bar No. 84681)
7                                             Thomas D. Hicks (State Bar No. 238545)
                                              BIRKA-WHITE LAW OFFICES
8                                             744 Montgomery Street, Fourth Floor
                                              San Francisco, CA  94111
9                                             Telephone:  (415) 616-9999
                                              Facsimile:  (415) 616-9494
10

11              **INDEX OF OUT OF STATE AUTHORITY EXHIBITS**

12  *Travis v. American Mfrs. Mut. Ins. Co.*, ............................................................... A
13       335 Ill.App.3d 1171, 1177 [782 N.E.2d 322, 327] (2002)

14
    *Hanke v. American Intern. South Ins. Co.*, ............................................................ B
15       335 Ill.App.3d 1164, 1168-69 [782 N.E.2d 328, 332] (2002)

16
    *Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*, ........................................ C
17       463 F.Supp.2d 1193 (E.D.Wash. 2006)

18

19

20

21

22

23

24

25

26

27

28

APPENDIX OF OUT OF STATE AUTHORITIES
                                              CASE NO. C 08-01365 CW

# EXHIBIT A

335 Ill. App. 3d 1171, *; 782 N.E.2d 322, **;
2002 Ill. App. LEXIS 1263, ***; 270 Ill. Dec. 128

**JESSIE TRAVIS, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant-Appellant, and CCC INFORMATION SERVICES, INC., Defendant.**

## NO. 5-02-0059

## APPELLATE COURT OF ILLINOIS, FIFTH DISTRICT

*335 Ill. App. 3d 1171; 782 N.E.2d 322; 2002 Ill. App. LEXIS 1263; 270 Ill. Dec. 128*

### December 24, 2002, Filed

**SUBSEQUENT HISTORY:** Appeal denied by *Travis v. Am. Mfrs. Mut. Ins. Co.*, 2003 Ill. LEXIS 718 (Ill., Apr. 2, 2003)

**PRIOR HISTORY:**    [***1] Appeal from the Circuit Court of Madison County. No. 01-L-290. Honorable Daniel J. Stack, Judge, presiding.

**DISPOSITION:**    Affirmed; cause remanded for further proceedings.

**COUNSEL:** For Appellant: Michael L. McCluggage, Michael R. Blankshain, Derek C. Smith, Wildman, Harrold, Allen & Dixon, Chicago, IL; Gordon R. Broom, Troy Bozarth, Burroughs, Hepler, Broom, MacDonald, Hebrank & True, Edwardsville, IL.

For Appellee: Gail G. Renshaw, The Lakin Law Firm, P.C., Wood River, IL; Paul M. Weiss, Freed & Weiss, LLC, Chicago, IL.

**JUDGES:** Justices: Honorable Thomas M. Welch, J. Honorable Terrence J. Hopkins, P.J., and Honorable Richard P. Goldenhersh, J., Concur. JUSTICE WELCH delivered the opinion of the court.

**OPINION BY:** Thomas M. Welch

## OPINION

[**323]   [*1172] JUSTICE WELCH delivered the opinion of the court:

Jessie Travis (plaintiff), a citizen of Madison County, purchased a policy of automobile insurance from American Manufacturers Mutual Insurance Company (defendant). The policy covered her 1992 Dodge Caravan. In November 1999, plaintiff was involved in an automobile accident in Madison County in which her vehicle sustained significant damage. She submitted [***2] a claim for her property damage to defendant, who declared the vehicle a total loss. Defendant offered plaintiff $ 4,379 as the actual cash value of the vehicle, and plaintiff accepted that amount.

On August 24, 2001, plaintiff filed, in the circuit court of Madison County, an amended class action lawsuit against defendant and CCC Information Services, Inc. (CCC). [1] Plaintiff alleges claims of a breach [*1173] of the insurance contract, statutory [**324] fraud, and common law fraud. Plaintiff accuses defendant of engaging in a fraudulent scheme. Plaintiff claims that defendant contracted with CCC to provide defendant with biased, below-market estimates of total-loss-vehicle values. Plaintiff claims that defendant uses these estimates, which are arrived at by using valuation reports

335 Ill. App. 3d 1171, *; 782 N.E.2d 322, **;
2002 Ill. App. LEXIS 1263, ***; 270 Ill. Dec. 128

generated by a computer software program that systematically undervalues the actual cash value of total-loss vehicles, to defraud its insureds in connection with the insureds' claims for the total loss of their vehicles. Plaintiff charges defendant with intentionally reducing its overall total-loss claims payout at the expense of its insureds by using these biased reports, which at first blush appear independent and unbiased. [***3] According to plaintiff, defendant relies on these reports to demonstrate the purported "reasonableness" of what it determines to be the actual cash value of the totaled vehicle so that the insureds either will not challenge the valuation amount or, although challenging the valuation, will settle for an amount greater than the valuation but still less than the actual cash value of the vehicle.

1   CCC is not a party to this appeal but was named as a codefendant in the suit.

Plaintiff further alleges that an integral part of the fraudulent scheme is a provision of the insurance policy which requires the parties to submit to an appraisal of the loss if requested by either the insured or the insurer. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is less than [***4] the cost of the appraisal, defendant knows that the insureds will forego the appraisal process and accept less than the actual cash value of the vehicle for their total-loss claims. This is precisely what plaintiff alleges she did.

Upon the filing of plaintiff's class action lawsuit, defendant filed a motion to compel an appraisal and to dismiss the lawsuit or to stay the lawsuit pending the appraisal. Both parties briefed the motion, and oral argument was heard. On January 7, 2002, the circuit court of Madison County entered an order denying defendant's motion to compel an appraisal and dismiss or stay the proceedings. The order incorporates by reference the court's oral ruling made at the hearing on the motion and cites *Lundy v. Farmers Group, Inc., 322 Ill. App. 3d 214, 255 Ill. Dec. 733, 750 N.E.2d 314 (2001).* In its oral ruling, the trial court essentially found that plaintiff's claims of breach of contract and fraud do not fall within the scope of the appraisal clause and that therefore plaintiff cannot be compelled to submit them to appraisal.

Defendant filed a notice of interlocutory appeal on January 9, [*1174] 2002. We have jurisdiction over this appeal pursuant [***5] to *Supreme Court Rule 307(a)(1)* (188 Ill. 2d R. 307(a)(1)).

We begin by pointing out that an appraisal clause is analogous to an arbitration clause and is enforceable in a court of law in the same manner as an arbitration clause. *Beard v. Mount Carroll Mutual Fire Insurance Co., 203 Ill. App. 3d 724, 727, 148 Ill. Dec. 810, 561 N.E.2d 116 (1990).* Accordingly, we will use the two terms interchangeably.

We turn first to a determination of the proper standard of review. Both parties agree that in an appeal from an interlocutory order granting or denying a motion to compel arbitration, the only issue before the reviewing court is whether there was a showing sufficient to sustain the order of the trial court granting or denying the motion (*J&K Cement Construction, Inc. v. Montalbano Builders,* [**325] *Inc., 119 Ill. App. 3d 663, 667, 75 Ill. Dec. 68, 456 N.E.2d 889 (1983)).* Plaintiff argues that this is an abuse-of-discretion standard, while defendant counters that where the trial court renders its decision without an evidentiary hearing and without findings on any factual issues, *de novo* review is appropriate. We agree with defendant. See *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of Regional Transportation Authority, 262 Ill. App. 3d 334, 337, 199 Ill. Dec. 630, 634 N.E.2d 469*

335 Ill. App. 3d 1171, *; 782 N.E.2d 322, **;
2002 Ill. App. LEXIS 1263, ***; 270 Ill. Dec. 128

*(1994)* [***6] (where the trial court determines whether or not to compel arbitration without evidentiary hearings and without making any factual findings on any factual issues, the finding is made as a matter of law and is reviewable *de novo*). In the instant case, the trial court made no findings of fact but took the well-pleaded allegations of the complaint as true. The only question before the trial court was whether the insurance contract contained a mandatory appraisal clause that applied to the controversy at issue between the parties. This was a determination made as a matter of law.

