David M. Birka-White (State Bar No. 85721)
Stephen Oroza (State Bar No. 84681)
Thomas D. Hicks (State Bar No. 238545)
BIRKA-WHITE LAW OFFICES
744 Montgomery Street, Fourth Floor
San Francisco, CA 94111
Telephone: (415) 616-9999
Facsimile: (415) 616-9494

Attorneys for Plaintiff Arnesha Garner

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA GARNER, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>                    Defendants. | Case No. C 08-01365 CW<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO COMPEL CONTRACTUAL APPRAISAL AND FOR A STAY PENDING APPRAISAL**<br><br>**JUDGE:** Claudia Wilken<br>**DATE:** May 22, 2008<br>**TIME:** 10:00 am<br>**COURTROOM:** 2, 2nd Floor |

        The court may take judicial notice of facts that are not subject to reasonable dispute and are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Fed.R.Evid. 201(b).

        "Courts may take judicial notice of records and reports of administrative bodies." *Interstate Nat. Gas Co. v. So. Cal. Gas. Co.*, 209 F.2d 380, 385 (9th Cir. 1953). Facts contained in public records are appropriate subjects of judicial notice. *Metropolitan Creditors' Trust v.*

1  *Pricewaterhousecoopers, LLP*, 463 F.Supp.2d 1193 (E.D.Wash. 2006) (Court can take judicial

2  notice of particular statements within documents that are undisputed and relevant to the issues

3  presented in the motion to dismiss).

4     "A court may also take judicial notice of the legislative history of a statute." *Hunt v.*

5  *Check Recovery Systems, Inc.*, 178 F.Supp.2d 1157, 1160 (N.D. Cal. 2007) (finding that the

6  legislative history of a California statute constitutes judicial facts sufficiently capable of accurate

7  and ready determination and granting judicial notice of the legislative history), *citing* Fed. R.

8  Evid. 201; *Palmer v. Stassinos*, 348 F. Supp.2d 1070, 1077 (N.D. Cal. 2004).  The Ninth Circuit

9  has permitted judicial notice of the legislative history of a number of California laws. *See Sprint*

10  *PCS Assets, LLC v. City of La Canada Flintridge*, 2006 U.S. App. LEXIS 12871, **6 (9th Cir.

11  2006) (Reviewing legislative history of California Utilities Code section judicially noticed by

12  district court); *Chaker v. Crogan*, 428 F.3d 1215, 1223 (9th Cir. 2005) (Granting appellant's

13  request for judicial notice of the legislative history of a California statute); *Elwood v. Morin*, 2004

14  U.S. App. LEXIS 42, **2 (9th Cir. 2004) (Granting appellant's request for judicial notice of the

15  legislative history of a California statute).

16     Attached hereto as Exhibit 1 is the Declaration of Maria A. Sanders, authenticating the

17  true and correct copy of the legislative history obtained by Ms. Sanders for Title 10 of California

18  Code of Regulations section 2695, et. seq.  Included in the legislative history obtained by Ms.

19  Sanders, and attached hereto, are the Notice of Proposed Action and Notice of Public Hearing

20  (listed under Exhibit B, number 3, on page 2 of the Sanders Declaration), an index of public

21  comments and the text of the comment, listing as number 29 a written comment by Steve

22  McManus on behalf of State Farm Mutual Automobile Insurance Company (listed under Exhibit

23  B, number 7, on page 2 of the Sanders Declaration), and the response to comment 29, submitted

24  by Mr. McManus, by the State of California Department of Insurance (listed under Exhibit B,

25  number 15, on page 2 of the Sanders Declaration).

26     Based on the foregoing, Plaintiff hereby requests that the Court take judicial notice of the

27  following portions of the legislative history for 10 California Code of Regulations section 2695:

28     1.    The Notice of Proposed Action and Notice of Public Hearing included in the

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE
CASE NO. C 08-01365 CW

1    legislative history for 10 California Code of Regulations section. 2695, a true and correct copy of

2    which is attached hereto as Exhibit 2.

3          2.       The Public Comments Index included in the legislative history for 10 California

4    Code of Regulations section 2695, indicating that the written comment submitted by Steve

5    McManus is comment number 29. A true and correct copy of the Public Comments Index is

6    attached hereto as Exhibit 3.

7          3.       The written comment submitted by Steve McManus on behalf of State Farm

8    Mutual Automobile Insurance Company included in the legislative history for 10 California Code

9    of Regulations section 2695, a true and correct copy of which is attached hereto as Exhibit 4.

10          4.       The State of California Department of Insurance's response to the portion of the

11    written comment submitted by Steve McManus dealing with  section 2695.8(b)(2), included in

12    the legislative history for 10 California Code of Regulations section 2695, a true and correct copy

13    of which is attached hereto as Exhibit 5.

14

15    Dated:  May 1, 2008                                    BIRKA-WHITE LAW OFFICES

16

17                                                          By

18                                                              David M. Birka-White

19

20

21                                                    Jeffrey B. Cereghino (State Bar No. 99480)
                                                      Steven R. Weinmann (State Bar No. 190956)
22                                                    BERDING & WEIL, LLP
                                                      3240 Stone Valley Road West
23                                                    Alamo, California  94507
                                                      Telephone: (925) 838-2090
24                                                    Facsimile: (925) 820-5592

25                                                    Counsel for Plaintiff Arnesha Garner

26

27

28

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE
                                                      CASE NO. C 08-01365 CW

# EXHIBIT 1



# LEGISLATIVE
# INTENT SERVICE, INC.

712 Main Street, Suite 200, Woodland, CA 95695
(800) 666-1917 • Fax (530) 668-5866 • www.legintent.com

---

## DECLARATION OF MARIA A. SANDERS

I, Maria A. Sanders, declare:

I am an attorney licensed to practice in California, State Bar No. 092900, and am employed by Legislative Intent Service, Inc. a company specializing in researching the history and intent of legislation.

Under my direction and the direction of other attorneys on staff, the research staff of Legislative Intent Service, Inc. undertook to locate the administrative registers and rulemaking file for the 2003 amendment of Title 10, California Code of Regulations section 2695, et seq.

The following list identifies the registers and rulemaking file obtained by the staff of Legislative Intent Service, Inc. for the 2003 amendment of Title 10, California Code of Regulations sections 2695, et seq. All listed documents have been forwarded with this Declaration except as otherwise noted in this Declaration. All documents gathered by Legislative Intent Service, Inc. and all copies forwarded with this Declaration are true and correct copies of the originals provided to Legislative Intent Service, Inc.

### EXHIBIT A - 2003 AMENDMENT OF TITLE 10, CALIFORNIA CODE OF REGULATIONS SECTIONS 2695, ET SEQ.:

|   |   |   |
|---|---|---|
| x | 1. | Excerpt regarding Title 10, California Code of Regulations section 2695, et seq., from Barclays Official California Code of Regulations, Vol. 14, August 6, 2004; |
| x | 2. | Excerpt regarding Title 10 from California Regulatory Notice Register, published Weekly by the Office of Administrative Law, Register 2002, No. 11-Z, March 15, 2002; |
|   | 3. | Administrative filing with the Secretary of State by the Department of Insurance, filed on April 24, 2003; |
| x | 4. | Excerpt regarding Title 10, California Code of Regulations sections 2695, et seq., from Barclays California Code of Regulations, Digest of New Regulations, Register 2003, No. 17, April 25, 2003. |

**EXHIBIT B – 2003 RULEMAKING FILE:**

1. Notice Publication/Regulations Submission;
2. Economic and Fiscal Impact Statement;
3. Notice of Proposed Action and Notice of Public Hearing;
4. Text of Proposed Regulations;
5. Initial Statement of Reasons;
6. Declaration of Mailing to Interested Parties;
7. Public Comments;
8. Public Hearing Transcripts;
9. Public Hearing Sign-In Sheets;
10. Response to Comments;
11. Notice of Availability of Revised Text;
12. Text of Proposed Regulations;
13. Declaration of Mailing to Interested Parties;
14. Written Comments Submitted During 15-Day Comment Period;
15. Response to Comments on Revised Amendments;
16. Text of Proposed Regulations;
17. Final Statement of Reasons;
18. Text of Proposed Regulations;
19. April 23, 2003 Memo to David Potter regarding Form 400;
20. Addendum to Final Statement of Reasons;
21. Addendum to Table of Contents;
22. Notice of Approval in Part and Disapproval in Part of Regulatory Action;
23. Declaration of Mailing to Interested Parties;
24. Notice of Availability of Revised Text;
25. Text of Proposed Regulation;
26. OAL Decision of Disapproval of Section 2695.2S;
27. Written Comments Submitted during 15-day Comment Period;
28. Response to Comments Proposed Amendments to §2695.2(s);
29. Addendum to Final Statement of Reasons;
30. Text of Proposed Regulations;
31. Notice Publication/Regulations Submission (STD 400);
32. Notice of Approval of Regulatory Action;
33. Interoffice Memo from OAL to Secretary of State.

x    Exhibits preceded by an "x" are excerpted. The original exhibit is lengthy and may not contain any further discussion relevant to your code section. The entire exhibit, or further portions of it, will be made available on your request for the cost of photocopying.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 1st day of May, 2008 at Woodland, California.

