1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   KEVIN J. DUNNE  Bar No. 40030
2  BRUCE D. CELEBREZZE  Bar No. 102181
   LAURA L. GOODMAN  Bar No. 142689
3  One Market Plaza
   Steuart Tower, 8th Floor
4  San Francisco, California 94105
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   STATE FARM MUTUAL AUTOMOBILE
7  INSURANCE COMPANY

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. CV 08 1365 CW<br><br>**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND FOR A STAY**<br><br>JUDGE: Claudia Wilken<br>CTRM: 2<br>DATE: May 22, 2008<br>TIME: 10:00 a.m. |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. Plaintiff Gives Short Shrift To Applicable Federal And California Law Compelling Appraisals And The Strong Public Policy In Favor Of Appraisal ............................................................................................................. 2

    B. The Court Must Apply The *Chiron* Two-Step Test To Determine This Motion ................................................................................................................. 3

    C. Under California Law, The Appraisal Clause is A Valid Agreement to Arbitrate ............................................................................................................. 3

        1. Both *CAR* And *Goldberg* Support Appraisal ............................................. 4

        2. Two California Trial Courts Have Compelled Appraisal Of Actual Cash Value Of A Total Loss Vehicle In Cases Involving Circumstances Indistinguishable From The Claims Brought By Plaintiff Here ................................................................................................ 5

    D. A Dispute Over Whether Plaintiff Was Paid The Actual Cash Value of Her Total Loss Vehicle Is Squarely Within The Scope Of The Appraisal Clause, Is Not Unconscionable, And State Farm Has Not Waived Its Right To Compel Appraisal .............................................................. 7

        1. The Appraisal Will Determine Only The Actual Cash Value Of Plaintiff's Loss Vehicle ........................................................................... 8

        2. The State Farm Appraisal Provision Is Not Unconscionable ............... 9

        3. State Farm Did Not "Waive" Or "Forfeit" Its Right To Compel Appraisal ............................................................................................. 11

    E. The Illinois Appellate Decisions Cited By Plaintiff Are Inapposite And Inconsistent With California Law And Other Illinois Appellate Decisions ......................................................................................................... 13

    F. Discovery Is Unnecessary On This Motion To Compel Appraisal .................. 14

III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*In re 2000 Sugar Beet Crop Ins. Litigation,*
  228 F. Supp. 2d 992 (D.Minn. 2002) ................................................................. 2

*Chiron Corp. v. Ortho Diagnostic Sys. Inc.,*
  207 F.3d 1126 (9th Cir. 2000) ............................................................................ 3

*Edstrom Industries, Inc. v. Companion Life Ins. Co.,*
  516 F.3d 546 (7th Cir. 2008) .............................................................................. 2

*Goldberg v. State Farm Fire & Cas. Co.,* No. CV 01-11193 LGB,
  2002 WL 768893 (C.D.Cal. Apr. 5, 2002) ..................................................... 4, 5

*Hyland v. Miller's Nat'l Ins. Co.*
  58 F.2d 1003 (N.D.Cal. 1932) .......................................................................... 11

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 (9th Cir. 2003) ...................................................................... 3, 11

*Par-knit Mills, Inc. v. Stockbridge Fabrics Co.,*
  636 F.2d 51 (3d Cir. 1980) ............................................................................... 15

*Sims v. Clarendon Nat. Ins. Co.,*
  336 F. Supp. 2d 1311 (S.D.Fla. 2004) ................................................................ 2

*Simula, Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999) ............................................................................ 15

*United Computer Sys. v. AT & T Corp.,*
  298 F.3d 756 (9th Cir. 2002) .............................................................................. 3

*Wailua Assocs. v. Aetna Cas. & Sur. Co.,*
  904 F. Supp. 1142 (D.Haw. 1995) ...................................................................... 2

## STATE CASES

*Appalachian Ins. Co. v. Rivercom Corp.,*
  130 Cal.App.3d 818, 182 Cal.Rptr.11 (1982) ............................................. 10, 12

*Carroll v. Girard Fire Ins. Co.,*
  72 Cal.297, 13 P.863 (1887) ............................................................................ 11

*Chase v. Blue Cross of Calif.,*
  42 Cal.App.4th 1142, 50 Cal.Rptr. 2d 178 (1996) ........................................... 12

*Christensen v. Dewor Developments,*
  33 Cal.3d 778, 191 Cal.Rptr. 8 (1983) ............................................................. 12

*Clement v. Smith,*
  16 Cal.App.4th 39, 19 Cal.Rptr.2d 676 (1993) ................................................ 10

## Table of Authorities
### (Continued)

**PAGE**

*Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*,
　83 Cal.App.4th 677, 99 Cal.Rptr.2d 809 (2000)..................................................3, 4

*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*,
　92 Cal.App.4th 886, 112 Cal.Rptr.2d 304 (2001)..............................................4, 5, 7

*Davis v. Blue Cross of Northern California*,
　25 Cal.3d 418, 158 Cal.Rptr. 828 (1979)..............................................................12

*EFund Capital Partners v. Pless*,
　150 Cal.App 4th 1311, 59 Cal.Rptr.3d 340 (2007)..............................................3, 4

*Erickson v. Aetna Health Plans of Cal., Inc.*,
　71 Cal.App.4th 646, 84 Cal.Rptr.2d 76 (1999)........................................................2

*Graham v. Scissor-Tail, Inc.*,
　28 Cal.3d 807, 171 Cal.Rptr. 604 (1981)..............................................................10

