1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   KEVIN J. DUNNE  Bar No. 40030
2  BRUCE D. CELEBREZZE  Bar No. 102181
   LAURA L. GOODMAN  Bar No. 142689
3  One Market Plaza
   Steuart Tower, 8th Floor
4  San Francisco, California 94105
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   STATE FARM MUTUAL AUTOMOBILE
7  INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY<br><br>Defendant. | CASE NO. CV 08 1365 CW<br><br>**APPENDIX OF UNPUBLISHED AUTHORITY CITED IN STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND FOR A STAY**<br><br>JUDGE:   Claudia Wilken<br>CTRM:    2<br>DATE:    May 22, 2008<br>TIME:    10:00 a.m. |

   For the convenience of the Court, State Farm Mutual Automobile Insurance Company respectfully submits a true and correct copy of *Taleb v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922 (D.Ariz. Nov. 13, 2006), cited by State Farm in its Reply Brief in Support of its Motion to Compel Appraisal and For a Stay.

   DATED: May 8, 2008              SEDGWICK, DETERT, MORAN & ARNOLD LLP

                                   By: _____
                                       Kevin J. Dunne
                                       Bruce D. Celebrezze
                                       Laura L. Goodman
                                       Attorneys for Defendant
                                       STATE FARM MUTUAL AUTOMOBILE
                                       INSURANCE COMPANY

CASE NO. CV 08 1365 CW

1

APPENDIX OF UNPUBLISHED AUTHORITY CITED IN STATE FARM'S REPLY BRIEF

Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2006 WL 3716922 (D.Ariz.)
(Cite as: Slip Copy, 2006 WL 3716922)

CTaleb v. AutoNation USA Corp.
D.Ariz.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Yaser M. TALEB, Plaintiff,
v.
AUTONATION USA CORP. d/b/a Lou Grubb Dodge, Defendant.
No. CV06-02013-PHX-NVW.

Nov. 13, 2006.

Kevin Koelbel, Lisa Jeanette Counters, Counters & Koelbel PC, Chandler, AZ, for Plaintiff.
Christie Lynn Kriegsfeld, Neil M. Alexander, Littler Mendelson PC, Phoenix, AZ, for Defendant.

**ORDER**

NEIL V. WAKE, United States District Judge.
*1 Pending before the court is Defendant's Motion to Compel Arbitration, Doc. # 9, the Response, Doc. # 12, and the Reply, Doc. # 13.

Plaintiff opposes Defendant's Motion to Compel Arbitration on the following grounds: (1) there was no consideration for Plaintiff's promise to arbitrate the statutory claims he now brings against Defendant in this court; (2) Defendant waived its right to arbitrate by participating in administrative proceedings before the Equal Employment Opportunity Commission ("EEOC") and (3) the Arbitration Agreement is procedurally unconscionable because Plaintiff was forced either to "sign it or be unemployed." (Doc. # 12 at 7.) Because none of these grounds provides a defense to arbitration under the Federal Arbitration Act, which is controlling here, Defendant's Motion shall be granted. This action shall be stayed pending a final decision of the arbitral tribunal.

**I. Facts**

Plaintiff was hired by Lou Grubb Dodge in the capacity of Fleet Director on March 19, 2002. (Doc. # 1 at 1.) On August 18, 2006, Plaintiff filed a complaint in this court against Lou Grubb Dodge for employment discrimination and retaliatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. (*Id.*) Plaintiff, a "middle eastern, Muslim man," alleged that he was subjected to various forms of ethnic and religious discrimination and harassment while carrying out his duties at Lou Grubb Dodge. (*Id.* at 1-2.) Plaintiff further contended that Lou Grubb Dodge unlawfully terminated his at-will employment on July 7, 2003, in retaliation for his prosecution of employment discrimination and harassment claims previously filed at the EEOC. (*Id.* at 4.)

On September 28, 2006, Defendant interposed a Motion to Compel Arbitration, urging the court to stay or dismiss Plaintiff's claims so that they may be adjudicated in an arbitral, rather than a judicial, forum. Defendant supported this Motion with the Arbitration Agreement, duly executed by Plaintiff and Defendant, in which the parties resolved that:

[A]ny claim, dispute and/or controversy (including, but not limited to, any claims for discrimination and harassment ... based on ... Title VII of the Civil Rights Act of 1964) ... that either the employee or the Dealership ... may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act."

