1   BIRKA-WHITE LAW OFFICES
    DAVID M. BIRKA-WHITE  Bar. No. 85721
2   STEPHEN OROZA  Bar No. 84681
    THOMAS D. HICKS  Bar No. 238545
3   744 Montgomery Street, Fourth Floor
    San Francisco, California 94111
4   Telephone: (415) 616-9999
    Facsimile: (415) 616-9494
5
    BERDING & WEIL, LLP
6   JEFFREY B. CEREGHINO  Bar. No. 99480
    STEVEN R. WEINMANN  Bar. No. 190956
7   3240 Stone Valley Road West
    Alamo, California 94507
8   Telephone: (925) 838-2090
    Facsimile: (925) 820-5592
9
    Attorneys for Plaintiff
10  ARNESHA GARNER

11
    SEDGWICK, DETERT, MORAN & ARNOLD LLP
12  KEVIN J. DUNNE  Bar No. 40030
    BRUCE D. CELEBREZZE  Bar No. 102181
13  LAURA L. GOODMAN  Bar No. 142689
    One Market Plaza
14  Steuart Tower, 8th Floor
    San Francisco, California 94105
15  Telephone: (415) 781-7900
    Facsimile: (415) 781-2635
16
    Attorneys for Defendant
17  STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY
18

19                UNITED STATES DISTRICT COURT

20              NORTHERN DISTRICT OF CALIFORNIA

21  ARNESHA M. GARNER, on behalf of          CASE NO. CV 08 1365 CW
    herself and all others similarly situated,
22                                           **JOINT CASE MANAGEMENT**
            Plaintiff,                       **STATEMENT**
23
        v.                                   JUDGE:  The Hon. Claudia Wilken
24                                           DATE:   June 24, 2008
    STATE FARM MUTUAL                        TIME:   2:00 p.m.
25  AUTOMOBILE INSURANCE                     DEPT:   Courtroom 2, 4th Floor,
    COMPANY,                                         1301 Clay Street, Oakland, CA
26
            Defendant.
27

28

                                                    **CASE NO. CV 08 1365 CW**

The parties to the above-entitled action, ARNESHA GARNER ("Plaintiff" or "Garner") and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Defendant" or "State Farm"), jointly submit this Case Management Statement. The parties note that the information herein is provided at an early stage of the litigation and prior to the ruling by the Court on State Farm's motion to dismiss and motion to compel appraisal and stay the proceedings. The information provided and the positions stated are those which can be foreseen and addressed at this time and are subject to modification to account for events which occur during the course of the litigation.

**1.      Jurisdiction and Service**:  Subject matter jurisdiction is founded on 28 U.S.C. § 1332(d)(2).  All parties have been served and have appeared.  There are no issues related to personal jurisdiction or venue.

**2.      Factual Issues:**

***Plaintiff's Statement***:  Plaintiff alleges:

Plaintiff believes that State Farm's statement of legal and factual issues is inappropriately argumentative and therefore Plaintiff does not attempt to "refute" each statement.  Plaintiff disputes many of the factual statements and arguments made by State Farm, but will address these disputes in a more appropriate context.

Plaintiff and the class are parties to insurance policies under which Defendant State Farm agreed to provide collision and comprehensive loss coverage resulting from theft of or damage to the vehicle.  When vehicles are determined to be a total loss ("Total Loss Vehicles"), State Farm's policy and applicable law require that State Farm adjust and pay the actual cash value of Total Loss Vehicles.

State Farm employs Mitchell International, Inc. ("Mitchell") to determine the actual cash value of Total Loss Vehicles.  Mitchell bases its valuations on the value of vehicles "comparable" to the vehicle lost.  In calculating this value, Mitchell uses a "projected sales price" for comparable vehicles which is always less than the advertised sales price of the comparable vehicle.  State Farm also reduces the value of comparable vehicles by an amount

which purports to reflect the decline in value of comparable vehicles between the time that vehicle was advertised for sale and the date of loss of the vehicle (the "Ad Age Adjustment").

Plaintiff was involved in an accident on April 27, 2007 which resulted in a total loss of her vehicle. State Farm adjusted Plaintiff's claim using the methods described above. The value determined by State Farm was $15,993.29, $1,564 less than the value of the vehicle calculated based on the advertised sales price of comparable vehicles and without the Ad Age Adjustment.

State Farm provided Plaintiff with a 13-page valuation analysis (the "Valuation") which purports to explain how the value of the Plaintiff's vehicle was determined. Plaintiff alleges that most of the information contained in the Valuation is impossible for a lay reader to understand. The information is also incomplete, misleading and – in the case of the "projected sales price" – incomprehensible.

Plaintiff believed that the value reflected in Valuation was too low and advised State Farm of this fact. She was told that her only remedy was to have the vehicle appraised under the provisions specified in the policy. This procedure would have required Plaintiff to hire and pay for an appraiser she employed and to pay one-half the amount charged by a "neutral" third-party appraiser. Because of the cost of this procedure and the relatively small amount in controversy, Plaintiff determined not to contest State Farm's valuation.

