IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARNESHA M. GARNER,

      Plaintiff,

  v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.
_____/

No. C 08-1365 CW

ORDER DENYING
DEFENDANT'S MOTION
TO DISMISS AND
GRANTING DEFENDANT'S
MOTION TO COMPEL
APPRAISAL AND STAY
THE ACTION

    Defendant State Farm Mutual Automobile Insurance Company moves
to dismiss the complaint and, in the alternative, to compel an
appraisal and stay these proceedings in the interim.  Plaintiff
Arnesha M. Garner opposes both motions.  The matter was heard on
June 24, 2008.  Having considered oral argument and all of the
papers submitted by the parties, the Court denies Defendant's
motion to dismiss and grants its motion to compel an appraisal and
stay the action.

BACKGROUND

    Plaintiff holds an automobile insurance policy issued by
Defendant.  The policy contains a section entitled, "Settlement of
Loss -- Comprehensive and Collision Coverage."  It states:

United States District Court
For the Northern District of California

> We have the right to settle a loss with you or the owner of the property in one of the following ways:
>
> 1. pay the agreed upon actual cash value of the property at the time of the loss in exchange for the damaged property. <u>If the owner and we cannot agree on the actual cash value, either party may demand an appraisal</u> as described below. . . . ;
>
> 2. pay to:
>
>    a. repair the damaged property or part, or
>
>    b. replace the property or part. . . . ; or
>
> 3. return the stolen property and pay for any damage due to theft.
>
> Appraisal under item 1 above shall be conducted according to the following procedure. Each party shall select an appraiser. These two shall select a third appraiser. The written decision of any two appraisers shall be binding. The cost of the appraiser shall be paid by the party who hired him or her. The cost of the third appraiser and other appraisal expenses shall be shared equally by both parties. We do not waive any of our rights by agreeing to an appraisal.

Bianco Dec. (Docket No. 13) Ex. A at 24-25 (emphasis added).[1]  The policy also provides that there can be "no right of action" against Defendant "until all the terms of this policy have been met." <u>Id.</u> at 27.

On April 27, 2007, Plaintiff was involved in an accident that resulted in the total loss of her vehicle. She submitted a claim with Defendant. Based on an analysis performed by Mitchell International, Inc., Defendant valued Plaintiff's car at $15,993

---

[1]Because the insurance policy forms the basis of the action, it is properly considered on Defendant's motion to dismiss. <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment.") (internal quotation marks omitted).

1  and offered to settle her claim accordingly.

2      Plaintiff asserts that Defendant undervalued her car because

3  the valuation method on which Mitchell relied violates the Total

4  Loss Regulation (TLR) promulgated by the California Insurance

5  Commissioner.  This regulation provides in relevant part as

6  follows:

> (b) In evaluating automobile total loss claims the
> following standards shall apply:

7
8

> (1) The insurer may elect a cash settlement that shall
> be based upon the actual cost of a "comparable
> automobile" less any deductible provided in the
> policy. . . .

9
10

> (2) A "comparable automobile" is one of like kind and
> quality, made by the same manufacturer, of the same or
> newer model year, of the same model type, of a similar
> body type, with options and mileage similar to the
> insured vehicle. . . . <u>In determining the cost of a
> comparable automobile, the insurer may use either the
> asking price or actual sale price of that automobile</u>.
> Any differences between the comparable automobile and
> the insured vehicle shall be permitted only if the
> insurer fairly adjusts for such differences.  <u>Any
> adjustments from the cost of a comparable automobile
> must be discernible, measurable, itemized, and
> specified as well as appropriate in dollar amount and
> so documented in the claim file</u>.  Deductions taken from
> the cost of a comparable automobile that cannot be
> supported shall not be used. . . . <u>A comparable
> automobile must have been available for retail purchase
> by the general public in the local market area within
> ninety (90) calendar days of the final settlement
> offer</u>. . . .

11
12
13
14
15
16
17
18
19
20

21

> . . .

