1  David M. Birka-White; (State Bar No. 85721)
   dbw@birka-white.com
2  Stephen Oroza (State Bar No. 84681)
   Thomas D. Hicks (State Bar No. 238545)
3  BIRKA-WHITE LAW OFFICES
   744 Montgomery Street, Fourth Floor
4  San Francisco, CA  94111
   Telephone:  (415) 616-9999
5  Facsimile:  (415) 616-9494

6  Attorneys for Plaintiff Arnesha Garner

7  (Additional counsel listed on signature page)

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  ARNESHA M. GARNER, on behalf of       Case No.  CV 08 1365 CW
    herself and all others similarly situated,
13                                        **FIRST AMENDED COMPLAINT FOR:**
              Plaintiff,
14                                        **(1) BREACH OF CONTRACT**
    v.                                    **(2) BREACH OF THE IMPLIED**
15                                        **COVENANT OF GOOD FAITH AND FAIR**
                                          **DEALING**
    STATE FARM MUTUAL                     **(3) VIOLATION OF BUSINESS AND**
16  AUTOMOBILE INSURANCE                  **PROFESSIONS CODE § 17200**
    COMPANY, et al.,                      **(4) RESTITUTION**
17
              Defendants.
18                                        **CLASS ACTION**

19                                        <u>**DEMAND FOR JURY TRIAL**</u>

20

21        Plaintiff Arnesha M. Garner ("Plaintiff"), on behalf of herself and all others similarly

22  situated, alleges.

23                        <u>**JURISDICTION**</u>

24        1.      This Court has jurisdiction over this case under 28 U.S.C. § 1332(d)(2) in that:  (1)

25  this action is a class action with more than one hundred (100) class members; (2) defendant State

26  Farm Mutual Automobile Insurance Company ("State Farm") is a citizen of  the State of Illinois;

27  (3) Plaintiff and all members of the Class are citizens of the State of California; and (4) the matter

28

1    in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

2                                                   **VENUE**

3          2.      Venue of this case in this Court is proper: (1) pursuant to 28 U.S.C. § 1391(a)(1)

4    in that defendant State Farm does sufficient business in this District to subject it to personal

5    jurisdiction herein; and (2) pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the

6    events or omissions giving rise to the claim occurred in this District.

7                                        **INTRADISTRICT VENUE**

8          3.      Venue in this Division of the Northern District is proper under Local Rule 3-2

9    subsections (c) and (d) in that  a substantial part of the events or omissions which give rise to the

10   claim occurred in Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa,

11   San Francisco, San Mateo or Sonoma counties.

12                                                 **PARTIES**

13         4.      Plaintiff is an individual who resides in San Francisco, California.

14         5.      Plaintiff seeks to represent a class of persons (the "Class") defined as follows:

15   All California residents insured under a State Farm private passenger vehicle
     policy who (1) received a first party total loss settlement or settlement offer based
16   in whole or in part on the "projected sales price" of a comparable vehicle or (2)
     whose settlement or settlement offer was reduced to account for the difference
17   between the date on which a comparable vehicle was advertised or sold and the
     date of the loss of the claimant's vehicle.
18

19         6.      Defendant State Farm is a corporation organized and existing under the laws of the

20   State of Illinois.  Defendant State Farm is qualified to do business in the State of California, and

21   maintains offices and employs agents throughout California.  Defendant State Farm insures a

22   large number of vehicles whose owners reside in this District, employs sales agents and maintains

23   various facilities in this District and otherwise has conducted continuous and substantial activities

24   within this District which make it amenable to the exercise of personal jurisdiction by this Court.

25                                **GENERAL FACTUAL ALLEGATIONS**

26         7.      Plaintiff and the Class are the holders of written policies of insurance issued by

27   State Farm whereunder State Farm agreed to provide, *inter alia*, collision and/or comprehensive

28   coverage for losses resulting from theft or damage to the vehicle.

8.    Both comprehensive and collision coverage obligate State Farm to pay the "actual cash value" of vehicles which are determined to be a total loss (the "Loss Vehicle"). State Farm's policy states: "Actual cash value is determined by the market value, age and condition at the time the loss occurred."

9.    A vehicle insured under the policy is deemed to be a Loss Vehicle when State Farm considers it uneconomical to repair the vehicle or when the vehicle is not recovered after a theft. A claim for the value of a Loss Vehicle is referred to herein as a "Total Loss Claim."

10.    Mitchell International, Inc. ("Mitchell") performs computer-based total loss valuations for State Farm. State Farm uses these valuations to settle total loss claims, including the claims of Plaintiff and the Class. State Farm has used Mitchell to perform the valuation of first party total loss claims since approximately April of 2007. The period during which Mitchell provided total loss valuations to State Farm is referred to herein as the "Relevant Time Period."

11.    In determining how much to pay its insured for a Loss Vehicle, State Farm considers the value of vehicles "comparable" to the Loss Vehicle (a "Comparable Vehicle") and makes adjustments to the value of a Comparable Vehicle to account for differences between the Loss Vehicle and a Comparable Vehicle. Once the value of the Loss Vehicle is determined, State Farm pays this value and any applicable sales tax to the insured.

12.    State Farm is required to comply with the provisions of California Insurance Code § 790.03(h) and the regulations promulgated thereunder. Among the regulations issued by the California Insurance Commissioner to implement the provisions of § 790.03(h) is 10 CCR § 2695.8(b) (the "Total Loss Regulation" or "§ 2695.8(b)"). The Total Loss Regulation specifies certain requirements for the adjustment of vehicle total loss claims. For example, the Total Loss Regulation defines what vehicles are "comparable" to the Loss Vehicle, specifies the prices which the insurer may use in determining the value of Comparable Vehicles and specifies the adjustments which an insurer may make to the value of Comparable Vehicles when determining the value of the Loss Vehicle.

13.    The Total Loss Regulation forms a part of the insurance contract between State Farm and its insured in that, *inter alia*, it defines in part the "actual cash value" of a vehicle.

14.    The Total Loss Regulation provides, in pertinent part:

(b) In evaluating automobile total loss claims the following standards shall apply:

(1) The insurer may elect a cash settlement that shall be based upon the actual cost of a "comparable automobile" less any deductible provided in the policy. This cash settlement amount shall include all applicable taxes and one-time fees incident to transfer of evidence of ownership of a comparable automobile. This amount shall also include the license fee and other annual fees to be computed based upon the remaining term of the loss vehicle's current registration. This procedure shall apply whether or not a replacement automobile is purchased.

(2) "comparable automobile" is one of like kind and quality, made by the same manufacturer, of the same or newer model year, of the same model type, of a similar body type, with options and mileage similar to the insured vehicle. Newer model year automobiles may not be used as comparable automobiles unless there are not sufficient comparable automobiles of the same model year to make a determination as set forth in Section 2695.8(b)(4), below. ***In determining the cost of a comparable automobile, the insurer may use either the asking price or actual sale price of that automobile.*** Any differences between the comparable automobile and the insured vehicle shall be permitted only if the insurer fairly adjusts for such differences. ***Any adjustments from the cost of a comparable automobile must be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claim file.*** Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used. . . . ***A comparable automobile must have been available for retail purchase by the general public in the local market area within ninety (90) calendar days of the final settlement offer.***

• • •

(4) ***The insurer shall take reasonable steps to verify that the determination of the cost of a comparable vehicle is accurate and representative of the market value of a comparable automobile in the local market area.*** Upon its request, the department shall have access to all records, data, computer programs, or any other information used by the insurer or any other source to determine market value. ***The cost of a comparable automobile shall be determined as follows and, once determined, shall be fully itemized and explained in writing for the claimant at the time the settlement offer is made***:

(A) when comparable automobiles are available or were available in the local market area in the last 90 days, the average cost of two or more such comparable automobiles; or,

(B) when comparable automobiles are not available or were not available in the local market area in the last 90

- 4 -
FIRST AMENDED CLASS ACTION COMPLAINT

days, the average of two or more quotations from two or more licensed dealers in the local market area; or,

(C) the cost of a comparable automobile as determined by a computerized automobile valuation service that produces statistically valid fair market values within the local market area; or

(D) if it is not possible to determine the cost of a comparable automobile by using one of the methods described in subsections (b)(3)(A), (b)(3)(B) and (b)(3)(C) of this section, the cost of a comparable automobile shall otherwise be supported by documentation and fully explained to the claimant. Any adjustments to the cost of a comparable automobile shall be discernible, measurable, itemized, and specified as well as appropriate in dollar amount and so documented in the claims file. Deductions taken from the cost of a comparable automobile that cannot be supported shall not be used.

