SEDGWICK, DETERT, MORAN & ARNOLD LLP
KEVIN J. DUNNE  Bar No. 40030
BRUCE D. CELEBREZZE  Bar No. 102181
LAURA L. GOODMAN  Bar No. 142689
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>Defendant. | CASE NO. CV 08 1365 CW (EMC)<br><br>**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER**<br><br>JUDGE:  Magistrate Judge Edward M. Chen<br>DEPT:   Courtroom C, 15th Floor<br>DATE:   July 23, 2008<br>TIME:   10:30 a.m. |

## I.  BACKGROUND

Plaintiff Arnesha Garner filed this purported class action against State Farm Mutual Automobile Insurance Company on behalf of herself "and others similarly situated" alleging that State Farm violated Title 10 of the California Code of Regulations, § 2695.8(b)(2), which, if effective, would require automobile insurers to determine the actual cash value of a total loss automobile by using *either* (1) the actual sales price of comparable vehicles, or (2) the asking price of comparable vehicles (Total Loss Regulation "TLR").  Pursuant to a Stipulation and Order filed in a lawsuit brought against former Insurance Commissioner John Garamendi to enjoin the implementation of certain revised regulations, including the TLR, the parties, including the California Insurance Commissioner, agreed that: "the language to be adopted in

section 2695.8(b)(2), requiring insurers to determine the cost of a comparable automobile using either the asking price or actual sales price of that vehicle, shall not become effective until sixty (60) days after sales price data becomes available from the Department of Motor Vehicles." (Docket 47, p. 8.)

Plaintiff contends here that State Farm undervalued her total loss vehicle in May 2007 by using a "projected sales price" instead of using, which she asserts was required by the TLR, either the actual sales price or asking price of comparable vehicles. State Farm contends that the TLR was not effective at the time plaintiff suffered her total loss because the California Department of Motor Vehicles ("DMV") had not yet made available to either State Farm or Mitchell International – State Farm's total loss valuation vendor – sales price data for vehicles sold in California. Neither State Farm, nor its vendor, has the actual sales prices for all of the comparable vehicles used in plaintiff's total loss valuation. If the DMV sales data on comparable vehicles is not available, then the TLR is not yet in effect, as per the settlement agreement described herein. If that is the case, it would be unfair, if not unconstitutional, to enforce a regulation which, as a matter of fact, an insurer such as State Farm **cannot** comply with.

State Farm moved to dismiss plaintiff's complaint on the ground that the TLR was not effective at the time of plaintiff's loss, and also moved to compel an appraisal pursuant to the appraisal provision contained in plaintiff's State Farm automobile insurance policy. After a hearing, Judge Wilken denied State Farm's motion to dismiss, without prejudice to renewal at a later time, on the ground that the question of whether the TLR was in effect at the time of plaintiff's loss depends on whether actual sales data had been made "available" by the DMV. Judge Wilken ordered that the parties could conduct discovery on issues relating to the question of whether the TLR was in effect at the time of the adjustment of plaintiff's claim, to be followed by further motion practice:

> As discussed at oral argument, the Court will permit limited discovery on this issue. At the conclusion of this discovery, Defendant may move for summary adjudication on the issue of whether it was required to comply with the regulation at the time it conducted its valuation of Plaintiff's vehicle. The Court will hold an evidentiary hearing only if it determines that there is a dispute of material fact on

1       this point.

(Docket 47, p. 11.)  The discovery cutoff on the issue of whether State Farm was required to comply with the TLR at the time it evaluated plaintiff's total loss is October 28, 2008.  (*Id*. at p. 21.)  The Court also set a deadline of November 20, 2008 for State Farm to move for summary judgment on the ground that it was not required to comply with the TLR and/or that plaintiff has no damages after appraisal.  (*Id*.)

      The Court granted State Farm's separate motion to compel appraisal and for a stay and ordered an appraisal to be completed within sixty (60) days.  (*Id.* at p. 20.)  The Court further held that the appraisers are to provide three alternative valuations:

> In light of the uncertainty of the applicability of the TLR, the parties must direct the appraisers to provide three alternative valuations:  one based on the "asking price" of comparable vehicles and conducted in accordance with the TLR; a second based on the "actual sale price" of comparable vehicles and conducted in accordance with the TLR"; and a third based on whatever method the appraisers would have used prior to the adoption of the TLR to determine the "actual cash value" of Plaintiff's vehicle, as that term is used in the policy." (*Id*. at p. 21.)
> The Court also ordered that, after the appraisal, State Farm could make a motion to dismiss or for summary judgment on the ground that plaintiff has suffered no damage.

      On June 30, 2008, State Farm had the DMV served with a subpoena for documents. (Declaration of Laura L. Goodman, Exhibit A.)  The subpoena seeks, among other documents, all documents "referring to, reflecting, containing or otherwise showing the actual sales price, date of sale, and location of sale" for the comparable vehicles contained in State Farm's valuation of plaintiff's total loss automobile.  (*Id*.)

