1   David M. Birka-White; (State Bar No. 85721)
    dbw@birka-white.com
2   Stephen Oroza (State Bar No. 84681)
    Thomas D. Hicks (State Bar No. 238545)
3   BIRKA-WHITE LAW OFFICES
    744 Montgomery Street, Fourth Floor
4   San Francisco, CA 94111
    Telephone: (415) 616-9999
5   Facsimile: (415) 616-9494

6   Attorneys for Plaintiff Arnesha Garner

7   (Additional counsel listed on signature page)

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  ARNESHA M. GARNER, on behalf of         Case No. CV 08 1365 CW (EMC)
    herself and all others similarly situated,
13                                           **REPLY MEMORANDUM OF POINTS**
                  Plaintiff,                 **AND AUTHORITIES IN SUPPORT OF**
14                                           **MOTION FOR PROTECTIVE ORDER**
    v.
15                                           **Date:** July 23, 2008
                                             **Time:** 10:30 a.m.
16  STATE FARM MUTUAL                        **Dept:** Courtroom C, 15th Floor
    AUTOMOBILE INSURANCE                     Magistrate Judge Edward M. Chen
    COMPANY, et al.,
17
                  Defendants.
18

19                          **INTRODUCTION**[1]

20          Plaintiff moved for a protective order precluding the production of two categories of

21  documents under a subpoena issued by State Farm to the DMV because these categories exceed

22  the very limited scope of discovery allowed by the Court in the Stay Order. Much of State

23  Farm's response[2] ignores the actual basis for the motion and argues extensively about why it

24

25  _____

26  [1] Terms defined in Plaintiff's Memorandum Of Points And Authorities In Support Of Motion For
    Protective Order ("*Plaintiff's Opening Memorandum*") have the meanings ascribed to them
    therein.
27  [2] Defendant State Farm Mutual Automobile Insurance Company's Opposition To Motion For
    Protective Order (the "*State Farm Opposition*").
28
                                      -1-

1  thinks the Court *should have allowed* the discovery it requests and why it should ultimately

2  prevail in the action.

3      State Farm's arguments concerning the scope of discovery permitted by the Stay Order

4  should be made to Judge Wilken and decided in light of her actual case management objectives.

5  Its arguments on the merits of the case should be made at the hearing set by Judge Wilken.  None

6  of the arguments made by State Farm affects the basis for this motion – that the requested

7  discovery exceeds the scope of discovery *actually allowed* by the Stay Order.

8                    <u>**STATEMENT OF FACTS**</u>

9      As detailed in Plaintiff's Opening Memorandum, the Court allowed discovery on a very

10  narrow issue, the interpretation of when "sales price data" became "available" as that term is used

11  in the Stipulation.  The Court was understandably skeptical about State Farm's interpretation of

12  this term, but acknowledged that some fact discovery might be necessary to determine what the

13  parties to the Stipulation meant:

> Defendant's apparent interpretation of the term, "available" leads to
> a paradoxical result. Accepting Defendant's argument that it was
> not bound by the regulation unless Mitchell had actually received
> sales price information from the DMV would mean that the
> regulation would have a different effective date with respect to each
> insurer. It would also mean that an insurer could avoid complying
> with the regulation altogether simply by failing to request sales
> price information from the DMV. *While it is possible, though*
> *unlikely, that the settlement agreement contemplated such a*
> *scenario, the issue cannot be resolved on a motion to dismiss.*
>
> For these reasons, the Court will not dismiss this case on the basis
> that the relevant provision of the TLR was not in effect when
> Defendant adjusted Plaintiff's claim. *As discussed at oral*
> *argument, the Court will permit limited discovery on this issue.*

22  *Stay Order* at 10-11 (emphasis added.)

23      The issue on which the Court permitted discovery is what the Stipulation means by

24  "available" and whether "sales price data" became "available" *at any time after 2003* within the

25  meaning of the Stipulation.  The Contested Discovery has no conceivable relation to either issue.

