David M. Birka-White (State Bar No. 85721)
Stephen Oroza (State Bar No. 84681)
Mindy M. Wong (State Bar No. 267820)
BIRKA-WHITE LAW OFFICES
The Danville Hotel
411 Hartz Avenue, Suite 200
Danville, CA 94526
Telephone:  (415) 616-9999
Facsimile:  (415) 616-9970

Robert J. Nelson (State Bar No. 132727)
Steve M. Swerdlow (State Bar No. 250344)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111 3339
Telephone:  (415) 956 1000
Facsimile:  (415) 956 1008

*Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>Defendants. | CASE NO.  4:08-cv-01365-CW<br><br>**DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**<br><br>Date:     April 15, 2010<br>Time:    2:00 p.m.<br>Dept.:    Courtroom 2<br>Judge:   Hon. Claudia Wilken |

I, DAVID M. BIRKA-WHITE, declare as follows:

1. I am an attorney at law duly licensed to practice before the United States District Court, Northern District of California and all courts of the State of California. I am a member in good standing of the State Bar of California. I have personal knowledge as to the facts stated herein and, if called upon to do so, could and would competently testify thereto.

2. I make this declaration in support of the fee application of Class Counsel for a 5% enhancement to the 25% benchmark for fees and reimbursement of costs.

3. Throughout the pendency of this litigation, my office has served as lead counsel together with Robert J. Nelson of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), whom I requested to assist my office in the prosecution of this case. We were appointed Class Counsel on January 15, 2010, as part of the Court's Order Conditionally Certifying the Settlement Class with Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), and the granting of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement. I have served as co-lead counsel and class counsel with Mr. Nelson and LCHB in numerous class action cases over the course of nearly 20 years, and I know them to be a firm of the highest caliber.

4. Throughout the pendency of this matter, I have been directly involved in the management and performance of all work associated with the prosecution of this case. Steve Oroza, a 30+ year attorney from my office and also highly experienced in the field of class actions, provided invaluable assistance throughout the case.

5. My office handles a small volume of complex/class action cases at any given time. During the last two years, a large portion of my time, and that of Steve Oroza, and other members of my office was devoted to the *Garner v. State Farm* case. I believe that the successful outcome of the *Garner* case is, in part, directly related to our ability to have been able to focus intensely on the numerous and complex issues presented by this case and the formidable defense asserted by State Farm.

6. I have served as Court appointed class counsel or settlement class counsel in a large number of class actions and have also served as lead counsel in dozens of complex cases. My further qualifications are set forth in my resume, attached hereto as **Exhibit A**.

## BACKGROUND OF STATE FARM LITIGATION

7. In August 2007, my office received an inquiry regarding State Farm's use of projected sold price deductions to value the total loss vehicles of State Farm insureds. It was clear from the outset that the task of understanding the State Farm/Mitchell "Total Logic" valuation methodology would be quite difficult. There was nothing obvious about how Mitchell calculated the projected sold prices of "comparable vehicles" or how much was actually deducted from the total loss vehicles in question.

8. A substantial amount of time had to be devoted to unravel what can only be described as an opaque system which few, if any, insureds could understand. As it turned out, State Farm had recently replaced its total loss vendor with Mitchell International, Inc. ("Mitchell") whose elaborate computer systems applied "projected sold price" calculations to all "comparable" total loss valuations starting from March 10, 2007.

9. At the time my office filed *Garner v. State Farm*, there was no prior consumer litigation relating to the amended California total loss regulation or the Mitchell "Total Logic" methodology. In that sense, the *Garner* litigation was unprecedented, without any template, and in essentially unchartered territory. All aspects of the case that followed required independent and unique research and analysis in the development of the underlying evidence and understanding of the regulations and governing law.

10. The longstanding total loss regulation of the California Department of Insurance ("DOI") had been recently amended with the new regulation having gone into effect on August 30, 2006. In order to evaluate the State Farm/Mitchell approach to total loss vehicles, it was first necessary to understand the operating principles of the total loss industry and the governing regulations. We had to develop an understanding of the legislative history of the amended regulation, the policy considerations of the California Department of Insurance ("DOI"), and the practices of the "total loss" insurance industry in California before and after the amended regulation went into effect.

///
///

11. Total loss valuations represent a significant portion of State Farm's California automobile insurance claims practices. State Farm asserted that the total loss regulation was not in effect and that its vendor was wrongfully denied access to DMV sold price data. State Farm vehemently defended its position and disproving those assertions was a time consuming and difficult task. In addition, the practices employed by State Farm to establish the value of total loss vehicles is a byzantine world unto itself. Notwithstanding State Farm's use of the "new" Mitchell "total logic" valuation, institutionalized practices were in place implemented by longstanding employees overseeing the "total loss" State Farm Department.