A motion to compel arbitration and dismiss the lawsuit is similar to a motion to dismiss pursuant to *section 2-619(a)(9)* of the Illinois Code of Civil Procedure, which allows a dismissal where the claim asserted is barred by affirmative matter avoiding the legal effect of or defeating the claim. *735 ILCS 5/2-619(a)(9)* (West 2000). The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 115, 189 Ill. Dec. 31, 619 N.E.2d 732 (1993).* [***7] A motion to compel arbitration and dismiss the lawsuit is essentially a motion pursuant to *section 2-619(a)(9)* to dismiss based on the exclusive remedy of arbitration. Such a motion admits the legal sufficiency of the plaintiff's complaint but interposes some affirmative matter that prevents the lawsuit from going forward. *Kedzie & 103rd Currency Exchange, Inc., 156 Ill. 2d at 115.* On appeal from a ruling on a section 2- 619(a)(9) motion, the standard of review is *de novo. Kedzie & 103rd Currency Exchange, Inc., 156 Ill. 2d at 116-17.*

[*1175] Furthermore, the decision whether to compel arbitration is not discretionary. Where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it. *TDE Ltd. v. Israel, 185 Ill. App. 3d 1059, 1063, 133 Ill. Dec. 843,* *541 N.E.2d 1281 (1989)* (parties to an arbitration agreement are irrevocably committed to arbitrate all disputes clearly arising under the agreement). On the other hand, where there is no valid arbitration agreement or where the parties' dispute does not fall within the scope of that [***8] agreement, the trial court may not compel it. *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 181 Ill. 2d 373, 382, 230 Ill. Dec. 1, 692 N.E.2d 1167 (1998)* (a party cannot be forced to arbitrate a dispute that the party has not agreed to submit to arbitration).

Accordingly, we will employ a *de novo* standard of review, with a view to determining whether there was a sufficient showing to sustain the trial court's order denying the motion to compel appraisal. Nevertheless, even were we to accord the more deferential review required by an abuse-of-discretion standard, we would reach the same result.

Defendant argues on appeal that the appraisal provision of the insurance contract unambiguously requires plaintiff to submit to appraisal the "key factual issue underlying each of plaintiff's theories of [**326] recovery"- the amount of loss. Defendant argues: "The amount of plaintiff's loss must be determined at some point in this case, and the appraisal provision clearly states how the parties have agreed to make that determination ***. *** [Defendant] seeks to compel appraisal to determine only a single, narrow factual matter: the actual cash value of plaintiff's vehicle, [***9] which will determine the amount of loss under the Policy." We understand defendant's argument to be that it does not wish to submit the entire lawsuit to the appraisal process, but only the factual determination of the actual cash value of plaintiff's vehicle, to be used as evidence at the trial of plaintiff's complaint. This argument makes no sense in the context of defendant's motion in the trial court, which sought the dismissal of the lawsuit based on the exclusive remedy of an appraisal. Further, a motion to limit the type of evidence to be admitted at the

trial was premature here where the complaint was not yet at issue, defendant having not yet answered it.

Accordingly, we will address the propriety of the trial court's ruling, on defendant's motion to compel an appraisal and dismiss or stay the lawsuit, that the dispute at issue did not fall within the scope of the appraisal clause. At a hearing on a motion to compel arbitration, the only issue before the court is whether an agreement exists to arbitrate the dispute in question. *City of Centralia v. Natkin & Co., 257 Ill. App. 3d 993, 995, 196 Ill. Dec. 523, 630 N.E.2d 458 (1994)*. If the language of an arbitration [***10]    [*1176] agreement is clear and it is obvious that the dispute desired to be arbitrated falls within the scope of the arbitration clause, the court should compel arbitration. *City of Centralia, 257 Ill. App. 3d at 996*. Likewise, if it is obvious that the issue sought to be arbitrated is not within the scope of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because no agreement to arbitrate the dispute exists. *Caudle v. Sears, Roebuck & Co., 245 Ill. App. 3d 959, 963, 185 Ill. Dec. 627, 614 N.E.2d 1312 (1993)*. The parties are bound to submit to arbitration only those issues that they have agreed clearly to resolve through the arbitration mechanism, and a court should not extend an agreement by construction or implication. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc., 119 Ill. App. 3d 663, 669, 75 Ill. Dec. 68, 456 N.E.2d 889 (1983)*.

The parties in the case at bar agree that the insurance policy contained an appraisal clause which provided, "If we and you do not agree on the amount of loss, either may demand an appraisal of the loss." The parties disagree on whether their [***11] dispute involves "the amount of loss" and whether it falls within the scope of the appraisal provision. We conclude, as did the trial court, that plaintiff's complaint raises much more than a dispute over the actual cash value of her vehicle, that is, the amount of loss, and that the issues raised by the complaint do not fall within the scope of the appraisal clause and could not, in any event, be resolved through the appraisal process.

In *Lundy v. Farmers Group, Inc., 322 Ill. App. 3d 214, 255 Ill. Dec. 733, 750 N.E.2d 314 (2001)*, the plaintiff filed a class action lawsuit against her insurer after her car was damaged in a collision. The plaintiff alleged that the insurer had acted fraudulently in requiring its authorized repair shops to use inferior replacement parts rather than more expensive original equipment manufacturer parts on automobiles that were covered under its insurance policies. The plaintiff's second amended complaint included claims on behalf of herself and the alleged class members and alleged, [**327] *inter alia*, fraud and breach of contract. *Lundy, 322 Ill. App. 3d at 217*. The insurance contract in issue had an appraisal clause that [***12] was nearly identical to the one before us. The insurer sought to enforce the clause. *Lundy, 322 Ill. App. 3d at 216*. In considering the plaintiff's fraud claims and the insurer's appraisal request, the appellate court stated:

"[C]ontrary to [the insurer's] assertion, the trial court's analysis does not end with whether an arbitration or appraisal clause existed. The court must also determine whether the parties' dispute is covered by the particular clause. [Citation.]

Here, the appraisal process provided for in the policy was designed solely to resolve disputes over the amount of the loss. [The insurer] argues that the amount of the loss is the threshold    [*1177]

335 Ill. App. 3d 1171, *; 782 N.E.2d 322, **;
2002 Ill. App. LEXIS 1263, ***; 270 Ill. Dec. 128

issue for each of plaintiff's claims, but that argument oversimplifies the issues raised in plaintiff's second amended complaint. The resolution of plaintiff's claims will require a determination of whether [the insurer] misrepresented to its policyholders the quality of repair parts that [the insurer] would pay for under its policies. This question requires an interpretation of the policy language, in particular, the phrase 'like kind and quality.' These issues cannot be resolved through the appraisal process. [***13] Consequently, we agree with the trial court that the issues plaintiff raised in her second amended complaint were not subject to the appraisal clause." *Lundy, 322 Ill. App. 3d at 219.*

Likewise, we find that the instant case presents much more than a disagreement between the parties concerning the actual cash value of plaintiff's vehicle.

Here, plaintiff contends that defendant is engaged in a fraudulent scheme to undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits. Plaintiff's claims focus upon whether defendant defrauded her and thereby breached the terms of the policy. Plaintiff's amended complaint specifically focuses upon the appraisal provision and claims that defendant inserts the appraisal provision into its policy as one way to effectuate its wrongful scheme, because insureds will forego their unpaid claims rather than pursue the expensive appraisal process, especially because the disputed amount is virtually always worth

less than the cost of pursing an appraisal. The amended complaint further alleges, "As designed, the appraisal clause prevents plaintiff and the class from effectively vindicating their [***14] statutory and common law causes of action." This language establishes that plaintiff's amended complaint presents much more than a disagreement between the parties concerning the actual cash value of the vehicle. Accordingly, the dispute is not covered by the appraisal clause, and the trial court did not err in denying defendant's motion to compel an appraisal.