_____

MARIA A. SANDERS

W:\worldox\WDOCS\REGS\ccr\t.10\00096025.DOC

Page 3 of 3

# EXHIBIT 2

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE
45 Fremont Street, 21st Floor
San Francisco, California  94105


NOTICE OF PROPOSED ACTION AND
NOTICE OF PUBLIC HEARING


RH399
DATE: March 15, 2002


SUBJECT OF HEARING:

A hearing will be held regarding proposed changes to the fair claims
settlement practices regulations found at California Code of Regulations,
Title 10, Chapter 5, Subchapter 7.5, Sections 2695.1 through 2695.14.


AUTHORITY AND REFERENCE:

The Insurance Commissioner proposes to adopt, amend and repeal specified
portions of the subject regulations under the authority of Insurance Code
Sections 790.10, 12921, and 12926.  The Commissioner's decision on the
proposed changes to the regulations will implement, interpret and make
specific provisions of Insurance Code Section 790.03(h).


HEARING DATE AND LOCATION:

Notice is hereby given that public hearings will be held to permit all
interested persons the opportunity to present statements or arguments,
orally or in writing, with respect to these regulations as follows:

        Date and time:     May 8, 2002
                           10:00 am
        Location:          45 Fremont Street
                           22nd Floor Hearing Room
                           San Francisco, CA 94105


        Date and time:     May 9, 2002
                           10:00 am
        Location:          Department of Insurance Hearing Room
                           Ronald Reagan State Office Building
                           300 South Spring Street, 1st Floor
                           Los Angeles, California 90013


#72860 v4  1


LIS-3



PRESENTATION OF WRITTEN AND/OR ORAL COMMENTS; CONTACT PERSONS:

All persons are invited to present oral and/or written comments at the
scheduled public hearings. Written comments not presented should be
addressed to the following contact person:

      Risa Salat-Kolm, Senior Staff Counsel
      California Department of Insurance
      45 Fremont Street, 21st Floor
      San Francisco, CA  94105
      Telephone: (415) 538.4127

Questions regarding the hearing, comments, or the substance of the proposed
action should be addressed to the above contact person. If she is
unavailable, inquiries may be addressed to the following backup contact
person:

      Cindy A. Ossias, Senior Staff Counsel
      45 Fremont Street, 21st floor
      San Francisco, CA  94105
      Telephone: (415) 538.4124

DEADLINE FOR WRITTEN COMMENTS:

All written materials, unless submitted at the hearings, must be received by
the Insurance Commissioner, c/o the contact person at the address listed
above, no later than 5:00 on May 9, 2002. Any written materials received
after that time will not be considered.

COMMENTS TRANSMITTED BY E-MAIL OR FACSIMILE:

The Commissioner will accept written comments transmitted by e-mail provided
they are sent to the following e-mail address: salat-kolmr@insurance.ca.gov.
The Commissioner will also accept written comments transmitted by facsimile
provided they are sent to the following facsimile number: (415) 904-5490.
**Comments sent to other e-mail addresses or other facsimile numbers will not
be accepted. Comments sent by e-mail or facsimile are subject to the
deadline for written comments set forth above.**

ACCESS TO HEARING ROOMS:

The facilities to be used for the public hearing are accessible to persons
with mobility impairments. Persons with sight or hearing impairments are
requested to notify the contact person (listed below) for these hearings in
order to make special arrangements, if necessary.

ADVOCACY OR WITNESS FEES:

Persons or groups representing the interests of consumers may be entitled to

reasonable advocacy fees, witness fees, and other reasonable expenses, in accordance with the provisions of California Code of Regulations, Title 10, Chapter 5, Subchapter 4.5, in connection with their participation in this matter.  Interested persons should contact the Office of the Public Advisor at the following address, in order to inquire about the appropriate procedures:

> California Department of Insurance
> Office of the Public Advisor
> 300 Capitol Mall, 17th Floor
> Sacramento, CA 95814
> (916) 492-3559

A copy of any written materials submitted to the Public Advisor regarding this rulemaking must also be submitted to the contact person for this hearing, listed above.  Please contact the Office of the Public Advisor for further information.

INFORMATIVE DIGEST:

SUMMARY OF EXISTING REGULATIONS AND POLICY STATEMENT OVERVIEW:

California Insurance Code Section 790.03(h) sets forth sixteen claims settlement practices which, if knowingly committed or committed with such frequency as to indicate a general business practice, are held to be unfair claims settlement practices.  The Commissioner is empowered under Insurance Code Section 790.10 to promulgate rules and regulations, and amendments and additions thereto, as are necessary to administer Section 790.03(h) and related sections.  The Commissioner has previously promulgated regulations found at California Code of Regulations, Title 10, Section 5, Subchapter 7.5, Sections 2695.1 through 2695.14.  The Commissioner has determined that certain modifications to these regulations are necessary in order to effectively administer Insurance Code Section 790.03(h).  The amendments to the regulations would do the following:

1) Reorganize the subsections so that they are easier to understand and use.
2) Add or delete language for reasons of grammar or clarity.
3) Eliminate unnecessary portions of the regulations in cases where existing laws adequately cover the subject area.
4) Add subsections or portions of subsections where necessary to set forth reasonable standards of conduct in the handling of claims.

EFFECT OF PROPOSED ACTION:

The major effects of the regulations are as follows:

Section 2695.1(c)  -  Surety Claims (Repeal)

Existing subsection 2695.1(c) specifies that certain regulations do not apply to the handling or settling of claims brought under surety bonds. The proposed change is to repeal this subsection.  Even though a unique tripartite relationship exists between the surety insurer, the beneficiary of the surety bond, and the principal, the claims handling process is no more cumbersome with respect to the processing of these claims than in the more traditional first or third party claims setting.  As such, certain minimum standards set forth in the regulations should and do apply to claims brought under surety bonds.  For example, section 2695.7 of the regulations does not impede the surety's ability to conduct its business efficiently and fairly and in accordance with California Insurance Code section 790.03(h).

<u>Section 2695.1(b) and (c) - Home Protection (Amend and Adopt)</u>

The proposed amendments clarify and codify the Department's determination that the Fair Claims Settlement Practices Regulations apply, as a matter of law, to claims brought under home protection contracts written by home protection companies (and respond directly to a decision of an administrative law judge to the effect that the provisions of the Fair Claims Settlement Practices Regulations do not apply to home protection companies or home protection contracts).  There is no legal or equitable justification for treating home protection contract claims differently than other similar claims, or home protection companies differently than similarly situated licensees.

<u>Section 2695.1(e)  - Minimum Claims Standards (Adopt)</u>

Since the adoption of these regulations in 1993, the Department has witnessed several instances of insurers developing insurance contract language in order to circumvent one or more of these regulations. As an example, even though the regulations require an insurer to include sales tax in an automobile total loss settlement, some insurers placed into their contract a provision that precludes payment of sales tax. If insurers are permitted to circumvent the regulations by contracting certain consumer protections out of the insurance policy, it defeats the purpose of having minimum claims handling standards.  In order to maintain the integrity of these regulations and create uniformity in the claims handling practices of insurers, subsection (d) was adopted.

**Section 2695.8.    Additional Standards Applicable to Automobile Insurance.**

The regulations dealing with automobile insurance claims underwent the most change during this amendment process. Automobile insurance is the most prevalent coverage and automobile insurance claims affect the most consumers in California.  The Department receives thousands of consumer complaints each year providing substantial input from insurers and



consumers on all aspects of automobile insurance claims. The amendments proposed to this section are a direct result of this input.

In reference to total loss claims, the significant changes include (1) requiring third party claims to be held to the minimum standards set forth in the regulations; (2) clarifying the principle that sales tax and license fees are a necessary component of any total loss settlement; and (3) qualifying the definition of "comparable vehicle." See Section 2695.8(b).