*Hanke v. American Intern. South Ins. Co.*,
　335 Ill.App.3d 1164, 782 N.E.2d 328 (2002).......................................................14

*Hertz Corp. v. Home Ins. Co.*,
　14 Cal.App.4th 1071, fn. 2, 18 Cal. Rptr 2d 267 (1993)......................................10

*Jefferson Ins. Co. of New York v. Sup. Ct.*,
　3 Cal.3d 398, 90 Cal.Rptr.608 (1970)................................................................8, 9

*Kacha v. Allstate Ins. Co.*,
　140 Cal.App.4th 1023, 45 Cal.Rptr.3d 92 (2006)..............................................8, 9

*Kinney v. United Healthcare Servs.*,
　70 Cal.App.4th 1322, 83 Cal.Rptr.2d 348 (1999)................................................11

*Klubnikin v. California Fair Plan Assn.*,
　84 Cal.App.3d 393, 148 Cal.Rptr. 563 (1978).....................................................11

*Lambert v. Carneghi*,
　158 Cal.App.4th 1120, 70 Cal.Rptr.3d 626 (2008)..........................................4, 11

*Louise Gardens of Encino Homeowners Ass'n v. Truck Ins. Exch.*,
　82 Cal.App.4th 648, 98 Cal.Rptr.2d 378 (2000)....................................................4

*Old Saucelito Land & Dry Dock Co. v. Commercial Union Assur. Co.*,
　66 Cal. 253, 5 P.232 (1884).................................................................................11

*Safeco Ins. Co. of America v. Sharma*,
　160 Cal.App.3d 1060, 207 Cal.Rptr.104 (1984)....................................................9

*Sarchett v. Blue Shield of California*,
　43 Cal.3d 1, 233 Cal.Rptr. 76 (1987)...................................................................12

-ii-　　　　CASE NO. CV 08 1365 CW
STATE FARM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM [FED.R.CIV.P. 12(B)(6)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

SF/1507824v2

# Table of Authorities
## (Continued)

**PAGE**

*Taleb v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW,
  2006 WL 3716922 (D.Ariz. 2006)..................................................................15

*Travis v. American Mfr. Mut. Ins. Co.*,
  335 Ill.App.3d 1171, 782 N.E.2d 322 (2002)..................................................13

*Warren-Guthrie v. HealthNet*,
  84 Cal.App.4th 804, 101 Cal.Rptr.2d 260 (2000)..............................................2

*Weis v. State Farm Mut. Auto. Ins. Co.*,
  333 Ill.App.3d 402, 776 N.E.2d 309 (2002)....................................................14

## FEDERAL STATUTES

9 U.S.C. § 4...........................................................................................................15

## STATE STATUTES

Cal.Civ.Proc. Code § 1280(a)..............................................................................3, 4

Cal.Code Regs, Title 10, 2695.8(b)(3) (1993).......................................................11

Cal. Code Regs., Title 10, § 2695.8(c) (2006).........................................................5

Cal. Code Regs., Title 10, § 2695.8(b) (2006).........................................................8

Cal. Ins. Code § 6010..............................................................................................5

Cal. Ins. Code § 10082.3.........................................................................................5

I.    INTRODUCTION

State Farm seeks very limited relief in this motion. State Farm asks the Court to compel an appraisal, pursuant to the appraisal process authorized in the automobile insurance policy it issued to plaintiff, *solely on the issue of the actual cash value of plaintiff's total loss vehicle.* State Farm is not asking the court to compel appraisal or arbitration of any other issue in this lawsuit.

Under the terms of its policy, State Farm is required to pay plaintiff the actual cash value of her total loss vehicle. Plaintiff complains that State Farm "undervalued" her vehicle. (*See* Docket 1, ¶¶ 19-21.) State Farm has the *right* under its policy to an appraisal if there is a disagreement between the insured and the insurer as to the actual cash value of a total loss vehicle. (Docket 7, p.3; Docket 8, ¶ 7, Exh. A at pp. 17-18.) The State Farm automobile insurance policy appraisal clause is a mutual promise between insured and insurer which clearly and unambiguously explains how plaintiff and State Farm are to resolve any differences between them regarding the actual cash value of a total loss vehicle. (*Id.*) The same policy, pursuant to which State Farm paid plaintiff for her total loss, provides that plaintiff has no right of action against State Farm until the terms of the policy are met.[1] Plaintiff admits that she was advised of the policy appraisal provision by State Farm on more than one occasion, but she decided to dispense with (indeed, ignore) the appraisal provision and instead file this civil action. (Docket 28, Garner Decl, ¶¶ 10-12.)

Appraisal of the actual cash value (Docket 8, Exh. A at pp. 17-18) of plaintiff's loss vehicle is a straightforward process that should not take long to complete. Each party obtains its own appraisal. If the appraisals are substantially similar, or if the two appraisers can reach a consensus, the matter may end there. If the appraisals are significantly different, then a third, neutral appraiser will decide the actual cash value. State Farm requests that the Court follow well established federal and California precedent by ordering that the parties proceed with an appraisal of the actual cash value of plaintiff's total loss vehicle and stay this action pending the

---

[1] Docket 7, p. 3; Docket 8, Bianco Decl., ¶ 8 and Ex. A. at p. 23.

-1-
STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL APPRAISAL AND FOR A STAY

outcome of the appraisal. Once the appraisal is complete, the parties can report back to the Court on the results, and a determination can be made regarding the viability of plaintiff's claims, including whether she has any standing to bring them.