(Doc. # 9 Ex. B.) Plaintiff signed the Arbitration Agreement on June 14, 2002, nearly three months after his at-will employment commenced at Lou Grubb Dodge. (Doc. # 9 at 2.) By not checking the opt-out box contained in Paragraph Three of the Agreement, Plaintiff voluntarily subjected claims arising under Title VII of the Civil Rights Act of 1964 to Lou Grubb's alternative dispute resolution program. (*Id.* Ex. B.)

**II. Standard of Review under the Federal Arbitration Act**

The Federal Arbitration Act ("FAA") governs this court's analysis of arbitration agreements contained in written contracts involving interstate commerce, such as the Agreement at the center of this dispute. 9 U.S.C. §§ 1-2; *Circuit City Stores, Inc. v. Saint Clair*

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 3716922 (D.Ariz.)
**(Cite as: Slip Copy, 2006 WL 3716922)**

*Adams*, 532 U.S. 105 (2001). By its terms, 9 U.S.C. § 3 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The injunction to "rigorously enforce agreements to arbitrate" is entirely consistent with *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), in which the Supreme Court interpreted the FAA to evince a strong federal policy in favor of arbitration. *Dean Witter*, 470 U.S. at 221. "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000). If the following inquiries are answered in the affirmative, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

**\*2** The parties do not dispute that the broad arbitration clause at issue here, if enforceable, embraces the Title VII complaint now before the court. Accordingly, the court will consider only whether a valid arbitration agreement exists.

### III. A Valid Arbitration Agreement Exists

#### A. Arizona Law Applies

Plaintiff invokes a limited exception to the court's otherwise mandatory duty to compel arbitration under the Federal Arbitration Act by impugning the enforceability of the underlying Arbitration Agreement. Arbitration agreements are presumptively enforceable under the FAA "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining the validity of an arbitration agreement under the FAA, the Court of Appeals for the Ninth Circuit has instructed the court to "apply ordinary state-law principles that govern the formation of contracts ." *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir.2002). The Arizona law of contracts is dispositive here because Plaintiff's defenses to the Motion to Compel Arbitration go to the enforceability of the Arbitration Agreement itself.

#### B. Plaintiff's Burden to Identify a Triable Issue of Material Fact

Plaintiff urges the court to stay the Motion to Compel Arbitration, permit limited discovery on "factual issues related to the enforceability of the [A]greement," and submit all such factual issues to trial by jury. (Doc. # 12 at 9.) Although Plaintiff avers that such discovery is inevitable even if the court decides to compel arbitration, the court is guided not by concerns of procedural economy but rather by the literal dictates of the FAA. (Doc. # 12 at 1-2.) Under the FAA, "the court shall proceed summarily to ... trial" only if the Arizona law of contracts places "the making of the arbitration agreement ... in issue." 9 U.S.C. § 4. The Arbitration Agreement executed by Plaintiff and Defendant is "in issue" only if Plaintiff can identify "a triable issue concerning the existence or scope of the [arbitration] agreement." *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir.1987). Because a court order compelling arbitration is the functional equivalent of a summary disposition on the issue of the enforceability of the Arbitration Agreement, the burden is properly upon the Plaintiff to produce specific facts showing that such a triable issue exists. *Par-knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980) (analogizing a motion to compel arbitration to a motion for summary judgment under Federal Rule of Civil Procedure 56(c)); see *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Plaintiff has raised no such issue of material fact for the reasons stated below.

#### C. The Arbitration Agreement is Supported by Adequate Consideration

##### 1. Arizona Contract Law

Under Arizona law, an arbitration agreement is enforceable to the same extent as any other contract.[FN1] Accordingly, there must be (1) an offer communicated to the offeree, (2) acceptance of the offer by the offeree, and (3) consideration, for the agreement to arbitrate to be enforced. *Rogus v. Lords*, 166 Ariz. 600, 602, 804 P.2d 133, 135 (Ct.App.1991). Plaintiff's primary attack upon the enforceability of the Arbitration Agreement focuses upon the last of these three requirements by alleging

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3716922 (D.Ariz.)
(Cite as: Slip Copy, 2006 WL 3716922)

Page 3

a lack of consideration. Consideration is required whether the Arbitration Agreement at issue here was a modification of the Plaintiff's original at-will employment agreement, or a stand-alone contract. Under Arizona law, "consideration" is defined as "a benefit to the promisor or a loss or detriment to the promisee;""there is no consideration for a promise where no benefit is conferred on the promisor or a detriment suffered by the promisee."*K-Line Builders v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Ct.App.1983).