Plaintiff alleges that: (1) State Farm's adjustment and payment of total loss claims and its explanation of the adjustment to its customers described above violate applicable law; (2) because of its extensive participation in the rule-making proceedings relating to regulations detailing the proper calculation of total loss claims, State Farm knew that the adjustment and payment of total loss claims as previously described violated the law; and (3) State Farm attempted to disguise its violation of the law by use of the Valuation; and (4) State Farm uses the high cost and limited value of the appraisal provisions of the policy to discourage customers from challenging the value of the vehicle they are offered.

Plaintiff also alleges that she was entitled to a settlement offer calculated in a lawful manner and that, if State Farm was going to calculate the amount of the offer based on any value other than the actual sales price of comparable vehicles, the amount of that offer had to be

1  calculated on the unadjusted asking price *as required by law*.  The amount of damage suffered by

2  Plaintiff and the amount of restitution to which she is entitled is the difference between the offer

3  made by State Farm and the offer it was required to make by law.

4         Plaintiff further alleges that sales data from the DMV which State Farm states is not

5  available is available to both State Farm and Mitchell and that is has been available for years.

6  Other valuation companies obtained the data from the DMV years ago.  Mitchell did not even

7  pursue a request for the data until after Plaintiff's claim was adjusted and State Farm itself has

8  never pursued such data.

9       ***Defendant's Statement:***  Garner was a State Farm policyholder when she was involved

10  in an automobile accident on April 27, 2007, resulting in the total loss of her 2005 Ford Escape.

11  In the policy, State Farm promised to pay Garner the "actual cash value" of her total loss vehicle.

12  After State Farm provided Garner with its initial actual cash value evaluation, Garner notified

13  State Farm of several features on her automobile which were not included in the initial

14  evaluation.  State Farm promptly ran a new evaluation with the additional information supplied

15  by Garner and timely paid Garner what it believed was the full value for her automobile total

16  loss claim, less the deductible (which was later repaid in full as soon as State Farm collected it

17  from the insurer of the driver at fault for the collision).  In addition, State Farm advised Garner in

18  writing of the appraisal clause and process provided in her insurance policy and sanctioned by

19  the California Fair Claims Settlement Practices Regulations, if she disagreed with State Farm's

20  valuation.  Garner did not accept State Farm's offer of – and later affirmatively rejected State

21  Farm's demand for – appraisal of her total loss claim.

22       On March 10, 2008, Garner sued State Farm, on behalf of herself and purportedly all

23  others similarly situated, alleging that State Farm violated section  2695.8(b)(2) of the California

24  Fair Claims Settlement Practices Regulations in adjusting her automobile total loss claim.  As

25  indicated above, State Farm provided Garner with a detailed evaluation of the actual cash value

26  of her 2005 Ford Escape, and paid Garner the actual cash value of her vehicle.  Indeed, Garner

27  does not claim that State Farm paid her less than the actual cash value of her total loss vehicle.

28  She simply complains about the methodology used to assess the actual cash value of her vehicle,

asserting that it does not comply with section 2695.8(b)(2).  Garner claims that State Farm should have paid her the *asking price* of comparable vehicles despite the fact that the asking price is greater than the actual cash value (which is what the policy requires State Farm to pay) and despite the fact that even the regulation which Garner seeks to enforce does not entitle Garner to receive the asking price of comparable automobiles.  Rather, it provides:  "In determining the cost of a comparable automobile, the insurer *may use either* the asking price *or* actual sale price of that automobile." (Emphasis added.)

Garner's argument that State Farm violated section 2695.8(b)(2) is not supported by the evidence.  In 2004, the California Department of Insurance ("DOI") proposed to enact additional claims handling regulations, including a regulation governing the handling of automobile total loss claims.  Section 2695.8(b)(2) of the proposed regulations would have required, among other things, that insurers evaluate total loss claims by using either the actual sales price or asking price of comparable vehicles.  Members of the insurance industry, including the Personal Insurance Federation of California ("PIFC") of which State Farm is a member, filed a lawsuit in the Los Angeles Superior Court against then Insurance Commissioner John Garamendi to obtain an injunction precluding enactment of the proposed regulations.  With respect to section 2695.8(b)(2), the carriers were concerned that they did not have access to the actual sales price of "comparable" vehicles and that requiring the insurers to pay "asking price" would provide a windfall to total loss insureds because "asking price" is nearly always greater than the actual cash value of a total loss vehicle.

In June 2004, the part of the lawsuit involving section 2695.8(b)(2) was settled and an order was entered thereon.  Pursuant to the terms of the settlement and order, the DOI agreed that the provisions of proposed section 2695.8(b)(2), requiring an insurer to use the actual sales price or asking price of comparable vehicles, would not become effective until sixty days after the actual sales price data was made available by the Department of Motor Vehicles ("DMV").