22

> (4) The insurer shall take reasonable steps to verify
> that the determination of the cost of a comparable
> vehicle is accurate and representative of the market
> value of a comparable automobile in the local market
> area. . . . <u>The cost of a comparable automobile shall
> be determined as follows and, once determined, shall be
> fully itemized and explained in writing for the
> claimant at the time the settlement offer is made</u>:

23
24
25
26

> (A) when comparable automobiles are available or
> were available in the local market area in the last
> 90 days, the average cost of two or more such

27
28

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

comparable automobiles; or,

(B) when comparable automobiles are not available or were not available in the local market area in the last 90 days, the average of two or more quotations from two or more licensed dealers in the local market area; or,

(C) the cost of a comparable automobile as determined by a computerized automobile valuation service that produces statistically valid fair market values within the local market area; or

(D) if it is not possible to determine the cost of a comparable automobile by using one of the methods described in subsections (b)(3)(A), (b)(3)(B) and (b)(3)(C) of this section, the cost of a comparable automobile shall otherwise be supported by documentation and fully explained to the claimant. Any adjustments to the cost of a comparable automobile shall be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claims file. Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used[.]

10 Cal. Code Regs. § 2695.8(b) (emphasis added).

The complaint identifies three ways in which Defendant has violated the TLR.  First, Defendant allegedly determines the value of comparable vehicles by using what it calls a "projected sales price."  This figure, which Mitchell provides to Defendant, is derived by reducing the advertised price of the comparable vehicle by a particular amount -- in the case of Plaintiff's claim, 7.26% -- to reflect the price at which the vehicle is likely to sell. Plaintiff claims that Defendant's reliance on the projected sales price violates the TLR because this price is neither the "asking price or actual sale price."  See § 2695.8(b)(2).  She also claims that using the projected sales price results in the systematic undervaluation of total losses.

Second, Defendant allegedly deducts from the value of

4

United States District Court
For the Northern District of California

comparable vehicles an amount that reflects the decline in the vehicles' value between the date on which they are advertised for sale and the date of the total loss.  Plaintiff claims that this amounts to an adjustment that is not "discernible, measurable, itemized, and specified as well as appropriate in dollar amount" as required by § 2695.8(b)(2).  In addition, the TLR requires that, in order for an automobile to serve as a comparable vehicle, it must have been advertised within ninety days of the final settlement offer.  Plaintiff asserts that the regulation therefore already takes into account the age of the advertisement, and no further age adjustment is permitted.

Third, Defendant allegedly fails to explain fully how it calculates the value of total losses.  Plaintiff claims that the information Defendant provides with its settlement offers is intentionally arcane and obscure, and is intended to disguise its use of improper valuation methods.

Plaintiff alleges that, as a result of Defendant's use of a "projected sales price" and its ad-age adjustment, she was offered $1,564 less for her vehicle than it was worth, based on a valuation method permitted under the TLR.[2]  She now charges Defendant with breaching the insurance policy, of which she maintains the TLA forms a part.  She also claims that Defendant breached the implied covenant of good faith and fair dealing, violated California's

---

[2]The Court notes that this allegation compares Defendant's settlement offer to the value of her automobile based on the asking price of comparable vehicles.  It does not take into account that the TLR permits an insurer to conduct its valuation using either the asking price or the actual sale price of comparable vehicles. Plaintiff does not specifically allege that Defendant's offer was less than the value of her automobile based on the actual sale price of comparable vehicles.

1  Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and was

2  unjustly enriched.

3                              LEGAL STANDARD

4  I.  Motion to Dismiss

5       A complaint must contain a "short and plain statement of the

6  claim showing that the pleader is entitled to relief." Fed. R.

7  Civ. P. 8(a).  When considering a motion to dismiss under Rule

8  12(b)(6) for failure to state a claim, dismissal is appropriate

9  only when the complaint does not give the defendant fair notice of

10 a legally cognizable claim and the grounds on which it rests.  See

11 Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964

12 (2007).

13      In considering whether the complaint is sufficient to state a

14 claim, the court will take all material allegations as true and

15 construe them in the light most favorable to the plaintiff.  NL

16 Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

17 Although the court is generally confined to a consideration of the

18 allegations in the pleadings, the court may also consider matters

19 of which judicial notice may be taken, and doing so does not

20 convert the motion into one for summary judgment.  United States v.

21 Ritchie, 342 F.3d 903, 909 (9th Cir. 1993).

22 II.  Motion to Compel Arbitration

23      Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq.,

24 written agreements that controversies between the parties shall be

25 settled by arbitration are valid, irrevocable, and enforceable.[3]   9

26 _____

27      [3]Plaintiff argues that the FAA does not apply here because her
   policy is not a "contract evidencing a transaction involving
   [interstate] commerce," 9 U.S.C. § 2.  Because the complaint
28 asserts jurisdiction on the basis of diversity, this argument is

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. § 4.