15.    During the Relevant Time Period, State Farm has violated its contracts and the Total Loss Regulation in at least three material respects.

a.    State Farm determines the value of Comparable Vehicles by using what it refers to as a "projected sales price." The projected sales price for each Comparable Vehicle is provided by Mitchell and purports to account for the difference between the advertised price of a Comparable Vehicle and the price for which it is likely to sell, its "projected" selling price. The projected sales price is invariably lower than the advertised price. The use of a projected sales price to adjust total loss claims violates § 2695.8(b)(2) in that a Comparable Vehicle must be valued at either the asking price or the actual selling price of that vehicle. A "projected" sales price is neither.

b.    State Farm deducts from the value of a Comparable Vehicle an amount which purportedly reflects a decline in value between the date on which the Comparable Vehicle was advertised for sale and the date of the loss of the Loss Vehicle (the "Ad Age Adjustment"). The use of the Ad Age Adjustment violates § 2695.8(b)(2) in that any adjustment to the price of the Comparable Vehicle used to value the Loss Vehicle must be "discernible, measurable, itemized, and specified as well as appropriate in dollar amount . . .." Deductions from the value of the Comparable Vehicle which do not meet these criteria "shall not be used." The Ad Age Adjustment is not "discernible," "measurable" or "appropriate in dollar amount" within the

1   meaning of the Total Loss Regulation.  Moreover, the Total Loss Regulation specifies that a

2   Comparable Vehicle must be advertised within "ninety (90) calendar days of the final settlement

3   offer."  (§ 2695.8(b)(2) and (b)(4)).  This requirement accounts for the age of the advertisement.

4   Further adjustment for the age of the advertisement is not permitted by the Total Loss Regulation.

5           c.      State Farm does not "fully explain" how the cost of a Comparable Vehicle

6   was determined in that neither the "projected sales price" nor the age adjustment is explained

7   sufficiently that a consumer of ordinary intelligence would understand either the nature or the

8   appropriateness of the adjustments.  Nor does State Farm advise insureds that the use of the

9   projected sales price and the age adjustment violates the Total Loss Regulation.  Plaintiff is

10  informed and believes, and thereupon alleges, that the information provided to insureds

11  concerning the valuation of Loss Vehicles is intentionally obscure and is intended to disguise the

12  use by State Farm of illegal valuation practices.

13      16.     The value of the Loss Vehicle calculated as required by the Total Loss Regulation

14  and without deductions for the projected sales price or the Ad Age Adjustment is referred to

15  herein as the "Lawful Value" of the Loss Vehicle.

16      17.     The Total Loss Regulation was implemented to deter the use by insurance

17  companies of questionable pricing criteria for total losses including, without limitation, a price

18  referred to in the industry as a "take price," which pricing criteria generated unreasonable and

19  unrealistically low compensation to the owners of Loss Vehicles.  Before implementation of the

20  Total Loss Regulation, the insurance industry strongly resisted the requirement that prices of

21  Comparable Vehicles be determined by either the asking price or the actual sales price of

22  comparable vehicles in the local market area in the ninety (90) days preceding the settlement

23  offer.   The Department of Insurance rejected industry criticisms and issued the Total Loss

24  Regulation because it believed that, in the absence of actual comparable sales data, insurance

25  companies had routinely used valuation methods which were unfair to consumers and which

26  consumers could not readily understand or challenge.

27      18.     Plaintiff is informed and believes, and thereupon alleges, that the conduct

28  complained of herein was intended to evade the requirements of the Total Loss Regulation,

especially in cases where there was no contemporaneous data concerning actual sales of comparable vehicles which State Farm could lawfully use to value Total Loss Claims. The conduct complained of herein was also intended to hide State Farm's noncompliance with the Total Loss Regulation from consumers by the use of arcane and intentionally obscure language, positioned where it is least likely to be read or understood by them, and to enrich State Farm unjustly at the expense of its insureds.

19.    Plaintiff is further informed and believes, and thereupon alleges, that although the Total Loss Regulation has been in force at all times relevant herein, and although State Farm knew that the Total Loss Regulation was in force at all times relevant herein, State Farm asserts that the Total Loss Regulation is not in effect and that it has no obligation to adjust Total Loss Claims in accordance therewith.

20.    Plaintiff is further informed and believes, and thereupon alleges, that State Farm and Mitchell devised a valuation method based on "projected sales prices" in order to avoid the Total Loss Regulation and agreed that, if this method were challenged, they would assert that the Total Loss Regulation was not in effect.

21.    In cases in which an insured questions the amount of the Total Loss Claim, State Farm advises insureds that their only remedy is to submit to an appraisal under the provisions of the policy (the "Appraisal Provisions"). The Appraisal provisions are part of the standard form auto insurance policy issued by State Farm. The terms of this policy are not negotiated between State Farm and its insureds but are imposed upon insureds on a "take it or leave it" basis. Insureds are rarely even aware of the terms of their policies, including the Appraisal Provisions. Further because of State Farm's vastly superior bargaining power, insureds are not in a position to negotiate with State Farm over the Appraisal Provisions or any other significant term of the policy.

22.    Under the Appraisal Provisions, the insured is required to pay for the services of an appraiser and one-half the cost of another appraiser. The cost of these appraisers can easily be $800 to $1000, which will often approach or exceed the difference between the settlement amount offered by State Farm and the Lawful Value.

23.     State Farm knows that few consumers will be willing or able to employ the appraisal process because, among other things, it is expensive and requires consumers to locate and employ vehicle appraisers, which few of them will be willing or able to do.  In addition, because State Farm is in a business which regularly employs vehicle appraisers, State Farm and consumers are aware that appraisers are more likely to produce appraisal reports favorable to State Farm than reports favorable to consumers.

24.     State Farm uses the threat of an appraisal to further its efforts to discourage insureds from challenging the unlawful settlement offers made to them and to further its intention to enrich itself unjustly by settling Total Loss Claims for less then the Lawful Value.

25.     Almost all Total Loss Claims are settled based on offers from State Farm which violate the Total Loss Regulation and State Farm's insurance policies.  For this reason, State Farm's offer to settle Total Loss Claims for less than the Lawful Value of such claims has resulted in damage to Plaintiff and the Class equal to the difference between the Lawful Value of the claim and the amount offered by State Farm, plus other amounts specified by the Total Loss Regulation.

### FACTUAL ALLEGATIONS – PLAINTIFF'S INDIVIDUAL CLAIM

26.     Plaintiff is insured under State Farm Policy No. 0889-875-05A (the "Policy"). The vehicle insured under the Policy was a 2006 Ford Escape Limited (the "Escape").  Plaintiff was involved in an automobile accident on April 27, 2007 which resulted in a total loss of the Escape.

27.     State Farm adjusted Plaintiff's claim and paid to Plaintiff the value of the Escape based on a valuation analysis provided by Mitchell (the "Valuation"), a true and correct copy of which is attached hereto as Exhibit "1."  State Farm valued the Escape at $15,993.29.