      State Farm believes that the DMV will be unable to produce documents responsive to this category of the subpoena as State Farm has a good faith basis to believe that the DMV does not keep or maintain "actual sales" data on vehicles sold in California as would be required by the TLR if in effect.  On June 12, 2008, Mitchell wrote to the DMV about the content of its data feed and on July 3, 2008, the DMV replied.  (Goodman Decl., Exhs.B and C.) The DMV confirmed that its data relating to vehicles sold by automobile dealerships in California does not provide the actual sales price, but instead contains a "VLF Class Code" assigned by the DMV to each vehicle which must then be cross-referenced against the DMV's Vehicle License Fee Chart to

1  identify a "range" of possible sales prices (typically a $200 price range). (*Id.*)  Moreover, section
2  2695.8(b)(2) purports to require the use of comparable vehicles available for sale in the "local
3  market area" within ninety days of the settlement offer.  The DMV has confirmed that its data
4  includes an Ownership Certificate Issue Date which reflects a "title transfer" or "recorded" date
5  that is ten days after the sold record is transmitted by a dealer to the DMV, although it appears
6  that the DMV has recently added a "vehicle transfer" date to its data   (*Id.*)  Finally, the DMV
7  data does not provide the zip code for the actual location where the vehicle was sold which is
8  necessary to determine whether the vehicle was available for sale in the "local market area" of
9  the total loss vehicle.  (*Id.*)  If the data required to comply with the TLR is indeed not available
10 from the DMV, then State Farm needs to know this in order to present its evidence to Judge
11 Wilken on its motion arguing that the TLR was not in effect.  Yet plaintiff objects to this
12 category of the subpoena solely on the grounds of relevance.
13     The subpoena also seeks documents "referring to, reflecting, or containing any
14 communications between the DMV and Arnesha Garner and/or [her counsel]."  Plaintiff has
15 objected to this category of State Farm's discovery as well on the ground of relevance.  Notably,
16 the DMV has **not** objected to the subpoena; the only objection is that of plaintiff.

## II.     ARGUMENT

### A.     "Relevance" Under The Discovery Rules Is Broad

Federal Rule of Civil Procedure 26(b)(1) defines the general scope of discovery:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Federal Rule of Evidence 401 defines "Relevant Evidence":

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The Federal Rules of Civil Procedure create a "broad right of discovery" because "wide access

1  to relevant facts serves the integrity and fairness of the judicial process by promoting the search
2  for truth. *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). *See* Charles Alan Wright, Arthur
3  R. Miller, and Richard L. Marcus, *Federal Practice and Procedure*, § 2001 at 44 (2d ed. 1994)
4  (relevance standard for discovery is "a very broad one.")

5  **B.  DMV Documents Regarding Sales Data For The Comparable Vehicles Used In Plaintiff's Evaluation Report Are Relevant To The Issue of Whether the Information Was "Available" And Is Necessary To Comply With The Court's Order For Appraisal**

8  Plaintiff's objection to this category of the DMV subpoena is highly suspect and seeks,
9  under the guise of a discovery motion, to obtain a dispositive ruling on one of the key issues in
10 the case. The discovery will not impose any annoyance, oppression, or undue burden or
11 expense, as is required for a protective order to issue under Rule 26(c) of the Federal Rules of
12 Civil Procedure. It is incongruous for plaintiff to argue that State Farm is required by law to
13 value her total loss based on either the "asking price" or "actual sales" price of comparable
14 vehicles, while at the same time making every effort to prevent State Farm from (1) discovering
15 whether the actual sales price of the comparable vehicles used in plaintiff's valuation report,
16 along with other actual sales data, was and is "available" from the DMV, and (2) if so, what the
17 actual sales price is of those comparable vehicles.

18 As set forth above, State Farm claims that the DMV has not made sales data available to
19 either it or Mitchell. If, as State Farm believes, the DMV does not have documents responsive to
20 this request, this is certainly evidence that the DMV has not made the sales data "available,"
21 which is a precondition to the effectiveness of the TLR. If the actual sales data is available, it is
22 crucial to find out exactly what information is available, when it became available, and in what
23 format it is available. This discovery is completely within the scope of the Court's order
24 allowing discovery into fact issues surrounding the effectiveness of the TLR. Indeed, without
25 the discovery, State Farm is stripped of its right to do the very thing which Judge Wilken ordered
26 it to do – present its case as to why the TLR was not in effect at the time it adjusted plaintiff's
27 claim. If the "actual sales" information is not – or was not – available from the DMV, it is State
28 Farm's argument that the regulation could not have been in effect. If plaintiff were to succeed in

-5-    CASE NO. CV 08 1365 CW (EMC)

1  convincing this Court not to require the DMV to produce the data – or to state that it **cannot**

2  produce the data – the ruling on this motion to compel essentially becomes the final ruling on the

3  merits of one of State Farm's main defenses to plaintiff's lawsuit.