26      State Farm argues at some length about the information which is allegedly available from

27  the DMV and why it is unfair – or even unconstitutional – to require State Farm to comply with

28  the Total Loss Regulation.  These arguments are irrelevant to Plaintiff's motion and are

1  apparently made to divert attention from State Farm's violation of the Stay Order.

2          Plaintiff will not respond in detail to these arguments because they are not the subject of

3  this motion and require substantial evidence which will be presented to Judge Wilken when the

4  merits of State Farm's baseless claims are actually tried.  The arguments made by State Farm,

5  however, involve two  obvious errors and are based on an alleged state of facts State Farm knows

6  to be false.

7          *First*, the Stipulation became effective when "sales price data" was available from the

8  DMV.  The evidence submitted by State Farm includes a letter from the DMV – which State

9  Farm accepts as true and from which it makes its arguments – identifying the extensive "sales

10  price data" which is "available" from the DMV.[3]  State Farm's complaint seems to be that the

11  DMV does not have what State Farm believes is the "right" sales data.

12          *Second*, comparables based on contemporaneous actual sales data do not always exist for

13  a particular vehicle.  This does not mean that the Total Loss Regulation is not in effect for that

14  vehicle.  In such cases, the Total Loss Regulation requires the use of unadjusted advertised prices

15  because the Department of Insurance found that the insurance industry abused consumers by

16  using computerized services to "adjust" these data and "low-ball" appraisals.  *Plaintiff's Request*

17  *For Judicial Notice In Support of Opposition To State Farm Mutual Automobile Insurance*

18  *Company's Motion To Compel Contractual Appraisal And For A Stay Pending Appraisal*

19  (Docket Number 31), Exhibits 3 and 4 (State Farm's objection to the proposed Total Loss

20  Regulation and response of Department of Insurance).

21          *Third*, as the evidence will demonstrate, it is by no means impossible to value many

22  vehicles based on actual sales data using either the information obtained from the DMV or

23  information obtained from other sources.  For example, Mitchell itself has stated to the DMV that

24  it intends to use data from the DMV "along with other information" to provide values for total

25  loss vehicles.  *Goodman Declaration,* Exhibit 2.

26

27  ───────────────

28  [3] *Declaration of Laura L. Goodman in Opposition to Motion For Protective Order*, ("*Goodman Declaration,*" Exhibits 2 and 3).

Reply Memorandum In Support Of Motion For Protective Order - Case No. CV 08 1365 CW

1

**ARGUMENT**

2

**I.    THE DOCUMENTS IN CATEGORY 1 ARE OUTSIDE THE SCOPE OF PERMITTED DISCOVERY**

3

4          State Farm makes two arguments concerning the documents in Category 1 – "documents

5   referring to, reflecting, containing or otherwise showing the actual sales price, date of sale, and

6   location of sale" of vehicles used by State Farm as comparables for Plaintiff's vehicle. First,

7   State Farm argues that such information is necessary to permit it to do an appraisal ordered by the

8   Court. State Farm argues: "The Court cannot order the parties and appraisers to perform a

9   calculation without allowing them to obtain the underlying information essential to performing

10  such calculation." *State Farm Opposition* at 7.

11         If State Farm were correct, the Court would have excepted discovery of actual sales data

12  relevant to Plaintiff's vehicle from the Stay Order requested by State Farm. State Farm made no

13  request for such discovery and the Court did not order it. Nor should it have. There is nothing

14  irrational or unfair about ordering the parties to do a contractual appraisal using only the

15  information which is available to appraisers who do contractual appraisals. This information does

16  not include subpoenaed records of later-occurring sales.[4] Having obtained a stay of the action by

17  requiring Plaintiff to pursue an allegedly informal, inexpensive contractual appraisal process,

18  State Farm now wishes to ignore both the stay and its contract.

19         It is for Judge Wilken to decide whether the appraisers should be permitted to use

20  subpoenaed records of non-contemporaneous sales. At present, Judge Wilken *did not allow

21  discovery on this issue* and State Farm is not entitled simply to ignore the Stay Order. If State

22  Farm believes that the Stay Order should be modified to permit discovery related to the appraisal

23  it can make a request to Judge Wilken and Plaintiff can be heard in opposition. This will allow a

24  fair hearing of the facts related to the fairness of State Farm's request.

---

[4] State Farm's argument that the Court did not order a contractual appraisal is impossible to square with the fact that State Farm's motion to stay the proceedings was premised *exclusively* on its alleged contractual right to such an appraisal. In fact, the portion of the Stay Order which addresses this issue is headed: "Plaintiff's Contractual Obligation to Obtain an Appraisal." *Stay Order* at 11. The Court simply ordered the appraisers to appraise the vehicle assuming that that Total Loss Regulation was in effect (which Plaintiff asserts) and that it was not in effect (which State Farm asserts) so that the appraisal is relevant no matter who prevails on this issue. *Stay Order* at 20-21.

- 4 -

1    With respect to the second argument, nothing in the Stay Order suggests that discovery of

2    sales price data *for a single particular vehicle* is in any way relevant to either what the Stipulation

3    means by "available" or whether the DMV made such data "available" to insurers. Eleven

4    categories of the subpoena – to which Plaintiff has not objected – describe all information

5    *conceivably* relevant to whether the DMV made particular types of sales data available to State

6    Farm, Mitchell or any other vendor of total loss valuation services during the relevant time

7    period. State Farm even includes evidence of the information available from the DMV in

8    responding to this motion. *Goodman Declaration*, Exhibit 3.

9    By contrast, Category 1 seeks information *only* as to the vehicles used as comparables for

10   Plaintiff's vehicle. State Farm argues: "If, as State Farm believes, the DMV does not have

11   documents responsive to this request, this is certainly evidence that the DMV has not made the

12   sales data 'available,' which is a precondition to the effectiveness of the TLR." *State Farm*

13   *Opposition* at 5. The lack of data for a particular vehicle has no bearing on whether the Total

14   Loss Regulation is in effect. Where actual sales price data is not available for a particular vehicle,

15   the Total Loss Regulation simply requires that unadjusted advertised prices be used to value

16   comparable vehicles.

17   Acceptance of State Farm's argument would lead to a "paradoxical result" even more

18   implausible than then the one identified by Judge Wilken. Having already argued that the Total

19   Loss Regulation has a different effective date for every insurer in California, State Farm now

20   goes on to argue that the Total Loss Regulation is either effective or ineffective for *every vehicle*

21   depending on whether actual sales data exist for that particular vehicle.

22   The Total Loss Regulation is in effect if sales data was "available" within the meaning of

23   the Stipulation for vehicles *generally*. This condition either occurred or it did not. The lack of

24   sales data for a particular vehicle means is irrelevant to the issues on which the Court permitted

25   discovery.

26   **II.    THE DOCUMENTS IN CATEGORY 13 ARE OUTSIDE THE SCOPE OF
          PERMITTED DISCOVERY**

27

28   Category 13 of the subpoena requests documents "referring to, reflecting, or containing

1    any communications between the DMV and Arnesha Garner and/or her attorneys David Birka-

2    White, Stephen Oroza, Thomas Hicks, Jeffrey Cereghino, Steven R. Weinmann, the Birka-White

3    Law Offices and/or Berding & Weil, LLP from January 1, 2003 to the present."

4         State Farm has apparently abandoned the only argument it made for this discovery in the

5    meet and confer process – that this information is necessary to determine whether the DMV is

6    "biased" against State Farm.  This abandonment is only fitting in light of the fact that the DMV

7    has *again* voluntarily provided information to Mitchell which State Farm believes proves its case.

8    *Goodman Declaration*, Exhibit 3.

9         State Farm has replaced this obviously indefensible position with a long series of

10   statements whose significance to this motion is apparently presumed to be self-evident, since no

11   argument is made for any of them.  The statements and Plaintiff's response follow:

12             1.    "State Farm is entitled to discover all documents from the DMV
                that plaintiff has, and all documents which may reveal what, if anything, the DMV
13              has told plaintiff or her counsel and what, if anything, plaintiff or her counsel may
                have told the DMV about the availability of sales data or the relevance of that
14              issue to this case."

15   Plaintiff's Response:    No explanation is given as to why all documents "from the DMV

16   that plaintiff has" are relevant to whether the DMV made sales data available to insurers at any

17   time after 2003.  Plaintiff cannot conceive of any such explanation.

18        Statements made by Plaintiff or her counsel to the DMV have no conceivable relevance to

19   whether the DMV made sales data available to insurers at any time after 2003.

20        The only possible relevance of communications between the DMV and Plaintiff is for

21   statements made by the DMV concerning the availability of sales data.  Eleven of the other

22   twelve categories are expressly limited to such information.[5]  For example, Category 2 seeks:

23             All DOCUMENTS reflecting any communications from January 1,
                2003 to the present to, from, or between, the DMV and any TOTAL
24              LOSS EVALUATION VENDOR relating to any TOTAL LOSS
                EVALUATION VENDOR'S *request to obtain or access DMV data*
25              *regarding the actual sales prices for vehicles sold in California*."

26   Category 13 is the *only category which is not limited to such potentially relevant*

27   _____

28   [5] The twelfth category relates only to the vehicles used by State Farm to appraise Plaintiff's
     vehicle.

1   *communications.*  Plaintiff has no objection to the production by the DMV of documents

2   reflecting statements made by the DMV to anyone on the availability of sale data.  Any other

3   communications between Plaintiff and the DMV are outside the scope of discovery permitted in

4   the Stay Order.

> 2.  In order to oppose State Farm's motion to dismiss, plaintiff's counsel
>     proffered a letter from the DMV to show that there was a question of fact
>     as to whether sales data has been made available by the DMV. (Docket 23,
>     Exh. 1.)  State Farm is entitled to discover all documents relating to that
>     letter, including the basis for that letter and the request from plaintiff's
>     counsel for that letter. . . . Discovery that may bear on the credibility of
>     witnesses, and the circumstances surrounding the creation of documents is
>     thus clearly relevant and not at all outside the scope of the Court's order.

Plaintiff's Response:  State Farm offers no explanation for how evidence of all

communications between Plaintiff and the DMV bears on the "credibility" of witnesses.  Nor is it

obvious to Plaintiff how such communications affect the "credibility" of the DMV.

Plaintiff did not *and will not* proffer a letter from the DMV as evidence of any fact.  Plaintiff

introduced the letter only to show that a letter from the DMV proffered by State Farm did not

demonstrate as an "indisputable fact" that sales data had not been made available to State Farm

and was therefore not an appropriate subject for judicial notice.  *Plaintiff's Opposition To State*

*Farm Mutual Automobile Insurance Company's Motion To Dismiss Plaintiff's Complaint For*

*Failure To State A Claim [Fed.R.Civ.P. 12(b)(6)* (Docket No. 21) at 3-4.  The Court agreed and

did not consider the letter for this purpose.  *Stay Order* at 8-10.

Moreover, Category Number 13 does not request documents relating to the letter

Plaintiff proffered.  It seeks *all communications on any subject* between Plaintiff and her counsel

and the DMV.  Such communications are not relevant to what the Stipulation means by "sales

data" or when that data became "available."   It is therefore outside the scope of discovery

allowed by the Stay Order.

**[Balance of page intentionally left blank]**

1

### CONCLUSION

2      For the reasons stated in this memorandum and *Plaintiff's Opening Memorandum*,

3  Plaintiff requests that discovery of the documents in Categories 1 and 13 not be permitted and

4  that State Farm be required immediately to advise the DMV not to produce such documents.

5

6  Dated:  July 21, 2008                              BIRKA-WHITE LAW OFFICES

7

8                                                      By: _____/s/_____

9                                                              Stephen Oroza

10                                                     Jeffrey B. Cereghino (State Bar No. 99480)
                                                       Steven R. Weinmann (State Bar No. 190956)
11                                                     BERDING & WEIL, LLP
                                                       3240 Stone Valley Road West
12                                                     Alamo, California  94507
                                                       Telephone: (925) 838-2090
13                                                     Facsimile: (925) 820-5592

14                                                     Counsel for Plaintiff Arnesha Garner

15

16

17

18

19

20

21

22

23

24

25

26

27

28