12. The "total loss" automobile industry has a jargon unique to itself. Terms such as "take prices," "projected sold prices," "age of ad adjustments," "market value," "local market value," "base value," "final value," and "first time settlement rate," are just a few of the many terms which are part of the daily lexicon used by State Farm. We had to develop a command of this language in order to understand the nuances of the business practices, a task no consumer could reasonably undertake.

13. The evidence of the case was developed through more than a dozen depositions and the review of well over 100,000 pages of records produced by State Farm, Mitchell, J.D. Powers, the DOI, the California Department of Motor Vehicles ("DMV"), and Audatex.

14. My office had sole responsibility for taking and defending all depositions. The document intensive depositions included various witnesses from State Farm, Mitchell, J.D. Powers, the DOI, the DMV, Audatex, counsel in the underlying PIFC litigation, and class representative Arnesha Garner. I also took the deposition of State Farm's expert economist Kenneth Serwin and defended the deposition of our statistician Richard Drogin. Through this discovery, we were able to decipher and understand the largely hidden calculations of the "total logic" system.

15. Another major task in this case related to the handing of all matters associated with the Court-ordered appraisals. Both sides retained experienced appraisers to perform the appraisals. The appraisals required far more work than one could have anticipated. Members of my staff and I worked extensively with Lance Coren, Plaintiff's appraiser, over a period of several months.

///

16.  State Farm sought to gain a dismissal of the case through the appraisal process and so devoted extensive resources to the process. As stated by the Honorable Edward M. Chen in his October 18, 2008 Order Granting Plaintiff's Motion to Compel Exchange of Appraiser's Reports, "As Judge Wilken held, Plaintiff's standing to represent and prosecute the class action may turn on whether she proves a loss at the appraisal hearing."

17.  State Farm resisted Plaintiff's efforts to achieve a transparent appraisal process. For example, State Farm objected to our request for a mutual exchange of the expert reports prior to the appraisal hearing. State Farm also objected to the mutual exchange of the underlying documentation that formed a basis of the appraisal reports. State Farm further objected to counsel addressing the appraisal hearing judge in any capacity and further objected to counsel even attending the appraisal hearing. Multiple motions were necessary to 1) secure the mutual exchange of the appraisal reports 10 days in advance of the hearing, 2) obtain the documents generated by the appraisers, and 3) allow Plaintiff's counsel to attend the appraisal hearing.

18.  Upon receipt of the reports of Dennis Mitosinka, State Farm's expert appraiser, our concerns about the transparency of the appraisal process and the appraisals themselves were confirmed. From Plaintiff's perspective, Mr. Mitosinka's voluminous appraisal reports were intentionally obscure and unduly complicated.

19.  The Honorable Robert K. Byers (Ret.), issued an Order on February 12, 2009, in favor of Arnesha Garner on all three appraisals. As for various deductions that Mr. Mitosinka used to reduce the value of the Garner vehicle, Judge Byers stated at the January 28, 2009 appraisal hearing:

> "…I see absolutely no justification for it…because it's not within what the Court has asked us to do…I'm sorry, but I just cannot agree that that should be done – should be deducted, and I would not and have not, anytime that I can think of in my career, used that type of methodology. And quite frankly, it just doesn't compute…" Appraisal Hearing Transcript, 164:14-16, 21-25 (Jan. 28, 2009).

Judge Byers added, "I don't feel that they are correct or justified, and certainly contrary to the regulations." Appraisal Hearing Transcript, 165: 24-25. (Jan. 28, 2009).

/ / /

/ / /

20. As we anticipated, establishing fair rules of document exchange prior to the appraisal hearing was outcome determinative. Had we not received Mr. Mitosinka's multiple volume appraisal reports *before* the hearing, there would have been inadequate time to understand the inexplicable complexity of his work. As it turned out, Mr. Mitosinka's appraisal reports were, in significant part, based upon the use of hypothetical comparable car values and "condition" deductions -- both expressly precluded by the amended total loss regulations.

21. Having prevailed with all three appraisals, extensive discovery was then undertaken in preparation for class certification.

22. There were numerous discovery disputes between counsel, several of which had to be decided by the Magistrate Judge and the Court. There were also protracted disputes regarding the production of documentation and the various databases made available by State Farm to its expert economist Kenneth Serwin. These disputes related to class certification and class wide damages, and necessitated the expenditure of substantial time and expert costs before any compromises could be reached.

23. The following is a general summary of the tasks which I, or members of my office, undertook in this matter.

    a. research and analysis of "total loss" legislative history;

    b. research and analysis of Mitchell "total logic" valuations;

    c. research, analysis, and writing of the complaint;

    d. handling of numerous meetings and communications with class representative Arnesha Garner;

    e. preparation of all pleadings in opposition to State Farm's Motion to Dismiss;

    f. retention and interaction with plaintiffs' experts Lance Coren and management of the appraisal process;

    g. the preparation for and taking of all percipient witness depositions regarding the PIF Settlement; the implementation of the total loss regulation; the Mitchell application to the DMV for "sold price data;" and the Mitchell "total logic" methodology;

      h.  defense of two depositions of class representative Arnesha Garner;

      i.  implement and oversee extensive discovery and discovery responses;

      j.  preparation of the Motion for Summary Adjudication to establish that the amended total loss regulation § 2695.8(b)(2) was in effect and opposition to State Farm's motion that the regulation was not in effect;

      k.  development of statistical sampling methodology through plaintiff expert statistician Richard Drogin for purposes of establishing a statistically based damage analysis related to the use of the projected sold price and age of ad adjustments;

      l.  analyze all document productions, including expert document productions;

      m.  work extensively with Richard Drogin regarding the numerous damage analyses and studies undertaken by State Farm economist Kenneth Serwin.

      n.  preparation for and taking of defense expert economist Kenneth Serwin;

      o.  almost daily interaction with counsel from LCHB regarding all aspects of the case;

      p.  establishing the appropriateness of the class action mechanism and assist LCHB with class certification briefing;

      q.  undertake mediation through Hon. Daniel Weinstein (Ret.) and follow up settlement negotiations with defense counsel;

24.  A mediation was held before the Honorable Daniel Weinstein (Ret.) of JAMS in New York on October 23, 2009.  The parties were unsuccessful in face to face mediation. However, the parties subsequently accepted a mediator's proposal by Judge Weinstein.

**GENERAL PRINCIPLES APPLICABLE TO THE AWARD OF ATTORNEYS' FEES IN CLASS ACTIONS**

25.  My firm's compensation for the services rendered in this action is wholly contingent. Any fees and reimbursement of expenses will be limited to such amounts as may be awarded by the Court.

///

///

26. All attorneys, paralegals, and law clerks at Birka-White Law Offices maintain contemporaneous time records reflecting the time spent on this and other matters. During the last 24+ months, I have personally contributed 1828.81 hours of my time to bring about the State Farm settlement presented to this Court for approval. Steve Oroza contributed an additional 641.30 hours of time. My office also contributed 406.25 hours in associate time and 943.85 hours in paralegal time. The lodestar of my office in *Garner v. State Farm* is $1,813,023.50. A summary of time, lodestar, and reimbursable costs of Class Counsel is attached hereto as **Exhibit B**.[1]

27. All of the services performed by my firm were reasonably necessary. The detail of all billable time is available upon the Court's request.

28. There has been no duplication of services for which Class Counsel now seeks compensation.

29. My firm expended a total of $263,441.29 in unreimbursed expenses, all of which were reasonable and necessarily incurred, and for which reimbursement is requested.

30. The foregoing expenses were incurred solely in connection with the State Farm litigation and are reflected on the books and records of my firm which are maintained in the ordinary course of business. This cost summary has been prepared from expense vouchers and check records, and are an accurate record of the expenses incurred in this case.

### Skill of Required Counsel

31. This case presented a range of difficulties requiring the efforts of highly skilled and experienced attorneys. Throughout most of the case, State Farm steadfastly refused to consider

---

[1] In the early stages of the prosecution of this case, Jeffrey B. Cereghino of Merill, Nomura & Molineux LLP ("MNM") and Daniel L. Rottinghaus of Berding & Weil LLP provided some assistance. As of this filing, because of the scheduling demands of Mr. Cereghino and Mr. Rottinghaus, Class Counsel have not received their detailed time, but only their summary time. As a result, their time has not been included as part of Class Counsel's total lodestar or the calculation of the proposed multiplier, notwithstanding the services performed. To date, MNM has incurred $810.00 in expenses and, per their summary time, 178 hours in time for a lodestar of $92,450.00 and Berding & Weil has incurred $1,455.20 in expenses and, per their summary time, 50.50 hours in time for a lodestar of $17,374.00 in the prosecution of this matter.

1 mediation. The combined skills of the firms appointed as Class Counsel were necessary to achieve
2 the Settlement.

3       32.     Class Counsel had to become expert in the valuation of total loss vehicles, the
4 methodology used by Mitchell to value the Class members' total loss vehicles, the intricacies of
5 total loss appraisals, and the nature and application of the state insurance regulations at issue in this
6 case, all the while litigating against a defendant that is one of the nation's largest insurance
7 companies with extensive institutional knowledge of the total loss regulations and practices.

### Preclusion of Other Work

9       33.     Throughout most of the pendency of this case, I averaged over 100 hours per month
10 in the prosecution of this litigation. The time commitment in some months was far greater. I have
11 had to turn away opportunities to accept or participate in other substantial cases in order to devote
12 the appropriate level of time and resources to this matter. Devoting such a disproportionate amount
13 of my time to this case inevitably increased the financial risk.

### Risk of the Litigation

15       34.     Class Counsel undertook this litigation on a contingent fee basis. The litigation
16 required counsel to assume an unusually high risk of an adverse outcome because of the novelty of
17 the legal issues presented, the uncertainty of damages, and the potential effect of the appraisal
18 provisions of State Farm's insurance contract.

19       35.     First, there is little authority regarding the ability of an insurance policy holder to
20 bring suit under any legal theory based on a violation by the insurer of regulations issued by the
21 DOI. Much of the authority which exists is adverse to claimants. This issue was raised prominently
22 by counsel for State Farm in its opposition to Plaintiff's Motion for Class Certification and posed
23 significant risk.

24       36.     Second, as the Court noted in connection with the disposition of State Farm's motion
25 to compel an appraisal of Plaintiff's claim, there are considerable potential problems in calculating
26 damages arising from the violation of the applicable regulations where the insurer attempts to use a
27 different measure of value (for example, actual sales prices) from the one it actually presented to the
28 consumer in calculating the value of the vehicle (for example, advertised prices) in order to justify

BIRKA-WHITE LAW OFFICES
411 Hartz Avenue, Suite 200
Danville, California 94526

the offer made to the consumer. This fact made it difficult to assess both the likelihood of proving class-wide damage and the amount of such damage. For Class Counsel, this issue posed a significant and unusual level of risk.

37. Finally, the appraisal procedure specified in State Farm's insurance contract gave rise to a significant risk that the Court might decline to consider Class damage claims at all or require every claim to be appraised. State Farm argued strenuously for this result and – as it noted in its pleadings – such arguments have been made successfully in other cases.

38. For these reasons, Class Counsel believe that the risks they undertook – in addition to the other factors discussed herein – justify a premium over the 25% benchmark.

### Distribution of Fee Award

39. I have been directly involved in all aspects of this litigation from the initial filing in 2008 through discovery, trial preparation, and Settlement. I have a complete understanding of the relative roles and contributions of all firms. Class Counsel are in a position to distribute the attorneys' fee award among counsel assisting in this case based upon both lodestar and the value of their contribution.

### ADEQUACY OF SETTLEMENT

40. The Net Settlement Fund shall be determined after deducting from the $15 million gross settlement costs, attorneys' fees, notice and the projected cost of administration. The Net Settlement Fund shall be distributed to Settlement Class members in amounts proportional to the combined dollar amount of the projected sold adjustments and age of ad adjustments deducted from their total loss vehicles.

41. This will constitute a reimbursement to Class members of approximately 40% of their projected sold adjustment and age of ad adjustment deductions.

42. By any standard, this Settlement of $15 million constitutes a favorable result that was made possible by the dedication and skill of Class Counsel.

/ / /

/ / /

/ / /

DECLARATION OF DAVID M. BIRKA-WHITE IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

**Incentive Award to Class Representative Arnesha M. Garner**

43. Class Counsel seek an incentive award to Class Representative Arnesha Garner in the amount of $20,000. State Farm has agreed not to oppose an incentive award of $20,000. (Settlement Agreement, ¶ 13.3)

44. Throughout the pendency of this case, it has been my responsibility as Class Counsel to interact with Class Representative Arnesha Garner. This decision was collectively made by all counsel with whom I work in this matter. It is also consistent with my practice over the course of many years to designate one attorney as the primary contact person for class representatives.

45. In that regard, I have met with Ms. Garner on approximately six separate occasions. This does not include the two days on which her deposition was taken.

46. In addition, on many occasions, I have discussed with Ms. Garner by telephone numerous issues and matters relating to this case. Ms. Garner has been very responsive to our requests to speak with her and to meet with her. She has set aside a considerable amount of time to work with me and my staff to assist us in the prosecution of this case. I have discussed or reviewed all major pleadings in this case with Ms. Garner. She has responded to interrogatories and document requests and was deposed on two separate days. She also attended the lengthy Court ordered appraisal hearing regarding her total loss vehicle. Over the years, I have worked with many class representatives and can confidently say Ms. Garner has undertaken and performed her responsibilities as the class representative in this case in an exemplary manner.

47. On March 26, 2009, State Farm forwarded to my office a check made payable to Arnesha Garner in the sum of $2,312.70. This check represented State Farm's payment pursuant to the Appraisal Award in Ms. Garner's favor. Ms. Garner was advised that we were in possession of the check and of her right to cash it. Ms. Garner declined to cash the check because she wanted the prosecution of the case to go forward. To protect the class, she subordinated her own interests at a time when she clearly could have used the money.

48. Having satisfied all duties and responsibilities in her roles as Class representative, an incentive award of $20,000.00 is in my judgment reasonable and represents a contribution from each class member of less than a single dollar.

## CONCLUSION

49. On the basis of the standards set forth above, the work performed, and the benefits conferred on the Class by those efforts, Class Counsel respectfully request that the Court award Class Counsel attorneys' fees based upon 30% of the common fund, plus costs, or alternatively, based upon a lodestar analysis with a 1.913 multiplier, plus costs. This amounts to $4,500,000.00, plus costs of $317,903.90.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. This declaration was executed on March 11, 2010, at Danville, California.

_____
DAVID M. BIRKA-WHITE

# EXHIBIT A

*DAVID M. BIRKA-WHITE, ESQ.*
*Birka-White Law Offices*
*The Danville Hotel*
*411 Hartz Avenue, Suite 200*
*Danville, CA 94526*
*Telephone:   (925) 362-9999*
*Facsimile:   (925) 362-9970*

**DAVID M. BIRKA-WHITE,** born Los Angeles, California, October 12, 1952; admitted to bar, 1979, California and U.S. District Court, Northern and Eastern Districts of California.  Education:  University of California at Berkeley (B.A., '74); San Francisco Law School, J.D..  Member, University of California, Boalt Hall Industrial Relations Law Review, 1975-1976.  Member: San Francisco County, Alameda County and Contra Costa County Bar Associations; State Bar of California; American Association for Justice (since 1979); Consumer Attorneys of California (Board of Directors, 2000); Alameda-Contra Costa Trial Lawyers Association (Board of Governors, 1992-1996); San Francisco Trial Lawyers Association.

Mr. Birka-White is AV-rated, and is included in The Bar Register of Preeminent Lawyers published by Martindale-Hubbell.

Mr. Birka-White has been selected as a "Super Lawyer" for 2007, 2008, 2009, and 2010 by San Francisco Magazine in the practice areas of class action/mass torts, which represents the top 5% of attorneys in Northern California.

Mr. Birka-White specializes in class action cases relating to product failure and consumer protection cases.  During the last 30 years, he has served as lead or co-lead counsel in a large number of class actions and complex cases involving defective products and consumer fraud.

Mr. Birka-White is a contributing author to "California Class Actions Practice and Procedure" published in 2003.

Mr. Birka-White served as Legal and Technical Advisor to California State Senator Nicholas Petris, who authored Senate Bill 1873.  The bill, signed into law as Health and Safety Code Section 17921.7 imposes penalties for the sale or use of sub-standard plastic in ABS plastic pipe.  The legislation came a as result of the ABS pipe litigation initiated and prosecuted by Mr. Birka-White.

Mr. Birka-White has served as a speaker at seminars involving product failures and product liability class actions.  He has spoken at the Annual Convention of Forum, the construction section of the American Bar Association, on the subject of building product class actions.

Mr.  Birka-White served as lead trial counsel in the class action trial entitled Shake Roof Cases, J.C.C.P. 4208 in the Superior Court, County of Contra Costa.

Mr.  Birka-White served as co-lead trial counsel in the class action trial of NatureGuard Cement Roofing Shingles Cases, J.C.C.P.4215, in the Superior Court, County of Stanislaus.

Mr. Birka-White has served as Court appointed lead or co-lead Plaintiff settlement or litigation class counsel in the following class actions:

1. ***Garner v. State Farm Mutual Automobile Insurance Company***
   U.S. District Court, Northern District of California, Case No. 4:08-cv-01365

2. ***Cartwright v. Viking Industries, Inc.***
   U.S. District Court, Eastern District of California, Case No. 2:07-CV-02159

3. ***Owens Corning, Chapter 11, Mira Vista Roofing Products***
   United States Bankruptcy Court in the District of Delaware; Case Number 00-3837 (JKF)

4. ***NatureGuard Cement Roofing Shingles Cases***
   Judicial Council Coordination Proceeding No. 4215
   Stanislaus Superior Court, Case No. 275768

5. ***Bowen-Fromm, et al.  v.  Terra Roofing Products, et al***
   Alameda Superior Court, Case No. 2001-028588

6. ***Shake Roof Cases***
   ***(Weiner, et al. v. Shake Company of California, et al.)***
   Judicial Council Coordination Proceeding No. 4208
   Contra Costa County Superior Court, Case No. C99-00318

7. ***Milano, et. al. vs. Cal-Shake, inc. (Old Cal-Shake)***
   Judicial Council Coordination Proceeding No. 4208
   Contra Costa County Superior Court, Case No. C99-00318

8. ***Roy D. Richison, et al. v. American Cemwood, et al.***, Phase I and Phase II
   San Joaquin County Superior Court, Case No. 005532

9. ***Shah, et al. v. Re-Con Building Products, Inc., et al.***, Phase I and Phase II
   Contra Costa County Superior Court, Case No. C99-02919

10. ***Koslosky v Domtar, Inc.; Georgia-Pacific Corp. & Georgia Pacific Gypsum Corp.***
    San Joaquin County Superior Court, Case No. VC 011260

11. ***Hazelwood v. Albert D. Seeno Construction Co., Inc., et al. (Seeno)***
    Contra Costa County Superior Court, Case No. C94 05673

12. ***Byron Dahl v. Polaris Pipe Co., et al.***
    Contra Costa County Superior Court, Case No. C 94 02132

13. ***Jan Marshall, et al. v. Centaur Mfg., Inc., et al.***
    Santa Clara County Superior Court, Case No. CV 7366949

14. ***Clark Edwards, et al. v. Phoenix Extrusion Co., et al.***
    Santa Clara County Superior Court, Case No. CV 736950

15. ***Martin v. Gable Plastics, Inc., et al.***
    Contra Costa County Superior Court, Case No. C 94 05619

16. ***Joseph Charette v. Apache Plastics, Inc., et al.***
    Shasta County Superior Court, Case No. 126341

17. ***Southfork, ABS Pipe Developer Litigation***
    Contra Costa County Superior Court, Case No. C94 05673

18. ***Wolfe v. Winncrest Homes***
    Sacramento County Superior Court, Case No. 95AS05291

19. ***Blackwell, ABS Pipe Developer Litigation***
    Contra Costa County Superior Court, Case No. C94 05673

20. ***ABS Pipe Cases II***
    Judicial Council Coordination Proceeding, No. 3126
    Contra Costa County Superior Court, Case No. C94 05673
    (***Amfac***)

21. **ABS Pipe Cases II**
    Judicial Council Coordination Proceeding, No. 3126
    Contra Costa County Superior Court, Case No. C94 05673
    **(Plastic Processing, Inc.)**

22. **ABS Pipe Cases II**
    Judicial Council Coordination Proceeding, No. 3126
    Contra Costa County Superior Court, Case No. C94 05673
    **(International Association of Plumbing and Mechanical Officials ('IAPMO'))**

23. **Heilman, et al. v. Perfection Corporation, et al.**
    U.S. District Court, Western District of Missouri, Case No. 99-0679-CW-W-6
    (Settlement Class Counsel)

*Mr. Birka-White has served as lead or co-lead counsel for the following complex cases:*

1. **The Arcadian Group v. Briggs Industries, Inc.**
   Contra Costa County Superior Court, Case No. C 94 80224

2. **Auburn Creek Investors v. Centaur Mfg., Inc.**
   Shasta County Superior Court, Case No. 104892

3. **Robert Ayers v. Iron Oaks Supply Corporation, et al.**
   Calaveras County Superior Court, Case No. 16142

4. **Azevedo v. Quality Inn**
   Sonoma County Superior Court, Case No. 172825

5. **Peter Banks, et al. v. Centaur Mfg., Inc.**
   Alameda County Superior Court, Case No. 721990-4

6. **Barnett-Range v. P.E. O'Hair**
   Stanislaus County Superior Court

7. **Frank Benna v. Damé Construction, and related cases**
   Contra Costa County Superior Court, Case No. C 89 02523

8. **Vern Brizendine and Mary Brizendine v. P.E. O'Hair & Co., et al.**
   Contra Costa County Superior Court, Case No. C90-00250

9. **Canyon Woods Owners Association II v. Gable Plastics, Inc., et al.**
   Contra Costa County Superior Court, Case No. C93-05757

10. **CH Portfolio v. P.E. O'Hair, et al.**
    Fresno County Superior Court, Case No. 467187-1

11. **John Childs and Betty Childs v. P.E. O'Hair & Co., et al.**
    Contra Costa County Superior Court, Case No. C90 03386

12. **C.I.R. Plumbing, Inc. v. P.E. O'Hair & Co.**
    Los Angeles County Superior Court, Case No. NVC12491

13. **Davis v. Apache Plastics, et al.**
    Contra Costa County Superior Court

14. **Diogardi v. Apache Plastics, et al.**
    Contra Costa County Superior Court

15. *Samuel Engel, et al. v. Mariner Village, et al.*
    Monterey County Superior Court, Case No. 88302

16. *Feather River Construction v. Harold Elwanger*
    Sutter County Superior Court, Case No. 38143

17. *Fred Ferrari and Sherry Ferrari v. P.E. O'Hair & Co., et al.*
    Contra Costa County Superior Court, Case No. C89-05330

18. *Filmore v. Gable Plastics, et al.*
    Alameda County Superior Court, Case No. 731760

19. *The Fisk Trust, et al. v. Gable Plastics, Inc., et al. (Lincolnwoods)*
    Sacramento County Superior Court, Case No. 538567

20. *Slobodan Galeb v. Kimberly Woods Assoc., et al.*
    Santa Clara County Superior Court, Case No. 701275

21. *The Gardens Sunnyvale HOA v. UWC-Sunnyvale, a California Limited Partnership*
    Santa Clara County Superior Court, Case No. 697132

22. *Green v. Gable Plastics, Inc., et al.*
    Alameda County Superior Court, Case No. 750966-9

23. *Grupe Development Co. v. P.E. O'Hair & Co.*
    Fresno County Superior Court, Case No. 410609-2

24. *Dorothy Ironson, et al. v. Centaur Mfg., Inc*.
    Tehama County Superior Court, Case No. 36636

25. *Kimberly Woods Associates v. Centaur Mfg., Inc.*
    Santa Clara County Superior Court, Case No. 702623

26. *Kreis v. Apache Plastics, et al.*
    Contra Costa County Superior Court

27. *Lakeside v. Federal Insurance Co.*
    United States District Court, Northern District of California,
    Case No. C 91-20217 WAI

28. *Lakeside Village Investors v. Feather River Constr. and Development Company, et al.*
    Sutter County Superior Court, Case No. 41748

29. *McCurry Plumbing, Wayne McCurry v. P.E. O'Hair*
    Fresno County Superior Court

30. *Olen Acacia Corp. v. Centaur Mfg., et al.*
    San Bernardino County Superior Court, Case No. SCV 26238

31. *Edna E. Piche v. P.E. O'Hair & Co., et al.*
    Contra Costa Superior Court, Case No. C90-00624

32. *Quailwood I Apartments and C. O'Dell v. P.E. O'Hair & Co., et al.*
    San Mateo County Superior Court, Case No. 317548

33. *Quality Inn - Petaluma Partners v. Lois L. Azevado , et al.*
    Sonoma County Superior Court, Case No. 172825

34. ***Roy D. Richison, et al. v. American Cemwood, et al.***
    Solano County Superior Court, Case No. 005532

35. ***Ridgewood Manor I HOA v. Standard Pacific, et al.***
    Alameda County Superior Court, Case No. H 174123-2

36. ***River Run Apartments v. Centaur Mfg. Inc.***
    Solano County Superior Court, Case No. 115955

37. ***Segura v. Gable Plastics, Inc., et al.***
    Alameda County Superior Court, Case No. 731898

38. ***Shadowbrook Investments v. P.E. O'Hair & Co.***
    Stanislaus County Superior Court, Case No. 237667

39. ***C. La Del Stewart v. Centaur***
    Fresno County Superior Court

40. ***Stockman v. P.E. O'Hair & Co., et al.***
    Contra Costa Superior, Case No. C90-00503

41. ***Strouzas v. Gable Plastics, Inc., et al.***
    Alameda County Superior Court, Case No. 750964-1

42. ***Sycamore Greens Associates v. Gable Plastics, Inc., et al.***
    San Diego County Superior Court, Case No. 695558

43. ***Tract No. 3564 Association v. P.E. O'Hair, et al.***
    Fresno County Superior Court, Case No. 422539-7

44. ***Tucker v. Apache Plastics, et al.***
    Shasta County Superior Court, Case No. 268991

45. ***V.O. Associates v. Orion Group, Inc., et al.***
    Stanislaus County Superior Court, Case No. 320375

46. ***V.O. Associates v. Centaur Mfg., Inc.***
    Stanislaus County Superior Court, Case No. 276421

47. ***Vacaville Quail Run v. 700 Market Associates XXIII***
    Contra Costa County Superior Court, Case No. C 95 09039

48. ***Western Land Properties v. Centaur, et al. (Sycamore I)***
    Solano County Superior Court, Case No. L002762

49. ***Western Land Properties v. Centaur, et al. (Sycamore II)***
    Solano County Superior Court, Case No. L002764

50. ***Western Land Properties v. Centaur, et al. (Rosewood)***
    Sacramento County Superior Court, Case No. 540042

51. ***Western Land Properties v. Centaur, et al. (Tallyho)***
    Sacramento County Superior Court, Case No. 54001

52. ***Westwood Village Condominium Association v. RWC California Co., et al.***
    Contra Costa County Superior Court, Case No. C 95 01060

53. ***Whitley v. Perfection Corporation, et al.***
    San Francisco County Superior Court, Case No. 304215

54. ***Joseph Yedlica and Karen Yedlica v. Centaur Mfg., Inc.***
    Monterey County Superior Court, Case No. 89375

55. ***Zam Development v. Centaur, et al.***
    Solano County Superior Court

*Mr. Birka-White has also served as a consultant on numerous other product liability cases throughout the State of California.*

# EXHIBIT B

*Arnesha M. Garner, et al. v. State Farm Mutual Automobile Insurance Company*
U.S. District Court, Northern District of California, Case 4:08-cv-01365-CW

## LODESTAR SUMMARY

### Birka-White Law Offices

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| David M. Birka-White | Partner | 1828.81 | 600.00 | $1,097,286.00 |
| Stephen Oroza | Partner | 641.30 | 600.00 | $384,780.00 |
| Thomas D. Hicks | Associate | 156.25 | 350.00 | $54,687.50 |
| John Pillette | Associate | 250.00 | 350.00 | $87,500.00 |
| Madeleine Mulkern | Paralegal | 943.85 | 200.00 | $188,770.00 |
| | | **3820.21** | | **$1,813,023.50** |

### Lieff, Cabraser, Heimann & Bernstein, LLP

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| William Bernstein | Partner | 5.40 | 850.00 | $4,590.00 |
| Robert Nelson | Partner | 212.30 | 725.00 | $153,917.50 |
| Michael Sobol | Partner | 6.30 | 725.00 | $4,567.50 |
| Rachel Geman | Partner | 0.30 | 550.00 | $165.00 |
| Roger Heller | Associate | 789.80 | 450.00 | $355,410.00 |
| Adelina Acuna | Paralegal | 4.50 | 215.00 | $967.50 |
| Richard Anthony | Paralegal | 11.10 | 245.00 | $2,719.50 |
| Nicholas Dorman | Paralegal | 24.00 | 190.00 | $4,560.00 |
| Hazel Mottershead | Paralegal | 11.50 | 235.00 | $2,702.50 |
| Eli Peterson | Paralegal | 3.50 | 225.00 | $787.50 |
| Jennifer Rudnick | Paralegal | 24.00 | 235.00 | $5,640.00 |
| Scott Alameda | Database Specialist | 4.70 | 260.00 | $1,222.00 |
| Anthony Grant | Database Specialist | 6.0 | 260.00 | $1,560.00 |
| Sat Kriya Khalsa | Database Specialist | 2.20 | $260.00 | $572.00 |
| | | **1105.60** | | **$539,381.00** |

# EXHIBIT B (Cont'd.)

*Arnesha M. Garner, et al. v. State Farm Mutual Automobile Insurance Company*
**U.S. District Court, Northern District of California, Case 4:08-cv-01365-CW**

|  | Hours | Total |
|---|---|---|
| Birka-White Law Offices | 3820.21 | $1,813,023.50 |
| Lieff Cabraser Heimann & Bernstein | 1105.60 | $539,381.00 |
| **FEES** | **4925.81** | **$2,352,404.50**[1] |

## CALCULATION OF MULTIPLIER

$4,500,000.00 (*30% of $15,000,000.00*) ÷ $2,352,404.50 = **1.913**

## REIMBURSABLE COSTS SUMMARY[2]

| Birka-White Law Offices | $263,441.29 |
|---|---|
| Lieff Cabraser Heimann & Bernstein | $54,462.61 |
|  | **$317,903.90** |

---

[1] Merill, Nomura & Molineux LLP expended 178.00 hours with a lodestar of $92,450.00 and $810.00 in reimbursable costs and Berding & Weil, LLP expended 50.50 hours with a lodestar of $17,374.00 and $1,455.20 in reimbursable costs which are not included in the lodestar summary, calculation of the multiplier, or reimbursable costs.  (Birka-White Declaration, ¶ 26)