Finally, we reject defendant's argument that the trial court erroneously considered the merits of plaintiff's claims and the cost of an appraisal when it denied the motion to compel an appraisal. Defendant correctly asserts that when a trial court rules on a motion to compel an appraisal, any venture into the merits of the claim underlying the dispute is improper. *TDE Ltd., 185 Ill. App. 3d at 1064.* Defendant asserts that, in ruling on the motion to compel appraisal, the trial court erroneously considered whether plaintiff might ultimately prove her claims and the cost of an appraisal. We have reviewed the trial [**328] court's oral pronouncements at the hearing, as well as its written order denying the motion, and we do not agree with defendant that the trial [*1178] court erroneously considered these matters in deciding [***15] the motion. The trial court properly ruled on defendant's motion to compel an appraisal.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed. The cause is remanded for further proceedings consistent with this opinion.

Affirmed; cause remanded.

**Justices**: Honorable Thomas M. Welch, J.

Honorable Terrence J. Hopkins, P.J., and Honorable Richard P. Goldenhersh, J., Concur

# EXHIBIT B

335 Ill. App. 3d 1164, *; 782 N.E.2d 328, **;
2002 Ill. App. LEXIS 1262, ***; 270 Ill. Dec. 134

**KERRY HANKE, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, Individually and on Behalf of Similarly Situated AIG Entities, Defendant-Appellant.**

**NO. 5-01-0919**

**APPELLATE COURT OF ILLINOIS, FIFTH DISTRICT**

*335 Ill. App. 3d 1164; 782 N.E.2d 328; 2002 Ill. App. LEXIS 1262; 270 Ill. Dec. 134*

**December 26, 2002, Filed**

**SUBSEQUENT HISTORY:** Appeal denied by *Hanke v. Am. Int'l S. Ins. Co., 2003 Ill. LEXIS 719 (Ill., Apr. 2, 2003)*

**PRIOR HISTORY:**    [***1] Appeal from the Circuit Court of Madison County. No. 01-L-851. Honorable Nicholas G. Byron, Judge, presiding.

**DISPOSITION:**    Affirmed; cause remanded for further proceedings.

**COUNSEL:** For Appellant: Robert E. Gillespie, William P. Hardy, Andrew M. Ramage, Hinshaw & Culbertson, Springfield, IL; John L. Gilbert, Hinshaw & Culbertson, Belleville, IL.

For Appellee: Paul M. Weiss, Phillip A. Bock, Tod A. Lewis, Freed & Weiss, LLC, Chicago, IL; L. Thomas Lakin, Bradley M. Lakin, Jeffrey A. Millar, Gail G. Renshaw, The Lakin Law Firm, P.C., Wood River, IL.

**JUDGES:** Justices: Honorable Richard P. Goldenhersh, J., Honorable Terrence J., Hopkins, P.J., and Honorable Thomas M. Welch, J., Concur. JUSTICE GOLDENHERSH delivered the opinion of the court.

**OPINION BY:** Richard P. Goldenhersh

**OPINION**

[**328]    [*1164]  JUSTICE GOLDENHERSH delivered the opinion of the court:

Kerry Hanke (plaintiff) filed a class action lawsuit against American International [**329] South Insurance Company (defendant) and alleged breach of contract and fraud claims. Plaintiff accuses defendant of engaging in a fraudulent scheme that included defendant contracting [*1165]  with third-party vendors to provide defendant [***2]  with biased, below-market estimates of total-loss-vehicle values. A vehicle is declared a total loss if the cost to repair exceeds the actual cash value of the vehicle. Plaintiff claims that defendant used these estimates, which were arrived at by using valuation reports generated by a computer software program that systematically undervalued the actual cash value of total-loss vehicles, to defraud its insureds in connection with the insureds' claims for the total loss of their vehicles. Plaintiff charges defendant with intentionally reducing its overall total-loss claims payouts at the expense of its insureds by using these biased reports, which at first blush appear independent and unbiased. According to plaintiff, defendant relies on these reports to demonstrate the purported "reasonableness" of what it determines to be the actual cash value of the

335 Ill. App. 3d 1164, *; 782 N.E.2d 328, **;
2002 Ill. App. LEXIS 1262, ***; 270 Ill. Dec. 134

totaled vehicle so that the insureds either will not challenge the valuation amount or will settle for an amount greater than the valuation but less than the actual cash value of the vehicle. Plaintiff further alleges that a part of the fraudulent scheme includes a policy provision which requires the parties to submit to an appraisal [***3] if requested by either the insured or the insurer.

Defendant filed a motion to compel an appraisal prior to proceeding with the lawsuit. Defendant argued that plaintiff's policy contains both an appraisal provision and a provision stating that the insured must satisfy all the conditions of the policy prior to filing suit against defendant. The appraisal provision contained in the policy allows each side to select an appraiser who, in turn, selects an impartial umpire. If the appraisers fail to agree on the amount of loss, they submit their differences to the umpire. A decision agreed to by any two of the three is then binding. The provision further provides that each party must pay its appraiser and bear the expenses of the appraisal and the umpire equally. The trial court denied defendant's motion to compel an appraisal but stated in its order that defendant could perform an appraisal for discovery purposes. Defendant filed a notice of interlocutory appeal pursuant to *Supreme Court Rule 307(a)(1)* (188 Ill. 2d R. 307(a)(1)). The issue we are asked to address is whether the trial court erred in denying defendant's motion to compel an appraisal. We affirm.

BACKGROUND

Plaintiff purchased [***4] an automobile insurance policy from defendant. In January 2001 plaintiff was involved in an automobile accident in Madison County while driving his 1991 Dodge Ram truck. Plaintiff submitted a claim for property damage to defendant. Defendant declared plaintiff's vehicle a total loss and valued the vehicle at $ 4,500 [*1166] based upon a valuation obtained from ADP Claims Solution Group. Plaintiff challenged defendant's valuation on the basis that it was below the actual cash value of the vehicle. Plaintiff informed the claims adjuster assigned to the case that the National Automobile Dealers' Association (NADA) website valued his vehicle at $ 6,300. The claims adjuster responded by telling plaintiff that she had found NADA valuations of $ 4,200 for trade-in value and $ 5,850 for retail value. Plaintiff continued to dispute defendant's valuation and told the claims adjuster that he had put a new engine in his truck. The claims adjuster told plaintiff that he could get an appraisal based upon the appraisal provision set forth in the policy, which provides as follows:

[**330] "APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each [***5] party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally."

Plaintiff responded by sending the claims adjuster documentation supporting his claim that defendant's valuation was too low.

On February 5, 2001, the claims adjuster received from plaintiff a copy of a Kelley Blue Book valuation in the amount of $ 6,805, a copy of a repair bill from Don Hemann (who had installed a new engine in plaintiff's truck), and a copy of a repair bill from a muffler shop (for the installation of heavy-duty shock absorbers on plaintiff's truck). The claims adjuster did not believe that these documents justified an increase in the valuation, and plaintiff was again offered the original settlement amount.

Plaintiff contacted a friend, John Gibbons, who is a lawyer. Gibbons is not a participant in the instant lawsuit. Gibbons sent the claims adjuster a letter [***6] on behalf of plaintiff, notifying defendant that the offer was insufficient. The claim was reassigned to another adjuster who is no longer employed by defendant. However, it is clear from the record that the reassignment failed to resolve the matter. Plaintiff ultimately retained the attorneys of record in this case, and on May 15, 2001, plaintiff filed a class action on behalf of himself and others similarly situated.

The original complaint and the first amended complaint, filed on September 5, 2001, contained the following counts: count I, breach of contract; count II, statutory fraud; and count III, common law fraud. [*1167] On November 16, 2001, plaintiff filed a second amended complaint, which left out count III. The gist of the claims of the class action, as previously set forth, is that defendant is engaged in a fraudulent scheme whereby it uses biased valuation reports to undervalue the actual cash value of vehicles which are declared total losses and consistently underpays total-loss claims, thereby cheating its insureds and increasing its own profits.

On September 17, 2001, defendant sent a new proposal of settlement to Gibbons, who was not the attorney of record, offering $ 5,850. [***7] Defendant also informed plaintiff that if he refused to settle, defendant would invoke the appraisal provision. The letter requested that plaintiff respond by September 28, 2001. Plaintiff did not respond. On October 5, 2001, defendant filed a demand for an appraisal and a motion to compel an appraisal and stay further court proceedings. On November 2, 2001, after briefing and argument, the trial court entered an order denying defendant's motion to compel an appraisal and stay further court proceedings. Defendant filed a timely notice of interlocutory appeal.

ANALYSIS

We first address the standard of review to be applied in the case at bar. Defendant argues that the standard is *de novo* because the instant case requires us to construe an insurance policy. Plaintiff, on the other hand, contends that the standard of review to be applied in an interlocutory appeal is whether there is a sufficient showing to sustain the trial court's [**331] order denying the relief sought. Both parties make legitimate arguments; however, after careful consideration, we find that the *de novo* standard of review is appropriate. See *Travis v. American Manufacturers Mutual Insurance Co.*, No. 5-02-0059, 335 Ill. App. 3d 1171, 782 N.E.2d 322, 2002 Ill. App. LEXIS 1263 (December 24, 2002). [***8] Like *Travis*, the only question before the trial court was whether the insurance contract contained a mandatory appraisal clause that applied to the controversy at issue between the parties. This is a determination made as a matter of law subject to *de novo* review.

Defendant contends that the plain and unambiguous language of the insurance policy requires plaintiff to submit to an appraisal. Defendant insists that the damages claimed by plaintiff relate solely to a disagreement regarding the actual cash value of plaintiff's vehicle and that, therefore, the appraisal clause relates directly to this dispute. Defendant relies on *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724, 561 N.E.2d 116, 148 Ill. Dec. 810 (1990), in support of its proposi-

tion that the trial court erred in refusing to enforce the appraisal clause.

[*1168] In *Beard*, the plaintiff sought to recover under her fire insurance policy with the defendant after her rental house was totally destroyed by a fire. *203 Ill. App. 3d at 726, 561 N.E.2d at 117*. The policy contained an appraisal clause similar to the one before us. *Beard, 203 Ill. App. 3d at 726, 561 N.E.2d at 117*. [***9] The defendant filed a motion to compel an appraisal, which the trial court denied on the basis that because the house was a total loss, the appraisal provision did not apply because there was nothing left to appraise. *Beard, 203 Ill. App. 3d at 727, 561 N.E.2d at 117-18*. On appeal, this court concluded that there was no ambiguity in the insurance policy and that, therefore, no matter how difficult it might be to appraise a total loss, an appraisal had to be conducted. *Beard, 203 Ill. App. 3d at 729, 561 N.E.2d at 119*. We find that *Beard* is distinguishable from the case at bar because it does not address the heart of the issue raised by plaintiff's complaint herein.

Contrary to defendant's assertions, the analysis of the question presented by this appeal does not end with whether or not an appraisal clause exists. A court must also determine whether the parties' dispute is covered by the particular clause. *Lundy v. Farmers Group, Inc., 322 Ill. App. 3d 214, 219, 750 N.E.2d 314, 318, 255 Ill. Dec. 733 (2001)*. In *Lundy*, the plaintiff filed a class action lawsuit against her insurer after her car was damaged in a collision. The [***10] plaintiff alleged that the insurer had acted fraudulently in requiring its authorized repair shops to use inferior replacement parts rather than more expensive original equipment manufacturer parts on automobiles that were covered under its insurance policies. The plaintiff's second amended complaint included claims on behalf of herself and the alleged class members and alleged, *inter alia*, fraud and breach of contract. *Lundy, 322 Ill. App. 3d at 217, 750 N.E.2d at 317*. The insur-

ance contract in issue had an appraisal clause that was nearly identical to the one before us. The insurer sought to enforce the clause. *Lundy, 322 Ill. App. 3d at 216, 750 N.E.2d at 316-17*. In considering the plaintiff's fraud claims and the insurer's appraisal request, the Second District specifically stated:

"[T]he appraisal process provided for in the policy was designed solely to resolve disputes over the amount of the loss. Farmers argues that the amount of the loss is the threshold issue for each of plaintiff's claims, but that argument [**332] oversimplifies the issues raised in plaintiff's second amended complaint. The resolution of plaintiff's claims will require a determination [***11] of whether Farmers misrepresented to its policyholders the quality of repair parts that Farmers would pay for under its policies. This question requires an interpretation of the policy language, in particular, the phrase 'like kind and quality.' These issues cannot be resolved through the appraisal [*1169] process. Consequently, we agree with the trial court that the issues plaintiff raised in her second amended complaint were not subject to the appraisal clause." *Lundy, 322 Ill. App. 3d at 219, 750 N.E.2d at 319*.

Likewise, we find that the instant case presents much more than a disagreement between the parties concerning the actual cash value of plaintiff's truck.

Here, plaintiff contends that defendant is engaged in a fraudulent scheme to undervalue

its insureds' vehicles that are declared a total loss, in order to increase its own profits. Plaintiff's claims focus upon whether defendant defrauded him and thereby breached the terms of the policy. Plaintiff's second amended complaint specifically focuses upon the appraisal provision and makes this claim: "[Defendant] inserts the appraisal provision into its policy as one way to effectuate its wrongful scheme, because [***12] AIG knows that few (if any) insureds will (or can) pay the money required to obtain an appraisal of a total loss claim, particularly because the way AIG has devised the scheme, the disputed amount is virtually always worth less than the appraisal costs." The second amended complaint goes on to allege, "The appraisal clause is used to prevent plaintiff and the class from effectively vindicating their statutory and common law causes of action." This language clearly establishes that plaintiff's second amended complaint presents much more than a disagreement between the parties concerning the actual cash value of the vehicle.

Defendant's argument that the instant case is nothing more than a disagreement between the parties concerning the value of plaintiff's loss misrepresents this controversy. If we followed defendant's logic, it would mean that plaintiff would have to go through the allegedly fraudulent appraisal process, expending more money than he could ever hope to recover, in order to file any complaint alleging fraud in that very same process. The damages in this case cannot be determined by invoking the appraisal provision, because plaintiff claims that the appraisal provision [***13] is a part of the fraud, in that the appraisal provision requires plaintiff to pay for an appraisal and split the cost of an umpire in order to recover an amount of money less than the appraisal process would cost. The issues raised in the second amended complaint involve much more than the actual cash value of plaintiff's truck and cannot be resolved through the appraisal process.

We are well aware of and agree with the public policy of the State of Illinois favoring the conservation of judicial resources through arbitration or appraisal. See *Lundy, 322 Ill. App. 3d at 219, 750 N.E.2d at 319* (citing *J. Wise Smith & Associates, Inc. v. Nationwide Mutual Insurance Co., 925 F. Supp. 528, 530 n.8 (W.D. Tenn. 1995))*. However, [*1170] we do not believe that the mere existence of an appraisal clause is enough to compel an appraisal under the facts presented here. None of the Illinois cases cited by defendant present facts analogous to the facts before us. Instead, all of the cases cited by defendant center upon an issue that could be resolved by determining an amount or value.

[**333]  For example, *Bailey v. Timpone, 75 Ill. 2d 539, 389 N.E.2d 1193, 27 Ill. Dec. 785 (1979)*, [***14] which is relied upon by defendant, involved a dispute over the amount of rent to be paid on the renewal of a lease. The parties in that case agreed that if they could not concur on the amount of rent to be paid upon renewal, the issue would be submitted to binding arbitration. *Bailey, 75 Ill. 2d at 541, 389 N.E.2d at 1194*. The specific issue in that case concerned the role a court should play in interpreting the rent provision set by the arbitrators and involved a determination of the term "gross income" as used in the arbitration provision of the lease. The court concluded that the arbitrators were authorized to clarify the term. Since the parties agreed that the arbitrators had "binding authority to conclusively and finally establish the fair cash rental value of the premises," it was proper for the trial court to defer to the meaning the arbitrators ascribed to the terms they used. *Bailey, 75 Ill. 2d at 546, 389 N.E.2d at 1196*. The *Bailey* court stated in pertinent part:

335 Ill. App. 3d 1164, *; 782 N.E.2d 328, **;
2002 Ill. App. LEXIS 1262, ***; 270 Ill. Dec. 134

"This court has long approved lease agreements to submit questions of valuation to appraisement or arbitration and has refused to interfere with the arbitrators' valuation [***15] *absent fraud* or mistake, even though the agreements were not technically classified as arbitration agreements and were not governed by all the rules applicable to arbitration." (Emphasis added.) *Bailey, 75 Ill. 2d at 545, 389 N.E.2d at 1196.*

The case before us is clearly distinguishable because it specifically involves fraud allegations.

The instant lawsuit presents the classic class action lawsuit in which those allegedly injured would be economically prohibited from ever vindicating their rights in separate lawsuits. If plaintiff's fraud allegations cannot be proven, then the appraisal process would certainly be appropriate. Until that time, we find that the trial court did not err in finding that an appraisal was not a condition precedent to litigating the claims in this lawsuit. Moreover, we note that the trial court did not deprive defendant of its right to obtain an appraisal. The trial court specifically stated in its order that defendant could get an appraisal as a part of the discovery process. Under these circumstances, we find that the trial court's order denying defendant's motion to compel an appraisal and stay further court proceedings was correct.

[***16] CONCLUSION

For the foregoing reasons, the judgment of the circuit court of [*1171] Madison County is hereby affirmed. The cause is remanded for further proceedings consistent with this opinion.

Affirmed; cause remanded.

HOPKINS, P.J., and WELCH, J., concur.

# EXHIBIT C

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

**METROPOLITAN CREDITORS' TRUST, SUMMIT CREDITORS' TRUST, METROPOLITAN MORTGAGE & SECURITIES CO., INC. AND SUMMIT SECURITIES, INC., Plaintiff, v. PRICEWA-TERHOUSECOOPERS, LLP, Defendant.**

**No. CV-05-0290-FVS**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON**

*463 F. Supp. 2d 1193; 2006 U.S. Dist. LEXIS 82838*

**November 14, 2006, Decided**

**PRIOR HISTORY:** *Metro. Mortg. & Secs. Co. v. PricewaterhouseCoopers, LLP, 2005 U.S. Dist. LEXIS 39851 (E.D. Wash., Dec. 21, 2005)*

**COUNSEL:** [**1] For Metropolitan Mortgage & Securities Co Inc, a Washington corporation, Summit Securities Inc, an Idaho corporation that maintains its principal place of business in Spokane, WA, Plaintiffs: Edgar G Sargent, LEAD ATTORNEY, Parker C Folse, III, LEAD ATTORNEY, Floyd G Short, Susman Godfrey LLP, Seattle, WA; Lee H Godfrey, LEAD ATTORNEY, Susman Godfrey LLP, Houston, TX; John Mark Colvin, Chicoine & Hallett PS, Seattle, WA.

For Metropolitan Creditors' Trust, Summit Creditor's Trust, Plaintiffs: Edgar G Sargent, LEAD ATTORNEY, Parker C Folse, III, LEAD ATTORNEY, Ian B Crosby, LEAD ATTORNEY, Floyd G Short, LEAD ATTORNEY, Susman Godfrey LLP, Seattle, WA; Lee H Godfrey, LEAD ATTORNEY, Susman Godfrey LLP, Houston, TX; John Mark Colvin, Chicoine & Hallett PS, Seattle, WA.

For PricewaterhouseCoopers LLP, a Delaware limited liability partnership doing business in the State of Washington, Defendant: Kenneth P Herzinger, LEAD ATTORNEY, M Todd Scott, LEAD ATTORNEY, Pearl Del Rosario, LEAD ATTORNEY, Orrick Herrington & Sutcliffe LLP - CA(SF), San Francisco, CA; Robert P Varian, LEAD ATTORNEY, Orrick Herrington & Sutcliffe, San Francisco, CA; Stephen M. Knaster, LEAD ATTORNEY, Orrick, Herrington [**2] & Sutcliffe LLP, San Francisco, CA; Frank (Francis) J Gebhardt, Feltman Gebhardt Greer & Zeimantz PS, Spokane, WA.

For Summit Bondholders Committee Members, Interested Party: Kevin Daniel O'Rourke, Southwell & O'Rourke PS, Spokane, WA.

For Official Unsecured Creditors' Committee of Metropolitan Mortgage & Securities Co., Inc., Interested Party: Peter Jennings Grabicki, LEAD ATTORNEY, Randall & Danskin PS, Spokane, WA.

**JUDGES:** Fred Van Sickle, United States District Judge.

**OPINION BY:** Fred Van Sickle

**OPINION**

[*1195]    ORDER DENYING MOTION TO DISMISS

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 18 of 27

Page 2

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

**THIS MATTER** came before the Court on the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Ct. Rec. 62) and THE Defendant's Request for Judicial Notice (Ct. Rec. 21). The Plaintiffs were represented by Parker C. Folse, III and Matthew R. Berry. The Defendant was represented by Kenneth P. Herzinger, Robert P. Varian, and Frank J. Gebhardt.

## BACKGROUND

Plaintiffs Metropolitan Mortgage & Securities Company, Inc. ("Metropolitan") and Summit Securities, Inc. ("Summit") are affiliated securities companies. Both own a number of subsidiaries, collectively referred to as the "Met Group." Pricewaterhousecoopers, LLP ("PwC") audited [**3] the Met Group's financial statements from 1994-2001. The engagement letters governing the Defendant's work for the Plaintiffs for fiscal years 1999 and 2000 contain the following clause: "The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against Pricewaterhousecoopers LLP arising out of this engagement to anyone." (Ct. Rec. 66 Exhibit I at 4; Ct. Rec. 66 Exhibit J at 4.)

Beginning in 1997, the Defendant began marketing the Foreign Leverage Investment Program ("FLIP") to Metropolitan. First Am. Compl. PP 21-23. The FLIP is an offshore investment scheme. First Am. Compl. P 17. On March 31, 1999, the Defendant issued an opinion letter advising Metropolitan that the FLIP was "more likely than not" to survive a challenge by the Internal Revenue Service ("IRS"). First Am. Compl. P 27. However, the FLIP had a number of legal flaws, and the Defendant was allegedly aware of these at the time it marketed the FLIP to Metropolitan. First Am. Compl. P 20. Based on this letter, Metropolitan invested in the FLIP. In 2001, the IRS determined that the FLIP was an abusive tax shelter. First Am. Compl. P 20. Metropolitan voluntarily disclosed its investment [**4] in the FLIP and

subsequently entered into a settlement with the IRS whereby the IRS permitted Metropolitan to retain approximately 20% of the promised tax savings from the FLIP. First Am. Compl. P 40.

On February 4, 2004, Metropolitan and Summit filed for Chapter 11 Bankruptcy. First Am. Compl. P 12. The Third Amended Joint Reorganization Plan ("Joint Reorganization Plan") formed the Metropolitan Creditor's Trust and the Summit Creditor's Trust (collectively "the Trusts"). The function of the Trusts is to administer post-confirmation responsibilities under the Plan of Reorganization for the benefit of Metropolitan and Summit's creditors. First Am. Compl. PP 7-8. Pursuant to the Joint Reorganization Plan, all [*1196] of Metropolitan and Summit's legal claims against PwC have "vested" in the Trusts. First Am. Compl PP 7-8.

In 2005, the Plaintiffs filed suit against PwC for professional negligence. The Plaintiffs claim that the Defendant was negligent in its 1999 and 2000 audits in that it failed to detect violations of applicable accounting principles, did not identify systematic weaknesses in the Met Group's financial controls, and ignored problematic reporting patterns. Complaint P 3. These [**5] oversights, Plaintiffs allege, concealed the problems in the Met Group's accounting practices and business operations from the individuals who were in a position to remedy them, ultimately resulting in the Chapter 11 filing.

On June 21, 2006, the Plaintiffs filed their First Amended Complaint ("FAC"). (Ct. Rec. 61.) The FAC adds Metropolitan Creditor's Trust and Summit Creditor's Trust to the action as Plaintiffs. First Am. Compl. The FAC also brings a new claim against the Defendant. Specifically, Count II of the FAC alleges that the Defendant was negligent in rendering its tax opinion letter concerning the FLIP. First Am. Compl. PP 93-97.

The Defendant has filed a Motion to Dismiss the FAC on three separate grounds (Ct.

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 19 of 27

Page 3

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

Rec. 67). First, the Defendant argues that the nonassignment clauses in the engagement letters between the Defendant, Metropolitan, and Summit prohibit Metropolitan and Summit from assigning their claims against PwC to the Trusts. The Trusts therefore may not participate in the case. Second, the Defendant urges the Court to dismiss Counts I, III, and IV of the FAC "to the extent that they seek losses allegedly sustained by [Metropolitan and Summit's] creditors. [**6] " Finally, the Defendant argues that the Plaintiffs have failed to allege that they suffered any legal damages as a result of their investment in the FLIP.

In support of the motion to dismiss, the Defendant has asked the Court to take judicial notice of the following thirteen documents:

1. Metropolitan's 10-K Form filed January 16, 2001.

2. Summit's 10-K Form filed January 16, 2001.

3. Metropolitan's 8-K Form filed June 18, 2001.

4. Summit's 8-K Form filed June 18, 2001.

5. The Third Amended Disclosure Statement with Respect to the Third Amended Joint Reorganization Plan filed in the United States Bankruptcy Court for the Eastern District of Washington.

6. The Complaint filed by the Securities and Exchange Commission against Paul Sandifur in the United States District Court for the Western District of Washington.

7. The Third Amended Joint Reorganization Plan approved by the United States Bankruptcy Court for the Eastern District of Washington;

8. Metropolitan's Motion for Entry of An Order Approving a Compromise and Settlement between Metropolitan and the IRS filed in the United States Bankruptcy Court for the Eastern District of Washington;

9. The engagement letters between [**7] PwC and Metropolitan for ORDER DENYING MOTION TO DISMISS 4 fiscal years 1999 and 2000;

10. The engagement letters between PwC and Summit for fiscal years 1999 and 2000;

11. The Class Action Complaint filed in Case Number CV-04-0025-FVS;

12. The tax opinion letter from PwC to Metropolitan discussing the Foreign Leverage Investment Program ("FLIP") program; and

[*1197]    13. Metropolitan's Form 10-Q filed June 30, 2001.

(Ct. Rec. 66.)

## DISCUSSION

## I. SUBJECT MATTER JURISDICTION

This Court has discretion to exercise jurisdiction over the claims alleged in the FAC pursuant to *28 U.S.C. § 1334. Section 1334* provides that the federal district courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *28 U.S.C. §§ 1334(b)-(c).* The Plaintiffs allege that their state law claims are related to the Chapter 11 Bankruptcy proceedings pending in the United States Bankruptcy Court for the Eastern District of Washington. First Am. Compl. P 5.

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 20 of 27

Page 4

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

## II. REQUEST FOR JUDICIAL NOTICE

### A. Legal Standard

Under *Federal Rule of Evidence 201* [**8] , a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information." *Fed. R. Ev. 201(d).* A fact is appropriate for judicial notice if it is

> not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

*Fed. R. Ev. 201(b).* Facts contained in public records are considered appropriate subjects of judicial notice. *Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 (9th Cir. 2006).*

The consequences of taking judicial notice are significant. Where the trial court has taken judicial notice of a fact, the jury must be instructed to accept that fact as conclusive. *Fed. R. Ev. 201(g).* Judicial notice also precludes either party from introducing evidence to disprove that fact. *Rivera v. Philip Morris, Inc., 393 F.3d 1142, 1151 (9th Cir. 2005).* The Ninth Circuit has accordingly urged the district [**9] courts to be cautious in taking judicial notice and to do so only when the "matter is beyond controversy." *Id.*

### B. Scope of Judicial Notice

The Defendant has asked the Court to take judicial notice of a series of documents, rather than particular facts shown to be beyond reasonable dispute by those documents. (Ct. Rec. 66 at 1.) While the Plaintiffs do not object to the Court's consideration of 11 of the 13 documents for the limited purpose of ruling on the

Defendant's Motion to Dismiss, the Plaintiffs do object to the scope of the judicial notice requested by the Defendant. (Ct. Rec. 72 at 4.) The Court agrees. The documents the Defendant has submitted for judicial notice are voluminous. Taking judicial notice of the documents in their entirety could have unforeseen consequences later in the litigation. Both parties agree that the Court should take judicial notice of the particular statements in these documents that the Defendant relies upon in its Motion to Dismiss. In view of the Ninth Circuit's cautious approach to judicial notice, this seems the appropriate course of action. The Court will accordingly take judicial notice only of those facts appearing in the submitted [**10] documents that are both undisputed and relevant to the issues presented in the motion to dismiss. The Court will take judicial notice of these facts for the purpose of deciding the Defendants' Motion to Dismiss only.

### C. Judicial Notice of Filings in Other Courts

*Rule 201* does not permit a trial court to take judicial notice of any facts found by a court in another judicial proceeding. [*1198] *Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003)(citing M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983)).* However, a court may take judicial notice of the existence of another court's opinion. *Cal. ex rel. RoNo, LLC v. Altus Fin. S.A., 334 F.3d 920, 931 (9th Cir. 2003); Lee, 250 F.3d 668 at 690.*

Based on the Ninth Circuit's opinions in *Wyatt* and *M/V Am. Queen,* the Plaintiffs argue that the Court should not take judicial notice of either the criminal complaint the SEC filed against Paul Sandifur (Document 6) or the Class Action Complaint filed in this Court (Document 11). (Ct. Rec. 72 at 7.) The Court is not persuaded by this argument. *Wyatt* and *M/V Am. Queen* are distinguishable [**11] from the present case because the Defendants are not asking the Court to take notice of any findings

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 21 of 27

Page 5

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

of fact. Rather, the Defendants ask the Court to recognize the existence of these two related proceedings. (Ct. Rec. 77 at 3.)

Under *Wyatt* and *M/V Am. Queen*, the Court may take notice of the fact that the SEC has filed a criminal complaint against Sandifur in the Western District of Washington. It may also take judicial notice of the fact that a class action is pending against Metropolitan in this Court. The Court may not, however, accept any of the allegations of these complaints as true.

## III. MOTION TO DISMISS

### A. Standard of Review

Under *Federal Rule of Civil Procedure 12(b)(6)*, a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L. Ed. 2d 80(1957)*; *Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997)*. This determination must be based upon the facts set forth in the plaintiff's complaint. *Fed.R.Civ.P. 12(b)* [**12] . In construing the complaint, the Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros, 136 F.3d 603, 607 (9th Cir. 1998)*. When a court has taken judicial notice of facts, the court may also consider the facts noticed in evaluating a motion to dismiss. *Fed. R. Ev. 201.*

### B. Nonassignment Clause

The Defendant argues that the Joint Reorganization Plan assigned and transferred Metropolitan and Summit's claims against PwC to their respective trusts in violation of the nonassignment clauses in the two engagement letters. (Ct. Rec. 67 at 8.) The Defendant emphasizes the fact that both the FAC and Joint Reorganization plan describe the "vesting" of Metropolitan and Summit's claims in their respective trusts. The Defendant also suggests that the

cases cited by the Plaintiffs, *In re Sweetwater* and *Professional Inv. Properties of America*, are inapplicable because they dealt with the viability of a common law doctrine following the enactment of *Section 1123 of the Bankruptcy Code*.

The Court is persuaded, based on the language [**13] of the trust agreement, the application of relevant precedent, and the policy underlying the Bankruptcy Code, that no assignment has occurred. Rather, Metropolitan and Summit have retained their claims against PwC and the trusts have been appointed to pursue these claims on behalf of Metropolitan and Summit's creditors.

In a bankruptcy action, the debtor may retain its rights to a legal claim after the bankruptcy court has appointed a representative to enforce or pursue the claim. United States Bankruptcy Code provides that a reorganization plan "may provide [*1199] for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such a purpose, of any" claim or interest of the debtor. *11 U.S.C. § 1123(b)(3)(B)*. The appointment of a third party to enforce a debtor's legal claims thus does not necessarily effect an assignment of the claims. *In re Sweetwater, 884 F.2d 1323, 1327 (10th Cir. 1989)*; *In re Professional Inv. Properties of America, 955 F.2d 623, 626 (9th Cir. 1992)*. Rather, courts should follow a case-by-case approach in determining whether an appointed party is serving as [**14] an assignee or as a representative of the estate. *Sweetwater, 884 F.2d at 1327*. In making this determination, the crucial inquiry is whether recovery by the appointed party would benefit the debtor's estate and its unsecured creditors. *Id.*

The language of the trust agreement indicates that no assignment has occurred in this case. The trust agreement explicitly states that each trust shall "retain and preserve all of Metropolitan's [and Summit's] Causes of Action [. . .] as **representatives** and successors to Metro-

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 22 of 27

Page 6

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

politan [and Summit] and **in accordance with Bankruptcy Code section 1123(b)(3)(B),**" the section of the Bankruptcy Code that permits retention by debtors. (Ct. Rec. 66, Exhibit G, Article IV(A)(8)(emphasis added)). The language cited by the Defendant does not demonstrate that an assignment occurred. As the Defendant self points out, the trust agreement in *Sweetwater* explicitly transferred "title" to the trust and stated that the debtor's assets "vested" in the trust. In the presence of this language, the Tenth Circuit held that an assignment had not occurred. Under *Sweetwater*, the fact that the trust agreement [**15] in this case "vests" Metropolitan and Summit's assets in their Trusts is insignificant, as is the fact that the trust agreement purports to transfer "all right, title and interest" to the trusts.

The relevant case law also indicates that no assignment has occurred. While the Defendant is correct that *Sweetwater* and *Professional Inv. Properties of America* overruled the common law treatment of a trustee's avoidance powers, they did so by holding that the appointment of a representative under *Section 1123* does not effect an assignment. *Sweetwater, 884 F.2d at 1327; Professional Inv. Properties, 955 F.2d at 626*. Thus, if the bankruptcy court appointed the Trusts as representatives of Metropolitan and Summit's estates, the debtors legal claims were not "assigned."

Applying the test articulated in *Sweetwater*, the Trusts qualify as representatives of Metropolitan and Summit's estates. *Sweetwater* and *Professional Inv. Properties* focused on two factors: whether the appointment in question was approved by the bankruptcy court and whether the appointed party's actions would benefit the debtors and the debtors' creditors. In the present case, [**16] the bankruptcy court has approved the Joint Reorganization Plan, which incorporates the Trust Agreement. More importantly, as the Plaintiffs argue, the aim of establishing the Trusts was to liquidate Metro-

politan and Summit's assets for the benefit of their creditors.

Finally, as the Plaintiffs observe, it would be contrary to the purpose of both the Joint Reorganization Plan and federal bankruptcy law to hold that a debtor's legal claims "evaporated upon the confirmation of a liquidating bankruptcy plan." (Ct. Rec. 71-1 at 10.) The Defendant implies that debtors in a bankruptcy proceeding may only retain their causes of action when particular "magic words" appear in the reorganization plan. The Court refuses to adopt this view. The reference to *Section 1123* in the trust agreement at issue manifests a clear intent to appoint the Trusts as representatives, rather than [*1200] assignees, of the debtors' claims. To disregard this intent would be to ignore the purpose of Chapter 11 reorganization plans: to maximize distributions to the debtor's creditors.

## C. Claims Asserted on Behalf of Creditors

The Defendant argues that the Plaintiffs lack standing to bring the present suit because [**17] they are asserting claims that properly belong to their creditors, specifically the individuals who invested in Metropolitan and Summit's securities. (Ct. Rec. 67 at 11-12.) The Court disagrees and finds that the Plaintiffs have standing because they are seeking to address Metropolitan and Summit's injuries.

A bankruptcy trustee "stands in the shoes" of the debtor and has standing to bring any suit that the debtor could have brought. *Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir 1991)*. In contrast, a bankruptcy trustee lacks standing to assert claims on behalf of the debtor's creditors, even if the creditors have expressly assigned their claims to the trustee. *Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 434, 92 S. Ct. 1678, 1688, 32 L. Ed. 2d 195 (1972); Williams v. Cal. 1st Bank, 859 F.2d 664, 667 (9th Cir. 1988)*. In determining whether the trustee has standing to bring a particular claim, courts should focus on "whether the Trustee is seeking

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 23 of 27

Page 7

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

to redress injuries to the debtor itself caused by the defendants' alleged conduct." *Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005).* [**18]

The Ninth Circuit has held that a bankruptcy debtor has standing to bring claims against its former auditor in a case with facts similar to those of the present case. In *Smith v. Arthur Anderson*, the bankruptcy trustee for Boston Chicken brought a professional malpractice suit against the debtor's former auditors, alleging that their negligence enabled certain officials to misrepresent the company's financial status to its outside officers and directors. *Id. at 995.* As a result, Boston Chicken's assets were "squandered on an unviable business plan, [encumbering] the firm with additional debt obligations that it had no realistic chance of repaying." *Id.* The Ninth Circuit held that misuse of a company's assets "qualifies as an injury to the firm which is sufficient to confer standing upon the trustee." *421 F.3d at 1003.*

Similarly, the Plaintiffs in the case under consideration allege that the Defendant's negligence resulted in the continuation of unviable business practices and the accumulation of unserviceable debt. If the Defendant had performed its audits in conformity with Generally Accepted Accounting Standards ("GAAS"), the Defendant would [**19] have been prompted to "report the many detrimental conditions, financial misstatements, and unsound practices it should have discovered to independent members of Met's and Summit's boards and audit committees." First Am. Compl. P 86. Compliance with GAAS accounting standards would also have discouraged investors from purchasing securities from Metropolitan and Summit, thereby preventing Metropolitan and Summit from continuing to raise unserviceable debt. First Am. Compl. P 85.

The Defendant correctly observes that the Ninth Circuit limited the *Smith* holding. Under *Smith*, not every "incurrence of additional debt

that cannot be repaid, in and of itself, constitutes a corporate injury remediable by a trustee." *421 F.3d at 1004.* The *Smith* holding rested on the fact that the auditors "dissipated assets" by prolonging the corporation's existence past the point of viability. *Id.* However, giving the Plaintiffs the full benefit of the facts they have plead, it is possible that they could prove the Defendant's audit [*1201] opinions had the same effect in this case. This is sufficient to survive a motion to dismiss. *Tyler, 136 F.3d 607.*

The Defendants [**20] have also argued that, even if the Plaintiffs do have standing to bring their claims, the Court should nevertheless issue an order dismissing the Plaintiffs' claims "to the extent that they seek to recover losses suffered by creditors." (Ct. Rec. 75 at 4.) As the Plaintiffs have observed, the Court could spend its time dismissing any number of arguments that the Plaintiffs have not raised. This practice would do little to advance the present litigation, however. The Court therefore declines to issue what would amount to an advisory opinion.

**D. Count II: The Foreign Leverage Investment Program**

The Defendant argues that the Court should dismiss Count II of the FAC because the Plaintiffs have suffered no damages as a result of this investment in the FLIP and thus cannot state a cause of action for negligence. (Ct. Rec. 67 at 16-17.) The Defendant alleges that Metropolitan has admitted that the FLIP earned a total net profit of $ 2.6 million. (Ct. Rec. 75 at 11.) This argument is based on a statement filed in the bankruptcy proceeding seeking approval of a settlement with the Internal Revenue Service.

The Court declines to take judicial notice of the truthfulness of the statement [**21] relied upon by the Defendant. As the Court has explained, judicial notice is only appropriate where the fact noticed is undisputed and readily

Case 4:08-cv-01365-CW     Document 24     Filed 05/01/2008     Page 24 of 27

Page 8

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

verifiable. The profitability of the FLIP is a question of material fact disputed by the parties. Taking judicial notice of the statement cited by the Defendant would therefore be inconsistent with *Federal Rule of Evidence 201.* Accordingly,

**IT IS HEREBY ORDERED:**

1. The Defendant's Request for Judicial Notice, **Ct. Rec. 66,** is **GRANTED IN PART AND DENIED IN PART.**

2. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the non-assignment clause contained in the engagement letters between PwC and Metropolitan for fiscal years 1999 and 2000 (Ct. Rec. 66 Exhibit I at 4). The Court notices that this clause provides:

> "The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers, LLP arising out of this engagement to anyone."

3. The Court will take judicial notice, for the purposes of ruling on the Defendant's [**22] Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the nonassignment clause contained in the engagement letters between PwC and Summit for fiscal years 1999 and 2000 (Ct. Rec. 66 Exhibit J at 4). The Court notices that this clause provides:

> "The Company agrees that it will not, directly or indirectly, agree to assign or transfer any claim against PricewaterhouseCoopers LLP arising out of this engagement to anyone."

4. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the United States Bankruptcy Court for the Eastern District of Washington has confirmed the Third Amended Joint Reorganization Plan of Metropolitan Mortgage & Securities Co., Incl. and Summit Securities, Inc.

5. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended [*1202] Complaint (Ct. Rec. 62) only, of the fact that the Joint Reorganization Plan refers to Metropolitan and Summit's assets as the "Metropolitan Transferred Assets" and the "Summit Transferred Assets" on pages 24 and 32. (Ct. Rec. 66 Attachment [**23] G at 24, 32.)

6. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the Joint Reorganization plan states:

> Metropolitan's causes of action shall vest in the Metropolitan Creditor's Trust upon the Effective Date, the Metropolitan Creditors' Trust shall retain and preserve all of Metropolitan's Causes of Action and the Plan Administrator and the Executive Board shall pursue and enforce all of Metropolitan's Causes of Action, including, but not limited to, Avoidance Actions and Special Causes of Action, as representatives and successors to Metropolitan and in accordance with *Bankruptcy Code section 1123(b)(3)(B).*

(Ct. Rec. 66 Attachment G at 29, Lines 10-13.)

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 25 of 27

Page 9

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

7. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the Joint Reorganization plan states:

> Summits's causes of action shall vest in the Summit Creditor's Trust upon the Effective Date, the Summit Creditors' Trust shall retain and preserve all of Summit's Causes [**24] of Action and the Plan Administrator and the Executive Board shall pursue and enforce all of Summit's Causes of Action, including, but not limited to, Avoidance Actions and Special Causes of Action, as representatives and successors to Summit and in accordance with *Bankruptcy Code section 1123(b)(3)(B).*

(Ct. Rec. 66 Attachment G at 29, Lines 10-13.)

8. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the Third Amended Disclosure Statement with Respect to the Third Amended Joint Reorganization Plan filed in the United States Bankruptcy Court for the Eastern District of Washington. The Court notices that the Third Amended Disclosure Statement provides that "the main focus of the Plan is to maximize the percentage recovery of Debt Security holders and other unsecured creditors from the limited pool of remaining assets." (Ct. Rec. 66 Exhibit E at S-7 to S-8.)

9. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the existence of the Creditors' [**25] Trust Agreement.

10. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the paragraph entitled "Character and Treatment of Metropolitan Creditors' Trust for Tax Purposes" in the Trust Agreement contains the following statement: "all assets vesting in the Metropolitan Creditor's Trust will be treated for federal income tax purposes as having been transferred on the Effective date to the Metropolitan Beneficiaries and immediately contributed to the Metropolitan Creditor's Trust by such Metropolitan Beneficiaries." (Ct. Rec. 66 Exhibit G Attachment A P 2.3).

11. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that the paragraph entitled "Character and Treatment of Summit Creditors' Trust for Tax Purposes" in the Trust Agreement [*1203] contains the following statement: "all assets vesting in the Summit Creditor's Trust will be treated for federal income tax purposes as having been transferred on the Effective date to the Summit Beneficiaries and immediately contributed [**26] to the Summit Creditor's Trust by such Summit Beneficiaries." (Ct. Rec. 66 Exhibit G Attachment A P 3.3).

12. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that one paragraph entitled "Declaration of Trust" in the Trust Agreement states,

> Metropolitan has executed this trust agreement and all right, title, and interest of Metropolitan in and to the Metropolitan Transferred Assets hereby vests in the Plan Administrator, to have and to hold unto the Plan Administrator forever, in trust nevertheless, under and subject to the terms and conditions set forth herein and in the

Case 4:08-cv-01365-CW    Document 24    Filed 05/01/2008    Page 26 of 27

Page 10

463 F. Supp. 2d 1193, *; 2006 U.S. Dist. LEXIS 82838, **

Plan for the benefit of the Metropolitan Beneficiaries.

(Ct. Rec. 66 Exhibit G Attachment A P 2.1.)

13. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, of the fact that a second paragraph entitled "Declaration of Trust" in the Trust Agreement states,

> Summit has executed this trust agreement and all right, title, and interest of Summit in and to the Summit Transferred Assets hereby [**27] vests in the Plan Administrator, to have and to hold unto the Plan Administrator forever, in trust nevertheless, under and subject to the terms and conditions set forth herein and in the Plan for the benefit of the Summit Beneficiaries.

(Ct. Rec. 66 Exhibit G Attachment A P 3.1.)

14. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint

(Ct. Rec. 62) only, that the Securities and Exchange Commission has filed a case against Paul Sandifur in the Western District of Washington.

15. The Court will take judicial notice, for the purposes of ruling on the Defendant's Motion to Dismiss the First Amended Complaint (Ct. Rec. 62) only, that a number of Metropolitan and Summit's creditors have filed a class action suit against Metropolitan and Summit in this Court.

16. The Defendant's Motion to Dismiss the Plaintiff's First Amended Complaint, **Ct. Rec. 62**, is **DENIED.**

17. Counsel should be advised that unsolicited correspondence with the Court is not in accordance with the Federal Rules of Civil Procedure. Such correspondence has been and will be ignored.

**IT IS SO ORDERED**. The District Court [**28] Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this 14th day of November, 2006.

s/ Fred Van Sickle

United States District Judge

121DX6

********** Print Completed **********

Time of Request: Thursday, May 01, 2008  17:26:51 EST

Print Number:    1821:90494313
Number of Lines: 375
Number of Pages:

Send To:   FERALL, ELIZABETH
           BERDING & WEIL