Other changes to this section include setting minimum standards for insurers that direct, by insurance contract, that an insured utilize a network of specific auto body repair shops. These insurers charge a 20% co-payment penalty if the insured has the auto repaired in a non-network shop. The unique nature of these contracts requires particular disclosure and claim settlement standards. See Section 2695.8(g).

**Section 2695.85. Auto Body Repair Consumer Bill of Rights**

This new section is adopted under the authority of implementing recently enacted Senate Bill SB1988, which became effective January 1, 2001 and created new California Insurance Code Sections 1874.85 and 1874.87. Under California Insurance Code Section 1874.87, the Department was required to develop an Auto Body Repair Consumer Bill of Rights as a standardized form. This standardized form was developed after consultation with industry and consumer groups. Insurers are now required to provide their insureds with this form. This section interprets and clarifies the new insurance code section and answers some of the questions brought up by the industry. This section also dictates the exact language to be used in the standardized form.

**Section 2695.9. Additional Standards Applicable to First Party Residential and Commercial Property Insurance**

Major amendments to this section include (1) prohibition of an insurer's withholding of a general contractor's overhead and profit if those costs are likely to be incurred; (2) providing minimum standards for estimating property damages and directing insureds to insurer-chosen contractors; and (3) addressing the problem of delay in the appraisal process caused by insurers that request discovery, subpoenas of evidence, expert testimony and other tools associated with civil litigation.

**Section 2695.12. Penalties**

This section is currently entitled "Noncompliance and Penalties". The major change made to this section reflects the position that while certain factors are relevant to mitigate the penalties to be assessed, these factors do not render a non-compliant act compliant. Another

change is to repeal subsection 2695.12(a) as the term "knowingly" is defined in subsection 2695.2(l) of the regulations.

<u>MANDATES ON LOCAL AGENCIES OR SCHOOL DISTRICTS</u>:

The proposed regulations do not impose any mandate on local agencies or school districts.  There are no costs to local agencies or school districts for which Part 7 (commencing with Section 17500) of Division 4 of the Government Code would require reimbursement.

<u>COST OR SAVINGS TO STATE/LOCAL AGENCY OR SCHOOL DISTRICT OR IN FEDERAL FUNDING</u>:

The Commissioner has determined that there will be no cost or savings, discretionary or nondiscretionary, to any local agency, state agency or school district from the proposed regulations, and that the proposed regulation will not affect federal funding to the State.

<u>ECONOMIC IMPACT ON BUSINESSES AND THE ABILITY OF CALIFORNIA BUSINESSES TO COMPETE</u>:

The Commissioner has made an initial determination that the proposed amendments may have a significant, statewide adverse economic impact directly affecting business, including the ability of California businesses to compete with businesses in other states.  The types of businesses that may be affected are insurers and claims agents as defined under the current regulations.  There will be additional record-keeping requirements imposed upon certain insurers that have not previously been subject to these regulations.  The Commissioner has not considered proposed alternatives that would lessen any adverse economic impact on business and invites interested parties to submit proposals. Submissions may include the following considerations:
     (i) The establishment of differing compliance or reporting requirements or timetables that take into account the resources available to businesses.
     (ii) Consolidation or simplification of compliance and reporting requirements for businesses.
     (iii) The use of performance standards rather than prescriptive standards.
     (iv) Exemption or partial exemption from the regulatory requirements for businesses.

<u>POTENTIAL COST IMPACT ON PRIVATE PERSONS OR ENTITIES/BUSINESSES</u>:

The Commissioner is not aware of any cost impacts that a representative private person or business would necessarily incur in reasonable compliance with the proposed action.

FINDING OF NECESSITY:

The Commissioner finds that it is necessary for the welfare of the people of the state that the regulations apply to businesses.

EFFECT ON JOBS AND BUSINESSES IN CALIFORNIA:

The Commissioner is required to assess any impact the regulations may have on the creation or elimination of jobs in the State of California, the creation of new businesses, the elimination of new businesses, and the expansion of businesses currently operating in the state.  The Commissioner does not foresee that the proposed regulations will have an impact on any of the above but invites interested parties to comment on this issue.

IMPACT ON HOUSING COSTS:

The matters proposed herein will have no significant effect on housing costs.

ALTERNATIVES:

The Commissioner must determine that no reasonable alternative considered by the Commissioner or that has otherwise been identified and brought to the attention of the Commissioner would be more effective in carrying out the purposes for which the regulations are imposed or would be as effective and less burdensome to affected private persons than the proposed regulations.  The Commissioner invites public comment on alternatives to the regulations.

IMPACT ON SMALL BUSINESS:

The Commissioner has determined that the proposed amendments may affect small businesses to the extent independent insurance adjusters (as opposed to those who are insurance company employees) qualify as small businesses.  These individuals and entities will be required to comply with the applicable amendments.

COMPARABLE FEDERAL LAW:

There are no existing federal regulations or statutes comparable to the proposed regulations.

TEXT OF REGULATIONS AND INITIAL STATEMENT OF REASONS:

The Department has prepared an initial statement of reasons that sets forth the reasons for the proposed changes to the regulations.  Upon **written or e-mailed** request, the initial statement of reasons will be made available for inspection and copying.  Written requests for the

initial statement of reasons or questions regarding this proceeding
should be directed to the contact person listed above.  Upon **written
or e-mailed** request, the final statement of reasons will be made
available for inspection and copying once it has been prepared.
Written requests for the final statement of reasons should be directed
to the contact person listed above.

The file for this proceeding, which includes a copy of the proposed
regulations, the statement of reasons, the information upon which the
proposed action is based, and any supplemental information, including
any reports, documentation and other materials related to the proposed
action that is contained in the rulemaking file, is available for
inspection and copying **by prior appointment** at 45 Fremont Street, 21st
Floor, San Francisco, California 94105, between the hours of 9:00 a.m.
and 4:30 p.m., Monday through Friday.

   AUTOMATIC MAILING:

A copy of this notice, including the informative digest, which contains
the general substance of the proposed regulations, will automatically
be sent to all persons on the Insurance Commissioner's mailing list.

   WEBSITE POSTINGS:

Documents concerning this proceeding are available on the Department's
website.  To access them, go to http://www.insurance.ca.gov.  Find near
the top of the page the major heading 'Protecting Consumers.'  In this
section, scroll down until you see the subheading 'BE INFORMED.'  Click
on the nearby 'Search for Proposed Regulations' link.  When the "Search
or Browse for Documents for Proposed Regulations" screen appears, you
may choose to find the documents either by conducting a search or by
browsing for them by name.

To search, enter 'RH399' (the Department's regulation file number for
these regulations) in the search field.  Alternatively, search using as
your search term the California Insurance Code number of a code section
that the regulations implement (for instance, "790.03"), or search by
keyword ('fair,' for example, or 'settlement').  Then, click on the
"Submit" button to display links to the various filing documents.

To browse, click on the "Browse All Regulations" button near the bottom
of the screen.  A list of the names of regulations for which documents
are posted will appear.  Find in the list the "Fair Claims Settlement
Practices" link, and click it.  Links to the documents associated with
these regulations will then be displayed.

   MODIFIED LANGUAGE:

If the regulations adopted by the Department differ but are

sufficiently related to the action proposed, they will be available to
the public for at least 15 days prior to the date of adoption.
Interested persons should request a copy of these regulations prior to
adoption from the contact person listed above.


Dated: March 6, 2002                    HARRY W. LOW
                                        Insurance Commissioner


                                        By_____
                                          Jerry L. Whitfield
                                          Deputy Commissioner

# EXHIBIT 3



STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE
45 FREMONT STREET, 21st FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**Risa Salat-Kolm**                                                    **RH-399**
Staff Counsel

**Fair Claims Settlement Practices Regulations**
**PUBLIC COMMENTS INDEX**
**VOL. #1**

|  | **DATE** | **DESCRIPTION** |
|---|---|---|
| 1. | April 3, 2002 | Written comments from Gary R. Petersen (e-mail) |
| 2. | April 5, 2002 | Written testimony of Carol P. LaPlant, Esq. |
| 3. | April 7, 2002 | Written comments from Jack T. Molodanof |
| 4. | April 30, 2002 | Written comments from John Metz |
| 5. | May 2, 2002 | Written comments from Michael Palache of Rubin, Palache & Associates |
| 6. | May 4, 2002 | Written comments from John S. Benton of Government Strategies, Inc. |
| 7. | May 6, 2002 | Written comments from Dean Hansell of LeBoeuf, Lamb, Greene & MacRae |
| 8. | May 6, 2002 | Written comments from Paul Gladfelty of California Surety Federation |
| 9. | May 7, 2002 | Written comments from Sean E. McCarthy of Stoel Rives |
| 10. | May 7, 2002 | Written comments from Senator Jackie Speier of California State Senate |
| 11. | May 7, 2002 | Written comments from Jeffrey J. Fuller of Association of California Insurance Companies |
| 12. | May 7, 2002 | Written comments from Gilbert E. Stein of California Applicants' Attorney Association |
| 13. | May 7, 2002 | Written comments from G. Diane Colborn of Personal Insurance Federation of California |
| 14. | May 8, 2002 | Written comments from Douglas L. Hallett of Mercury Insurance Group |
| 15. | May 8, 2002 | Written comments from Marilyn Klinger of Sedgwick, Detert, Moran & Arnold |

#235958 v1

| 16. | May 8, 2002 | Written comments from David C. Veis of Robins, Kaplan, Miller & Ciresi |
| 17. | May 8, 2002 | Written comments from Douglas C. de Vries |
| 18. | May 8, 2002 | Written comments from Samuel Sorich of National Association of Independent Insurers |
| 19. | May 8, 2002 | Written comments from Amy Bach of United Policyholders |
| 20. | May 8, 2002 | Written comments from Mitchell International |
| 21. | May 8, 2002 | Written comments from Lea-Ann Tratten |
| 22. | May 8, 2002 | Written comments from David A. De Young |
| 23. | May 9, 2002 | Additional written testimony of Carol P. LaPlant, Esq. |
| 24. | May 9, 2002 | Written comments from Kirk Hansen (e-mail) |
| 25. | May 9, 2002 | Written comments from Norma P. Garcia of Consumers Union |
| 26. | May 9, 2002 | Written comments from Ruben Cruz |
| 27. | May 9, 2002 | Written comments from Kirk Hansen of Alliance of American Insurers |
| 28. | May 9, 2002 | Written comments from Douglas A. Lutgen of CSAA Inter-Insurance Bureau |
| 29. | May 9, 2002 | Written comments from Steve McManus |
| 30. | May 9, 2002 | Written comments from Peter J. Fitzpatrick |
| 31. | May 9, 2002 | Written comments from Eileen Shanonof Ingenix, Inc. |
| 32. | May 9, 2002 | Written comments from Paul Geissler of Geissler & Nimoy |
| 33. | May 9, 2002 | Written comments from George Spaeth of Spaeth & McGrath |
| 34. | May 9, 2002 | Written comments from Mark Mester of Latham & Watkins |
| 35. | May 9, 2002 | Written comments from Barger & Wolen |
| 36. | May 9, 2002 | Oral Testimony of Kent Keller |
| 37. | May 14, 2002 | Written comments from Bennett L. Katz of Farmers Insurance Group |
| 38. | May 9, 2002 | Written comments from Bill Gausewitz of American Insurance Association |

# EXHIBIT 4

RH399 Proposed Amendments

.1, .2, .4 .7, .8,
.85, .9, .12, .14

**Salat-Kolm, Risa**

(Same as letter that is followed)

| | |
|---|---|
| **From:** | Steve McManus [steve.mcmanus.benm@statefarm.com] |
| **Sent:** | Thursday, May 09, 2002 1:28 PM |
| **To:** | Salat-Kolm, Risa |
| **Cc:** | Steve McManus |
| **Subject:** | RH399 Proposed Amendments |

VIA FACSIMILE & E-MAIL

May 9, 2002

Risa Salat-Kolm, Senior Staff Counsel
California Department of Insurance
45 Fremont Street, 21st Floor
San Francisco, CA 94105

RE:    RH399 Proposed Amendments to the Fair Claims Settlement Practices Regulations, California
Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Sections 2695.1 through 2695.14

Dear Ms. Salat-Kolm:

On behalf of State Farm Mutual Automobile Insurance Company, State Farm General Insurance
Company and State Farm Life Insurance Company (hereinafter, and collectively, "State Farm"), we are
pleased to submit written comments pertaining to the above-captioned matter. State Farm is the largest
automobile and homeowners insurer in California and the United States. In addition, State Farm has a
significant market presence in life insurance in California and the nation.

<u>Thematic Issues</u>

State Farm is deeply concerned about the proposed amendments to the California Fair Claims
Practices regulations. In reviewing the amended regulations, several disturbing themes repeatedly
emerge. These themes, which are woven into the proposal, include:

> - requirements that insurance claims personnel undertake activities that may constitute the
> unauthorized practice of law;

> - standards of indemnity that unjustly enrich claimants at the expense of all insurance
> consumers;

> - standards that put the financial interests of contingency-fee lawyers above the interests of
> insurance consumers;

> - an effort to dictate policy contract terms and minimum standards of coverage not
> authorized by statute;

5/14/02

- regulations that promote litigation in lieu of voluntary settlements;

- efforts to regulate beyond the insurance industry by making insurers responsible for the actions of private third-parties;

- attempts to extend first-party contractual benefits to third-party claimants; and

- holding insurers to highly impractical or impossible standards of conduct that will dramatically increase insurer legal exposure for not complying with the regulations at hand.

<u>Section-Specific Comments</u>

**Section 2695.1(c)** The proposed repeal of existing subsection 2695.1(c) is a dramatic change in CDI policy. In the statement of reasons, CDI states the surety claim handling process is no more cumbersome than in the more traditional first or third party claims setting. This observation is wrong. In surety, the primary obligation is always the principal's. The surety's obligation to perform is secondary and requires proof of default by the principal, before the surety's obligation even begins to exist. Therefore, the surety is entitled to demand the principal secure the surety's release prior to performing their obligation to the obligee. This process, and the proof process required of the obligee, can become lengthy and very detailed (i.e. a detailed estimate of construction work as completed verus contractual obligation). The surety does provide notice of claim status to obligees, however, because of the complex claim process, the timeframes in 2695.7 are highly impractical and commercially unreasonable. For these reasons, 2695.1(c) should not be repealed.

**Section 2695.1(f)**
Proposed section 2695.1(f) proclaims, without foundation, "provisions of all policies delivered or issued in this state shall be consistent with or more favorable to the insured than these regulations." This new subsection is directed at the specific terms of insurance policy contracts. The regulation of policy language is not authorized by or consistent with the statutory enabling framework. California Insurance Code (CIC) §790 reads, in relevant part:

> The purpose of this article is to regulate <u>trade practices</u> in the business of insurance... by defining, or providing for the determination of, <u>all such practices</u> in this state which constitute unfair methods of competition or unfair or deceptive <u>acts or practices</u> and by prohibiting the <u>trade practices</u> so defined or determined. (Emphasis added)

Clearly, the focus of the statutory law and the existing regulations is to regulate insurer practices. Mandating insurers provide benefits or establish minimum policy standards is not authorized by the statute and inconsistent with statutory intent. In addition, the language in subsection (f) is overly broad and, therefore, lacking in clarity.

**Section 2695.2(l)**
The proposed change of the current definition "knowingly committed" to "knowingly" has unfairly broad and punitive implications for insurers. "Knowingly committed" is the statutory term of art found in CIC §790.03(h). This section, which addresses prohibited claims practices, reads, in relevant part:

> <u>Knowingly committing</u> or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices... (Emphasis added).

The term "knowingly" alludes to a state of general awareness about any given activity. The term



"knowingly committed" implies a willful and affirmative action. The distinction is critically important because of changes made to 2695.12 of the proposed regulation. Section 2695.12, which currently regulates noncompliance and penalties, provides a listing of acts deemed to be knowingly committed violations of the Fair Claims Practices regulations (emphasis added). By deleting the language in 2695.12 and amending the definition at hand to knowingly, the regulations now imply that all violations were knowingly committed or intentional (emphasis added). The great majority of an insurer's conduct in the market complies with applicable law and regulations. Instances of noncompliance are likely unintentional and not knowingly committed. This elaborate reworking of the regulatory language appears to have been done to severely punish regulated entities. The proposed definition is not authorized by statute and is clearly inconsistent with CIC §790.03(h). For these reasons the proposed changes to 2695.2(l) should be withdrawn.

**Section 2695.2(s)** The proposed changes would amend the definition of the term "proof of claim." State Farm questions the necessity of the proposed changes. The proposed changes also lack clarity. It is proposed to amend proof of claim to include "any evidence or documentation in the claimant's possession or any evidence..." This revised definition would make insurers responsible for items in a claimant's possession that have not been submitted to an insurer. This proposed change goes well beyond what is intended by CIC §790.03(h) and sets a precedent for a standard of performance that cannot be met. Additionally, the drafters seem to have blended the meanings of "proof of claim" and "notice of claim." The latter term is defined in 2695.2(n). Proof of claim deals with the amount of loss or damages. Therefore, the last phrase in the existing regulatory section, "magnitude or the amount of the claim loss," should not be deleted. Finally, the term "evidence" appears to be used without authorization and its use creates a lack of clarity.

**Section 2695.4(a)** The proposed amendments to the new 2695.4(a) are highly problematic for several reasons. Under California law, the courts look to the insurance policy contract to determine the rights and obligations of each party to the contract. Under one application of this rule, the law provides that the policyholder has the obligation to make a claim for coverage and benefits under the policy. Because proposed 2695.4(a) must be interpreted to be consistent with controlling law, it is not clear what obligations are imposed upon an insurer by a regulation that directs that "no insurer shall misrepresent, conceal or fail to disclose to a first-party claimant or beneficiary all benefits, coverages, time limits and other provisions..." (Emphasis added). A prohibition of a non-act does not clearly direct an insurer as to the expected conduct, in contrast to the currently existing affirmative language.

The proposed regulation eliminates entirely the connection between the required disclosure or, prohibited nondisclosure, and the specific claim presented by the claimant. It is not clear how this change affects the obligations of the insurer. Potentially, the insurer is now required to effectively redeliver the entire policy to the first-party claimant to affect the required disclosure or avoid the prohibited nondisclosure. Under the literal proposed language discussed above, an insurer is held to an absurd standard and it defeats any rational purpose of the regulation.

Finally, State Farm objects to the new language requiring its claims people to inform first-party claimants of "any pertinent statutes and regulations that the insurer relies upon to process the claim." This provision requires our claims people to make legal judgments that would likely constitute the unauthorized practice of law. While insurers should disclose benefits available to its insureds, insurers should not be required to act as lawyers for its insureds. Such a requirement conflicts with California's attorney licensing and practice laws.

For all of these reasons, the proposed language changes to 2695.4(a) should not be adopted.

**Section 2695.4(a)(1)** The intent of proposed 2695.4(a)(1) is good. For purposes of clarity, State Farm

offers two suggestions. First, the word "immediately" is undefined. We assume it means in a timely manner, without undue delay or as soon as practical. Literally read, we question whether "immediately" is a commercially reasonable standard. In its place, we suggest the "reasonableness" standard which is the measure of an insurer's good faith claim handling. Next, we suggest deleting the phrases "cooperate with and assist the insured in determining the extent of the insurer's additional liability." This phrase fails to accurately describe the claims process, as insureds do not determine the extent of liability. Insurers determine the extent of liability by applying the policy terms to the claim facts and explaining the process to the insured. When additional benefits may apply, the insurer should notify the first-party claimant in a timely manner. This language makes the duty clear.

**Section 2695.7(b)** The new language in this regulatory provision would require insurers to clearly document the amounts of claims accepted or denied. This language is highly problematic because insurers do not typically estimate the amount of damages on claims denied based on lack of coverage under the policy or legal liability. Perhaps some examples will better illustrate our concern. If a State Farm insured's vehicle is hit by another vehicle while parked, and the owner of the other vehicle files a claim, we'll deny the claim because our insured was not at-fault. This regulation would require State Farm to document the amount denied and perhaps require State Farm to prepare a damage estimate on a claim it does not owe. Similarly, if a person were to make a fire insurance claim with State Farm several months after their policy terminated this regulation would require State Farm to document the amount of the claim presented. This is unnecessary when there clearly is no coverage. Finally, with respect to partial losses, we may pay for water damage caused by a leaky roof in disrepair. Repairs needed to the roof itself would not be covered if the roof simply wore out over time. This proposed change would require insurers to perform an estimate to fix the roof prior to denying that portion of the claim. Again, this provision will create unnecessary work for insurers. This change does not appear to be authorized by statute. In addition, it will harm consumers by increasing insurer expenses and ultimately premiums paid by consumers. It will confuse claimants by giving them hope a claim will be paid because insurers are forced to estimate the amount of the claim that will be denied. Finally, this proposed requirement will inconvenience claimants by making them provide insurers access to damage property for claims that will be denied. For all of these reasons, we request that the proposed language be deleted.

**Section 2695.7(b)(1)** The proposed changes to this provision of the regulation include a requirement that insurers explain the application of a statute to a claim if a claim is denied based on the statute. This amendment is unnecessary because claim denials are based on language in the policy contract, not on statutory law. Further, requiring claims personnel to explain statutory law puts them in the position of rendering legal opinions. Such a provision may constitute the unauthorized practice of law and arguably violates California attorney licensing and practice laws. For these reasons, the referenced language should be stricken. Also, the references to surety bonds should be deleted from this subsection for reasons articulated in our comments on 2695.1(c), above.

**Section 2695.7(b)(5)** This proposed new language includes a statement that reads: "The cost of labor is not subject to depreciation." This proposed standard is objectionable for many reasons. First, the prohibition is not statutorily authorized. It also is not necessary. There is no precedent for prohibiting the depreciation of labor in the field of Accounting. In the insurance arena how can CDI expect an insurer to separate the cost of labor from the cost of materials and overhead in adjusting a claim for property? What percent of the cost of a given television or article of clothing is attributable to labor? Once again, these regulations are proposing to impose an impossible performance standard on insurers. Many types of insurance policies, including national flood insurance policies, contain actual cash value settlement provisions that require property to be depreciated. Segregating the labor from the materials cost in adjusting such claims is highly impractical, if not impossible. Adoption of this provision is another attempt to prescribe minimum policy standards. For all of these reasons, the sentence discussed above should be deleted from the regulation.

5/14/02

**Section 2695.7(d)** The proposed amendments to this subsection of the regulations would impose a new standard of investigation on insurers. Insurers would be required to "conduct and diligently pursue a thorough, fair and objective investigation." This standard does not appear to be statutorily authorized. We view this language as a new standard of conduct in bad faith and unfair competition actions. Such standard is not authorized, therefore, it is objectionable. CDI relies on Egan v. Mutual of Omaha (1979) 24 Cal.3d. 809 as authority for the change in this standard. This case held that "an insurer may break the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." (Emphasis added). In addition, in subsequent case doctrine, the proposed standard for investigations is a "reasonableness" standard when reviewing insurer conduct to determine if an insurer has met the implied covenant of good faith and fair dealing. See Tomaselli v. Transamerica Ins. Co (1994) 25 Cal.App.4[th] 1269 and Opsal v. USAA (1991) 2 Cal.App.4[th] 1197. See also, California Jury Instructions, Civil, 9th Edition, BAJI 12.92. Therefore, the proposed investigatory standard is inconsistent with existing case law.

Three new cases have been added to the legal authority cited by CDI for the provisions of 2695.7. Each case involves an allegation of bad faith claim handling on the part of an insurer by its own insured. You will note privity of contract exists in each of these first-party cases. 2695.7 is applicable to first and third party claimants, unless otherwise stated. Therefore, it would appear the investigatory standard in 2695.7(d) is intended to apply to first and third party claims. While the authority cited in the paragraph above clearly demonstrate that the proposed investigatory standard should be stricken as toward all claimants, the authority relied on by CDI, at a minimum, warrants striking the proposed standard as to third parties. See Egan v. Mutual of Omaha 24 Cal.3d 809 (1979). In addition to duties imposed on contracting parties by express terms of agreement, the law implies in every contract, a covenant of good faith and fair dealing. (Emphasis provided). The "diligently pursue a thorough, fair and objective investigation" is conspicuously absent in KPFF, Inc. v. California Union Ins. Co. 56 Cal.App4th 963, "Covenant of good faith and fair dealing entails a duty to investigate properly submitted claims..."(emphasis added). Also, "the duty to investigate applies only to performance of contractual duties under the insurance policy. Since it is an aspect to the covenant of good faith and fair dealing. An insurer thus has no duty to investigate matters that are not relevant to the performance of its contractual obligation to properly handle the insured's claim according to the terms of the policy." Id.

For all the reasons mentioned above, the proposed amendments to subsection 2695.7(d) should be withdrawn.

**Section 2695.7(e)** The reference to surety bonds should be deleted from the proposal for reasons articulated in our comments to 2695.1(c). In addition, this proposed change now states that an insurer shall not delay or deny payment under a surety bond on the basis that payment should be assumed by others. The proposal fails to recognize the duty of a principal to perform under a surety bond as the primary duty in the contract. The proposal to include surety bonds in this regulatory framework is inconsistent with the common law relationships and contractual obligations of parties to a surety bond. In sum, surety bonds should continue to be excluded from these regulations.

**Section 2695.7(f)** Deletion of the last sentence in existing subsection 2695.7(f) would require an insurer to notify a claimant represented by counsel that the statute of limitations on bringing a claim was about to be triggered. This change is not statutorily authorized and State Farm questions the need for the proposed requirement. This new requirement is inconsistent with the policy objective of reducing litigation that is cited in the statement of intent. The proposed change would likely increase litigation over time limitation periods and give rise to additional proof of mailing disputes.

Ethically, an insurer cannot communicate directly with a claimant represented by counsel. Even if the



proposal was amended to require insurers to provide notice to claimant's counsel, the proposal would still be flawed. Such a proposal would put insurer claims personnel in the position of giving legal advice to lawyers. This is an absurd result and may constitute the unauthorized practice of law. Such a result is inconsistent with the attorney licensing and practice laws. Further, an attorney representing a claimant should be well aware of the statute of limitations and any other time period requirements involved in the processing of a claim. Claimants are already protected from errors and omissions of counsel by legal malpractice remedies. The additional notice requirements will add to insurer expenses unnecessarily. Such costs are ultimately borne by consumers. In sum, it would appear this proposed change has more to do with making sure contingency fee lawyers collect their fees than protecting insurance consumers. For all of these reasons, the language CDI proposes to delete should remain in the regulations.

**Section 2695.7(g)(7)** Deletion of the words "the final" in this subsection are objectionable. CDI's role as insurance regulator makes it the overseer of insurer market conduct. It is improper for CDI to actively participate in the claim settlement process. The proposed change to this subsection would change the role of the regulator to mediator, appraiser or arbitrator of an ongoing claim. This is an improper role for the regulator to assume and it is not statutorily authorized. It is foreseeable that CDI complaint analysts would intervene in the claims settlement process, in opposition to insurers, at the request of contingency fee lawyers. These interventions would result in attempts to leverage insurers to pay more money on a claim whether or not it is owed. The existing language in this subsection should not be amended.

**Section 2695.7(h)** State Farm strongly objects to the proposed amendments to 2695.7(h). The proposed amendments would require insurers, upon acceptance of a claim in whole or in part, to tender payment immediately. The proposed language further reads that the amount of the claim to be tendered is the amount that has been accepted. These provisions are inconsistent with California law. See Trujillo v. Yosemite-Great Falls Ins. Co. (1984) 153 Cal.App.3d 26. The changes proposed would require insurers to pay third-party claims without securing a release for its insured's liability. This leaves insurance consumers who are sued or claimed against unprotected. It also forces insurers to pay money when there is no agreement or mutual assent as to the settlement amount. Forcing insurers to make such payments without consideration in return calls into question the authority and necessity of the proposed rule. These proposed amendments will also discourage the voluntary settlement of claims because insurers will be reluctant to make an offer in third-party cases where liability or damages are highly questionable. The process of negotiating settlements with contingency fee lawyers representing third-parties will also be distorted for the benefit of those lawyers. Early payment of a claim not settled will remove much of the contingency of recovery that justifies their large fees. While helpful to the attorney, this result is not beneficial to consumers. Additional litigation is likely to arise about what part of a claim an insurer has "accepted" and what constitutes "acceptance" and was an offer of settlement made. Again, this is good for the attorneys but consumers do not benefit from a regulatory framework that discourages settlement and encourages litigation. Finally, this proposed change raises insurer costs by discouraging settlements and forcing insurers to keep their files open longer thereby incurring greater labor and defense costs. Ultimately, these costs are passed onto consumers in rates. For all these reasons, the proposed amendments to 2695.7(h) should be withdrawn.

**Section 2695.7(p) and (q)** These subrogation provisions, like this entire rule proposal, should not be applicable to surety bonds. There is a common law right of subrogation on all surety claims (emphasis provided). The law of surety bonds has never required the surety to pursue an excess loss on behalf of the obligee, nor prorate any recovery. The theory is if the bond (financial guarantee) amount is inadequate, the principal is responsible for any additional liability. The surety's only obligation is that which is contracted for in the bond itself. The contractors who purchase these bonds are sophisticated buyers. Surety bonds operate more like an extension of credit than pure insurance. For example, if a

bank were to repossess a car it would not give a pro rata share of the recovery to a co-signor on the loan. Nor would a co-signor give any part of its recovery from the original debtor to the bank. Surety law is no different. This distinct difference between surety and traditional insurance is the reason surety was and still should be excluded from the Fair Claims Settlement Practices regulations.

**Section 2695.7(r)** The language in this proposed section tries to impose the thorough, fair and objective investigatory standard on insurers without authorization. The statement of reasons indicates this is being done to make subsection 2695.7(r) consistent with subsection 2695.7(d). This proposed standard is inconsistent with applicable claim handling investigation standards (see comments on proposed subsection 2695.7(d) above) and it is imposed here as a subrogation prerequisite without any legal authority. In addition, because subsection 2695.7(d) relates to claims disputes and subsection 2695.7(r) relates to subrogation efforts, there is no need to make these subsections consistent. It appears CDI is trying to inhibit subrogation recoveries from uninsured parties, since subrogation is appropriate when an insurer pays a claim presented by its insured and said claim was caused by the negligence of a third-party (emphasis added). It seems poor public policy to put the interests of illegally uninsured drivers above the interests of insurance consumers.

**Section 2695.7(s)** This subsection makes insurers responsible for the accuracy of data derived from any source, including computerized databases, if said data is used in the evaluation of insurance claims. It is impossible for insurers to comply with this standard. Therefore, the only purpose it will serve is to promote litigation for the benefit of contingency fee lawyers. Further, this broad standard clearly does not have statutory authorization. Should insurers be responsible for the accuracy of data in motor vehicle accident reports used to evaluate the liability of a third-party claim? What about the accuracy of independent witness reports? Expert witness reports? Government databases? Price quotes from electronic, clothing, furniture stores and other retailers when getting replacement cost quotes for damaged or stolen personal property? Making insurers responsible for the accuracy of all this data is asking them to verify information found in reference materials by doing primary research. This scenario will significantly slow the claims settlement process. The specific reference to computer databases seems to deny insurance consumers the benefits of cost savings and service efficiencies provided by technology. In sum, this proposed subsection was contrary to many of the stated goals of Calif. Insurance Code 790.03(h) and insurer compliance is essentially impossible with such a regulation.

**Section 2695.8(b) and (b)(1)** The changes proposed to this subsection would expand current regulations to include third-party total loss claims. This change is not statutorily authorized as auto insurers are not contractually obligated to provide replacement vehicles to third parties. This proposed change is confusing and lacking in clarity because settlement of first-party claims are based on the contract, while settlement of third-party claims are based on tort law. The problem arises in paragraph (1) of subsection 2695.8(b) below.

This paragraph starts off "The insurer may elect a cash settlement..." In a third-party claim, an insurer cannot make such an election. Cash settlement is essentially the only type of settlement available to third-parties. Also, most automobile insurance policies do not have liability deductibles. The calculation of license and other annual fees also may need to be adjusted for comparative fault reasons in third-party claims. In sum, the provisions of 2695.8(b) and (b)(1) are overly broad and lacking in clarity as applied to third-party claims. Therefore, the language in 2695.8(b) should not be amended as proposed.

**Section 2695.8(b)(1)(A)** What is CDI's intention with respect to the new requirement that insurers provide contact information for the salvage dealer? This should be made clear. Is this intended to give claimants an opportunity to change their mind and sell the salvage vehicle? Or is it intended to allow the claimant to verify the salvage deduction? Either way, the intent should be clarified.

5/14/02



**Section 2695.8(b)(2)** This subsection proposes several changes to the way automobile total losses are evaluated. First, limiting the use of newer model years. Most insurers rely on one of a handful of computer databases to provide information on comparable vehicles. By limiting the use of newer model vehicles, the proposed regulation would reduce the statistical credibility of values given for comparable vehicles. That is, valuations would likely be less accurate.

Requiring the cost of a comparable vehicle to be based on the ask price, as opposed to the take price is illogical. Most courts of law would take judicial notice of the fact that consumers do not pay the full ask price for automobiles in the new or used car markets. This is proved by opening the newspaper to the used car classified ads. Very often, the acronym "OBO" appears after the ask price. This stands for the words "or best offer." Upon seeing this notice, it would be highly unusual for a buyer to pay the full ask price. In addition, auto dealer ask prices for cars are compiled in the Kelly Blue Book (plus or minus mileage). Years ago, based on direction from CDI, insurers stopped using this publication for total loss valuations. As the largest insurer of automobiles in California, State Farm's experience has been that claimants are, in general, very satisfied with the present system of valuing total loss vehicles. We recognize there is no perfect system but this proposal seems to address a problem that doesn't exist. Therefore, we question the need. Finally, it seems harmful to insurance consumers to overpay those few consumers who have total loss claims at the expense of all insurance consumers. Requiring insurers to value total losses based on asking price is requiring the overpayment of these claims.

As in the above paragraph, limiting deductions for condition, unless below average, forces insurers to value all vehicles at dealer ready rather than "average private." This requirement prohibits consideration of condition in many instances and will artificially inflate the condition and value of many vehicles.

The requirement that comparable vehicles be identified by VIN, license number or dealer stock number essentially precludes consideration of private party sale advertisements. Additionally, given the public's concern with identity theft incidents and general privacy issues, it will be difficult for an insurer or valuation database vendor to get access to this information unless posing as a vehicle buyer. For these reasons, we urge CDI to reconsider the guidance proposed in this section.

**Section 2695.8(b)(3)** The guidance to insurers proposed in this subsection lacks clarity. Does CDI propose insurers verify each and every valuation rendered by a computerized auto valuation database? If so, this will bring the total loss claim settlement process to a grinding halt. Given the technology available today, we question the necessity of requiring insurer claim personnel to search car dealer lots and newspaper ads to validate each individual comparable vehicle valuation. It would also set an impossible performance standard. This subsection needs to be clarified or reconsidered.

**Section 2695.8(i)** The proposed language requires insurers pay no less than the prevailing rates charged in the claimant's local market area. If an auto repair facility, chosen by the claimant, will repair the vehicle at a labor rate less than the prevailing rate, why would CDI require insurers to pay additional amounts on the claim? This provision lacks statutory authority. We question the consumer need for this requirement. In fact, the requirement is anti-consumer. Why would CDI raise the costs of insurance by denying insurers the benefits of competitive pricing in the market? Finally, the statement of reasons says this language was added to formalize the standard that rates paid by insurers are the prevailing rates in the market. The prevailing rates are usually the maximum rates an insurer will pay in the market. This proposal would make prevailing rates, the minimum. Therefore, the proposal is a substantive change in the standard, not a formalization of the standard as CDI suggests.

**Section 2695.8(l)** The term 'et cetera' lacks clarity, patently.

5/14/02

**Section 2695.8(m)** The proposed language would require insurers to pay the towing and storage charges of a claimant on any claim. This requirement is not authorized by statute and it lacks clarity. What if a claim is made and an insured does not have comprehensive or collision coverage? What if the claim is not a covered loss, such as mechanical breakdown? What if the claim is made by a third-party and our insured is not legally liable for the loss? Or legal liability against our insured is less than 100%? The proposed language should be withdrawn.

**Section 2695.85(a)** This subsection would require an insurer to provide a copy of the auto body repair Consumer Bill of Rights (CBR) to the particular insured filing the insurance claim (for insurers providing CBRs after a loss) or to all named insureds at renewal (for insurers providing CBRs at policy application). These standards are not authorized by statute. These burdensome notice requirements go well beyond what is intended in CIC §1874.87. Proposed language is also not necessary as notice to the first named insured provides notice to the person with a financial interest in the car, regardless of who files the claim.

**Section 2695.85(c)** Paragraph 3 in the CBR form has the same infirmities detailed in our comments on 2695.8(m), above. This provision lacks clarity and statutory authorization. For these reasons it should be removed from the CBR.

**Section 2695.9(c)** This provision states that "no insurer shall require that property be repaired by a specific individual or entity." This language is not statutorily authorized. In addition, it is in direct conflict with prescribed language in the California Standard Form Fire Insurance Policy at CIC §2071 (see "Company's Option" section). The proposed language fails the consistency standard and should be withdrawn.

**Section 2695.9(d)(2)** State Farm has two concerns with the proposed language. Our first concern is the phrase "the insurer shall cause the damaged property to be restored." This language implies that insurers, not insureds, direct the property repairs. We think this is erroneous because, in most cases, the insured selects the repair contractor. The insurer's role in the repair process is generally evaluating the loss and paying or denying the claim. A change in theses traditional roles is not authorized by statute. Next, the phrase "restored to no less than its condition prior to the loss and repaired in a manner which meets accepted trade standards for good and workmanlike construction..." is of concern. Most property insurance policies contain a provision for property repairs and restoration to be performed to a standard of similar or common construction. Such policy provisions recognize advancements made in building technology. For example, a damaged plaster wall in a home would be estimated for replacement using the drywall technology and materials in use today. This may be intended by the phrase "accepted trade standards" but it is not clear. We would appreciate clarification. In addition, some insurers may offer coverage options for "same or similar" repair of certain property features, like plaster walls. This proposal does not appear to recognize the commercial availability of such coverage options.

**Section 2695.9(e)(2)** The second sentence in this subsection contains the phrase "the insurer shall cause the damaged property to be restored..." Again, this is a concern because insureds, not insurers, authorize the repairs that cause the property to be restored. The insurers role in the repair process is generally evaluating the loss and paying or denying the claim. The proposed language lacks statutory authority.

**Section 2695.12** The present 2695.12 deals with noncompliance and penalties. Under the existing regulation, subsection (a) establishes a rebuttable presumption that certain actions, if committed by an insurer, would be knowingly committed violations of the regulation. Subsection (b) of the existing regulation is a set of criteria the Commissioner could consider as a rebuttal to the presumption an insurer knowingly committed a violation pursuant to subsection (a). The affect of the proposed changes are: 1) to make a rebuttable presumption a conclusive presumption; 2) to make any violation of the regulations

5/14/02

a knowingly made violation; and 3) to require the Commissioner to levy a fine for any single violation. These proposed changes ignore the statutory framework. The amendments are unauthorized and inconsistent with CIC §790.03(h) which reads in relevant part: "Knowingly committing or performing with such frequency as to indicate a general business practice..." The effect of the definitional change of "knowingly committed" to "knowingly" in subsection 2695.2(l) (see discussion above), and the changes proposed to this section would make any single violation subject to penalty. Such a standard ignores the sheer number of claims transactions handled by insurers and requires the Commissioner to levy fines even for isolated, technical, unintended, minor or harmless violations. This regulatory scheme is inconsistent with CIC §790.03(h) and the results are unnecessarily harsh on insurers. Finally, the oppressive scheme does not advance consumer protections, which calls into question the need for the proposed changes.

**Section 2695.12(7)** The standard for considering a penalty for noncompliance based on the number of claims handled is proposed to be changed to number of claims reviewed. State Farm objects to this change because it is inconsistent with CIC §790.03(h) which establishes a general business practice standard. If CDI were to find an instance of noncompliance on the one file it reviewed, it is not making a finding based on the business practice standard. CDI needs to view the instances of noncompliance based on the number of claims an insurer handles. State Farm also objects to the proposal to use the term "violation" in a lieu of "noncomplying act(s)" for reasons stated in the above paragraph.

**Section 2695.14(a)** With thousands of agents and claims employees, in many locations throughout the state, to educate and train regarding the comprehensive changes to these regulations, we do not see the need to change the effective date from 120 days to 75 days from the date the regulations are filed with the Secretary of State.

For all of the above reasons, State Farm requests that these regulations not be adopted as proposed. State Farm will be happy to meet with CDI to further discuss these regulations. Thank you for the opportunity to comment and for your consideration.

Very Truly Yours,


Steve McManus


SMC/eao

5/14/02

# EXHIBIT 5



STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE
45 FREMONT STREET, 21st FLOOR
SAN FRANCISCO, CALIFORNIA 94105

RH-399

**Fair Claims Settlement Practices Regulations
Response to Comments**

***Comments RE:  RH 399, generally***

| | |
|---|---|
| **Comment No.:** | 12 |
| **Section:** | **RH 399, generally** |
| **Commentator:** | Gilbert E. Stein and Peggy Sugarman, California Applicants' Attorneys Association ("CAAA") |
| **Date of Comment:** | May 7 and 8, 2002 |
| **Type of Comment:** | Written and Oral |

**Summary of Comment:** CAAA urges the Department to include workers' compensation insurer claim practices within the purview of these regulations.  During public discussions relating to RH 399, the proposed amendments included workers compensation insurer claim conduct but the proposed amendments that were the subject of public hearings no longer had this inclusion.

**Response to Comment:** This comment is outside the scope of the proposed rulemaking. Pursuant to Government Code Section 11347, the commentator may, if he/she so chooses, petition the Department requesting the adoption, amendment or repeal of a regulation.

| | |
|---|---|
| **Comment No.:** | **Oral - See Transcript in Rulemaking File** |
| **Section:** | **RH 399, generally** |
| **Commentator:** | Robert Scott |
| **Date of Comment:** | May 9, 2002 |
| **Type of Comment:** | Oral |

**Summary of Comment:** The regulations should specify that individual claimants and not just the Commissioner may enforce the minimum claims handling standards set forth in the regulations.

**Response to Comment:** The Commissioner has considered this comment and rejects it.  The Commissioner lacks the authority to promulgate the suggested language.

***Comments RE:   Section 2695.1(b)***

1 //237030 v1

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Pages 2-103 have not been included

**Response:** The Commissioner has considered the commentator's suggestion and accepts it. The proposed amendment will be changed to allow the insurer to identify the VIN and license plate number "if this information is available." If not available, the insurer may provide the telephone number or street address of the private party selling the vehicle. This addresses the concern of the commentator.

| | |
|---|---|
| **Comment No.:** | **28** |
| **Section:** | 2695.8(b)(2) |
| **Commentator:** | Douglas A. Lutgen, CSAA Inter-Insurance Bureau |
| **Date of Comment:** | May 9, 2002 |
| **Type of Comment:** | Written Document |

**Summary of Comment:** We share industry concerns regarding the relative unavailability of VIN number/license plate information on privately-advertised vehicles, and the unrealistic nature of using an asking price that is almost never paid by automobile purchasers.

**Response:** The Commissioner has considered the commentator's suggestion and rejects it in part and accepts it in part. On the "ask price" comment, the take-price used by computerized automobile valuation companies result in unsupportable undervaluing of the vehicle. The take-price is used by these companies to represent what they contend are a more accurate reflection of the actual sell price of a particular vehicle. The basic assumption here is that the "ask price" is negotiated down during the sales process. However, the CDI's investigation of consumer complaints and market conduct examinations shows that the take price of a comparable vehicle used by certain valuation companies is based upon what the dealer would take in an all-cash purchase for that vehicle and is the lowest possible price a consumer could pay for that vehicle if he/she was a skilled negotiator. The standard for valuing an automobile for purposes of paying insurance claims should not be lowest possible price a consumer could pay for a car. The value should be based upon what an average consumer, with average negotiating skills, would pay.

Further, our investigation shows that in cases where an actual sales price is known, the take price used was lower than what the vehicle sold for. This supports our contention that take-prices are artificially low.

On the unavailability of VIN number/license plate information on private vehicles, the Commissioner has considered the commentator's suggestion and accepts it. The proposed amendment will be changed to allow the insurer to identify the VIN and license plate number "if this information is available." If not available, the insurer may provide the telephone number or street address of the private party selling the vehicle. This addresses the concern of the commentator.

| | |
|---|---|
| **Comment No.:** | **29** |
| **Section:** | 2695.8(b)(2) |
| **Commentator:** | Steve McManus, State Farm Insurance Companies |
| **Date of Comment:** | May 9, 2002 |
| **Type of Comment:** | Written Document |



**Summary of Comments:**    Several changes are proposed to the definition of "comparable automobile" that would have the effect of reducing the accuracy and statistical reliability of valuations, and in some cases over-inflating the values produced. Those changes include:

**1. Limitation on the use of newer model year vehicles** - This limitation would reduce the statistical validity of values given for comparable vehicles. Valuations would be less accurate.

**Response:** The Commissioner has considered the commentator's suggestion and rejects it. This amendment would not diminish the statistical validity of the valuations. An insurer is only prohibited from using newer model year vehicles if there are a sufficient number of same model year vehicles to formulate a statistically valid value. In most cases when a newer model year vehicle is used as a comparable vehicle, it is accompanied by a significant deduction based upon its newer model year. While the Commissioner may agree that a newer model year vehicle may be worth more that a same model year vehicle, it is the extent of this monetary difference which is concerning. In many cases the amount deducted for this newer model year cannot be supported. Our experience has been that insurers will prefer to use newer models, even when there are plenty of same model year vehicles, in order to capitalize upon the large deduction taken. For this reason, when there are sufficient vehicles of the same model year, these same model year vehicles should be utilized. However, when a sufficient number of same model year vehicles are not available, newer model year vehicles may be used as long as any deductions based upon this difference are adequately supported and documented.

**2. Requiring use of the asking price on non-sold cars** -This would eliminate the use of take prices, and artificially inflate the values. Requiring insurers to value total losses based upon asking price is requiring the overpayment of these claims.

**Response:** The Commissioner has considered the commentator's suggestion and rejects it. This subsection does not require the use of asking price. It permits the use of actual sales prices of the vehicle, which is the most accurate reflection of the market. Use of the ask-price would only be an issue if the insurer or its representative chooses not to use actual sales prices. The purpose of the regulations is to preclude the use of a "take-price". The take-price methodology used by computerized automobile valuation companies results in unsupportable undervaluing of the vehicle. The take-price is used by these companies to represent what they contend is a more accurate reflection of the actual sell price of a particular vehicle. The basic assumption here is that the "ask price" is negotiated down during the sales process. However, the CDI's investigation of consumer complaints and market conduct examinations shows that the take price of a comparable vehicle is based upon what the dealer would take in an all-cash purchase for that vehicle and is the lowest possible price a consumer could pay for that vehicle if he/she was a skilled negotiator. The standard for valuing an automobile for purposes of paying insurance claims should not be lowest possible price a consumer could pay for a car. The value should be based upon what an average consumer, with average negotiating skills, would pay.

Further, our investigation shows that in cases where an actual sales price is known, the take price used was lower than what the vehicle sold for. This supports our contention that take-prices are artificially low.

**3. Limiting deduction for the condition of the loss vehicle** - This requirement prohibits consideration of condition in many instances and will artificially inflate the condition and value of many vehicles.



**Response:** The Commissioner has considered the commentator's suggestion and rejects it. The proposed amendment would not require that all loss vehicles be valued at dealer ready prices and would not prohibit consideration of condition. The regulations require that the settlement amount be the <u>average</u> cost of a comparable vehicle. Therefore, the value derived is an average value, not a dealer ready value. The proposed regulations permit a condition deduction if the loss vehicle is <u>below average</u>, however, many companies deduct for condition even when the loss vehicle is in <u>average</u> condition. The CDI has conducted an exhaustive investigation into the use of a condition deduction. We have determined that applying a condition deduction when the loss vehicle is in average condition is unsupportable and creates unreasonably low settlement amounts to claimants. This proposal does not prohibit the use of a condition deduction, but permits one where the loss vehicle is in below average condition.

**4. Requirement for VIN or license number identification**--This requirement would eliminate the ability to use most private party ads and would reduce the pool of comparable vehicles.

**Response:** The Commissioner has considered the commentator's suggestion and accepts it. The proposed amendment will be changed to allow the insurer to identify the VIN and license plate number "if this information is available." If not available, the insurer may provide the telephone number or street address of the private party selling the vehicle. This addresses the concern of the commentator.

| | |
|---|---|
| **Comment No.:** | 6 |
| **Section:** | 2695.8(b)(2) |
| **Commentator:** | John S. Benton, Government Strategies, Inc. |
| **Date of Comment:** | May 4, 2002 |
| **Type of Comment:** | Written Document |

**Summary of Comment:** Certain wording in this subsection may put ADP's consumer friendly product in jeopardy.

**Response:** The Commissioner has considered the commentator's suggestion and accepts it. The proposed amendment will be changed to allow the insurer to identify the VIN and license plate number "if this information is available." If not available, the insurer may provide the telephone number or street address of the private party selling the vehicle. This addresses the concern of the commentator.

| | |
|---|---|
| **Comment No.:** | 18 |
| **Section:** | 2695.8(b)(2) |
| **Commentator:** | Samuel Sorich, National Association of Independent Insurers |
| **Date of Comment:** | May 8, 2002 |
| **Type of Comment:** | Written Document |

**Summary of Comment:** The proposed definition of "comparable automobile" is unnecessary and unreasonable. The definition would result in unfair settlements which do not reflect the real value of losses.