## II.   ARGUMENT

### A. Plaintiff Gives Short Shrift To Applicable Federal And California Law Compelling Appraisals And The Strong Public Policy In Favor Of Appraisal

Plaintiff challenges State Farm's contention that the Federal Arbitration Act ("FAA") governs this matter, but glosses over the numerous federal and California authorities evidencing the strong public policy in favor of enforcing arbitration provisions as well as the decisions which regularly compel appraisal in a situation such as that here. At least two California trial courts have compelled appraisal at the outset in cases alleging facts indistinguishable from those here. This Court should similarly order an appraisal of the actual cash value of plaintiff's loss vehicle.

Plaintiff's contention that the FAA does not apply is incorrect. An insurance policy is an agreement affecting interstate commerce and is subject to the provisions of the FAA. *In re 2000 Sugar Beet Crop Ins. Litigation*, 228 F.Supp.2d 992, 995 (D.Minn. 2002) ("The Supreme Court has held that insurance policies are contracts "involving commerce," and therefore, subject to the FAA.").[2] Here, the appraisal provision is contained in the policy of insurance between plaintiff, a resident of California, and State Farm, an Illinois corporation with its principal place of business in Illinois. (Docket No. 1, ¶ 6.) Federal courts consistently hold that such diversity between the insurer and the insured "involves" interstate commerce and that the FAA applies to such a policy. *Sims v. Clarendon Nat. Ins. Co.*, 336 F.Supp.2d 1311, 1316 (S.D.Fla. 2004) ("[b]ecause the Policy was issued by a foreign corporation to a Florida resident, it involves interstate commerce and the FAA applies"); *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 904 F.Supp. 1142, 1147 n. 2 (D.Haw. 1995) (insurance policy issued by Connecticut corporation to California limited

---

[2] See *Edstrom Industries, Inc. v. Companion Life Ins. Co.*, 516 F.3d 546, 549 (7th Cir. 2008); *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 904 F.Supp. 1142, 1147 n. 2 (D.Haw. 1995). See also *Erickson v. Aetna Health Plans of Cal., Inc.*, 71 Cal.App.4th 646, 651, 84 Cal.Rptr.2d 76 (1999); *Warren-Guthrie v. HealthNet*, 84 Cal.App.4th 804, 101 Cal.Rptr.2d 260 (2000), (overruled on another point in *Cronus Investments, Inc. v. Concierge Servs.*, 35 Cal.4th at 393, fn. 8, 25 Cal.Rptr.3d 540 (2005)).

-2-
STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL APPRAISAL AND FOR A STAY

partnership and insuring properties in Hawaii "involved" interstate commerce).[3]

B.  **The Court Must Apply The *Chiron* Two-Step Test To Determine This Motion**

Because the FAA applies to this dispute, the court must follow the two-part test set forth in *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000), to determine whether to compel appraisal. Thus, the court needs to decide "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id. See also United Computer Sys. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002) ("a district court must issue an order compelling arbitration if the . . . two-pronged test is satisfied").

C.  **Under California Law,[4] The Appraisal Clause is A Valid Agreement to Arbitrate**

Plaintiff does not dispute that the California Arbitration Act provides that an agreement for appraisal is an enforceable agreement to arbitrate (Cal. Civ. Proc. Code § 1280(a)) and that under Code of Civil Procedure § 1281:

> A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.

The language of section 1281 "is mandatory, not precatory." *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677, 686, 99 Cal.Rptr.2d 809 (2000).

In *Coast Plaza*, a Blue Cross subscriber hospital sued, challenging an insurer's service reimbursement rates by alleging various tort, contract, and UCL claims. 83 Cal.App.4th at 681. The trial court denied the insurer's motion to compel appraisal pursuant to a clause in the parties' service agreement. The Court of Appeal reversed, holding that California's "strong public policy in favor of arbitration" requires that courts "indulge every intendment to give effect to an

---

[3] Even if the court were to apply California law to the enforcement of the parties' agreement to arbitrate, the result would be the same: plaintiff is required to submit to an appraisal of the actual cash value of her total loss vehicle. *See* Cal. Code Civ. Proc. § 1281.2; *EFund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1320-21, 59 Cal.Rptr.3d 340 (2007); *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677, 686, 99 Cal.Rptr.2d 809 (2000).

[4] As discussed in State Farm's moving papers, the issue of whether a valid agreement exists is determined under state law. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

arbitration agreement." *Id.* at 686 (internal quotations omitted). The court placed the burden squarely "upon the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute." *Id.* at 686-687 (emphasis in original). *See EFund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1320-1321, 59 Cal.Rptr.3d 340 (2007) ("any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.") As one California Court of Appeal recently held, "[i]t is well settled that 'an agreement to conduct an appraisal contained in a policy of insurance constitutes an agreement within the meaning of [Code of Civil Procedure] section 1280, subdivision (a), and therefore is considered to be an arbitration agreement subject to the statutory contractual arbitration law.'" *Lambert v. Carneghi*, 158 Cal.App.4th 1120, 1129, 70 Cal.Rptr.3d 626 (2008) (quoting *Louise Gardens of Encino Homeowners Ass'n v. Truck Ins. Exch.*, 82 Cal.App.4th 648, 658, 98 Cal.Rptr.2d 378 (2000)).

1.  Both <u>*CAR* And *Goldberg* Support Appraisal</u>

Plaintiff argues that the Court should disregard *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal.App.4th 886, 112 Cal.Rptr.2d 304 (2001) ("*CAR*"), and *Goldberg v. State Farm Fire & Cas. Co.*, No. CV 01-11193 LGB, 2002 WL 768893 (C.D.Cal. Apr. 5, 2002), because they involve actual cash value disputes under statutory-based fire insurance policies. She also contends that, unlike those cases, the claims in her complaint are not "appraisable." Plaintiff is wrong.

Plaintiff's claim that the *CAR* court did not even consider appraisal is belied by the court's own language. In affirming the trial court's general demurrer, the *CAR* court explained:

> We conclude that plaintiff's complaint does not state an "unlawful business practice" under the UCL because the simplistic legal formulation of the claim mischaracterizes the holding in Jefferson *and fails to take into consideration the safeguard of the appraisal process provided by the Legislature within Insurance Code section 2071.*

*CAR*, 92 Cal.App.4th at 892 (emphasis added). The *CAR* court held that the appraisal term "creates an arbitration agreement subject to the statutory contractual arbitration law" and emphasized that "notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of the loss." *CAR*, 92 Cal.App.4th at 893. In other

words, no matter what methodology of valuation the insurer utilized, appraisal was the proper mechanism to resolve a dispute over actual cash value.

Plaintiff barely refers to *Goldberg*, a federal case from the Central District of California, that also recognizes appraisal as a preferred procedure. In *Goldberg*, the court relied on *CAR*'s reasoning to dismiss claims for breach of contract, bad faith, and unfair insurance practices arising from a dispute as to the actual cash value of an earthquake claim. 2002 WL 768893 at *3. The court held that, because the plaintiff "failed to follow" the appraisal procedure, he had improperly filed a lawsuit "without first exhausting the appraisal remedy provided in his Policy." 2002 WL 768893 at *3.

Plaintiff ignores that the disputes in *CAR* and *Goldberg*, like her own, arise from, and are based on, a contract between an insurer and insured with an appraisal provision. The cases are not specific to Insurance Code § 2071 and nothing in the cases suggests that an appraisal provision in an automobile insurance policy should be interpreted differently from that contained in a residential property policy. These cases reinforce that, under California law, appraisal provisions are recognized as a preferred means to resolve disputes concerning actual cash value. *See also* Cal. Ins. Code § 10082.3 (mandating similar appraisal process in earthquake policies); Cal. Ins. Code § 6010 (requiring appraisal provision in county fire insurance policy). Moreover, section 2965.8(c) of the Fair Claim Settlement Practices Regulations expressly authorizes the use of appraisal as a means to resolve actual cash value disputes involving total loss automobiles. Cal. Code Regs., Tit. 10, § 2695.8(c) (2006) (listing invocation of appraisal provision as one of three options the insurer "shall" utilize). The California Department of Insurance's authorization of appraisal provisions for this purpose makes clear that appraisal of plaintiff's total loss claim is sanctioned by law as well as contract.

    2.   <u>Two California Trial Courts Have Compelled Appraisal Of Actual Cash Value Of A Total Loss Vehicle In Cases Involving Circumstances Indistinguishable From The Claims Brought By Plaintiff Here</u>

At least two California trial courts have squarely addressed the issue of compelling appraisal of a total loss vehicle's actual cash value under complaints essentially mirroring that filed by plaintiff and, in each case, the court ordered that appraisal be had. (Supp. RJN, Exs. 1-

1  overpaid Sanchez. The Court found that Sanchez suffered no damage and plaintiff attempted to
2  find a substitute plaintiff. (Supp. RJN, Exs. 1D-1G.)

3        In the second case, *Turner v. State Farm Mutual Automobile Ins. Co.*, Alameda County
4  Superior Court Case No. RG03078358, the plaintiff brought a representative section 17200
5  action seeking restitution and injunctive relief based on claims nearly identical to those here
6  concerning State Farm's alleged use of "improper and unreasonable valuation methods to
7  calculate total loss claims." (Supp. RJN, Ex. 2A at ¶ 4.) The plaintiff in *Turner* complained that
8  the alleged practice of taking "arbitrary discounts" and relying on "low-end comparables"
9  violated California law. (*Id.* at ¶¶ 4-14.) He claimed, as does plaintiff in this action, that without
10 disclosure to its policyholders State Farm "directly and/or through the valuations prepared for
11 them by their agents" undervalued total loss vehicles in order to reduce settlement costs and was
12 unjustly enriched as a result. (*Id.* at ¶¶ 4, 44, 47.)

13       State Farm moved the court to compel appraisal of the monetary relief claims arising
14 from disputes as to the actual cash value of total loss claims, based on the same appraisal clause
15 that appears in plaintiff's policy in this action. The Honorable Ronald M. Sabraw granted State
16 Farm's motion and, citing to *CAR*, 92 Cal.App.4th at 893, held that "the contractual appraisal
17 procedure at issue in this case is not materially different from a contractual arbitration procedure.
18 In either situation the parties to the contract have agreed to a non-judicial dispute resolution
19 mechanism." (Supp. RJN, Ex. 2B, at ¶ 1.)

20       *Sanchez* and *Turner* are particularly instructive here, where the allegations made by
21 plaintiff in her complaint essentially mirror the allegations made by the plaintiffs in those cases.
22 Based on the same allegations and the same causes of action, the trial courts granted motions to
23 compel appraisal of the actual cash value of the plaintiffs' total loss vehicles. Plaintiff has
24 offered no reason why this court should reach a different conclusion.

25 D. <u>A Dispute Over Whether Plaintiff Was Paid The Actual Cash Value of Her Total Loss Vehicle Is Squarely Within The Scope Of The Appraisal Clause, Is Not Unconscionable,
26 And State Farm Has Not Waived Its Right To Compel Appraisal</u>

27       Plaintiff attempts to escape the strong authority mandating enforcement of appraisal
28 provisions by arguing that (1) her claims are outside of the scope of the appraisal provision,

and 2.)[5]

In the first case, *Sanchez v. State Farm Mutual Automobile Ins. Co.*, Los Angeles County Superior Court, Judicial Council Coordination Proceeding No. 4249, the Honorable Anthony J. Mohr ordered an appraisal and a stay of the action pending appraisal based on nearly identical factual allegations to those here. *Sanchez* involved a total loss claim submitted by a State Farm insured where the insured alleged that she had been paid less than the actual cash value of her vehicle. The complaint in *Sanchez* alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and injunctive and restitutionary relief under California Business and Professions Code § 17200 based on the following allegations:

> State Farm has entered into contracts with purportedly "independent" companies that have developed computer software that estimates the value of total-loss automobiles ("Valuation Companies"). . . . The Valuation companies provide State Farm with biased, below-market-value, computer-generated reports that list the total-loss vehicle values ("Reports"). State Farm uses the Reports to defraud its policyholders by intentionally reducing its payments on total-loss claims. Now, when policyholders file total-loss claims, State Farm systematically uses the Reports to justify paying less than the true actual cash value.

(Supp. RJN, Ex. 1A, ¶ 15; *see* Supp. RJN Ex. 1B, ¶¶ 26-28.) The plaintiff in *Sanchez* further alleged that:

> State Farm, in furtherance of its scheme, used the biased computer Report as a basis for posturing to the insured that it had obtained an independent valuation of plaintiff's vehicle. Yet State Farm knew that the computer Report was biased and designed to reduce State Farm's total-loss claims payout. Indeed, third-party vendors sold their computer Reports to State Farm promising – before reviewing any of State Farm's claims – to reduce, on an aggregate basis, State Farm's first-party total-loss claims payouts.

(Supp. RJN, Ex. 1A, ¶ 31; *see* Supp. RJN Ex. 1B, ¶ 29.)

*Sanchez* was consolidated with multiple other actions involving similar allegations of additional insurers undervaluing total loss claims. Following consolidation, the court granted State Farm's motion to compel appraisal and to stay the action pending appraisal, as well as all of the other motions to compel appraisal filed by other defendant insurers in the consolidated case. (Supp. RJN, Ex. 1C at pp. 2:4-16; 3:5-11.) The appraisal process concluded that State Farm had

---

[5] *See* State Farm's Supplemental Request for Judicial Notice, asking the Court to notice the pleadings and orders in *Turner* and *Sanchez*, served and filed herewith.

-6-
STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL APPRAISAL AND FOR A STAY

(2) State Farm is precluded from demanding appraisal because of its alleged "bad faith," and (3) the appraisal provision is "unconscionable." These arguments lack merit.

### 1. The Appraisal Will Determine Only The Actual Cash Value Of Plaintiff's Loss Vehicle

State Farm agrees with plaintiff that "appraisers have the power only to determine a specific question of fact, 'namely, the actual cash value of the insured [item]'", and that they may not determine questions of law. *Kacha v. Allstate Ins. Co.*, 140 Cal.App.4th 1023, 1026, 45 Cal.Rptr.3d 92 (2006). (See Docket 26, 13:17-20.) By invoking the policy's appraisal provision and requesting an appraisal in this case, State Farm simply seeks an appraisal determining the actual cash value of plaintiff's total loss vehicle, nothing more and nothing less. Contrary to plaintiff's arguments, State Farm has not, and does not, request that the appraisers go beyond their limited, well recognized, and accepted responsibility as set forth in the insurance contract to only determine the actual cash value of plaintiff's total loss vehicle. Moreover, plaintiff offers no evidence to support her claim that the appraisers will go beyond their limited role of determining the actual cash value of her vehicle. Indeed, if plaintiff would be more comfortable, the Court can order that the appraisal be limited to the issue of determining the actual cash value of plaintiff's loss vehicle.[6]

Plaintiff cites three cases to argue that, because appraisers may not determine questions of law or coverage issues, nor interpret policy provisions, appraisal may not be had here. None of the cases support her contention that an appraisal is improper here. Rather, the cases hold that an appraiser cannot exceed his or her authority – a proposition with which State Farm agrees.

*Jefferson Ins. Co. of New York v. Sup. Ct.*, 3 Cal.3d 398, 90 Cal.Rptr. 608 (1970), involved a fire loss to a hotel. The subject insurance policies contained an "average clause" providing for a proportionate reduction of any loss unless the building was insured to 70 percent

---

[6] While plaintiff contends that State Farm violated the regulation by not using the asking price, she does not claim that she did not receive the actual cash value of her vehicle. Although plaintiff declares that the Kelly Blue Book "listed a higher value" for her truck than the value determined by State Farm (although she does not say what that value was), neither the former nor revised California Insurance Regulations provide for use of the Kelly Blue Book in determining actual cash value. *See* 10 C.C.R. § 2695.8(B) and 10 C.C.R. § 2695.8(a) (former regulation) (both setting forth procedures for determining actual cash value).

of its "actual cash value." The insurers requested appraisal and advised the appraisers that the appropriate measure of damages was replacement cost less depreciation of the building. The appraisers used the insurer's interpretation and the insured moved to vacate the appraisal award. The court held that the appraisers had exceeded their powers by erroneously deciding a question of law. The court vacated the first appraisal and *ordered a second appraisal*, directing that new appraisers determine only the actual cash value – "the price that a willing buyer would pay a willing seller, neither being under any compulsion to sell or buy." *Id.* at 402. *Jefferson* in fact recognized the propriety of appraisal to determine actual cash value.

In the other two cases cited by plaintiff, the appraisers similarly exceeded their authority. In *Safeco Ins. Co. of America v. Sharma*, 160 Cal.App.3d 1060, 207 Cal.Rptr. 104 (1984), the appraisers exceeded their power by making a determination regarding whether the insured's claimed loss from a burglary was authentic. The insured alleged that his set of 18th century paintings from India were stolen. The matter was submitted to appraisal, and the appraisers determined the credibility of the insured and decided that the insured had not lost what he said he had lost. *Id.* at 1063. The court held that the appraisers' determination of the insured's credibility exceeded their authority. *Id.* at 1065. In *Kacha v. Allstate Ins. Co.*, 140 Cal.App.4th 1023, 45 Cal.Rptr.3d 92 (2006), the court vacated an appraisal award on the ground that the appraisers exceeded their authority by making coverage determinations as to which items of loss claimed by the insured should be included in the appraisal award.

*Sharma* and *Kacha* are inapposite to the present case. There is no dispute that plaintiff suffered a total loss of her vehicle. There is no dispute as to the year, make, model, and condition of plaintiff's vehicle. There is no dispute that plaintiff's total loss was covered under the State Farm policy. Finally, there is no dispute that that State Farm was required to pay plaintiff the actual cash value of her vehicle. The only issue to be decided by the appraisers is the actual cash value of plaintiff's loss vehicle and the Court can order that the appraisal be limited to a determination of actual cash value.

2.   <u>The State Farm Appraisal Provision Is Not Unconscionable</u>

Plaintiff argues that the appraisal provision in the State Farm policy is both

"procedurally" unconscionable and "substantively" unconscionable. The only California case directly addressing the issue is to the contrary. In *Appalachian Ins. Co. v. Rivercom Corp.*, 130 Cal.App.3d 818, 182 Cal.Rptr.11 (1982), the Court of Appeal addressed a motion to compel appraisal of actual cash value under Insurance Code § 2071 where the insured argued that (1) no appraisal should be ordered while other issues are pending between the parties, (2) no appraisal should be compelled because of the insurer's alleged "unclean hands," (3) the insurer's "bad faith" waived its right to compel appraisal, and (4) the insured was never notified of the appraisal clause. The court rejected each of the insured's arguments, beginning its opinion by noting that "California courts have enforced appraisal clauses in fire insurance policies for almost 100 years." *Id.* at 824. The court concluded that "even if the policy is to be viewed as a contract of adhesion, the appraisal provision is enforceable under the principles of *Graham* [*Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604 (1981)]."[7] Under *Graham*, the only time a court may deny a party the right to arbitration is "when it can be demonstrated . . . that the clear effect of the established procedure of the arbitrator will be to deny the resisting party a fair opportunity to present his position." *Id.* at 826. "*In all other cases* the matter should be permitted to proceed to arbitration." *Id.* (emphasis added.)

Here there is obviously no procedural unconscionability in enforcing the appraisal provision. Each party is entitled to retain its own appraiser and, depending on the result, there may be a third *neutral* appraiser whose cost is shared by the parties. (Docket 8, Bianco Decl., ¶7, Exh. A at 17-18.) This is an inherently fair process to resolve disputes about actual cash value.[8]

---

[7] *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604 (1981), relied upon by plaintiff, does not address appraisal provisions contained in insurance policies. Moreover, even the *Graham* court noted that "[e]nforcement of an agreement to arbitrate should be denied on this ground [unfair procedure], we think, only in the clearest of cases, i.e., when the applicable procedures essentially preclude the possibility of a fair hearing."

[8] Plaintiff's assertion that she somehow should be excused from the appraisal provision because she claims never to have seen her policy before this litigation is not well founded. Plaintiff has been a State Farm policyholder since 2005 and the declarations page reflects that she renewed her policy every six months (or a total of two times prior to her loss). (Docket No. 8, ¶¶ 5-6, Ex. A.) As such, she is charged with knowledge of the contents of her policy. *See Clement v. Smith*, 16 Cal.App.4th 39, 45, 19 Cal.Rptr.2d 676 (1993); *Hertz Corp. v. Home Ins. Co.*, 14 Cal.App.4th 1071, 1075, fn. 2,

There is similarly nothing substantively unconscionable about the appraisal provision. "Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003), citing *Kinney v. United Healthcare Servs.*, 70 Cal.App.4th 1322, 1330, 83 Cal.Rptr.2d 348 (1999). The appraisal provision in State Farm's automobile policy is analogous to the statutorily mandated appraisal in fire insurance policies in California. These provisions do not "shock the conscience." Contrary to plaintiff's suggestion that State Farm has "misused" or created the appraisal remedy as part of a grand scheme to harm her and other policyholders, appraisal clauses have been included in automobile insurance policies for years as a means of resolving disputes concerning actual cash value. *See*, Cal.Code Regs, Tit. 10, 2695.8(b)(3) (1993) (stating "the insurer shall conclude the loss settlement as provided for under the applicable appraisal section of the insurance policy in force at the time of loss."). Indeed, the Insurance Commissioner has looked to appraisal provisions as a valid way to determine actual cash value since at least 1993.[9] *Id.*

### 3. State Farm Did Not "Waive" Or "Forfeit" Its Right To Compel Appraisal

Plaintiff puts the cart before the horse, arguing that State Farm cannot compel appraisal in compliance with its policy provisions because State Farm acted in "bad faith" and has thus waived its right to appraisal. Of course, as a matter of law, there cannot even possibly be breach

---

18 Cal.Rptr.2d 267 (1993). In addition, despite plaintiff's statement that she never received her policy, she managed to submit a claim under the policy, has discussed her coverage rights under the policy as well as the appraisal process with a State Farm claims representative, received and read the May 8, 2007 letter from State Farm advising her of the appraisal provisions contained in the policy, received benefits under the policy, and ultimately filed a lawsuit in which her complaint purports to quote terms from the State Farm policy. (Docket No. 1, ¶¶ 8, 18-19; Garner Decl, ¶ 10.) Plaintiff seeks the benefit of her insurance contract and cannot pick and choose those provisions she wants enforced.

[9] The concept that "[c]ompliance with the arbitration clause in these policies is a condition precedent to a suit upon the policy" has been recognized by California courts in analogous fire policies for over a century. *Hyland v. Millers Nat'l Ins. Co.*, 58 F.2d 1003 (N.D.Cal. 1932); *Old Saucelito Land & Dry Dock Co. v. Commercial Union Assur. Co.*, 66 Cal. 253, 5 P. 232 (1884); *Carroll v. Girard Fire Ins. Co.*, 72 Cal. 297, 13 P. 863 (1887). And as the California Court of Appeal recently noted in *Lambert*, "[t]he term 'appraisals' was added to the Arbitration Act in 1961 to expressly extend the coverage of the statute to appraisal proceedings." 158 Cal.App.4th at 1130 (*citing Klubnikin v. California Fair Plan Assn.*, 84 Cal.App.3d 393, 397-398, 148 Cal.Rptr. 563 (1978)).

1 of contract or bad faith unless State Farm failed to pay plaintiff the actual cash value of her total
2 loss vehicle. This issue needs to be determined by appraisal, which is what State Farm seeks
3 here. *See Appalachian Ins. Co. v. Rivcom Corp.*, 130 Cal.App.3d 818, 826 (1982) (insured
4 contended that insurer's offer well below demand was evidence of bad faith precluding appraisal,
5 the court held that "[t]he problem with this argument is that until the amount of the loss is fixed
6 (under the Appraisal Clause) no one is in a position to evaluate the bad faith claim.").

While the right to arbitrate may be waived or forfeited, "the burden of proof is 'heavy'
and rests on the party seeking to establish waiver." *Chase v. Blue Cross of Calif.*, 42
Cal.App.4th 1142, 1150, 50 Cal.Rptr.2d 178 (1996) (citing *Christensen v. Dewor Developments*,
33 Cal.3d 778, 782, 191 Cal.Rptr. 8 (1983)). The burden of proof is on the party asserting
forfeiture and must be demonstrated by clear and convincing evidence. *Chase, supra*, 42
Cal.App.4th at 1150. "[T]he court should indulge every intendment to give effect to an
arbitration agreement" as "arbitration is favored in the law." *Id.* at 1151, 1157.

The only case cited by plaintiff in support of her argument that State Farm has forfeited
its right to appraisal did not even find a forfeiture. *See Chase, supra* (citing *Davis v. Blue Cross
of Northern California*, 25 Cal.3d 418, 421, 158 Cal.Rptr. 828 (1979), and *Sarchett v. Blue
Shield of California*, 43 Cal.3d 1, 233 Cal.Rptr. 76 (1987)). *Chase* and the cases cited therein
involved an insurer's failure to inform its insureds of their arbitration rights to the prejudice of
those insureds. In *Chase*, the trial court held that an insurer forfeited its right to compel
arbitration where the insurer had communications with its insured where it failed to mention the
policy's arbitration provision. The Court of Appeal reversed, holding that the law does not
require an insurer to notify its insured of arbitration in every communication or else risk
forfeiture. 42 Cal.App.4th at 1158.

Here, the evidence shows that State Farm timely informed plaintiff of her appraisal rights
under the policy both by phone and letter. State Farm discussed with plaintiff the policy's
appraisal provision soon after it notified her of State Farm's valuation of her total loss. (See
Docket No. 7, 4:3-19; Declaration of Arnesha Garner, Docket No. 28, ¶¶9-10.) The evidence
also shows that the appraisal provision was clearly and conspicuously set forth in the policy

under Section IV, Physical Damages Coverages, with the title "Settlement of Loss – Comprehensive and Collision Coverages." (See State Farm's Motion to Compel Appraisal, Docket No. 7, 3:6-20.) Plaintiff herself declares:

> 9. . . . I immediately felt that State Farm's valuation of my truck was low. I called Daphne Scales and advised her that I had reviewed the Kelly Blue Book which listed a higher value for my truck that that [sic] of the State Farm valuation.
>
> 10. Ms. Scales said that State Farm did not use Kelly Blue Book and they looked at similar vehicles in the area. She told me that I could hire my own appraiser if I disagreed with the valuation. I asked her what the cost of an additional appraisal would be. She told me it would be about $350.00 for me to hire an appraiser. She explained that State Farm had its own appraiser and that I would have to pay one half the cost of a third appraiser as well. She did not provide me with any names of appraisers or how to locate one.
>
> 11. I thought the $350.00 plus half the cost of another appraiser was more than I could reasonably afford to challenge the State Farm valuation.

(Docket 28, ¶¶ 9-11.) State Farm also sent plaintiff the May 8, 2007 letter advising her of the appraisal provision. (Docket 8, Bianco Decl., ¶ 14, Exh. C.) Indeed, State Farm even advised plaintiff that she could keep the amount paid by State Farm based on the initial valuation should she proceed to an appraisal and the actual cash value of her loss vehicle were determined to be less than what was paid. (Docket 8, Bianco Decl., ¶ 15, Exh. C at 2.) Instead of requesting an appraisal, as she was advised she had the right to do, plaintiff accepted State Farm's payment and filed this lawsuit. In short, plaintiff has submitted *no* evidence to meet her "heavy burden" of showing that State Farm forfeited its right to compel appraisal (plaintiff's recitation of the allegations in her complaint is not evidence), and the evidence properly before the court shows that State Farm timely advised plaintiff of her right to appraisal.

E. <u>The Illinois Appellate Decisions Cited By Plaintiff Are Inapposite And Inconsistent With California Law And Other Illinois Appellate Decisions</u>

Rather than acknowledging that California law applies to the question of the validity of the appraisal clause, plaintiff attempts to rely on two Illinois appellate decisions which are not only irrelevant, but which directly conflict with another Illinois appellate decision on the same topic. Plaintiff's substantial reliance on two opinions from the Fifth District Appellate Court of Illinois, *Travis v. American Mfr. Mut. Ins. Co.*, 335 Ill.App.3d 1171, 782 N.E.2d 322 (2002), and

*Hanke v. American Intern. South Ins. Co.*, 335 Ill.App.3d 1164, 782 N.E.2d 328 (2002),[10] for the proposition that her claims are outside the scope of the policy's appraisal provision, is misplaced. As discussed above, under the FAA and *Chiron*, this court is to apply California, not Illinois, law to determine whether an appraisal agreement is valid. In addition, there is a contrary decision from another Illinois appellate court on the same subject.

In *Weis v. State Farm Mut. Auto. Ins. Co.*, 333 Ill.App.3d 402, 776 N.E.2d 309 (2002), the Second District Appellate Court of Illinois reviewed a case involving essentially the same allegations as *Travis* and *Hanke*. In *Weis*, the plaintiff brought a class action against State Farm alleging a violation of the Illinois Department of Insurance rules, breach of contract, statutory fraud, and common law fraud based on allegations that State Farm utilized an improper method of valuing total loss automobiles. The plaintiff in *Weis* was involved in an automobile accident, which resulted in her vehicle being declared a total loss. State Farm valued total loss claims, including plaintiff's, using the computerized database of Certified Collateral Corporation ("CCC"). Plaintiff then filed her class action alleging that CCC's system undervalued vehicles and that its methodology was not in compliance with Illinois Department of Insurance rules.

State Farm moved to dismiss plaintiff's complaint on the ground that the actual cash value of plaintiff's total loss was subject to appraisal and that such appraisal was a prerequisite to a lawsuit. The court granted the motion, holding that, under the terms of the policy, if plaintiff disagreed with State Farm over the actual cash value of her vehicle, she was required to initiate the binding appraisal process. Because the plaintiff failed to allege that she initiated the binding appraisal process or that State Farm refused to participate in the process, the court found that she had failed to allege a claim for breach of contract. Thus, *Weis* held that, in a case based upon substantially similar allegations as that here, appraisal was a mandatory condition precedent before plaintiff could maintain a claim for breach of contract and dismissed plaintiff's complaint.

F.   <u>Discovery Is Unnecessary On This Motion To Compel Appraisal</u>

The Ninth Circuit has instructed that "[t]he FAA provides for discovery and a full trial in

---

[10]   The *Travis* and *Hanke* opinions essentially mirror each other and were issued by the same court only two days apart.

connection with a motion to compel arbitration *only if* 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) (*quoting* 9 U.S.C. § 4) (emphasis added). Plaintiff bears the burden of establishing that such a matter is in issue. *See Taleb v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *2 (D.Ariz. Nov. 13, 2006) ("Because a court order compelling arbitration is the functional equivalent of a summary disposition on the issue of the enforceability of the Arbitration Agreement, the burden is properly upon the Plaintiff to produce specific facts showing that such a triable issue exists." (*citing Par-knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)).

Here, plaintiff offers no compelling basis for her suggestion that the court may find it necessary to "go beyond a comparison of the language of the policy provision and the allegations of the Complaint" in order to rule on State Farm's motion to compel contractual appraisal. (Plaintiff's Opp. at 23.) Plaintiff has failed to demonstrate that any of the limited topics for which discovery is even potentially available under the FAA are subject to a factual dispute. State Farm does not believe discovery is necessary for the Court to determine the enforceability of the appraisal provision. State Farm agrees with plaintiff in that it also does not believe an evidentiary hearing of any kind is required for the Court to decide this motion (Docket 26, p. 23).

### III. CONCLUSION

For the reasons set forth herein, the Court should grant State Farm's motion to compel appraisal of the actual cash value of plaintiff's total loss vehicle and should stay this action pending such appraisal.

DATED: May 8, 2008

Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
Kevin J. Dunne
Bruce D. Celebrezze
Laura L. Goodman
Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

-15-
STATE FARM'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL APPRAISAL AND FOR A STAY