> FN1.*Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt, Inc.*, 165 Ariz. 25, 795 P.2d 1308 (Ct.App.1990), seems to hold otherwise by concluding that unilateral arbitration agreements will fail in Arizona for lack of separate consideration apart from that provided for the contract as a whole. Plaintiff cites the case for this proposition, but does not rely upon it when making his consideration arguments. (Doc. # 12 at 2.) The FAA preempts state laws unique to arbitration agreements that restrict their applicability. *Southland Corp. v. Keating*, 465 U.S. 1 (1984).*Holm* is not implicated in this case, so the court need not decide whether its holding may be preempted by the Federal Arbitration Act for creating a special rule invalidating unilateral arbitration agreements under the doctrine of separate consideration.

**2. The Alleged Lack of Consideration**

*3 Plaintiff signed the Arbitration Agreement on June 14, 2002, at a meeting between Lou Grubb's management and the employees and managers of the Fleet Department. (Doc. # 9 Ex. A; Doc. # 12 Ex. B.) Plaintiff attaches great importance to the fact that Taleb had already been working at Lou Grubb Dodge for almost three months prior to executing the Arbitration Agreement at the meeting. Taleb acknowledges that his promise to arbitrate Title VII claims would be enforceable if made at the time of his hiring, as a non-negotiable condition of employment at Lou Grubb Dodge. *EEOC v. Luce, Forward, Hamilton, & Scripps*, 303 F.3d 994, 999 (9th Cir.2002). Such a promise would derive its enforceability from the legal detriment suffered by Plaintiff-foregoing his right to sue in a judicial forum-in exchange for the right to be employed and draw a salary.

In this case, however, Taleb accepted Lou Grubb Dodge's offer to arbitrate nearly three months after he had accepted the underlying offer of employment. Therefore, contends Plaintiff, his promise to arbitrate, rather than litigate, "any claim, dispute and/or controversy" against his employer was "gratuitous" because "AutoNation did not require Taleb to agree to arbitration as a condition of employment."(Doc. # 12 at 4.) The naked promise "foisted" upon Plaintiff at the June 2002 meeting cannot be enforced because Taleb did not give up his right to sue in a court of law in exchange for a corresponding legal benefit, since "whether Taleb committed to arbitrate Title VII claims would have no impact on his [continued] employment."(*Id.*)

**3. Plaintiff's Argument Fails**

**i. The *Mattison* Case Controls**

*Mattison v. Johnson*, 152 Ariz. 109, 112, 730 P.2d 286, 289 (Ct.App.1986), stands for the proposition that, in the absence of bad faith, "the continuation of employment for a substantial period of time establishes consideration" for a detrimental promise made by a current employee in the course of an on-going at-will employment relationship. The holding of the Arizona Court of Appeals in *Mattison* fully disposes of Plaintiff's lack-of-consideration argument.

In *Mattison*, a terminable at-will beautician signed an otherwise enforceable non-compete agreement with her employer two years after commencing work at a beauty salon. Nearly three months later, the beautician quit her job and began working for a competitor in violation of the covenant not to compete. The focused issue on appeal was whether the continued employment of such an at-will employee provided sufficient consideration to support a restrictive covenant that was not part of the original unwritten employment agreement.

Of critical importance to Judge Eubank's decision upholding the covenant was the at-will nature of the underlying employment relationship. "Complete at-will employment is for an indefinite term, and American courts have come to hold it can be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

terminated at any time for good cause or no cause at the will of either party."*DeMasse v. ITT Corp.*, 194 Ariz. 500, 504, 984 P.2d 1138, 1142 (1999). The *Mattison* court had no difficulty identifying the consideration necessary to enforce the covenant in the "continuing transaction" between employer and employee. *Mattison,* 730 P.2d at 289. The employee's promise not to compete was enforceable as a bargained-for exchange because the legal detriment to the promisor was induced by the promisee's continuing offer of future at-will employment. All the employee had to do to reap the benefits of her bargain-whether in the form of weekly wages, perquisites or any other intangible incident of employment-was show up for work. In an at-will context, "a threat of discharge is not necessary to establish consideration by continued employment."*Id.* (citations omitted).

**\*4** The Arizona Supreme Court has endorsed *Mattison's* interpretation of Arizona contract law. In *DeMasse,* an employer's modification of a typical at-will employment relationship was characterized in this way: "the employer makes a new offer with different terms and the employee again accepts the new offer by performance (such as continued employment). Thus a new unilateral contract is formed-a day's work for a day's wages."*DeMasse,* 984 P.2d at 1143.

### ii. Applying *Mattison* to This Case

No great doctrinal leap is required to apply the holding of *Mattison,* which addressed the enforceability of a non-compete executed by a current employee, to the present case, which focuses instead upon an arbitration clause executed by a similarly situated current employee. "Both types of agreements restrict the employee's actions beyond the duration of his employment, and both provide the employer with post-termination recourse against the employee."Amy L. Ray, Comment, *When Employers Litigate to Arbitrate: New Standards of Enforcement for Employer Mandated Arbitration Agreements,* 51 SMU L.Rev. 441, 453 (1998) (surveying case law).

A brief recitation of the facts of this case strengthens the analogy. Taleb was an at-will employee of Lou Grubb Dodge at all times. (Doc. # 12 Ex. B-1 "Employment At-Will Statement.") Several months after accepting the offer of at-will employment, Lou Grubb Dodge offered to enter into an alternative dispute resolution program with Taleb. Taleb accepted the offer by signing the Arbitration Agreement, which recited the "mutual benefits (such as reduced expenses and increased efficiency) which private binding arbitration can provide," and which required Plaintiff to submit "any [employment-related] claim, dispute, or controversy," including "claims of discrimination and harassment under Title VII of the Civil Rights Act of 1964," to an arbitral, rather than a judicial, forum. (Doc. # 9 Ex B.) The consideration rendering this promise enforceable flows from Plaintiff's decision to continue working for-and drawing a salary from-Lou Grubb Dodge for over a year after signing the Agreement. The holding in *Mattison* is fully applicable here because Taleb, like the beautician in *Mattison,* continued to work "for a substantial period" after the detrimental promise was entered into.

That Lou Grubb Dodge did not force Plaintiff to adhere to the Arbitration Agreement as a non-negotiable condition of employment does nothing to vitiate the existence of consideration by continued performance. To hold that it does would lead to paradoxical results. Accepting Plaintiff's argument would throw the enforceability of every agreement between an employer and an employee entered into after the original at-will relationship commenced into question. To guarantee enforceability, the employer would need to discharge his at-will employee and then rehire him on the condition that he sign an agreement containing the new terms.

**\*5** The court blazes no new ground in holding Taleb to his bargain under these facts, since "federal courts do not hesitate to find an enforceable agreement to arbitrate when an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter."*Kinnebrew v. Gulf Ins. Co.,* 67 Fair Empl. Prac. Cas. (BNA) 189 (D.Tex.1994)); *see Lang v. Burlington N. R.R.,* 835 F.Supp. 1104 (D.Minn.1993) (clear and definite arbitration language in employee manual constituted an offer for a unilateral contract, employee's retention of employment constituted acceptance of the offer, and employee's decision to continue working, although free to leave, supplied the necessary consideration).

### iii. *DeMasse* is Inapposite

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3716922 (D.Ariz.)
(Cite as: Slip Copy, 2006 WL 3716922)

Page 5

Plaintiff's invocation of the narrow holding of *DeMasse* in support of his lack-of-consideration argument is unavailing. In that case, the Arizona Supreme Court passed only upon the enforceability of an employer's unilateral modification of implied-in-fact contract terms creating an expectation of job security. The court carefully distinguished for-cause employment from at-will employment throughout. A brief recitation of *DeMasse's* facts suffices to make the point.

In *DeMasse*, the employer "create[ed] an exception to employment that is completely at will" by promulgating an employee handbook containing a promise to layoff workers in order of seniority. 984 P.2d at 1143. The Supreme Court of Arizona interpreted the relevant provisions of the handbook as "an offer to form an implied-in-fact contract," which could be "accepted by the employee's acceptance of employment."*Id*. Once formed, the employer could not unilaterally modify the implied-in-fact contract with its employees by simply publishing a new handbook excluding the seniority layoff promise. Such a handbook was properly viewed as an "offer to modify the existing contract."*Id*. at 1144.Acceptance of the offer required affirmative conduct on the part of the employee beyond continued employment, because "otherwise the illusion (and the irony) is apparent: to preserve their right under the existing contract plaintiffs would be forced to quit."*Id*. at 1145 (citations and internal quotations omitted). Similarly, the *DeMasse* court concluded that "continued employment alone is not sufficient consideration to support a modification to an implied-in-fact contract. Any other result brings us to an absurdity: the employer's threat to breach its promise of job security provides consideration for its rescission of that promise."*Id*.

The holding of the Arizona Supreme Court in *DeMasse* is limited to situations in which an employer attempts to unilaterally modify a contract that creates an expectation of job security by, for example, publishing a new employee handbook. The *DeMasse* court distinguished *Mattison* by noting that its "holding that continued employment for a substantial period of time was sufficient consideration to support a post-employment restrictive covenant agreement was made in a case ... dealing with *only complete at-will employment.* "*Id*. at 1147 (emphasis in original). Because Plaintiff, like the beautician in *Mattison,* is an at-will employee with "no job security term," he cannot seek refuge from the Arbitration Agreement in language from a case dealing with employees who did. *Id*.

### iv. Conclusion

*6 The Arbitration Agreement duly executed by Plaintiff and Defendant is enforceable under Arizona law because there was (1) an offer communicated to the offeree, (2) acceptance of the offer by the offeree, and (3) consideration, evidenced by the fact that Taleb, an at-will employee, remained on the job after accepting the offer, though he was free to leave. *Rogus,* 804 P.2d at 135.

### D. Defendant Has Not Waived its Right to Arbitrate

Plaintiff's remaining arguments against mandatory arbitration under the Federal Arbitration Act are similarly unavailing. First, Plaintiff avers that Defendant acted inconsistently with its right to compel arbitration by "participating in the EEOC process." (Doc. # 12 at 6.) See *Fisher v. A.G. Becker Paribas Inc.,* 791 F .2d 691, 694 (9th Cir.1986) (articulating the three-prong test for proving waiver of right to arbitration) Plaintiff more specifically contends that he was prejudiced by Defendant's participation in Title VII proceedings related to his claims of employment discrimination and retaliatory discharge, which Plaintiff filed with the EEOC on February 13, 2003, and July 8, 2003, respectively. (Doc. # 1 at 2-3.) Defendant did not waive its right to compel arbitration by participating in administrative proceedings before the Equal Employment Opportunity Commission.

The Supreme Court has recently noted the important distinction between an individual employee's private right of action under Title VII of the Civil Rights Act of 1964, and the separate enforcement role of the EEOC, which vindicates the public interest in accordance with Congressional directives.*EEOC v. Waffle House,* 534 U.S. 279, 287 (2002). An employer may compel an employee to resolve Title VII disputes in a non-judicial forum pursuant to an enforceable arbitration agreement, but the EEOC is not a party to such an agreement and therefore may not logically be bound by it. An "employee's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agreement to submit his claim to an arbitral forum" is not "a waiver of the substantive prerogative of the EEOC to enforce those claims for whatever relief and in whatever forum the EEOC sees fit."*Id. at 296.*Since the employer cannot stop an EEOC investigation by invoking the arbitration agreement, "forcing the employee and the employer to begin an arbitration proceeding during the pendency of that investigation" would be "inefficient," as it "will automatically result in two adjudications involving the same issue at the same time: (1) the EEOC investigation of the employer at the employee's urging and (2) the arbitration between the employer and the employee that the employer initiated. This is quite inefficient."*Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 16 (1st Cir.2005).*

The Court of Appeals for the First Circuit disposed of the very waiver argument now raised by Plaintiff by concluding that "forcing employers to bring arbitration during the pendency of the EEOC investigations is a waste of resources and is contrary to the general purposes of the FAA."*Id.* (quoting *Sink v. Aden Enters., 352 F.3d 1197, 1201 (9th Cir.2003)).* In rejecting the waiver argument, the *Marie* court stated, "a rule forcing the employer to file for arbitration during the pendency of an EEOC investigation would lead to wasteful, duplicative proceedings."The court is persuaded to adopt the reasoning of *Marie;* no good can come from a rule of decision that "force[s] the employer to make a wasteful, preemptive decision to arbitrate when it has no idea whether a dispute will still exist."*Id.* at 17.

*7 Defendant invoked its right to alternative dispute resolution in a non-judicial forum immediately after being served with Plaintiff's Complaint. (Doc. # 13 at 5.) This is not waiver. See *DiCrisci v. Lyndon Guaranty Bank, 807 F.Supp. 947, 954 (W.D.N.Y.1992)* ("Mere participation [by the employer] in an [EEOC] action does not constitute a waiver of arbitration when an assertion of the right to arbitrate is made in a timely manner.") (citation omitted).

**E. The Arbitration Agreement is Not Procedurally Unconscionable**

Finally, Plaintiff avers that the Arbitration Agreement is unenforceable under the contract law doctrine of procedural unconscionability, which applies when there is "something wrong in the bargaining process."*Estate of Nelson v. Rice, 198 Ariz. 563, 567, 12 P.3d 238, 242 (Ct.App.2000);* (Doc. # 12 at 7.) Plaintiff contends that Lou Grubb Dodge presented him with a Hobson's choice at the June 2002 meeting: either sign the Arbitration Agreement along with your fellow Fleet Department employees, or become unemployed. (*Id.*) Although this statement is difficult to reconcile with Plaintiff's prior assertion that "whether Taleb committed to arbitrate Title VII claims would have no impact on his [continued] employment," his procedural unconscionability argument is readily disposed of notwithstanding the internal inconsistency of Plaintiff's pleadings. (*Id.* at 4.)

In his Declaration, Plaintiff urges that he "assumed the form [Arbitration Agreement] was just another routine form. Because it was obvious that I had to sign it, I thought why bother reading it. So, I signed it without reading it."(Doc. # 12 Ex. B.) Yet Plaintiff does not support his "take it or leave it" argument with any relevant material evidence, such as the corroborating testimony of his fellow participants in the June 2002 meeting with Lou Grubb's management. Instead, Plaintiff directs the court's attention to a panoply of forms that he signed nearly three months earlier when his employment commenced, which are of no moment here. (*Id.* Ex. B-1 .) The assertion that Plaintiff "had no time to read the agreement" and that the agreement to arbitrate was presented *"fait accompli,"* are also unsupported by evidence raising a triable issue of material fact. (*Id.* at 7.)*Par-knit Mills* places the burden upon Plaintiff to identify a triable issue of material fact that places the enforceability of the Arbitration Agreement "in issue." *636 F.2d at 54 n. 9;9 U.S.C. § 4.* Because Plaintiff has not carried this burden as to procedural unconscionability, or any other defense, Defendant's Motion to Compel Arbitration shall be granted.

**IV. The Court Shall Stay the Action**

Having found the Arbitration Agreement duly executed by Plaintiff and Defendant enforceable in all respects, the Federal Arbitration Act directs the court not only to compel arbitration of Plaintiff's Title VII claims, but also to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."*9 U.S.C. § 3.* Defendant

urges the court not to stay, but rather to dismiss Plaintiff's action with prejudice because Plaintiff "impliedly repudiated the arbitration agreement" by choosing to "litigate his claims in court." (Doc. # 13 at 10.) The court has discretion under *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir.1988), to grant the prayed-for relief. However, 9 U.S.C. § 3 provides, in relevant part, that the district court "shall" enter a stay whenever a dispute is brought on an arbitrable claim in contravention of an enforceable agreement to arbitrate. The court is persuaded by the arguments developed in *Lloyd v. Hovensa*, 369 F.3d 263 (3d Cir.2004), to stay this action pending the issuance of a final arbitral award. In so holding, the court takes the Congressional text at face value even as it honors the "strong national policy favoring arbitration" by making itself available to any party "seeking [judicial] assistance during the course of arbitration," while still giving Defendant the right "to proceed immediately to arbitration without the delay that would be occasioned by an appeal" of this Order. *Id.* at 270-71.

*8 IT IS THEREFORE ORDERED that Defendant's Motion to Compel Arbitration, Doc. # 9, is granted.

IT IS FURTHER ORDERED that this action is stayed pursuant to 9 U.S.C. § 3 pending the outcome of arbitration, which shall be conducted in accordance with the duly executed Arbitration Agreement.

IT IS FURTHER ORDERED that the parties file a joint report on the status of arbitration by May 15, 2007.

D.Ariz.,2006.
Taleb v. AutoNation USA Corp.
Slip Copy, 2006 WL 3716922 (D.Ariz.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.