That sixty day period had not run as of the time State Farm was adjusting Garner's loss in 2007, or even as of today, since the DMV has not made available to either State Farm or Mitchell International – State Farm's vendor providing total loss valuation services – actual sales

price information for vehicles sold in California. Hence, the regulation is still not in effect. On May 1, 2008, the DMV said it would provide Mitchell with the actual sales data by May 7, 2008. However, instead of providing the actual sales data, the DMV has now informed Mitchell that it does not and *cannot* provide *any* vendor or insurer with actual sales data. Instead, the DMV assigns a "VLF Class Code" to each vehicle in California which must then be cross-referenced against the DMV's Vehicle License Fee Chart to identify a "range" of possible sales prices (typically a $200 price range). In other words, the DMV provides a "range" and not an actual sales price. In addition, Mitchell has still not been able to verify from the DMV whether the "range" – which obviously is not itself "actual sales" data – also includes license fees, registration fees, and/or transfer fees. Moreover, section 2695.8(b)(2) purports to require the use of comparable vehicles available for sale in the "local market area" within ninety days of the settlement offer. The DMV has further advised Mitchell that it does not identify the actual sold date for any vehicle. Instead, it provides an Ownership Certificate Issue Date which reflects a "title transfer" or "recorded" date that is ten days after the sold record is transmitted by a dealer to the DMV. Finally, the DMV data does not provide the zip code for actual location where the vehicle was sold – information necessary to determine whether the vehicle was available for sale in the "local market area" of the total loss vehicle. In light of those facts, State Farm contends that section 2695.8(b)(2) was not in effect at the time it adjusted Garner's loss and is not in effect today as to State Farm as the DMV has not, and cannot, provide either State Farm or its vendor with necessary actual sales data which was an agreed upon precedent to enforceability of the regulation.

Further, (1) State Farm properly paid Garner the actual cash value of her total loss vehicle, (2) Garner did, or was able to, purchase a comparable automobile with State Farm's payment, (3) Garner has not complied with the contractual right to have the actual cash value determined by appraisal in the event of a dispute concerning State Farm's offer, (4) State Farm acted, at all times, fairly, reasonably and in good faith, and (5) Garner suffered no damage as a result of State Farm's alleged conduct.

3.    **Legal Issues**:

***Plaintiff's Statement:***  Plaintiff alleges that State Farm violates 10 CCR § 2695.8(b) (the "Total Loss Regulation") and that the requirements of the Total Loss Regulation are incorporated by law into insurance policy, including the definition of "actual cash value" as used in the policy.  Specifically, Plaintiff alleges that the Total Loss Regulation, requires:  (1) that the cost of a comparable vehicle be determined using either the asking price or actual sales price, (2) that any deviation from this cost must be discernible, measurable, itemized and specified; and (3) that State Farm "fully explain" the method by which the value of the loss vehicle was determined.

Plaintiff alleges that State Farm violates the Total Loss Regulation and the policy in that: (1) the "projected sales price" used in determining the value of the loss vehicle is neither the actual selling price of the vehicle or the advertised price required by the Total Loss Regulation; (2) the deduction of the Ad Age Adjustment violates the Total Loss Regulation and the policy because the adjustment is not "discernible," "measurable," or "appropriate in dollar amount;" (3) the Valuation does not "fully explain" the method by which the value of the loss vehicle was calculated because it is incomprehensible, misleading and incomplete.

The amount calculated in accordance with the Total Loss Regulation *is by law* the "actual cash value" of the vehicle and the amount State Farm must offer to Plaintiff and the class. Plaintiff believes therefore that there is no question concerning whether State Farm offered Plaintiff the actual cash value of her vehicle.

Plaintiff further alleges that State Farm's practice of knowingly violating the law is a breach of the covenant of good faith and fair dealing implied into the policy as a matter of law and that it constitutes an unlawful and unfair business practice in violation of Business and Professions Code § 17200.

***Defendant's Statement:***  State Farm contends that the following legal issues may be presented in this action, although early resolution of some of the legal issues may moot other issues:

(a)    Whether section 2695.8(b)(2) of the California Fair Claims Settlement Practices Regulations was in force as to State Farm at the time Garner's vehicle total loss insurance claim

1    was adjusted and paid since the DMV did not and could not make actual sales data available to

2    State Farm or its total loss vendor.

3        (b)    Whether, if section 2695.8(b)(2) was in effect at the time of Garner's total loss

4    claim, State Farm complied with the regulation.

5        (c)    Whether Garner is required to submit to appraisal of her total loss claim pursuant

6    to the appraisal clause in her State Farm automobile insurance policy.  If so, then this action

7    should be stayed while the appraisal occurs.  This should not be a lengthy process; probably just

8    a few weeks to get an appraisal panel together and have a short hearing with the evidence

9    regarding the value of Garner's total loss vehicle.

10        (d)    Whether State Farm paid Garner the actual cash value of her total loss vehicle.

11        (e)    Whether Garner suffered any damage or is entitled to restitution.

12        (f)    Whether Garner is entitled to any injunctive relief.

13        (g)    Whether Garner can prove the required elements of her cause of action for breach

14    of contract:  (1) the existence of a contract, (2) her performance or excuse for nonperformance,

15    (3) State Farm's breach, and (4) damages to Garner as a result of the breach.

16        (h)    Whether Garner can prove the required elements of her cause of action for breach

17    of the implied covenant of good faith and fair dealing:  (1) benefits due under the policy were

18    withheld, and (2) the reason for withholding benefits was unreasonable or without proper cause.

19        (i)    Whether Garner can prove a violation of Business and Professions Code § 17200

20    on State Farm's alleged violation of California Fair Claims Settlement Practices Regulations

21    § 2695.8(b)(2), a regulation that was not in force as to State Farm at the time of Garner's total

22    loss insurance claim was adjusted and paid.

23        (j)    Whether Garner can prove a violation of Business and Professions Code § 17200

24    predicated on State Farm's alleged breach of contract and/or alleged breach of the implied

25    covenant of good faith and fair dealing and whether Garner has any right to relief under § 17200.

26        (k)    Whether Garner can prove the required elements of her cause of action for unjust

27    enrichment, *i.e.*, that State Farm received a benefit and unjustly retained that benefit at her

28    expense.

(l)     Whether this action meets the following requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; and, pursuant to Rule 23(b)(3), that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**4.     Motions:** Defendant's motion to dismiss the Complaint under Rule 12(b)(6) and its motion to compel appraisal of the vehicle and to stay the case pending appraisal have been briefed and are under submission.

Plaintiff anticipates that she will bring a motion for class certification and, if required, a motion to amend the Complaint.

Defendant anticipates that it will bring a motion for judgment on the pleadings seeking dismissal of Plaintiff's claims for restitution and injunctive relief. State Farm also anticipates that, in the event its currently pending Rule 12(b)(6) motion is denied, it will move for summary judgment on all of Plaintiff's claims on the ground that section 2695.8(b)(2)was not effective as to State Farm at the time of Garner's loss inasmuch as actual sales price data remains unavailable from the DMV. State Farm also anticipates that it will file a motion to strike the class allegations on the ground that this action is not suitable for class treatment.

**5.     Amendment of Pleadings:** Plaintiff will amend her Complaint to allege claims arising from the use of the appraisal process by State Farm to discourage contests over its valuation. As State Farm's motion to dismiss is still pending, it has not yet filed an answer to Garner's complaint. State Farm will oppose any motion by Plaintiff for leave to amend.

**6.     Evidence Preservation:** Plaintiff will preserve evidence in accordance with the guidelines of Rule 26(a) and related evidentiary provisions governing documentary, physical and electronic evidence. Plaintiff has sent a letter to State Farm notifying it of its obligations to preserve evidence and expects that State Farm has done so. State Farm responded to Plaintiff's

1  counsel that it will preserve evidence in accordance with the guidelines of Rule 26(a) and related

2  evidentiary provisions governing documentary, physical and electronic evidence and it will do

3  so.

4      **7.    Disclosures:**  The parties have not yet made disclosures under Rule 26(a) of the

5  Federal Rules of Civil Procedure.  The parties have stipulated to do so on or before June 25,

6  2008.

7      **8.    Discovery:**

8      Counsel have conferred concerning the possibilities for a prompt settlement or resolution

9  of the case, the disclosures required by Rule 26(a)(1), issues relating to preserving discoverable

10  information, and to develop a proposed discovery plan that indicates the parties' views and

11  proposals concerning the following issues:

12      (1)    What changes should be made in the timing, form, or requirement for disclosures

13  under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or

14  will be made.

15      Plaintiff does not believe that any changes need to be made in the timing, form or

16  requirement for disclosures under Rule 26(a)(1).  State Farm believes that the initial disclosures

17  should be limited to the threshold issue before the Court:  whether the actual sales data was made

18  available by the DMV to State Farm or its vendor, which was a condition precedent to

19  enforcement of section 2695.8(b)(2). No such disclosures have yet been made.  They will be

20  made on June 25, 2008 pursuant to stipulation of the parties.

21      (2)    The subjects on which discovery may be needed, when discovery should be

22  completed, and whether discovery should be conducted in phases or be limited to or focused

23  upon particular issues.

24      ***Plaintiff's Statement***: Plaintiff currently believes that discovery will be needed on at

25  least the following topics:

26      (a)    The development of and basis for the method of calculating value used by

27          Mitchell;

28

(b)     State Farm's knowledge of and intent regarding the use of projected sales prices and the Ad Age Adjustment;

(c)     The number, identity and details of claims adjusted using the methods challenged in this case;

(d)     The circumstances surrounding litigation over implementation of the Total Loss Regulation and agreements reached by the parties relating thereto;

(e)     The availability from the Department of Motor Vehicles of sales data related to the sales of comparable vehicles;

(f)     The practices of other insurers and valuation experts related to compliance with the Total Loss Regulation;

(g)     The practices of State Farm related to the appraisal provision of the policy and the number, nature and outcome of appraisal requests during the relevant time frame.

Plaintiff believes that discovery should be phased so that issues relevant to class certification are discovered first. Plaintiff currently anticipates that the discovery pre-certification required will be two waves of written discovery, each of which should take approximately ninety days (including the time needed for motions to compel and subsequent responses, if any), depositions of the persons at State Farm who are most knowledgeable concerning the issues described above and subpoenas for records and testimony of other insurers and persons engaged in the business of valuing vehicle total loss claims.  Plaintiff also believes that many of the basic facts relating to the practices of State Farm relating to loss valuation (for example, the dates during which Mitchell was employed, the number of claims adjusted and similar matters) can be established by stipulation.  If they cannot, Plaintiff anticipates that requests for admission would need to be served.

Plaintiff believes that issues unrelated to class certification should be addressed after the hearing on the motion for class certification is heard and decided and the issues to be tried on a class-wide basis are defined.

Plaintiff does not believe that the "phasing" requested by State Farm is appropriate because the issues raised are common to the class and because the question of whether State

1   Farm offered and paid the "actual cash value" of Plaintiff's vehicle can be determined simply by

2   comparing the amount offered with the amount which should have been offered under the Total

3   Loss Regulation.  The amount calculated in accordance with Total Loss Regulation is *by law* the

4   "actual cash value" of the vehicle.

5       ***Defendant's Statement***:  In the event that the Court denies both State Farm's motion to

6   dismiss and its motion to compel appraisal, then State Farm believes that the discovery should be

7   phased as follows.

8       First, discovery should be conducted on the threshold issue of whether, prior to

9   adjustment of Garner's total loss claim, the DMV made available to State Farm or its vendor

10   actual sales data for comparable vehicles.  All of Plaintiff's claims are premised on State Farm's

11   alleged violation of section 2695.8(b)(2).  If the Court determines that the regulation was not in

12   effect as to State Farm at the time it settled Garner's total loss claims because the DMV had not

13   made actual sales data available, Plaintiff's claims fail as a matter of law and this lawsuit will be

14   dismissed.  State Farm anticipates that discovery on this threshold issue will require depositions

15   and subpoenas for the production of certain documents to the DMV and Mitchell.  This

16   corresponds with items (d) and (e) in Plaintiff's list above.

17       Second, following resolution of the issue of whether the regulation was in effect as to

18   State Farm at the time of Garner's loss, and if no appraisal is ordered, discovery should be

19   focused on whether Garner has suffered any damage as a result of the conduct alleged in her

20   complaint.  For instance, if Garner was paid the actual cash value of her vehicle or as much or

21   more than the actual sales price of comparable vehicles, as determined by an appraisal or

22   otherwise, she has no claim for damage and cannot represent the purported class.  This discovery

23   will likely involve discovery of sales records for the comparable vehicles used in Garner's total

24   loss evaluation and depositions of persons knowledgeable about the sale of the comparable

25   vehicles used in Garner's evaluation, as well as written discovery to Plaintiff.

26       Only if it is determined that the regulation was in effect as to State Farm at the time of

27   Garner's total loss and that Garner has actually been damaged by State Farm's alleged conduct

28   should discovery be allowed concerning potential class certification issues.  Discovery regarding

1    other total loss claims of State Farm insureds and Mitchell's methodology is inappropriate and

2    unnecessary unless and until it is determined that the regulation was in effect as to State Farm

3    and that State Farm did not pay Garner the actual cash value of her vehicle.  State Farm also

4    objects to Plaintiff's stated intent to seek discovery of the practices of other insurers and other

5    valuation companies as such information is wholly irrelevant to the allegations against State

6    Farm.

7        All counsel request that, after the Court has issued its decisions on the pending motions,

8    the Court hold a conference to discuss the phasing of discovery and related motion practice.

9        (3)    Issues relating to disclosure or discovery of electronically stored information,

10   including the form or forms in which it should be produced.

11       The parties agree that a meeting will be set between counsel and the information

12   technology professionals employed by counsel for State Farm and Plaintiff to address the format

13   for the delivery of electronically stored information.  Any issues which cannot be resolved after

14   the conference can be submitted to the court for resolution.

15       (4)    Any issues relating to claims of privilege or of protection as trial-preparation

16   material, including – if the parties agree on a procedure to assert such claims after production –

17   whether to ask the court to include their agreement in an order.

18       *Plaintiff's Statement*: Plaintiff is not currently aware of documents or information they

19   would seek to withhold as privileged except for meetings between Plaintiff and her counsel and

20   certain information exchanged with potential expert witnesses on valuation issues.  Plaintiff

21   proposes to assert these protections prior to the production of documents or information which

22   would otherwise require the information and does not anticipate asserting the protections

23   subsequently as a practice.

24       *Defendant's Statement:*  Defendant will assert the attorney-client privilege and work

25   product protection as appropriate and will provide Plaintiff with a privilege log identifying

26   information withheld on that basis.

27       (5)    What changes should be made in the limitations on discovery imposed under the

28   Federal Rules of Civil Procedure or by local rule and what other limitations should be imposed.

1    ***Plaintiff's Statement:***  Except as previously stated, Plaintiff does not currently believe

2    that the scheduling limitations imposed on discovery under the Federal Rules or the local rules

3    need be modified.  Plaintiff believes that it is likely that the limits on the number of depositions

4    and items of written discovery will need to be modified.  Plaintiff does not at this time know how

5    many depositions or items of written discovery will be required.

6    ***Defendant's Statement***:  As set forth above, State Farm believes that it is efficient and

7    proper for the Court to phase discovery.  The first phase should be limited to discovery

8    concerning whether actual sales data was made available by the DMV to either State Farm or

9    Mitchell.   The next phase of discovery should target the issue of whether Garner suffered any

10   damage.  No discovery should be allowed concerning other State Farm insureds' total loss

11   claims, class certification, or any other issue until these two issues have been determined.

12           (6)     Any other orders that should be entered by the court under Rule 26(c) or under

13   Rule 16(b) and (c).

14           Except as previously stated, the parties are presently unaware of any other orders which

15   they believe the Court should enter under the specified Rules.

16           **9.     Class Action Issues:**  Plaintiff brings this case as a class action under F.R.C.P.

17   Rule 23(a) and 23(b)(3).  The proposed class is defined as follows:

18           All California residents insured under a State Farm private passenger vehicle
             policy who (1) received a first party total loss settlement or settlement offer based
19           in whole or in part on the "projected sales price" of a comparable vehicle or
             (2) whose settlement or settlement offer was reduced to account for the difference
20           between the date on which a comparable vehicle was advertised or sold and the
             date of the loss of the claimant's vehicle.
21
22           ***Plaintiff's Statement***: Plaintiff anticipates bringing a motion for class certification within

23   60 days after completion of the discovery described in Item 8.  This schedule could be

24   lengthened or shortened depending upon the progress achieved and evidence obtained in

     discovery.
25
             Plaintiff believes that she is entitled to maintain this case as a class action under Rule
26
     23(a) and (b)(3) because the actions challenged in this litigation apply uniformly to the class of
27
     persons defined.  The insurance policy which is the subject of this litigation was materially
28
     unchanged during the relevant time period and use of a projected sales price, the Ad Age

13

1   Adjustment and the Valuation are either consistent with the policy and the law or they are not,

2   irrespective of the individual circumstances of the insureds. Because the Total Loss Regulation

3   defines the "actual cash value" of a vehicle, State Farm's practices challenged here raise

4   common liability and damages issues.

5       Numerosity (Rule 23(a)(1)) is easily satisfied because there are at least thousands of total

6   loss claims adjusted in the manner challenged. Because the legal and factual issues raised by the

7   litigation are substantially identical for all class members, commonality (Rule 23(a)(2)) and

8   typicality (Rule 23(a)(3)) are easily satisfied and the common issues predominate as required by

9   Rule 23 (b)(3). Plaintiff is an adequate representative (Rule 23(a)(4)) in that her circumstances

10  are sufficiently similar to those of other class members to allow her to represent the class without

11  conflicts between her position and those of other class members and because she is represented

12  by counsel with substantial experience in class litigation.

13      ***Defendant's Statement***:  State Farm contends that there are several threshold issues

14  which must be resolved (and on which discovery must be had) before the Court can even begin

15  to address class certification.  In the event that the issue of class certification needs to be

16  addressed at some point down the road, the issues presented by Garner's complaint are not

17  appropriate for class certification because individual issues concerning each insured's total loss

18  vehicle and vehicle evaluation predominate. Under Rule 23 of the Federal Rules of Civil

19  Procedure, Garner must establish that (1) the class is so numerous that joinder of all members is

20  impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

21  defenses of the representative parties are typical of the claims or defenses of the class; (4) the

22  representative parties will fairly and adequately protect the interests of the class; and – pursuant

23  to Rule 23(b)(3) – that the questions of law or fact common to class members predominate over

24  any questions affecting only individual members, and that a class action is superior to other

25  available methods for fairly and efficiently adjudicating the controversy.

26      Here, for example only, each vehicle total loss claim is factually different, and must be

27  resolved on its own peculiarities.  It will be necessary to have an appraisal to determine the

28  actual cash value of each purported class Plaintiff's total loss vehicle.  The age, mileage, and

1    condition of each pre-loss insured vehicle, whether a particular vehicle is available for
2    inspection, whether an appraisal was had, State Farm's total loss evaluation of each vehicle, and
3    whether an insured was paid the actual cash value of his or her vehicle render this action
4    inappropriate for class treatment.  The manner in which State Farm handled the claim presented
5    by each of its insureds – and whether such claims handling could possibly be called a breach of
6    the covenant of good faith and fair dealing – is also factually distinguishable, and must be
7    resolved on its own peculiarities.  State Farm will oppose any motion for class certification made
8    by Plaintiff.

9           **10.    Related Cases:**  The parties are not aware of any related cases.

10          **11.    Relief:**  Plaintiff seeks the following relief:

11                 1)    Certification of this action as a class action;

12                 2)    Damages and restitution to Plaintiff and the Class of the difference
13   between the amount paid by State Farm as the value of the Total Loss Vehicles and the value of
14   that vehicle as established by § 2695.8(b), any applicable tax or fee required by § 2695.8(b)(1)
15   and interest on these amounts at the legal rate from the date State Farm made payment of the loss
16   until the date on which the correct amount is paid (collectively, the "Claim Amount");

17                 3)    Exemplary and punitive damages;

18                 4)    An injunction:  1) prohibiting State Farm and its agents, employees and
19   others from paying claims for Total Loss Vehicles based on any values other than the asking
20   price or actual sales price of such vehicles within ninety (90) days of the settlement offer; and
21   2) requiring State Farm to explain fully and fairly to its insureds the methods by which total loss
22   claims are calculated and, in particular, how that calculation complies with § 2695.8(b);

23                 5)    The imposition of a constructive trust on State Farm's assets, in an amount
24   equal to the aggregate Claim Amount for all members of the Class, including Plaintiff; and

25                 6)    Reasonable attorney's fees and costs of suit.

26          Plaintiff does not currently know the amount of the restitution and damages calculated as
27   indicated herein except as it relates to Plaintiff's individual claim, the amount of which is
28   specified above.  The method by which such restitution should be calculated is:  (1) calculate the

1   value of the vehicle using the unadjusted asking price specified in the Valuation; (2) add back to

2   this value the amount of the Ad Age Adjustment; (3) add to this value the amount of taxes and

3   fees required to be added under § 2695.8(b)(1).  Interest at the legal rate would then accrue on

4   the difference between:  (a) the total of (1)-(3); and (b) the amount paid to the insured, from the

5   date of payment of the lesser amount until the correct amount is paid.

6       ***Defendant's Statement***:  State Farm contends that this action is not one appropriate for

7   class certification as individual issues concerning individual automobile total loss claims,

8   individual claims handling, and individual alleged damages predominate.  State Farm contends

9   that Plaintiff is not entitled to any relief, monetary or otherwise.  Garner has no claim for

10  "restitution" under Business and Professions Code § 17200 as that term has been defined by the

11  California Supreme Court.  Garner similarly has no viable claim for injunctive relief.  Moreover,

12  Plaintiff's contention that the measure of alleged damage is the difference between the asking

13  price of comparable vehicles and the amount determined by State Farm to be the actual cash

14  value of the total loss vehicle is incorrect and would provide Plaintiff with a windfall to which

15  she is not entitled under the policy.  Indeed, even if the regulation at issue were in force, Plaintiff

16  is entitled to only the actual sales price of comparable vehicles, which almost always is

17  significantly less than the "asking price."

18      **12.    Settlement and ADR:**  Counsel have discussed the prospects for settlement of

19  the case and do not believe that prospects for an early settlement are good.  Counsel for both

20  parties have certified their compliance with ADR Local Rule 3-5.

21      Plaintiff believes that mediation of the dispute is appropriate at an early stage of the

22  litigation and has several suggestions concerning proposed mediators.  The parties are currently

23  not able to agree on an ADR program and have filed a Notice of Need For ADR Phone

24  Conference in compliance with Local Rule 16-8(c)(1) and ADR Local Rule 3-5.

25      Counsel believe that State Farm's motions to dismiss and for an appraisal need to be

26  resolved.  Counsel for State Farm believes that, if the case remains pending thereafter, the

27  threshold issues discussed above must be resolved, before any negotiations could even possibly

28  be fruitful.

1     **13.    Consent to Magistrate:**  Defendant has objected to the hearing of this case by a

2 magistrate.  None of the parties has as yet consented to appointment of a Magistrate Judge for

3 any purpose.  Plaintiff would be willing to consider reference of appropriate disputes or issues to

4 a magistrate.   State Farm does not believe that any issues or disputes in this action will be

5 appropriate for reference to a Magistrate Judge.

6     **14.    Other References:**   The parties do not believe that any other reference is

7 appropriate at this time.

8     **15.    Narrowing of Issues**:

9     ***Plaintiff's Statement***: Plaintiff believes that many of the factual issues relating to the

10 claim should be the subject of a stipulation since they are beyond reasonable dispute.  Plaintiff

11 believes that it is likely that discussions concerning these issues will commence when the

12 pending motions by State Farm are resolved.

13     ***Defendant's Statement***:   State Farm's motion to dismiss and motion to compel

14 contractual appraisal are expected to either result in dismissal of this action or a narrowing and

15 clarification of the issues.  If the Court grants State Farm's Rule 12(b)(6) motion to dismiss, the

16 lawsuit will be over.  If the Court orders an appraisal, the appraisal will establish the actual cash

17 value of Garner's total loss vehicle.  Depending on the results of the appraisal, the matter may be

18 at an end or, if not, the issues will be better crystallized.  Once the appraisal is complete, the

19 parties can report back to the Court on the results and a determination can be made on the

20 viability of Garner's claims.

21     If the Court denies both of State Farm's motions, discovery should progress in phases as

22 set forth above in order to narrow the issues and to expedite this matter and best protect the

23 resources of the parties and the Court.  If discovery shows that section 2695.8(b)(2) was not in

24 force as to State Farm at the time Garner's total loss claim was adjusted and paid, then there will

25 be no additional issues to resolve in the case.  If the case proceeds beyond that threshold issue,

26 then discovery should be limited to the question of whether Garner has suffered any damages as

27 a result of State Farm's valuation and payment of her total loss claim.  State Farm does not

28 believe discovery beyond these preliminary issues is appropriate or necessary at this time.

**16.    Expedited Schedule:**  The parties do not believe that an expedited schedule is appropriate.

**17.    Scheduling:**

*Plaintiff's Statement:*

Plaintiff anticipates bringing a motion for class certification within sixty (60) days after the completion of the discovery outlined in Section 8.  The schedule of events which occur after the determination of class certification issues will depend upon the court's ruling on class certification issues.  If a class is certified on all claims, Plaintiff believes that the case can be ready for trial within six (6) months of the certification of a class in this case.

Assuming that a motion is filed approximately eight months from the date of the case management conference in this case (based on the previously-stated assumptions concerning pre-certification discovery and time to file a motion) and decided forty-five days thereafter, the trial date would be October 5, 2009.  Assuming this trial date, Plaintiff proposes the following additional dates:

1.    Final Pre-Trial Conference:  September 21, 2009

2.    Non-expert Discovery Cut-off:  September 4, 2009

3.    Dispositive Motions:  August 5, 2009

4.    Expert Exchange:  July 6, 2009

*Defendant's Statement:*  State Farm's motion to dismiss and motion to compel appraisal are still pending and resolution of these motions may significantly narrow the issues in this action. As set forth above, State Farm requests that the preliminary issues of whether section 2695.8(b)(2) was effective as to State Farm at the time of Garner's total loss and whether Garner has suffered any damage must be resolved before any discovery or motions concerning class certification.  Accordingly, State Farm proposes the following case schedule:

1.    If State Farm's motion to dismiss is denied but its motion to compel appraisal and for a stay is granted, State Farm proposes that the Court provide the parties with sixty days within which to have the appraisal conducted and thirty days to report the results of the appraisal

and make any related motions to the Court. Thus, State Farm proposes that the Court order the appraisal be completed by August 22, 2008 and that the parties submit related briefing to the Court by September 22, 2008.

2.      In the event that State Farm's motion to compel appraisal is denied, State Farm requests that the Court provide the parties with one hundred twenty days to conduct discovery regarding the issue of whether the regulation was effective as to State Farm at the time of Garner's total loss. State Farm proposes that this discovery be concluded by October 26, 2008. State Farm further proposes that the Court set up a schedule following this discovery for briefing and a hearing regarding the issue of whether the regulation was in effect as to State Farm.

3.      Following the Court's determination on the issue of whether the regulation was effective as to State Farm at the time of Garner's loss, State Farm proposes that the Court provide the parties with sixty days within which to conduct discovery concerning Garner's alleged damages following the payment she received from State Farm. The Court should set a briefing and hearing schedule following the damage discovery.

4.      Once discovery has been conducted concerning the threshold issues, and the Court has decided these issues, if issues remain, the Court should hold another case management conference to address additional discovery, briefing schedules and a trial date.

**18.    Trial:** Plaintiff has requested a jury trial, which she believes will not exceed ten court days. State Farm contends that if there ever is a trial, it will be a jury trial. State Farm believes it is premature for the parties to estimate the length of a trial. That will depend, in part, on the issues which the Court permits to be litigated in this matter, as well as whether the trial were to proceed only on Garner's claim or as a class action.

**19.    Disclosures of Non-Party Interested Entities:** Defendant has submitted the statement as required. Plaintiff is a natural person and is therefore not obligated to do so.

**20.    Other Matters:** Because of the significant disparity in approaches suggested by Plaintiff and Defendant, the parties have not submitted a proposed order. Based on the views expressed by the Court, the parties will submit a proposed order at the conclusion of the conference or at such other time as the Court directs.

DATED:  June 17, 2008          BIRKA-WHITE LAW OFFICES


                               By: _____/s/_____
                                        David M. Birka-White

                                   David M. Birka-White (State Bar No. 85721)
                                   Stephen Oroza (State Bar No. 84681)
                                   Thomas D. Hicks (State Bar No. 238545)
                                   BIRKA-WHITE LAW OFFICES
                                   744 Montgomery Street, Fourth Floor
                                   San Francisco, CA  94111
                                   Telephone: (415) 616-9999
                                   Facsimile: (415) 616-9494

DATED:  June 17, 2008          SEDGWICK, DETERT, MORAN & ARNOLD LLP


                               By: _____/s/_____
                                        Bruce D. Celebrezze

                                   Kevin J. Dunne (State Bar No. 040030)
                                   Bruce D. Celebrezze (State Bar No. 102181)
                                   Laura Goodman (State Bar No. 142689)
                                   SEDGWICK, DETERT, MORAN &
                                   ARNOLD LLP
                                   One Market Plaza
                                   Steuart Tower, 8th Floor
                                   San Francisco, California 94105
                                   Telephone: (415) 781-7900
                                   Facsimile: (415) 781-2635
                                   Attorneys for Defendant State Farm
                                   Automobile Insurance Company

JOINT CASE MANAGEMENT STATEMENT