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id.  The FAA reflects a "liberal federal policy favoring arbitration agreements."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  A district court must compel arbitration under the FAA if it determines that: 1) there exists a valid agreement to arbitrate; and 2) the dispute falls within its terms.  Stern v. Cingular Wireless Corp., 453 F. Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).

## DISCUSSION

I.  Applicability of the Total Loss Regulation

Defendant argues that at the time it offered to settle

_____

not well taken.  In any event, even if the FAA did not apply, the California Arbitration Act would.  See Cal. Code Civ. Proc. § 1280 et seq.  Plaintiff herself believes the same result would be reached under either body of law.  Pl.'s Opp. to Def.'s Mot. to Compel Appraisal at 12 n.12; see also Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 406 (1996) ("In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the USAA.").  Therefore, the distinction is not determinative.

United States District Court
For the Northern District of California

1   Plaintiff's claim, the TLR had not yet gone into effect, and thus

2   it was not required to conduct valuations in accordance with the

3   regulation's provisions.  It notes that Plaintiff's claims are

4   based on amendments to the TLR that were first proposed in 2003.  A

5   number of insurers filed a lawsuit seeking an injunction

6   prohibiting those amendments from going into effect.  Among the

7   insurers' objections was that data concerning the actual sales

8   price of comparable vehicles was not available from the California

9   Department of Motor Vehicles (DMV), which in their view was the

10  only source of information with enough volume to enable meaningful

11  comparisons.

12      Eventually, a settlement was reached whereby the parties

13  agreed to the following:

14      [T]he language to be adopted in section 2695.8(b)(2),
        requiring insurers to determine the cost of a comparable
15      automobile using either the ask price or actual sales
        price of that vehicle, shall not become effective until
16      sixty (60) days after sales price data becomes available
        from the Department of Motor Vehicles.  Prior to the time
17      such sales price data becomes available, all other
        provisions of section 2695.8(b)(2) of the Replacement
18      Regulations shall be applicable to the determination of
        the cost of a comparable automobile.  It is further
19      agreed that within sixty (60) days of automobile sales
        price data becoming available from the Department of
20      Motor Vehicles, plaintiffs' member companies shall
        determine the cost of a comparable vehicle by using
21      either the actual sales price or the ask price of a
        comparable automobile.
22
    Def.'s Req. for Judicial Notice Ex. 3 at 2.[4]
23

24      The parties dispute whether the DMV sales information had

25  become available at the time Defendant made its settlement offer.

26  In support of its position that the information was not available,

27      [4]The Court grants Defendant's request for judicial notice of
    Exhibits 2 and 3, both of which are documents from the previous
28  litigation.

Defendant has submitted a letter purporting to be from the DMV. The letter is dated November 1, 2007 and is addressed to Mitchell's General Counsel.  It states:

> The California Department of Motor Vehicles has received and approved an application from Mitchell International Inc. to obtain registration records on vehicles sold by automotive dealerships in California.  The data will be used to assist its insurance carrier clients in the determination of the value of vehicles in total loss claims.
>
> While the Department staff has been working with Mitchell for the past year on the request and assigned Mitchell with a requester code account number, the Department has not yet made any vehicle data available to Mitchell.  Due to budget and resource constraints as well as the programming priority requirements identified in applicable regulation[s] . . . , it is typical that a data request from commercial entities may take from six months to a year or more to complete.
>
> We are working in good faith with your company to fulfill the data request and, if resources are available, hope to complete such request earlier than originally anticipated.  However, we are not in a position yet to determine exactly when such data will be available to your company.

Id. Ex. 4.

Defendant argues that this letter establishes that sales price data had not become available to Mitchell at the time it valued Plaintiff's car.  Plaintiff counters that the Court may not properly take judicial notice of the letter and, in any event, the letter does not demonstrate that the regulation was not in effect at the time of the conduct giving rise to this lawsuit.

Defendant is correct that under some circumstances, a Court may take judicial notice of official correspondence from a public agency.  See Hein v. Capitan Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1259 n.4 (9th Cir. 2000).  But taking judicial notice of adjudicative facts by reference to such

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

correspondence is proper only insofar as those facts are "not subject to reasonable dispute" and are "capable of accurate and ready determination" by reference to the correspondence.  Fed. R. Evid. 201(b).

While it might be proper to take judicial notice of the fact that in November, 2007, the DMV sent a letter to Mitchell stating that it had not yet made certain vehicle data available to Mitchell, the Court can go no further than that.  The fact that Mitchell had not yet been able to obtain whatever information it had sought from the DMV does not necessarily mean that sales information had not yet "become available," as that phrase is used in the settlement agreement.  It is not clear from the letter what information Mitchell had requested.  The open factual issues on this point preclude dismissal at this stage of the litigation.

In addition, Defendant's apparent interpretation of the term, "available" leads to a paradoxical result.  Accepting Defendant's argument that it was not bound by the regulation unless Mitchell had actually received sales price information from the DMV would mean that the regulation would have a different effective date with respect to each insurer.  It would also mean that an insurer could avoid complying with the regulation altogether simply by failing to request sales price information from the DMV.  While it is possible, though unlikely, that the settlement agreement contemplated such a scenario, the issue cannot be resolved on a motion to dismiss.  And, in any event, the letter does not establish that the DMV's sales price information was unavailable to Defendant itself; it refers only to <u>Mitchell's</u> request for information.

**United States District Court**

For the Northern District of California

1    For these reasons, the Court will not dismiss this case on the

2    basis that the relevant provision of the TLR was not in effect when

3    Defendant adjusted Plaintiff's claim.  As discussed at oral

4    argument, the Court will permit limited discovery on this issue.

5    At the conclusion of this discovery, Defendant may move for summary

6    adjudication on the issue of whether it was required to comply with

7    the regulation at the time it conducted its valuation of

8    Plaintiff's vehicle.  The Court will hold an evidentiary hearing

9    only if it determines that there is a dispute of material fact on

10   this point.

11   II.  Plaintiff's Contractual Obligation to Obtain an Appraisal

12   Defendant argues that Plaintiff has not yet satisfied her

13   obligation under the insurance policy to proceed with the appraisal

14   process.  It therefore moves for an order compelling Plaintiff to

15   obtain an appraisal and staying the action in the interim.  It also

16   moves, presumably in the alternative, to dismiss the complaint for

17   Plaintiff's failure to fulfill her contractual obligation to obtain

18   an appraisal prior to bringing her claims.

19   Plaintiff argues that, although contractual appraisal

20   provisions are not invalid per se, the scope of the appraisal

21   provision in her policy does not extend to the dispute at issue in

22   this lawsuit.  If the Court were to find to the contrary, she

23   argues, the provision should be held unenforceable because it is

24   unconscionable and because Defendant has waived its right to invoke

25   it.

26   A.    Scope of the Appraisal Clause

27   When a contract contains an arbitration clause, "there is a

28   presumption of arbitrability."  AT & T Techs., Inc. v. Commc'ns

11

**United States District Court**
For the Northern District of California

Workers of Am., 475 U.S. 643, 650 (1986). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). But "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T, 475 U.S. at 650 (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960)); see also Comedy Club, Inc. v. Improv W. Assocs., 514 F.3d 833, 842 (9th Cir. 2007).

Under California law, "[i]t is well settled that 'an agreement to conduct an appraisal contained in a policy of insurance . . . is considered to be an arbitration agreement subject to the statutory contractual arbitration law.'" Lambert v. Carneghi, 158 Cal. App. 4th 1120, 1129 (2008) (quoting Louise Gardens of Encino Homeowners' Ass'n, Inc. v. Truck Ins. Exch., Inc., 82 Cal. App. 4th 648, 658 (2000)). Thus, the appraisal provision in Plaintiff's policy is presumably valid and should be given a liberal interpretation.

The issue here is whether Plaintiff and Defendant were unable to "agree on the actual cash value" of Plaintiff's vehicle, which would trigger the parties' right to demand an appraisal pursuant to the policy. Plaintiff is correct that the appraisal provision does not encompass the full extent of the dispute between the parties. This action challenges Defendant's: 1) use of a "projected sales price," rather than either the asking price or the actual sales price, when calculating the value of comparable vehicles; 2) use of

12

United States District Court
For the Northern District of California

an "ad-age reduction" when calculating the value of comparable vehicles; and 3) failure to explain fully how it calculates the value of total losses. As Plaintiff notes, these issues are not themselves "appraisable" in that they concern alleged regulatory violations that will not be the subject of an appraisal.

Nonetheless, the dispute is, at its core, about the value of Plaintiff's automobile. She claims that, by using an improper method of valuation, Defendant offered to pay her less than her car was worth. She therefore literally disagrees with Defendant that $15,993 represents the actual cash value of her vehicle. For the purposes of interpreting the contractual language, it is immaterial that this disagreement is based on Plaintiff's objection to Defendant's valuation method.

It is clear from the insurance policy that, if the parties were unable to agree on an actual cash value, either of them could request an appraisal. When Defendant determined that Plaintiff would not accept its settlement offer, it invoked its contractual right and demanded an appraisal. See Bianco Dec. (Docket No. 8) Ex. C. Once Defendant invoked this right, the policy provided that each party "shall select an appraiser." Bianco Dec. (Docket No. 13) Ex. A at 24-25. Plaintiff, however, determined that she could not afford an appraisal and, instead, decided to file the present lawsuit. See Garner Dec. ¶ 11. But because she did not comply with the policy's terms, she failed to satisfy the contractual condition precedent to bringing this action.

Staying the action and requiring Plaintiff to submit to an appraisal would not prevent her from litigating her broader claims, assuming the value of her vehicle is actually greater than what

13

United States District Court
For the Northern District of California

Defendant offered to pay for it.  If an appraisal demonstrates that Defendant's offer was in fact less than the actual cash value of Plaintiff's car, she may proceed with this action.  Alternatively, if an appraisal determines that Defendant's settlement offer was equal to or greater than the actual cash value of Plaintiff's vehicle, it may demonstrate that Plaintiff lacks standing to sue.  It would be preferable to resolve any such standing issue early in these proceedings.

Plaintiff relies on <u>Travis v. American Manufacturers Mutual Insurance Co.</u>, 782 N.E.2d 322 (Ill. App. Ct. 2002), and <u>Hanke v. American International South Insurance Co.</u>, 782 N.E.2d 328 (Ill. App. Ct. 2002).  Those cases, which were decided in the same month by the same panel of Illinois appellate judges, involved facts and legal claims similar to those here. In each case, the plaintiff's insurance policy contained an appraisal clause that provided, "If we and you do not agree on the amount of loss, either may demand an appraisal of the loss." <u>Travis</u>, 782 N.E.2d at 326; <u>Hanke</u>, 782 N.E.2d at 330.  In both cases, the court found that the plaintiff's allegation that the defendant had engaged in a wide-ranging fraudulent scheme to undervalue insured vehicles presented "much more than a disagreement between the parties concerning the actual cash value of plaintiff's [vehicle]." <u>Travis</u>, 782 N.E.2d at 327; <u>Hanke</u>, 782 N.E.2d at 332.  Accordingly, the court found that the disputes were not covered by the appraisal clause.

Although the present case, like <u>Travis</u> and <u>Hanke</u>, is much more than a simple disagreement over the value of Plaintiff's automobile, this does not change the fact that there <u>is</u> such a disagreement.  Because that disagreement exists, Defendant had the

14

**United States District Court**
For the Northern District of California

contractual right to demand an appraisal, and Plaintiff had the contractual obligation to proceed with the appraisal process. Pursuant to the terms of the contract, this was a precondition to Plaintiff's filing a lawsuit.  It is not clear from the Travis and Hanke decisions that the policies at issue there contained a clause like the one here providing that no right of action against the insurer may lie until all the terms of the policy have been met.

Defendant has cited a California case that, while not directly on point, addresses the applicability of an appraisal clause where the parties' dispute concerns the proper method of valuation.  In that case, Community Assisting Recovery, Inc. v. Aegis Security Insurance Co., 92 Cal. App. 4th 886 (2001), the plaintiff asserted a claim under the California Unfair Competition Law.  It charged the defendants with improperly calculating the actual cash value of insured property by using a formulation of replacement cost less depreciation, rather than by reference to fair market value.  The policy provided, "In the case the insured and this company shall fail to agree as to the actual cash value or the actual amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser."  Id. at 892.  The court found that the plaintiff had not stated a claim in part because of the "safeguard" provided by the appraisal process contained in the policies.  Id. at 892.

Although the facts in Community Assisting Recovery are not as similar to those here as are the facts in Travis and Hanke, Community Assisting Recovery reflects a favorable treatment of appraisal provisions, even when considered in the context of an alleged unfair business practice based on an improper valuation

15

**United States District Court**
For the Northern District of California

method.   Such favorable treatment is not evident in the Illinois cases.   Because contract interpretation is a matter of state law, the court is required to give more weight to <u>Community Assisting Recovery</u> on this issue than to <u>Travis</u> or <u>Hanke</u>.   Accordingly, the Court finds that there is a disagreement between the parties as to the actual cash value of Plaintiff's vehicle, such that the appraisal clause is triggered.

      B.    Unconscionability

    "[G]eneral contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." <u>Circuit City Stores v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002).   Under California law, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."   Cal. Civ. Code § 1670.5(a).

    Unconscionability has both a procedural and a substantive component.   Although both components must be present before a court will refuse to enforce a contract, they need not be present to the same degree; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." <u>Armendariz v. Found. Health Psychcare Servs.</u>, 24 Cal. 4th 83, 114 (2000).

    A contract or clause is procedurally unconscionable if it is a contract of adhesion. <u>Circuit City</u>, 279 F.3d at 893 ("The

16

United States District Court
For the Northern District of California

[arbitration agreement] is procedurally unconscionable because it is a contract of adhesion."); <u>see also</u> <u>Flores v. Transamerica Homefirst, Inc.</u>, 93 Cal. App. 4th 846, 853 (2002) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." <u>Armendariz</u>, 24 Cal. 4th at 113 (quoting <u>Neal v. State Farm Ins. Co.</u>, 188 Cal. App. 2d 690, 694 (1961)).

Here, Plaintiff's policy is a standard form policy. It was drafted by the party with superior bargaining strength, and Plaintiff asserts that she was not given the opportunity to negotiate its terms. It is therefore a contract of adhesion. Defendant does not dispute this, but correctly notes that under California law, an adhesion contract is enforceable unless it is also substantively unconscionable. <u>See</u> <u>Graham v. Scissor-Tail, Inc.</u>, 28 Cal. 3d 807, 820 (1981).

Substantive unconscionability focuses on the harshness and one-sided nature of the terms of the contract. <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486-87 (1982). An adhesive agreement to arbitrate will satisfy this general standard for substantive unconscionability if the agreement lacks a "modicum of bilaterality." <u>Armendariz</u>, 24 Cal. 4th at 117. Whether an arbitration agreement is sufficiently bilateral is determined by an examination of the actual effects of the challenged provisions. <u>Ellis</u>, 18 Cal. App. 4th at 1803 ("Substantive unconscionability . . . refers to an overly harsh allocation of risks or costs which

17

is not justified by the circumstances under which the contract was made.") (internal quotation marks omitted).

Here, the appraisal provision is not one-sided. Each party is free to select an appraiser of its choice. Those two appraisers must agree upon a third appraiser to serve as a "tiebreaker." Because each party has an equal role in selecting the appraisers, the process will theoretically obtain as objective a result as possible under the circumstances.

It is true that the appraisal provision requires the policyholder to incur an additional cost that, in some cases, may exceed the difference between the settlement offer and the actual cash value of the lost vehicle. And although the parties share the costs of appraisal equally, the effect of the provision may be, in some cases, to dissuade a policyholder from disputing Defendant's valuation through the appraisal process. Still, the provision cannot be said to lack a "modicum of bilaterality."

In addition, the use of appraisal clauses in insurance contracts is sanctioned by state statute. The standard form contract for fire insurance policies in the State of California, which is mandated by statute, see Cal. Ins. Code § 2070, contains an appraisal provision similar to the one here. It, too, requires that the parties share the costs of appraisal. Cal. Ins. Code § 2071(a). In addition, the TLR itself provides that, if a policyholder notifies the insurer that he or she cannot purchase a comparable automobile for the settlement amount, the insurer may "invoke the appraisal provision of the insurance policy." 10 Cal. Code Regs. § 2695.8(c). Although the regulation does not specify whether it is permissible for such an appraisal provision to

18

**United States District Court**
For the Northern District of California

1  require that the insurer and the policyholder split the costs of
2  appraisal, Plaintiff does not contend that Defendant's practice of
3  doing so is out of the ordinary.

4      For these reasons, the Court is unable to conclude that the
5  appraisal provision is unconscionable under California law.

6      C.    Waiver

7      Plaintiff argues that Defendant has waived its right to compel
8  arbitration because it violated the covenant of good faith and fair
9  dealing.  While it is true that an insurer can involuntarily waive
10 its right to compel arbitration by engaging in bad faith conduct
11 under certain circumstances, "the burden of proof is heavy and
12 rests on the party seeking to establish waiver[,] which is not to
13 be lightly inferred." Christensen v. Dewor Devs., 33 Cal. 3d 778,
14 782 (1983) (internal quotation marks and alterations omitted).

15     The only case Plaintiff cites in support of her argument does
16 not address the type of bad faith conduct alleged here.  In that
17 case, Chase v. Blue Cross of California, 42 Cal. App. 4th 1142
18 (1996), the plaintiff alleged that her insurer had failed to inform
19 her of her rights under her health insurance policy --
20 specifically, her right to have the denial of any claim reviewed
21 and submitted to arbitration.  The court was called upon to address
22 the applicability of the rule "that precludes an insurer from
23 invoking an arbitration provision when it has failed to adequately
24 inform the insured of that provision." Id. at 1148 (emphasis
25 added).  The cases discussed in the Chase decision, like Chase
26 itself, concern instances where the insurer failed to inform the
27 insured of his or her rights under the policy.

28     Here, Plaintiff does not allege that Defendant failed to

19

**United States District Court**
For the Northern District of California

1    inform her of her right to demand an appraisal.  Indeed, it is

2    undisputed that Defendant explained the appraisal process to

3    Plaintiff and timely demanded an appraisal.  <u>See</u> Bianco Dec.

4    (Docket No. 8) Ex. C.  Plaintiff's allegations of bad faith relate

5    to Defendant's method of valuation; they are unrelated to its

6    conduct in invoking the appraisal clause.  Accordingly, <u>Chase</u> and

7    the cases on which it relies do not apply.  The Court therefore

8    finds that Defendant has not waived its contractual right to an

9    appraisal.

10        D.   Summary

11        The Court concludes that the appraisal clause is a valid and

12   binding agreement to arbitrate the limited issue of the actual cash

13   value of Plaintiff's vehicle.  Plaintiff is therefore required to

14   proceed with the appraisal process prior to litigating her claims.

15   Rather than dismiss those claims, the Court will stay these

16   proceedings, except for the purpose of determining whether the TLR

17   was in effect at the time Defendant conducted its valuation, until

18   the appraisal process has concluded.

19                             CONCLUSION

20        For the foregoing reasons, Defendant's motion to dismiss

21   (Docket No. 11) is DENIED.  Defendant's motion to compel appraisal

22   and stay the case (Docket No. 7) is GRANTED.  The parties shall,

23   within sixty days, complete the appraisal process specified in

24   Plaintiff's policy.  In light of the uncertainty of the

25   applicability of the TLR, the parties must direct the appraisers to

26   provide three alternative valuations: one based on the "asking

27   price" of comparable vehicles and conducted in accordance with the

28   TLR; a second based on the "actual sale price" of comparable

                                   20

United States District Court
For the Northern District of California

1  vehicles and conducted in accordance with the TLR; and a third

2  based on whatever method the appraisers would have used prior to

3  the adoption of the TLR to determine the "actual cash value" of

4  Plaintiff's vehicle, as that term is used in the policy.

5      These proceedings are stayed except for the purpose of

6  adjudicating the issue of whether Defendant was required to comply

7  with the TLR at the time it conducted its valuation of Plaintiff's

8  vehicle.  That adjudication shall proceed as specified at the

9  hearing: discovery on the issue must be completed by October 28,

10 2008.  If Defendant wishes to move for summary judgment on the

11 basis that it was not required to comply with the TLR, it must file

12 a motion by November 20, 2008.  If Defendant wishes to move to

13 dismiss the case, whether on the basis of the appraisal or for any

14 other reason, it must do so at the same time and must include its

15 supporting arguments in the same brief.  Plaintiff's opposition and

16 any cross motion must be contained within a single brief filed by

17 December 4, 2008.  Defendant's reply and opposition to any

18 cross-motion must also be contained within a single brief and must

19 be filed by December 18, 2008.  Plaintiff's reply in support of any

20 cross-motion must be filed by January 8, 2009.  A hearing will be

21 held on January 22, 2009 at 2:00 p.m.

22     IT IS SO ORDERED.

23

24 Dated:  6/30/08      _____

25                      CLAUDIA WILKEN
                        United States District Judge

26

27

28

21