28.      The Valuation violates the Total Loss Regulation in that it calculates the value of the Escape based on the average "projected sales price" of a series of Comparable Vehicles allegedly advertised for sale locally.  In each case, the projected sales price of the Comparable Vehicle is 7.26% less than the advertised price.  Use of the projected sales price results in a valuation of the Escape which is initially 7.26% less than the value calculated as required by the

1    Total Loss Regulation.

2        29.    In addition, the Valuation employs the Ad Age Adjustment, which further reduces

3    the average value of the Comparable Vehicles by $214.51.  As a result of these two adjustments,

4    the average value of the Comparable Vehicles used in the Valuation is reduced by approximately

5    $1,564.  This figure is 8.42% less than the Lawful Value of the Escape, approximately $17,557.

6        30.    The Valuation consists of thirteen (13) pages of charts and footnotes purporting to

7    explain how the value of the Escape was determined.  In fact, most of the information contained

8    in the Valuation is difficult to understand and is contained in charts which appear to reveal more

9    about the valuation than they in fact reveal.  Much of the most important information is buried in

10   the Valuation and is both arcane and difficult to place in context.  For example, key definitions

11   and explanations essential to an understanding of the Valuation are buried on page 10 of the

12   Valuation, at the end of a series of charts concerning each Comparable Vehicle, where they are

13   unlikely to be seen.

14       31.    The explanations given by State Farm to the Plaintiff were incomplete, misleading

15   and – in the case of the "projected sales price" – incomprehensible.  The Valuation provides the

16   following definitions purporting to explain how the value of the Escape was determined:

17       Local Market Average: A vehicle representing the weighted average derived from
         all comparable vehicles used in the valuation.
18

19       Establishing Base Value: When calculating the Base Value, adjustments are made
         for differences in vehicle type, odometer end equipment between the loss vehicle
20       and comparable vehicles. Only the vehicles shown in this report were used to
         determine the Base Value.
21

22       Market Value:  The market value is calculated by comparing the loss vehicle to
         comparable recently sold or available in the loss vehicle local area. The
23       appropriate adjustments for differences between the vehicles have been made to
         establish market value.
24
         32.    In fact, the Market Value used to determine the Local Market Average and the
25
     Base Value does not make adjustments only for "differences between the vehicles."  Neither the
26
     projected sales price nor the Ad Age Adjustment is based on a difference between the
27
     Comparable Vehicle and the Loss Vehicle.
28
         33.    The explanation provided to Plaintiff of the "projected sales price" is limited to a

1  footnote stating: "For comparable vehicles that are available, the price listed reflects a projected

2  sales price. The projected sales prices for which the vehicle is projected to sell for based on

3  analyzing sold vehicle data for that specific make, year model vehicle." (sic)  This explanation

4  buried in the Valuation, is incomprehensible and does not explain how or why the prices of

5  Comparable Vehicles were adjusted downward.  Nor does the Valuation state that the Total Loss

6  Regulation requires use of the advertised price or the actual – not projected – selling price of a

7  Comparable Vehicle.

8  34.    The explanation provided to Plaintiff of the Age Adjustment is: "Age of Ad

9  Adjustment:   An adjustment made to advertised vehicles based on the difference between the ad

10  publication date and the loss date."  This explanation does not explain how the adjustment was

11  made, how its size was determined or that the Total Loss Regulation limits Comparable Vehicles

12  to those advertised within ninety (90) days of the settlement, thus making the Ad Age Adjustment

13  unnecessary.

14  35.    The intent and effect of the Valuation is to obscure intentionally the most

15  controversial aspects of the Valuation and mislead insureds concerning the quality of the

16  evaluation and the unlawfulness of key aspects of the Valuation, particularly the use of projected

17  sales prices and the Ad Age Adjustment.

18  36.    On May 8, 2007, State Farm sent Plaintiff a settlement offer enclosing the

19  Valuation (the "Settlement Letter").  The letter states: "The enclosed material from MITCHELL,

20  an independent vehicle evaluation company, was used to establish the settlement amount of your

21  2005 Ford Escape." The "actual cash value" of the vehicle is stated to be $15,993.29.

22  37.    Plaintiff is informed and believes, and thereupon alleges, that at the time State

23  Farm sent the Settlement Letter to Plaintiff State Farm knew that: (1) this offer was not the

24  "actual cash value" of the Escape; and (2) that Mitchell was not a "independent vehicle evaluation

25  company," but was regularly employed by State Farm to produce valuations less than the Lawful

26  Value of the Loss vehicle.

27  38.    When Plaintiff received the Valuation, she tried to understand how Mitchell

28  determined the value of her vehicle.  She found the report very complicated and impossible to

1  follow clearly. She could not determine how Mitchell arrived at the value. At the time she

2  reviewed the Valuation, she had no reason to believe that the Valuation was not prepared in

3  accordance with the law or that Mitchell was employed by State Farm to produce valuations of

4  Loss Vehicles which were lower than their Lawful Value.

5    39.    Plaintiff believed that State Farm's Valuation set a value for Escape which was too

6  low. She called State Farm and advised State Farm that she had reviewed the Kelly Blue Book,

7  which listed a higher value for the escape than that stated in the Valuation. State Farm told her

8  that State Farm did not use Kelly Blue Book and that it looked at similar vehicles in the area.

9  State Farm told Plaintiff that she could hire her own appraiser if she disagreed with the valuation.

10  State Farm advised Plaintiff that State Farm had its own appraiser and that Plaintiff would have to

11  pay one half the cost of a third appraiser as well.  State Farm did not advise Plaintiff of the names

12  of any appraisers or tell her how to locate one.

13    40.    Plaintiff believed the cost of the appraisal process was more than she could

14  reasonably afford to challenge the State Farm valuation. She told State Farm that the cost of the

15  appraisal was too much and that she did not believe that the process was fair. Plaintiff is

16  employed by the United States Postal Service as a mail carrier. In May, 2007, she needed

17  transportation to work and the rental car period under her policy only lasted until May 14, 2007, a

18  few days after she received the letter.

19    41.    On the same date that it sent the Settlement Letter, State Farm sent another letter to

20  Plaintiff which stated: "We have determined that your car is a total loss and have offered

21  settlement. . . . We believe our offer represents an appropriate assessment of the actual cash value

22  of your vehicle. However, it appears that we are unable to conclude this claim based on our

23  offer."  After describing the appraisal provision, the letter states: We hereby request [name

24  missing] to be named as our appraiser."

25    42.    Prior to the filing of this litigation, Plaintiff was not provided with a copy of her

26  automobile insurance policy. She was not aware of the existence of the Appraisal Provisions at

27  any time before her accident. She did not negotiate any aspect of the Appraisal Provision with

28  State Farm.  Nor did any representative of State Farm advise her about the meaning of the

1    Appraisal Provisions until after she received the Settlement Letter from State Farm.

2    **CLASS ACTION ALLEGATIONS**

3        43.    Plaintiff brings this action as a class action under Rule 23(a) and (b)(3) of the

4    Federal Rules of Civil Procedure on behalf of herself and the Class.  This action meets the

5    requirement for class certification under Rule 23(a) and (b)(3).

6        44.    Numerosity (Rule 23 (a)(1)):  Plaintiff is informed and believes, and thereupon

7    alleges, that the Class contains tens of thousands of members and that joinder of the claims of the

8    Class in a single action is therefore impracticable.

9        45.    Common Questions (Rule 23 (a)(2)):  There exist questions of law and fact

10   common to all members of the Class.  Common legal and factual questions include, but are not

11   limited to, the following:

12            a.    Whether State Farm's use of a "projected sales price" to determine the

13   value of the Loss Vehicle violates the Total Loss Regulation;

14            b.    Whether State Farm's use of the Ad Age Adjustment violates the Total

15   Loss Regulation;

16            c.    Whether State Farm's Valuation is "fully itemized and explained in writing

17   for the claimant at the time the settlement offer is made" as required by the Total Loss

18   Regulation;

19            d.    Whether State Farm's use of projected sales prices and the Ad Age

20   Adjustment and its intentional failure to fully itemize and explain the valuation of Loss Vehicles

21   was intended to evade the purpose of Total Loss regulation and to disguise its violation of the

22   regulation;

23            e.    Whether State Farm's use of projected sales prices and the Ad Age

24   Adjustment violate the express terms of its automobile policies which require it to pay the insured

25   the value of the Loss Vehicle;

26            f.    Whether State Farm's use of projected sales prices and the Ad Age

27   Adjustment, its intentional failure to fully itemize and explain the valuation of Loss Vehicles, its

28   bad faith denial that the Total Loss Regulation is in effect and its intention to discourage

1    challenges to its unlawful valuation practices represent a breach of the covenant of good faith and

2    fair dealing implied in its automobile policies;

3              g.      Whether State Farm's use of projected sales prices and the Ad Age

4    Adjustment actually and proximately caused damage to Plaintiff and the Class;

5              h.      Whether and in what amount State Farm's use of projected sales prices and

6    the Ad Age Adjustment resulted in unjust enrichment to State Farm at the expense of Plaintiff and

7    the Class;

8              i.      Whether the Appraisal Provisions are unconscionable and unenforceable

9    against the Class;

10             j.      Whether State Farm was waived or forfeited the benefit of the Appraisal

11   Provisions under the circumstances of this case.

12             k.      Whether and in what amount State Farm is liable to Plaintiff and the Class

13   for actual damages and the amount of such damages;

14             l.      Whether State Farm is liable to Plaintiff and the Class for punitive damages

15   and the amount of such damages.

16       46.    Typicality (Rule 23(a)(3)):  Plaintiff's claims are typical of the claims of the Class

17   in that all such claims arise out of the improper settlement of total loss claims by the use of

18   valuations that do not comport with the requirements of the Total Loss Regulation.  Plaintiff and

19   the Class have suffered a common injury arising out of State Farm's common course of conduct

20   as alleged herein. The relevant provisions of State Farm's private automobile policies issued

21   during the Relevant Time Period are substantially the same for each member of the Class. The

22   Valuation provided by Mitchell valued the claims of Plaintiff and the Class in the same manner,

23   following the same or substantially the same methods and criteria.  Similarly, the Appraisal

24   Provisions of the policy were used to discourage Plaintiff from contesting the Valuation in the

25   same manner as they are used by State Farm generally.

26       47.    Adequacy of Representation (Rule 23 (a)(4)):  Plaintiff will fairly and adequately

27   protect the interests of the Class.  Plaintiff has no interests which conflict with the Class and has

28   retained attorneys who are experienced in the prosecution of complex consumer class action

1   litigation.

2       48.   <u>Predominance of Common Questions ((Rule 23(b)(3))</u>:  Questions of law or fact

3   common to the Class predominate over any questions affecting only individual members.  The

4   issues raised in this action involve: (1) substantially identical insurance policies; (2) a uniform

5   regulation governing the calculation of the value of Loss Vehicles; (3) practices which were used

6   uniformly by State Farm to value total loss claims; (4) a common intention on the part of State

7   Farm with respect to the use of projected sales prices, the Ad Age Adjustment and the incomplete

8   and misleading descriptions of vehicle valuation;  and (5) a uniform understatement of the value

9   of the Loss Vehicles which can be ascertained solely from the Valuations.  There are essentially

10  no material questions in this action which are not common to Plaintiff and the Class.

11      49.   <u>Superiority of The Class Action Procedure (Rule 23(b)(3))</u>:  Class treatment of the

12  claims asserted by Plaintiff is superior to other methods of adjudicating the claims of the Class in

13  that:

14          a.   The prosecution of separate actions by individual members of the Class

15  would create a foreseeable risk of inconsistent or varying adjudications which would establish

16  incompatible results and standards of conduct for State Farm;

17          b.   Class action treatment avoids the waste and duplication inherent in

18  thousands of individual actions and conserves the resources of the courts;

19          c.   The cost of litigating individual claims relating to the Total Loss regulation

20  is so great that, in the absence of a class action, members of the Class have no effective remedy.

21  Because of the relatively small size of their claims – usually in the low thousands of dollars – and

22  the high cost of litigation, in the absence of a class action it is likely that no member of the Class

23  would seek legal redress for the violations alleged herein;

24          d.   Class members are unlikely to be interested in the control of their

25  individual claims because the claims are essentially identical and, if a particular member of the

26  Class has a compelling reason to control his or her claim, he or she may opt out of the Class;

27          e.   Plaintiff is aware of no litigation which has been commenced by or against

28  members of the Class relating to the issues addressed in this litigation;

f.    There are no difficulties which arise from the concentration of the claims asserted herein in a single forum and there are considerable economies in such concentration;

g.    There are no difficulties in managing this action because of the virtual identity of legal and factual issues required to be resolved for Plaintiff and the Class.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

50.    Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

51.    State Farm entered into a written insurance contract with each Plaintiff and member of the Class to provide collision and/or comprehensive coverage for the loss or damage to the insured vehicle.  The terms of such contract are partially set forth in the State Farm policy and each individual policyholder's declarations thereto.  As previously alleged, the Total Loss Regulation forms a part of the contract between State Farm, on the one hand, and Plaintiff and every other Class Member, on the other.

52.    Each Plaintiff and Class member performed his or her duties under the insurance contract, including payment of premiums, and coverage was in effect at the time that he or she made a total loss claim.

53.    State Farm breached its obligation under the contracts of insurance with Plaintiff and each Class member by failing to base payment to the insured on the "market value, age and condition at the time the loss occurred" as required by the contract of insurance.   This failure results from the use of a "projected sales price" and the use of the "Ad Age Adjustment."

54.    The breach of contract by State Farm has caused actual financial loss and damage to Plaintiff and each Class member equal to:  (1) the difference between the amount paid by State Farm as the value of the Loss Vehicle and the Lawful Value of the Loss Vehicle; (2) any applicable tax or fee required by subsection (b)(1) of the Total Loss Regulation; and (3) interest on these amounts at the legal rate from the date on which State Farm made the initial payment to the date on which the correct amount is paid (the "Claim Amount").

**SECOND CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

55.     Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

56.     The covenant of good faith and fair dealing implied in every contract requires that each party refrain from any act extraneous to the provisions of the contract that would deprive the other party of the benefits of the contract. In addition, California law imposes on State Farm, as an insurer, a duty of the utmost good faith and fair dealing toward its policyholders when settling their claims.

57.     Under the covenant of good faith and fair dealing implied into the insurance contracts between State Farm, Plaintiff and each member of the Class, State Farm was obligated to settle Total Loss Claims fairly, honestly and reasonably using a valuation representing the cost of Comparable Vehicles available for purchase in the local market, as specified by the State Farm policy and the Total Loss Regulation.

58.     State Farm breached the covenant of good faith and fair dealing by: (1) settling the claim of  Plaintiff and each member of the Class total loss claim using a valuation that was less than the Lawful Value of the Loss Vehicle plus any applicable tax or fee required by subsection (b)(1) of the Total Loss Regulation; (2) representing falsely that the amount set forth in the Valuation was the "actual cash value" of Loss Vehicles when State Farm knew that it was not; (3) concealing from Plaintiff and the Class that adjustments made by it to the Comparable Vehicles were not in accordance with the Total Loss Regulation even though State Farm knew that such deductions were not fair, justified, or permissible; (4) misrepresenting to Plaintiff and the Class that Mitchell was an "independent" vehicle appraiser when it was in fact employed by State Farm to perform valuations of Loss vehicles at less than their Lawful Value; (5) using the Appraisal Provisions of the policy to discourage the challenge by Plaintiff and the Class of the unlawful Valuation; and (6) denying fraudulently and in bad faith the effectiveness of the Total Loss Regulation.

59.     As a result of the breach by State Farm of the covenant of good faith and fair

dealing, Plaintiff and the Class have been damaged in the Claim Amount.

60.    State Farm employed Mitchell to perform total loss valuations with full knowledge that Mitchell would not value such claims appropriately, but would instead return valuations that were improperly reduced as previously alleged.  State Farm knew and intended that by employing Mitchell valuations State Farm would breach its contractual duties to its policyholders, as well as the covenant of good faith and fair dealing, and that State Farm would be in violation of Insurance Code § 790.03(h) and the Total Loss Regulation. The intentional wrongdoing of State Farm, as previously alleged, was carried out for the purpose of paying its policyholders less than the full value of their total loss claims through the use of improper adjustments.  State Farm's intentional conduct as alleged herein constitutes malice under Civil Code § 3294(c)(1), justifying the imposition of punitive damages.

61.    State Farm's intentional bad faith, as alleged herein, was in derogation of its duty of good faith to its policyholders and resulted in substantial economic hardship to Plaintiff and many Class members.  State Farm's conduct in these matters constitutes oppression under Civil Code § 3294(c)(2), justifying the imposition of punitive damages.

62.    State Farm presented the Valuation to Plaintiff and the Class members as "independent," accurate and fair when, in actuality, State Farm knew that Mitchell was not independent but was employed by State Farm to produce unlawful Valuations and that the Valuations were inaccurate, unfair and not in compliance with the Total Loss Regulation. State Farm used the Mitchell Valuation for the purpose of deceiving Plaintiff and members of the Class members into accepting less than the full value to which they were entitled in settlement of their claims. Further, State Farm intended, if challenged on the use of its unlawful valuation method, to assert fraudulently and in bad faith that the Total Loss Regulation was not in effect when it knew that the Total Loss Regulation was in effect.  State Farm's deceitful, bad faith conduct, as alleged herein, constitutes fraud under Civil Code § 3294(c)(3), justifying the imposition of punitive damages.

1

2

## THIRD CLAIM FOR RELIEF

## (Violation of Business and Professions Code § 17200)

3       63.     Plaintiff incorporates herein by reference the allegations of the preceding

4   paragraphs of this Complaint.

5       64.     California Business & Professions Code § 17200 (the "Unfair Competition Law")

6   prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act

7   or practice."

8       65.     State Farm violated the Unfair Competition Law when it breached the covenant of

9   good faith and fair dealing in settling total loss claims as described previously.

10      66.     State Farm further violated the Unfair Competition Law when it violated Insurance

11  Code §790.03(h) and the Total Loss Regulation as described previously.

12      67.     To this day, State Farm continues to violate the Unfair Competition Law by

13  breaching the insurance contracts and the covenant of good faith and fair dealing as heretofore

14  alleged.

15      68.     As a direct and proximate result of State Farm's violation of the Unfair

16  Competition Law, Plaintiff and each member of the Class have suffered injury and have lost

17  money.  Plaintiff and every member of the Class had a vested, quantifiable, absolute, non-

18  contingent right to the money they should have recovered for the value of the Loss Vehicle in the

19  Claim Amount.

20      69.     As a proximate result of State Farm's violation of the Unfair Competition Law,

21  State Farm has been unjustly enriched at the expense of Plaintiff and the Class and State Farm

22  should be required to return to Plaintiff and to each member of the Class the Claim Amount

23  pursuant to § 17203 of the Business & Professions Code.

24      70.     Plaintiff and the Class seek an order from the court enjoining State Farm, and

25  those in concert and participation with it, for conducting or participating in the acts alleged in this

26  Claim for Relief to violate the Unfair Competition Law.

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment and Constructive Trust)**

71.    Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

72.    At all times relevant, State Farm collected insurance premiums from Plaintiff and members of the Class to pay collision and/or comprehensive coverage claims for loss or damage of the insured vehicle.  State Farm had a duty to settle the claims of its policyholders fairly and in good faith.  State Farm has been unjustly enriched by wrongfully and fraudulently withholding payment of the full, fair value of each total loss claim made by Plaintiff and members of the Class. It would be inequitable and unjust for State Farm to retain such ill-gotten gains.

73.    The unjust enrichment of State Farm by payment of less than the full value of total loss claims through the use of improper adjustments has caused actual economic damage to the Plaintiff and class members.

74.    Accordingly, this Court should impose a constructive trust on State Farm's assets in the aggregate the Claim Amount for the Class.  The Claim Amount should be paid in restitution to the Plaintiff and members of the Class, with any residual being directed to the benefit of members of the Class or the general public as the Court may direct.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against State Farm as follows:

1.    For certification of this action as a class action;

2.    For damages in the aggregate Claim Amount described in the Complaint for Plaintiff and each member of the Class;

3.    For restitution to Plaintiff and the Class of the aggregate Claim Amount described in the Complaint for Plaintiff and each member of the Class

4.    For exemplary and punitive damages;

5.    That the Court enjoin State Farm, its agents, servants and employees, and those acting in concert with them: (1) from paying total loss claims based on the use of any value for Comparable Vehicles other than the asking or actual sales price of such vehicles in the local

1    market area within ninety (90) days of the settlement offer; and (2) to explain fully and fairly to

2    its insureds the methods by which the calculation of their total loss claims were made and, in

3    particular, how the calculation complies with the Total Loss Regulation.

4         6.     For reasonable attorneys' fees and costs of suit; and

5         7.     For such other and further relief as the Court deems just and proper in the

6    premises.

7    **DEMAND FOR JURY TRIAL**

8    A jury trial is demanded.

9

10   Dated: July 7, 2008                  BIRKA-WHITE LAW OFFICES

11

12

13                                      By:

14                                          David M. Birka-White

15                     David M. Birka-White (State Bar No. 85721)
                  Stephen Oroza (State Bar No. 84681)

16                     Thomas D. Hicks (State Bar No. 238545)
                  BIRKA-WHITE LAW OFFICES

17                     744 Montgomery Street, Fourth Floor
                  San Francisco, CA  94111

18                     Telephone:  (415) 616-9999
                  Facsimile:  (415) 616-9494

19

20                     Jeffrey B. Cereghino (State Bar No. 99480)
                  Steven R. Weinmann (State Bar No. 190956)

21                     BERDING & WEIL, LLP
                  3240 Stone Valley Road West

22                     Alamo, California  94507
                  Telephone: (925) 838-2090

23                     Facsimile: (925) 820-5592

24                     Counsel for Plaintiff Arnesha Garner

25

26

27

28

- 20 –
FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit 1

 

## Total Logic™ Valuation

PREPARED FOR:

State Farm Insurance
(888) 759-9034

### Claim Summary: 05-5395-790-01

| | | | |
|---|---|---|---|
| Insurance Carrier: | State Farm Insurance | Loss Type: | COLLISION |
| Claim Suffix-ID: | 05-5395-790-01 | Loss Date: | 04/27/2007 |
| Policy Number: | | Reported Date: | |
| Owner: | Garner, Arnesha | Valuation Report Date: | 05/04/2007 13:54:40 |
| | | Valuation Report ID: | 91410 |

### Valuation Summary: 2005 Ford Escape Limited

| | | | |
|---|---|---|---|
| Loss Vehicle: | 2005 Ford Escape Limited 4 Door Utility 3.0L 6 Cyl Gas Injected 2WD | VIN: | 1FMYU04155KB19440 |
| | | Mileage: | 40,082 miles |
| Location: | CA 94124 | Exterior Color: | BLACK |
| License Plate: | 5MNY427, California, Exp. 03/2008 | | |

Equipment:

| | |
|---|---|
| ALUM/ALLOY WHEELS | AM FM STEREO CD |
| ANTI-LOCK BRAKE SYS. | CD PLAYER |
| CRUISE CONTROL | DRIVER SIDE AIRBAG |
| FIRST ROW BUCKET SEAT | FOG LIGHTS |
| FRONT AIR DAM | KEYLESS ENTRY |
| LEATHER SEAT | MANUAL AIR CONDITION |
| PASSENGER AIRBAG | PASSENGER AIRBAG CUTOFF SWITCH/SENSOR |
| POWER ADJUSTABLE EXTERIOR MIRROR | POWER BRAKE |
| POWER DRIVER SEAT | POWER LOCK |
| POWER STEERING | POWER WINDOW |
| PRIVACY GLASS | REAR HEATING, VENTILATION & AIR CONDITIONING |
| REAR WINDOW DEFOGGER | SECOND ROW FOLDING SEAT |
| SECOND ROW SPLIT BENCH SEAT | TACHOMETER |
| TILT STEERING COLUMN | TINTED GLASS |

| | |
|---|---|
| Base Value: | $15,513.06 |
| Condition Adjustment: | $30.23 |
| Aftermarket Parts Adjustment: | $450.00 |
| Refurbishment Adjustment: | $0.00 |
| Prior Damage Adjustment: | $0.00 |
| Market Value: | $15,993.29 |
| (8.500 %) Tax: | $1,359.43 |
| Final Value: | $17,352.72 |

Valuation Notes:

**Mitchell Total Logic™**

F. LOFRANO & SON, INC    B3EG05BE

Vehicle location (Salvage yard, residence, etc.) F. Lafrono and Son
The Stock number 3568
Storage amount per day, starting on mm/dd/yy. no
Towing amount  $270.00
Driveable (yes or no.) no
Keys with the vehicle (yes or no) yes

**Total Logic**

Local Market Valuation: 2005 Ford Escape Limited

| Equipment | Loss Vehicle 2005 Ford Escape Limited CA 94124 | Local Market Average 2005 FORD ESCAPE $17,215.61 | Adjustments |
|---|---|---|---|
| ALUM/ALLOY WHEELS | ✓ | ✓ | $0.00 |
| POWER DRIVER SEAT | ✓ | ✓ | $0.00 |
| LEATHER SEAT | ✓ | ✓ | $0.00 |
| MANUAL AIR CONDITION | ✓ | ✓ | $0.00 |
| POWER WINDOW | ✓ | ✓ | $0.00 |
| POWER LOCK | ✓ | ✓ | $0.00 |
| CD PLAYER | ✓ | ✓ | $0.00 |
| CRUISE CONTROL | ✓ | ✓ | $0.00 |
| ANTI-LOCK BRAKE SYS. | ✓ | ✓ | $0.00 |
| SECOND ROW FOLDING SEAT | ✓ | ✓ | $0.00 |
| POWER ADJUSTABLE EXTERIOR | ✓ | ✓ | $0.00 |
| TACHOMETER | ✓ | ✓ | $0.00 |
| FRONT AIR DAM | ✓ | ✓ | $0.00 |
| PASSENGER AIRBAG | ✓ | ✓ | $0.00 |
| PASSENGER AIRBAG CUTOFF S | ✓ | ✓ | $0.00 |
| POWER BRAKE | ✓ | ✓ | $0.00 |
| SECOND ROW SPLIT BENCH SE. | ✓ | ✓ | $0.00 |
| TILT STEERING COLUMN | ✓ | ✓ | $0.00 |
| PRIVACY GLASS | ✓ | ✓ | $0.00 |
| REAR WINDOW DEFOGGER | ✓ | ✓ | $0.00 |
| KEYLESS ENTRY | ✓ | ✓ | $0.00 |
| REAR HEATING, VENTILATION & | ✓ | ✓ | $0.00 |
| POWER STEERING | ✓ | ✓ | $0.00 |
| FOG LIGHTS | ✓ | ✓ | $0.00 |
| DRIVER SIDE AIRBAG | ✓ | ✓ | $0.00 |
| AM FM STEREO CD | ✓ | ✓ | $0.00 |
| FIRST ROW BUCKET SEAT | ✓ | ✓ | $0.00 |
| TINTED GLASS | ✓ | ✓ | $0.00 |
| SUNROOF (POWER) | ✗ | ✓ | -$294.83 |
| POWER PASSENGER SEAT | ✗ | ✓ | -$115.34 |
| CD CHANGER | ✗ | ✓ | -$292.32 |
| PREMIUM SOUND SYSTEM | ✗ | ✓ | -$239.06 |
| Vehicle Type | | ✗ | $0.00 |
| Mileage | 40,082 miles | 33,196 miles | -$546.49 |
| Age of Ad Adjustment | | | -$214.51 |
| Price | | | $17,215.6 |
| Total Adjustments | | | -$1,702.55 |
| Adjusted Value | | | $15,513.05 |

Loss Vehicle Adjustments:           2005 Ford Escape Limited

Condition Adjustment

Base Value:     $15,513.06

$30.23

| Overall Condition | 4.00 Very Good | | |
|---|---|---|---|
| Interior Condition | | Exterior Condition | |
| HEADLINER | 5 Excellent | PAINT | 4 Very Good |
| GLASS | 4 Very Good | BODY | 4 Very Good |
| DOORS/INTERIOR PANELS | 4 Very Good | TRIM | 4 Very Good |
| SEATS | 4 Very Good | VINYL/CONVERTIBLE TOP | Typical |
| CARPET | 4 Very Good | | |
| DASH/CONSOLE | 5 Excellent | | |
| Tire Condition | 3 Good | Mechanical Condition | |
| | | TRANSMISSION | 4 Very Good |
| | | ENGINE | 4 Very Good |

The vehicle condition documents the pre-loss condition of the loss vehicle. Condition is rated on a scale of 1 - 5, where 5 is excellent.

Comments:   Very Clean Car

After Market Parts

| Category | Description | Adjustment Type | Adjustment Amount |
|---|---|---|---|
| ELECTRICAL | FACTORY PREMIUM SOUND SYSTEM | MANUAL | $150.00 |
| BODY | FACTORY MOON ROOF | MANUAL | $100.00 |
| OTHER | FACTORY LUGGAGE RACK | MANUAL | $100.00 |
| ELECTRICAL | FACTORY CD CHANGER | MANUAL | $100.00 |

Total Adjustments:     $480.23

Market Value:     $15,993.29

Mitchell
**Total Logic™**

Local Market Comparable Analysis: 2005 Ford Escape Limited

| | Loss Vehicle 2005 Ford Escape Limited | Comparable #1 2005 FORD ESCAPE LIMITED | Comparable #2 2005 FORD ESCAPE LIMITED | Comparable #3 2005 FORD ESCAPE LIMITED |
|---|---|---|---|---|
| | 40,082 miles | 35,358 miles | 33,212 miles | 54,241 miles |
| | BLACK | MEDIUM GRAY | | MEDIUM SILVER |
| | 94124 | 94577 | 94577 | 94019 |
| | | $16,690.00* | $14,835.00* | $13,909.00* |
| | | AVAILABLE | AVAILABLE | AVAILABLE |
| **Adjustments** | | | | |
| Vehicle Type | Limited 4 Door Utility | $0.00 | $0.00 | $0.00 |
| Mileage | 40,082 miles | -$203.18 | -$367.00 | $540.95 |
| **Equipment - Loss Vehicle** | | | | |
| POWER DRIVER SEAT | ✓ | ✓ | ✓ | ✓ |
| POWER LOCK | ✓ | ✓ | ✓ | ✓ |
| FOG LIGHTS | ✓ | ✓ | ✓ | ✓ |
| LEATHER SEAT | ✓ | ✓ | ✓ | ✓ |
| REAR HEATING, VENTILATION & AIR CON | ✓ | ✓ | ✓ | ✓ |
| TILT STEERING COLUMN | ✓ | ✓ | ✓ | ✓ |
| PASSENGER AIRBAG | ✓ | ✓ | ✓ | ✓ |
| CRUISE CONTROL | ✓ | ✓ | ✓ | ✓ |
| REAR WINDOW DEFOGGER | ✓ | ✓ | ✓ | ✓ |
| SECOND ROW FOLDING SEAT | ✓ | ✓ | ✓ | ✓ |
| KEYLESS ENTRY | ✓ | ✓ | ✓ | ✓ |
| MANUAL AIR CONDITION | ✓ | ✓ | ✓ | ✓ |
| FRONT AIR DAM | ✓ | ✓ | ✓ | ✓ |
| POWER STEERING | ✓ | ✓ | ✓ | ✓ |
| POWER ADJUSTABLE EXTERIOR MIRROR | ✓ | ✓ | ✓ | ✓ |
| SECOND ROW SPLIT BENCH SEAT | ✓ | ✓ | ✓ | ✓ |
| PRIVACY GLASS | ✓ | ✓ | ✓ | ✓ |
| POWER WINDOW | ✓ | ✓ | ✓ | ✓ |
| TINTED GLASS | ✓ | ✓ | ✓ | ✓ |
| AM FM STEREO CD | ✓ | ✓ | ✓ | ✓ |
| PASSENGER AIRBAG CUTOFF SWITCH/S | ✓ | ✓ | ✓ | ✓ |
| TACHOMETER | ✓ | ✓ | ✓ | ✓ |
| ALUM/ALLOY WHEELS | ✓ | ✓ | ✓ | ✓ |
| FIRST ROW BUCKET SEAT | ✓ | ✓ | ✓ | ✓ |
| CD PLAYER | ✓ | ✓ | ✓ | ✓ |
| ANTI-LOCK BRAKE SYS. | ✓ | ✓ | ✓ | ✓ |
| POWER BRAKE | ✓ | ✓ | ✓ | ✓ |
| DRIVER SIDE AIRBAG | ✓ | ✓ | ✓ | ✓ |
| **Equipment - Comparables** | | | | |
| SUNROOF (POWER) | n/a | -$295.83 | -$251.06 | -$238.21 |

Mitchell
**Total Logic™**

Page 5

Local Market Comparable Analysis: 2005 Ford Escape Limited

| | | | | |
|---|---|---|---|---|
| POWER PASSENGER SEAT | n/a | -$111.82 | -$99.39 | -$93.19 |
| CD CHANGER | n/a | -$283.40 | -$251.90 | -$236.17 |
| PREMIUM SOUND SYSTEM | n/a | -$231.77 | -$206.01 | -$193.15 |
| Age of Ad Adjustment | | -$254.50 | -$141.44 | -$353.62 |
| Weighting Factor | | 14% | 14% | 14% |
| Price | | $16,690.00 | $14,835.00 | $13,909.00 |
| Total Adjustments | | -$1,372.60 | -$1,319.80 | -$573.38 |
| Adjusted Value | | $15,319.44 | $13,515.20 | $13,335.62 |

Local Market Comparable Analysis: 2005 Ford Escape Limited

| | Loss Vehicle 2005 Ford Escape Limited 40,082 miles BLACK 94124 | Comparable #4 2005 FORD ESCAPE LIMITED 20,236 miles MEDIUM SILVER 94063 $17,600.00* AVAILABLE | Comparable #5 2005 FORD ESCAPE LIMITED 32,293 miles MEDIUM SILVER 94596 $18,595.00* AVAILABLE | Comparable #6 2005 FORD ESCAPE LIMITED 35,165 miles MEDIUM GRAY 94303 $17,608.00* AVAILABLE |
|---|---|---|---|---|
| **Adjustments** | | | | |
| Vehicle Type | Limited 4 Door Utility | $0.00 | $0.00 | $0.00 |
| Mileage | 40,082 miles | -$1,368.78 | -$526.43 | -$295.05 |
| **Equipment - Loss Vehicle** | | | : | |
| POWER DRIVER SEAT | ✔ | ✔ | ✔ | ✔ |
| POWER LOCK | ✔ | ✔ | ✔ | ✔ |
| FOG LIGHTS | ✔ | ✔ | ✔ | ✔ |
| LEATHER SEAT | ✔ | ✔ | ✔ | ✔ |
| REAR HEATING, VENTILATION & AIR CON | ✔ | ✔ | ✔ | ✔ |
| TILT STEERING COLUMN | ✔ | ✔ | ✔ | ✔ |
| PASSENGER AIRBAG | ✔ | ✔ | ✔ | ✔ |
| CRUISE CONTROL | ✔ | ✔ | ✔ | ✔ |
| REAR WINDOW DEFOGGER | ✔ | ✔ | ✔ | ✔ |
| SECOND ROW FOLDING SEAT | ✔ | ✔ | ✔ | ✔ |
| KEYLESS ENTRY | ✔ | ✔ | ✔ | ✔ |
| MANUAL AIR CONDITION | ✔ | ✔ | ✔ | ✔ |
| FRONT AIR DAM | ✔ | ✔ | ✔ | ✔ |
| POWER STEERING | ✔ | ✔ | ✔ | ✔ |
| POWER ADJUSTABLE EXTERIOR MIRROR | ✔ | ✔ | ✔ | ✔ |
| SECOND ROW SPLIT BENCH SEAT | ✔ | ✔ | ✔ | ✔ |
| PRIVACY GLASS | ✔ | ✔ | ✔ | ✔ |
| POWER WINDOW | ✔ | ✔ | ✔ | ✔ |
| TINTED GLASS | ✔ | ✔ | ✔ | ✔ |
| AM FM STEREO CD | ✔ | ✔ | ✔ | ✔ |
| PASSENGER AIRBAG CUTOFF SWITCH/S | ✔ | ✔ | ✔ | ✔ |
| TACHOMETER | ✔ | ✔ | ✔ | ✔ |
| ALUM/ALLOY WHEELS | ✔ | ✔ | ✔ | ✔ |
| FIRST ROW BUCKET SEAT | ✔ | ✔ | ✔ | ✔ |
| CD PLAYER | ✔ | ✔ | ✔ | ✔ |
| ANTI-LOCK BRAKE SYS. | ✔ | ✔ | ✔ | ✔ |
| POWER BRAKE | ✔ | ✔ | ✔ | ✔ |
| DRIVER SIDE AIRBAG | ✔ | ✔ | ✔ | ✔ |
| **Equipment - Comparables** | | | | |
| SUNROOF (POWER) | n/a | -$301.42 | -$317.60 | -$301.55 |

Mitchell
**Total Logic™**

Local Market Comparable Analysis: 2005 Ford Escape Limited

| | | | | |
|---|---|---|---|---|
| POWER PASSENGER SEAT | n/a | -$117.92 | -$124.25 | -$117.97 |
| CD CHANGER | n/a | -$298.85 | -$314.39 | -$298.98 |
| PREMIUM SOUND SYSTEM | n/a | -$244.41 | -$257.53 | -$244.52 |
| Age of Ad Adjustment | | -$389.16 | -$194.49 | -$167.87 |
| Weighting Factor | | 14% | 14% | 14% |
| Price | | $17,600.00 | $18,545.00 | $17,608.00 |
| Total Adjustments | | -$2,700.54 | -$1,737.19 | -$1,425.94 |
| Adjusted Value | | $14,899.46 | $16,807.81 | $16,182.06 |

**Total Logic™**

Local Market Comparable Analysis: 2005 Ford Escape Limited

| | Loss Vehicle 2005 Ford Escape Limited 40,082 miles BLACK 94124 | Comparable #7 2005 FORD ESCAPE LIMITED 20,852 miles 95138 $21,324.30* AVAILABLE |
|---|---|---|
| **Adjustments** | | |
| Vehicle Type | Limited 4 Door Utility | $0.00 |
| Mileage | 40,082 miles | -$1,604.71 |
| **Equipment - Loss Vehicle** | | |
| POWER DRIVER SEAT | ✔ | ✔ |
| POWER LOCK | ✔ | ✔ |
| FOG LIGHTS | ✔ | ✔ |
| LEATHER SEAT | ✔ | ✔ |
| REAR HEATING, VENTILATION & AIR CON | ✔ | ✔ |
| TILT STEERING COLUMN | ✔ | ✔ |
| PASSENGER AIRBAG | ✔ | ✔ |
| CRUISE CONTROL | ✔ | ✔ |
| REAR WINDOW DEFOGGER | ✔ | ✔ |
| SECOND ROW FOLDING SEAT | ✔ | ✔ |
| KEYLESS ENTRY | ✔ | ✔ |
| MANUAL AIR CONDITION | ✔ | ✔ |
| FRONT AIR DAM | ✔ | ✔ |
| POWER STEERING | ✔ | ✔ |
| POWER ADJUSTABLE EXTERIOR MIRROR | ✔ | ✔ |
| SECOND ROW SPLIT BENCH SEAT | ✔ | ✔ |
| PRIVACY GLASS | ✔ | ✔ |
| POWER WINDOW | ✔ | ✔ |
| TINTED GLASS | ✔ | ✔ |
| AM FM STEREO CD | ✔ | ✔ |
| PASSENGER AIRBAG CUTOFF SWITCH/S | ✔ | ✔ |
| TACHOMETER | ✔ | ✔ |
| ALUM/ALLOY WHEELS | ✔ | ✔ |
| FIRST ROW BUCKET SEAT | ✔ | ✔ |
| CD PLAYER | ✔ | ✔ |
| ANTI-LOCK BRAKE SYS. | ✔ | ✔ |
| POWER BRAKE | ✔ | ✔ |
| DRIVER SIDE AIRBAG | ✔ | ✔ |
| **Equipment - Comparables** | | |
| SUNROOF (POWER) | n/a | -$355.19 |

Mitchell
**Total Logic**

Local Market Comparable Analysis: 2005 Ford Escape Limited

| | | |
|---|---|---|
| POWER PASSENGER SEAT | n/a | -$142.87 |
| CD CHANGER | n/a | -$362.08 |
| PREMIUM SOUND SYSTEM | n/a | -$295.13 |
| Age of Ad Adjustment | | -$20.33 |
| Weighting Factor | | 14% |
| Price | | $21,324.00 |
| Total Adjustments | | -$2,791.31 |
| Adjusted Value | | $18,532.69 |

**Base Value:** $15,513.06

For comparable vehicles that are available, the price listed reflects a projected sales price. The projected sales prices for which the vehicle is projected to sell for based on analyzing sold vehicle data for that specific year, make, model vehicle

✓ Vehicle is equipped with specified equipment.

✗ Vehicle is not equipped with the specified equipment.

Age of Ad Adjustment: An adjustment made to advertised vehicles based on the difference between the ad publication date and the loss date.

Local Market Average: A vehicle representing the weighted average derived from all comparable vehicles used in the valuation.

Establishing Base Value: When calculating the Base Value, adjustments are made for differences in vehicle type, odometer and equipment between the loss vehicle and comparable vehicles. Only the vehicles shown in this report were used to determine the Base Value.

Market Value: The market value is calculated by comparing the loss vehicle to comparable vehicles recently sold or available in the loss vehicle local area. The appropriate adjustments for differences between the vehicles have been made to establish market value.

Mileage Adjustment: When adjusting for odometer variance, a positive adjustment is made to a comparable vehicle with a higher odometer reading than the loss vehicle because it would be worth more if it had fewer miles. Likewise, a negative adjustment is made to a comparable vehicle with a lower odometer reading.

Vehicle Type Adjustment: The Vehicle Type Adjustment may include differences in submodel, body style, engine, and drive train between the loss and comparable vehicles.

Weighting Factor: Percentages may not sum to 100% due to rounding.

Mitchell
**Total Logic™**

## Comparable Vehicle Details:   2005 Ford Escape Limited

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 1 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMYU04145KA83968<br>32S434<br>License Plate N/A | 36,356 | FRANCHISE WEB<br>LISTING - CARS.COM<br>877-428-3700 | 03/10/2007 | 94577 | $17,998.00 LIST PRICE |

ADDRESS :
1111 MARINA BLVD
null
SAN LEANDRO,CA- 94577

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL, DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT, MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 2 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMCU04115KC10515<br>32S435<br>License Plate N/A | 33,212 | FRANCHISE WEB<br>LISTING - CARS.COM<br>877-428-3700 | 03/28/2007 | 94577 | $15,998.00 LIST PRICE |

ADDRESS :
1111 MARINA BLVD
null
SAN LEANDRO,CA- 94577

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL, DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT, MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 3 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMCU04115KA23265<br>8466A<br>License Plate N/A | 54,241 | FRANCHISE WEB<br>LISTING - CARS.COM<br>650-726-4496 | 02/06/2007 | 94019 | $14,998.00 LIST PRICE |

ADDRESS :
100 SEYMOUR
HALF MOON BAY,CA- 94019

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL, DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT, MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 4 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMYU04185KB62377<br>6090<br>License Plate N/A | 20,236 | FRANCHISE WEB<br>LISTING - CARS.COM<br>650-562-2264 | 02/20/2007 | 94063 | $18,979.00 LIST PRICE |

Comparable Vehicle Details:    2005 Ford Escape Limited

ADDRESS :
1601 EL CAMINO REAL
REDWOOD CITY,CA- 94063

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL,
DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT,
MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER
ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER
WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND
ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD
CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 5 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMCU04125KB82319<br>2108<br>License Plate N/A | 32,293 | FRANCHISE WEB<br>LISTING - CARS.COM<br>925-932-2900 | 03/25/2007 | 94596 | $19,998.00 LIST<br>PRICE |

ADDRESS :
1800 N. MAIN ST.
WALNUT CREEK,CA- 94596

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL,
DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT,
MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER
ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER
WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND
ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD
CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 6 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMCU04155KB95411<br>57332A<br>License Plate N/A | 35,165 | FRANCHISE WEB<br>LISTING - CARS.COM<br>888-791-2222 | 03/28/2007 | 94303 | $18,988.00 LIST<br>PRICE |

ADDRESS :
1766 EMBARCADERO RD.
PALO ALTO,CA- 94303

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL,
DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT,
MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER
ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER
WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND
ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD
CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

| Comp | Vehicle | VIN/StockNo./LicensePlate | Mileage | Seller Type/Contact | Listing Date | ZIP | Price |
|---|---|---|---|---|---|---|---|
| 7 | 2005 FORD ESCAPE LIMITED<br>4D SUV 6 3 NORMAL GAS A 2WD | 1FMYU04155KE23948<br>P4351<br>License Plate N/A | 20,852 | FRANCHISE WEB<br>LISTING - CARS.COM<br>408-781-5305 | 04/24/2007 | 95136 | $22,995.00 LIST<br>PRICE |

ADDRESS :
919 W CAPITOL EXPRESSWAY AUTO MALL
null
SAN JOSE,CA- 95136

Met-c1
**Total Logic**

**Comparable Vehicle Details:**    2005 Ford Escape Limited

EQUIPMENT: ALUM/ALLOY WHEELS, AM FM STEREO CD, ANTI-LOCK BRAKE SYS., CD PLAYER, CRUISE CONTROL, DRIVER SIDE AIRBAG, FIRST ROW BUCKET SEAT, FOG LIGHTS, FRONT AIR DAM, KEYLESS ENTRY, LEATHER SEAT, MANUAL AIR CONDITION, PASSENGER AIRBAG, PASSENGER AIRBAG CUTOFF SWITCH/SENSOR, POWER ADJUSTABLE EXTERIOR MIRROR, POWER BRAKE, POWER DRIVER SEAT, POWER LOCK, POWER STEERING, POWER WINDOW, PRIVACY GLASS, REAR HEATING, VENTILATION & AIR CONDITIONING, REAR WINDOW DEFOGGER, SECOND ROW FOLDING SEAT, SECOND ROW SPLIT BENCH SEAT, TACHOMETER, TILT STEERING COLUMN, TINTED GLASS, CD CHANGER, POWER PASSENGER SEAT, PREMIUM SOUND SYSTEM, SUNROOF (POWER)

Mitchell
**Total Logic**