4        In her opinion, immediately prior to ordering limited discovery, the Court discussed the

5  conflict in the evidence and the need for discovery:

> The parties dispute whether the DMV sales information had become available at the time Defendant made its settlement offer. In support of its position that the information was not available, Defendant has submitted a letter purporting to be from the DMV. . . Defendant argues that this letter establishes that sales price data had not become available to Mitchell at the time it valued Plaintiff's car. Plaintiff counters that the Court may not properly take judicial notice of the letter and, in any event, the letter does not demonstrate that the regulation was not in effect at the time of the conduct giving rise to this lawsuit.
>
> * * *
>
> While it might be proper to take judicial notice of the fact that in November, 2007, the DMV sent a letter to Mitchell stating that it had not yet made certain vehicle data available to Mitchell, the court can go no further than that. The fact that Mitchell had not yet been able to obtain whatever information it sought from the DMV does not necessarily mean that sales information had not yet 'become available,' as that phrase is used in the settlement agreement. It is not clear from the letter what information Mitchell had requested. The open factual issues on this point preclude dismissal at this stage of the litigation.

16  (Docket 47 at pp. 8-10.) Judge Wilken also noted that there was an issue as to whether the DMV

17  ever made sales data available to State Farm. (*Id.* at p. 10.)

18        Not only are the documents highly relevant to the issue of whether the TLR was effective

19  at the time of plaintiff's loss and today, but obtaining the documents, if they exist, is essential if

20  the appraisers are to provide Judge Wilken with the alternative calculation based on the actual

21  cost of comparable vehicles in accordance with the TLR. Significantly, Judge Wilken has

22  rejected plaintiff's claim that she is entitled to a valuation of her vehicle based on the "asking

23  price" of comparable vehicles and noted that "[p]laintiff does not specifically allege that

24  Defendant's offer was less than the value of her automobile based on the actual sale price of

25  comparable vehicles." (*Id.* at p.5, fn 2.) Judge Wilken's order holds that an appraisal will

26  determine whether plaintiff has suffered any damage and thus, whether she has standing to sue:

> If an appraisal demonstrates that Defendant's offer was in fact less than the actual cash value of Plaintiff's car, she may proceed with this action. Alternatively, if an appraisal determines that Defendant's settlement offer was equal to or greater

     than the actual cash value of Plaintiff's vehicle, it may demonstrate that Plaintiff lacks standing to sue. *It would be preferable to resolve any such standing issue early in these proceedings.* (Docket 47, p. 14, emphasis added.)

Absent discovery of actual sales price data from the DMV – if the DMV even has such data – neither the appraisers nor Judge Wilken will be able to determine whether plaintiff was paid less than or more than the actual sales price of comparable vehicles. Obtaining this information in a timely fashion is critical as Judge Wilken has ordered that the appraisal be complete by August 30, 2008.

Plaintiff's argument that obtaining the actual sales data from the DMV, if available, is "antithetical to the purposes of contractual appraisal" misses the point. As evidenced by Judge Wilken's order, this is not an ordinary appraisal. Instead, Judge Wilken is requiring two alternative valuations *in addition to* the normal appraisal process. (Docket 47 at p. 21.) Plaintiff's claim that State Farm could not subpoena the DMV records "[o]utside the context of this litigation" is similarly flawed. The reason that State Farm needs to obtain the records, if available, is *because* of this litigation. The Court cannot order the parties and appraisers to perform a calculation without allowing them to obtain the underlying information essential to performing such calculation.

### C.     <u>Documents Re Communications Between The DMV And Plaintiff And/Or Her Counsel Are Relevant And Discoverable</u>

Plaintiff seeks a protective order prohibiting State Farm from discovering documents relating to communications between the DMV and plaintiff and/or her counsel. Plaintiff's only objection to this discovery is that such discovery "has no conceivable relevance" as to whether the DMV made sales price data available to State Farm or Mitchell. (Plaintiff's motion at p. 2.) Plaintiff's motion misses the point. State Farm is entitled to discover all documents from the DMV that plaintiff has, and all documents which may reveal what, if anything, the DMV has told plaintiff or her counsel and what, if anything, plaintiff or her counsel may have told the DMV about the availability of sales data or the relevance of that issue to this case. In order to oppose State Farm's motion to dismiss, plaintiff's counsel proffered a letter from the DMV to

show that there was a question of fact as to whether sales data has been made available by the DMV. (Docket 23, Exh. 1.) State Farm is entitled to discover all documents relating to that letter, including the basis for that letter and the request from plaintiff's counsel for that letter. If there is any factual dispute regarding the availability of sales data, Judge Wilken has advised that she will hold an evidentiary hearing. (Docket 47, p. 11.) Discovery that may bear on the credibility of witnesses, and the circumstances surrounding the creation of documents is thus clearly relevant and not at all outside the scope of the Court's order.

### III.   CONCLUSION

Plaintiff's motion for a protective order is not well-founded. For all of the reasons set forth herein, the documents sought are relevant and squarely within the scope of Judge Wilken's order allowing discovery on this issue.

DATED: July 18, 2008    Respectfully submitted,

SEDGWICK, DETERT, MORAN & ARNOLD LLP


By: s/Laura L. Goodman
    Kevin J. Dunne
    Bruce D. Celebrezze
    Laura L Goodman
    Attorneys for Defendant
    STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY