UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNESHA M. GARNER, | CASE NO. CV 08 1365 CW (EMC) |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendant. | |

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Having considered all motions, memoranda and submissions made in connection with the proposed class action settlement agreement, together with all of its Exhibits attached thereto, dated December 30, 2009, (the "Agreement"), and the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law; the Court hereby makes the following findings of fact and conclusions of law in support of its Final Order and Judgment approving the proposed Settlement.[1]

## FINDINGS OF FACT

1.      From approximately March 12, 2007 until approximately February 18, 2008, State Farm California claims representatives used Total Loss Comparable Vehicle Valuation Reports, provided by Mitchell International, Inc. ("Mitchell"), in connection with their handling of vehicle physical damage claims by State Farm California insureds that used a Projected Sold Adjustment and/or Age of Ad Adjustment.  State Farm has also identified 57 Total Loss Comparable Vehicle Valuation Reports that Mitchell provided to State Farm California claim representatives in San Diego prior to March 12, 2007, the date when Mitchell became State Farm's primary total loss vendor, which also included a Projected Sold Adjustment and Age of Ad Adjustment.  Those State Farm insureds who received payments in connection with total loss vehicles pursuant to these 57 Total Loss Comparable Vehicle Valuation Reports are included in the Settlement Class for all purposes.

2.      On March 10, 2008, Plaintiff filed the above-captioned Action seeking to recover for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of California Business and Professions Code § 17200 and (4) unjust enrichment. Plaintiff filed her First Amended Complaint on July 7, 2008.

3.      Plaintiff alleged that State Farm, through its vendor Mitchell, violated Title 10 of California Code of Regulations § 2695.8 (the "Total Loss Regulation" or "TLR") by adjusting the asking prices of comparable vehicles used in Total Loss Comparable Vehicle Valuation Reports based on a computer generated prediction of what the comparable vehicles were

---

[1] Capitalized terms not otherwise defined herein are as defined in the Agreement.

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SF/1690407v1

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1   projected to sell for and made additional adjustments to the comparable vehicles based on the

2   time difference between when the comparable vehicles were advertised for sale and the date of

3   the total loss for the vehicle being valued.  Plaintiff also alleged that State Farm and Mitchell

4   failed to adequately disclose the Projected Sale Price and Age of Ad adjustments in the valuation

5   reports provided to the insureds.  Plaintiff alleges that the total aggregate amount of Projected

6   Sale Price and Age of Ad adjustments applied to the total loss claims of the Class is

7   approximately $23,500,000.

8          4.      State Farm denies the allegations of the Complaint and further alleges that (1) the

9   TLR was not in effect during the relevant time frame, (2) the Total Loss Comparable Vehicle

10  Valuation Reports used by State Farm during the relevant time frame complied with the TLR,

11  (3) State Farm has complied with its contractual obligations to Plaintiff and other members of the

12  Settlement Class in connection with its valuation of Total Loss Vehicles; and (4) State Farm

13  made payments to Plaintiff and Settlement Class Members that reflected the actual cash values of

14  their Total Loss Vehicles.

15         5.      On April 14, 2008, State Farm made a Motion to Compel Contractual Appraisal

16  and for a Stay Pending Appraisal.  (Doc. 7.)

17         6.      On June 30, 2008, this Court entered an order granting the motion to compel an

18  appraisal filed by Defendant State Farm Mutual Automobile Insurance Company.  This Court

19  held that State Farm "had the contractual right to demand an appraisal, and Plaintiff had the

20  contractual obligation to proceed with the appraisal process.  Pursuant to the terms of the

21  contract, this was a precondition to Plaintiff's filing a lawsuit."  (Doc. 47, June 30, 2008 Order at

22  14-15.)   This Court further found that the appraisal process provided for in State Farm's

23  insurance policy was not one-sided, was sanctioned by state statute and was not unconscionable.

24  (*Id.* at 18-19.)

25         7.      On November 20, 2008, State Farm made a Motion for Summary Judgment

26  seeking a judicial determination that the TLR was not in effect during the relevant time frame.

27  (Doc. 113.)  On December 4, 2008, Plaintiff made a Cross-Motion for Summary Adjudication,

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SF/1690407v1

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1  seeking a judicial determination that the TLR was in effect during the relevant time frame.

2  (Doc. 127.)

3         8.     On March 23, 2009, this Court entered an order denying State Farm's motion for

4  summary judgment and granting Plaintiff's cross-motion for summary adjudication, holding that

5  the TLR was in effect during the relevant time frame.  (Doc. 159, March 23, 2009 Order at

6  17-19.)  In its March 23, 2009 Order, this Court found that the California Department of

7  Insurance ("CDI") had "informed Mitchell that the agency would be satisfied if Mitchell used the

8  midpoint of the [DMV VLF Data] range in conducting [total loss] valuations." (*Id.* at 10.)  The

9  Court further found that "the $200 dollar range of sales prices that can be derived from the

10  DMV's VLF codes constitute[d] sales price data" that could be used by insurers as actual sales

11  price data for comparable vehicles in performing total loss valuations pursuant to the TLR.  The

12  Court noted that "the CDI takes the position that VLF data relates to 'actual sales prices,' and

13  thus can be used to conduct valuations in accordance with the TLR," that CDI had indicated that

14  the mid-range of the VLF Data could be used, and that "the $200 [VLF] range . . . is suitable and

15  is accepted by the agency in charge of enforcing the TLR." (*Id.* at 13.)

16         9.     On September 10, 2009, Plaintiff moved for certification of the following class:

17  "All individuals insured by State Farm California under a State Farm private passenger vehicle

18  policy between March 12, 2007 and February 18, 2008:  (1) who received a first party total loss

19  settlement or settlement offer based in whole or in part on the 'projected sold price' of

20  comparable vehicles; and/or (2) whose settlement or settlement offer was reduced to account for

21  the difference between the date on which a comparable vehicle was advertised for sale and the

22  date of loss of the claimant's vehicle (known as the 'age of ad' adjustment)." (Docs. 193, 198.)

23  State Farm filed its opposition to class certification on October 1, 2009.  (Doc. 206.)

24        10.    On October 23, 2009, after Plaintiff's motion for class certification was fully

25  briefed, the Parties engaged in a formal mediation before the Honorable Daniel Weinstein (Ret.)

26  of JAMS in New York, NY.  In anticipation of the mediation, the Parties submitted and

27  exchanged written mediation briefs which highlighted the key remaining issues in this case and

28

SEDGWICK
DETERT, MORAN & ARNOLD LLP

-3-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    clarified the relative strengths and weaknesses of the Parties' positions.  During the week after

2    the mediation, with the further capable assistance of Judge Weinstein, the Parties reached an

3    agreement in principal.  Over the next two months, the Parties worked together to finalize the

4    terms of the Agreement, settlement notice, and other related documents.

5            11.      On December 30, 2009, the Parties filed the Agreement with the Court and each

6    moved for preliminary approval of the Agreement, with supporting memoranda and declarations.

7    (Docs. 243, 244, 247, 248.)

8            12.      On January 15, 2010, this Court granted Plaintiff's and State Farm's separate

9    motions seeking preliminary approval of the Settlement Agreement.  (Doc. 252.)  By such Order,

10    the Court certified the following Settlement Class:  "Any and all persons insured under a State

11    Farm vehicle insurance policy who received a first party total loss comprehensive or collision

12    payment on a claim administered in California, based in whole or in part on a Total Loss

13    Comparable Vehicle Valuation Report that used a Projected Sold Adjustment and/or Age of Ad

14    Adjustment."

15            (a)      "State Farm" means State Farm Mutual Automobile Insurance Company

16    and/or State Farm Fire and Casualty Insurance Company.

17            (b)      "Total Loss Comparable Vehicle Valuation Report" means a report

18    generated by a computerized system that values a Total Loss Vehicle by identifying

19    comparable vehicles and making adjustments to either the asking or selling price of such

20    vehicles in an attempt to determine the actual cash value of the Total Loss Vehicle at the

21    time of loss.  Total Loss Comparable Vehicle Valuation Reports do not include either

22    appraisals or reports that use dealer quotes.

23            (c)      "Projected Sold Adjustment" means an adjustment to the asking price of

24    comparable vehicles used in Total Loss Comparable Vehicle Valuation Reports provided

25    by Mitchell to State Farm in California to reflect the price for which that comparable

26    vehicle was projected to sell.

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-4-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    (d)    "Age of Ad Adjustment" means the adjustment to comparable vehicles

2    used in Total Loss Comparable Vehicle Valuation Reports provided by Mitchell to State

3    Farm in California, to account for depreciation of a vehicle between the time that it is

4    listed for sale and the date of loss.

5    (e)    "Total Loss Vehicle" means a vehicle owned by a person within the

6    Settlement Class that was determined by State Farm to be a total loss.

7    (*Id.* at 2-3.)

8    13.    The Court appointed Arnesha M. Garner as Class Representative.  (*Id.* at 4.)

9    14.    The Court appointed the following persons as Class Counsel:    David M.

10   Birka-White of Birka-White Law Offices, and Robert J. Nelson, of Lieff, Cabraser, Heimann &

11   Bernstein, LLP.  (*Id.*)

12   15.    The Court also found that the Agreement was reached as a "result of arms-length

13   negotiations between the parties" and was "not the result of collusion."  (*Id.* at 1.)  The Court

14   further found that the Agreement is "fair, reasonable and adequate" (*id.* at 4), and "within the

15   range of possible judicial approval."  (*Id.*)

16   16.    The Court appointed Rust Consulting, Inc. to act as Administrator of the

17   Settlement.  (*Id.* at 11.)    Rust Consulting specializes in class action notification and claims

18   administration, including telephone and web-based support, direct mail services, claims

19   processing, and settlement fund distribution.  Founded in 1976, Rust Consulting began its claims

20   administration practice in 1989 and has extensive experience in class action matters, having

21   provided services in class actions ranging in size from 100 to 100 million class members, and has

22   provided notification and/or claims administration services for over 2,500 projects.  (Decl. of

23   Melissa D. Eisert, Doc. 264, ¶ 2.)

24   17.    By separate order, the Court directed that certain changes be made to the proposed

25   Settlement Notice.  (Doc. 253.)  The Court directed that the Administrator disseminate the

26   Settlement Notice, as modified by this Court's Order, in accordance with the Agreement and this

27   Court's Preliminary Approval Order.  (Doc. 252 at 4-5.)

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

18.     On January 20, 2010, the Parties Jointly filed a Notice of Revised Settlement Notice Pursuant to Court's Order (Docket No. 253) and attached a revised Settlement Notice incorporating the Court's revisions.  (Doc. 254.)

19.     The Notice Plan provided the best practicable notice to Settlement Class Members by:  (i) requiring State Farm to provide a list of names, addresses, and claim numbers for all potential Settlement Class Members which may be readily identified by reference to State Farm's internal documents; (ii) requiring the Administrator to take reasonable steps to ensure that the addresses are current, such as running that list through the National Change of Address database; and (iii) mailing each identified Settlement Class Member a copy of the proposed Notice.  (*See* Agreement, Doc. 248, ¶¶ 5.1-5.3.)

20.     The Agreement provides that within ten business days of the Court's Order granting final approval of the Agreement and entry of Final Judgment in the case, State Farm will fund the Settlement with a total of $15 million.  (Agreement, Doc. 248, ¶ 8.1.)  The Settlement Class Members will be entitled to the ***entire*** balance of that amount after deducting the costs of notice, other administrative expenses, a court-approved award of attorneys' fees and expenses for proposed Class Counsel, and any amount awarded to Plaintiff.  (*Id.* ¶ 9.1.)

21.     Once the deductions have been made, State Farm will prepare a Distribution Plan, which will propose allocation of the remaining funds to each Settlement Class Member in proportion to the total combined dollar amount of the Projected Sold Adjustment and Age of Ad Adjustment on the Settlement Class Members' Subject Valuation Report.  (*Id.* ¶¶ 9.2-9.4.)  Class Counsel will have an opportunity to review and comment on the Distribution Plan.  Once State Farm and Class Counsel agree that the Distribution Plan complies with the formula provided in the Agreement, the Distribution Plan will be provided to the Administrator and amounts provided for in the Distribution Plan will be distributed to the Settlement Class Members.  (*Id.* ¶ 9.5.)  The amount of distribution to each Settlement Class Member will vary depending on which adjustments were used in his or her Subject Valuation Report and the amount of those

SF/1690407v1

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1   adjustments.  The Parties estimate a distribution between $100 and $1,000 for most Settlement
2   Class Members.

3       22.      To ensure that funds are fully dispersed to the Class, the Agreement provides for a
4   second proportional distribution of any amount reserved for administrative costs but unspent and
5   uncashed settlement checks.  If the amount remaining in the Settlement fund is too small to
6   justify the expense of a second distribution, the remaining monies will be paid to agreed upon cy
7   pres recipients. (*Id.* ¶ 9.7.)  Moreover, the existence of opt-outs will not reduce the size of the
8   Settlement fund. The Net Settlement Fund will be proportionately divided among those Class
9   members who do not request to be excluded from the Settlement Class. (*Id.* ¶¶ 2.34, 9.2, 9.3.)
10  Thus, all Settlement funds will be paid out; none will revert to State Farm.

11      23.      The Agreement does not require the Settlement Class Member to take any action
12  to be eligible for a distribution under the Agreement.  All known Settlement Class Members who
13  have not affirmatively opted out of the Settlement Class and are entitled to a distribution will
14  receive a check in the mail.  (*Id.* ¶¶ 6.3, 9.5.)

15      24.      The Administrator will mail the payments in the proper amounts to the Class
16  members using the same addresses used for distributing the Settlement notice (as modified by
17  any address changes identified during the notice distribution process). Five days after the
18  Settlement checks are sent, the Administrator will send a postcard reminder to Class members
19  notifying them that they should have recently received a check. (*Id.* ¶ 9.5.)  To the extent that any
20  payments to Class members are returned with a forwarding address, the Administrator will
21  re-send such payments to the new address indicated.  For payments that are uncashed within 45
22  days, the Administrator will send reminder letters to the relevant Class members.  For payments
23  greater than $50 that are uncashed within 60 days, the Administrator will attempt to call the
24  relevant Class members.  Any payments that are undeliverable or otherwise uncashed within 90
25  days will, depending on the total amount of such uncashed payments, either be proportionally
26  redistributed to those Class members who cashed their checks or become part of a cy pres fund to
27  be distributed to the Volunteer Legal Services Program and Bay Area Legal Aid. (*Id.* ¶¶ 9.5-9.7.)
28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-7-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

25.   State Farm has also agreed under the Settlement that going forward in California, it will use any one or some combination of the following for comparable vehicles used by Mitchell (or any other total loss vendor) when preparing a Total Loss Comparable Vehicle Valuation Report for State Farm:  (i) the high point of VLF Data obtained from the DMV (even though this Court has previously found that the DMV would actually permit using the lower midpoint of that data); (ii) actual sales prices from other sources compliant with the TLR; or (iii) the asking price of advertised vehicles (without a projected sold or age of ad adjustment). (*Id.* ¶¶ 11.1, 11.2.)

26.   In exchange for the relief described above, the Agreement provides that Settlement Class Members generally release State Farm and certain other released parties (such as State Farm's affiliated companies, employees, and vendors) from any and all claims arising out of or related to State Farm's use of the Subject Valuation Reports.  (*Id.* ¶¶ 12.1, 12.2.)[2]

27.   In accordance with the Agreement and this Court's orders, Rust Consulting obtained addresses for Settlement Class Members from State Farm, ran the list of addresses through the National Change of Address database and updated the list of addresses accordingly. Rust Consulting mailed the Settlement Notice (which included both an English and Spanish version) to 24,358 potential Settlement Class Members by first-class mail on February 9, 2010. (Decl. of Melissa D. Eisert, Doc. 260, ¶¶ 6-8.)

28.   As of March 30, 2010, 768 of the more than 24,000 Settlement notices mailed by Rust Consulting were returned undeliverable.   65 of these notices were returned with a forwarding address from the United States Postal Service.  Rust Consulting re-sent these notices to the new addresses indicated, and updated the addresses in the Class list accordingly.  The addresses for the remaining returned notices (i.e., those returned without a forwarding address) were traced, and an additional 411 notices were mailed to updated addresses, and Rust Consulting updated the Class list accordingly.  (*Id.* ¶ 9.)

---

[2] The description of the Agreement in paragraphs 18 through 26 is a summary only.  Nothing herein is intended to alter or change the terms of the Agreement.

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1690407v1

29.    Rust Consulting established, and continues to maintain, a toll-free number with an automated system providing information about the Agreement, with the ability to request copies of the Settlement notice or the Agreement and to speak with a live customer service representative.  As of March 30, 2010, there had been 223 calls to Rust Consulting's toll free number.  141 of those callers requested to speak with a live customer service representative.  (*Id.* ¶¶ 10-11.)

30.    Consistent with the Agreement and the Court's Preliminary Approval Order, the Court approved Settlement Notice informed Settlement Class Members of their rights to: (a) request exclusion from the Settlement Class; and (b) object to, and/or comment regarding, the Agreement.  Any person within the Class definition who submitted a timely request for exclusion shall be excluded from the Settlement Class and shall not be bound by the Agreement.  Any Class member who does not request to be excluded may object to the Agreement and/or appear at the Fairness Hearing to comment regarding the Agreement by submitting a timely objection/notice of intent to appear.  The deadline for submitting requests for exclusion and objections was March 26, 2010.  (Doc. 252 at 5-6; Decl. of Melissa D. Eisert, Doc. 264, Ex. A.)

31.    Class Counsel set up a toll-free number in order to receive calls from Class members.  As of March 11, 2010, there were 20 voice messages left via Class Counsel's toll-free number.  Class Counsel returned all messages promptly.  (Decl. of Robert J. Nelson, Doc. 258, ¶ 10.)

32.    As of March 30, 2010, there were 101 requests for exclusion.  (*Id.* ¶ 12.)  While most opt-outs simply stated that they wished to be excluded from the class, without giving a reason (none was required), a few noted that they were opting out because they believed they had been treated fairly by State Farm.  (Exhs. B-D to Decl. of Laura L. Goodman, Doc. 275.)

33.    Only one Settlement Class Member objected to the proposed Settlement.  (Decl. of Laura L. Goodman, Exh. A (Doc. 275.)).  This objection has since been withdrawn.  (Doc. 273.)

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

SF/1690407v1

SEDGWICK
DETERT, MORAN & ARNOLD LLP

34.    On January 8, 2010, the Administrator, at the direction of State Farm's counsel, sent both the Attorney General of the United States and the Commissioner of the California Department of Insurance a disk containing all of the information required under 28 U.S.C. § 1715.  (See Parks Decl., Doc. 265, ¶¶ 3-10.)

35.    In addition, because potential Settlement Class Members also reside in other states, Rust Consulting, at the direction of State Farm's counsel, also sent notice to the insurance commissioners in forty-two other states where potential Settlement Class Members may reside. (*Id.* ¶ 4.)  In addition, each state commissioner received a list of the potential Settlement Class Members who may currently reside in their respective states, together with each Settlement Class Member's estimated proportionate share of the Settlement.  (*Id.* ¶ 7.)

36.    On January 26, 2010, Rust Consulting, at the direction of State Farm's counsel, served on the appropriate state and federal officials a supplemental notice indicating that this Court had issued its Preliminary Approval Order.  (*Id.* ¶ 8.)  The notice also contained copies of the (i) Preliminary Approval Order, (ii) Order on Proposed Attorneys' Fees and Revisions to Notice to Settlement Class Members, and (iii) Notice of Revised Settlement Notice Pursuant to Court's Order.  (*Id.* ¶ 9.)  In addition, the supplemental notice indicated that the Fairness Hearing was scheduled for April 15, 2010 at 2:00 p.m. (subject to the Court's schedule).  (*Id.* ¶ 10.)

37.    Rust Consulting confirmed with the United States Postal Service that all notices have been delivered to the appropriate State and Federal officials.  (*Id.* ¶ 11.)

38.    No government official has expressed an objection to the Settlement.

## CONCLUSIONS OF LAW

**I.    Standards For Approval Of Class Action**

The law favors the compromise and settlement of class action suits. *See, e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies,

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1690407v1

1   positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

2          When considering a motion for final approval of a class action settlement under Rule

3   23(e), the Court's inquiry is whether the settlement is "fair, adequate, and reasonable." Fed. R.

4   Civ. P. 23(e)(2). *See Hanlon*, 150 F.3d at 1026 (setting forth fairness and adequacy factors to be

5   considered for approval of class settlement); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d

6   948, 963 (9th Cir. 2009); *see also Class Plaintiffs*, 955 F.2d at 1276.   A settlement is fair,

7   adequate, and reasonable when "the interests of the class are better served by the settlement than

8   by further litigation." *Manual for Complex Litigation (Fourth)* § 21.61 (2004).   The decision to

9   approve or reject a proposed settlement is committed to the Court's sound discretion.   *See City of*

10  *Seattle*, 955 F.2d at 1276.   In exercising this discretion, "[t]his circuit has long deferred to the

11  private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965; *see also Hanlon*, 150

12  F.3d at 1027 (approval of class settlement proper after several months of negotiation where there

13  was "[n]o evidence of collusion").   Thus, in evaluating whether the settlement is fair and

14  adequate, the Court's function is not to second-guess the settlement's terms.

15

16          [T]he court's intrusion upon what is otherwise a private consensual agreement
           negotiated between the parties to a lawsuit must be limited to the extent necessary
17         to reach a reasoned judgment that the agreement is not the product of fraud or
           overreaching by, or collusion between, the negotiating parties, and that the
18         settlement, taken as a whole, is fair, reasonable and adequate to all concerned.
           Therefore, the settlement or fairness hearing is not to be turned into a trial or
19         rehearsal for trial on the merits. Neither the trial court nor this court is to reach
           any ultimate conclusions on the contested issues of fact and law which underlie
20         the merits of the dispute, for it is the very uncertainty of outcome in litigation and
           avoidance of wasteful and expensive litigation that induce consensual settlements.
21         The proposed settlement is not to be judged against a hypothetical or speculative
           measure of what *might* have been achieved by the negotiators.

22  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).[3]   This is especially

23  _____

24          [3] *See also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("'The
    proposed settlement is not to be judged against a hypothetical or speculative measure of what
25  *might* have been achieved by the negotiators.'") (emphasis in original; citation omitted); *In re
    Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. Apr. 1981) ("[W]hether
26  another team of negotiators might have accomplished a better settlement is a matter equally
    comprised of conjecture and irrelevance."); *In re Enron Corp. Sec., Derivative & "ERISA"
27  Litig.*, 228 F.R.D. 541, 565 (S.D. Tex. 2005) ("[I]t is not relevant that other negotiators might
    have obtained a better settlement for the class . . . .").

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-11-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    so "in light of the strong judicial policy that favors settlements, particularly where complex class

2    action litigation is concerned."  *City of Seattle*, 955 F.2d at 1276; *see also Curtis-Bauer v.*

3    *Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)

4    (Henderson, J.) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring

5    settlement, particularly in class action law suits.").

6            Courts in the Ninth Circuit have considered, if applicable, the following eight factors in

7    determining whether a proposed class action settlement is fair, reasonable, and adequate:

8
            "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and
9        likely duration of further litigation; [3] the risk of maintaining class action status
         throughout the trial; [4] the amount offered in settlement; [5] the extent of
10       discovery completed and the stage of the proceedings; [6] the experience and
         views of counsel; [7] the presence of a governmental participant; and [8] the
11       reaction of the class members to the proposed settlement."

12   *Rodriguez*, 563 F.3d at 963 (citation omitted); *accord Hanlon*, 150 F.3d at 1026.  The relative

13   importance of each factor is left to the sound discretion of the Court.  *See Nat'l Rural*

14   *Telecomms.*, 221 F.R.D. at 526.  "Not all of these factors will apply to every class action

15   settlement.  Under certain circumstances, one factor alone may prove determinative in finding

16   sufficient grounds for court approval."  *Id.* at 525-26.

17   **II.    Applying The Factors To This Case**

18           **A.    The Value And Strength Of Plaintiff's Case**

19           The first fairness factor addresses Plaintiff's likelihood of success on the merits and the

20   range of possible recovery.  *See Rodriguez*, 563 F.3d at 964-65.  In determining the probability of

21   Plaintiff's success on the merits, there is no "particular formula by which that outcome must be

22   tested."  *Id.* at 965.  Rather, the Court's assessment of the likelihood of success is "nothing more

23   than an 'amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for*

24   *Justice*, 688 F.2d at 625 (citation omitted).  Nor, at this stage, need the Court "reach any ultimate

25   conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it

26   is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation

27   that induce consensual settlements."  *Id.*  Instead, the Court may presume that through

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1   negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by

2   considering Plaintiff's likelihood of recovery.  *See Rodriguez*, 563 F.3d at 965.

3         In this case, State Farm has raised several significant challenges to Plaintiff's claims.

4   First, State Farm contends that the TLR was not in effect during the class period.  (State Farm

5   Mem., Doc. 262, at 9 n.4.)   While this Court has previously rejected State Farm's argument

6   (Mar. 23, 2009 Order [Doc. 159] at 17-18),  its decision would be subject to review on appeal

7   absent a settlement.  Second, State Farm maintains that its use of the Mitchell TLV system

8   complied with the TLR, which State Farm contends permits an insurer to value total loss vehicles

9   using "a computerized automobile valuation service that produces statistically valid fair market

10  values within the local market area."  (State Farm Mem. at 9 (citing Cal. Code Regs. tit. 10,

11  § 2695.8(b)(4)(C) (2009).)

12        State Farm further argues that even if Plaintiff could demonstrate that the Mitchell

13  valuation reports did not comply with the TLR, a regulatory violation does not, in itself, establish

14  "a breach of contract or an act [of] bad faith" by the insurer.  (State Farm Mem. at 9 (citing

15  *Rattan v. United Servs. Auto. Ass'n*, 84 Cal. App. 4th 715, 724 (2000); *see also Safeco Ins. Co. of*

16  *Am. v. Parks*, 170 Cal. App. 4th 992, 1006 (2009) ("An insurer's failure to comply with [a CDI]

17  regulation does not, in itself, establish a breach of contract or bad faith by the insurer.").)  Rather,

18  State Farm argues that to establish either a breach of contract claim or a bad faith claim under

19  California law, Plaintiff and each of the class members must prove that they did not receive what

20  they were entitled to under their insurance contracts.  (State Farm Mem. at 9 (citing *Aguilera v.*

21  *Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Amadeo v. Principal Mut.*

22  *Life Ins. Co.*, 290 F.3d 1152, 1164 (9th Cir. 2002).)

23        State Farm notes that the insurance policies at issue provide that, in the event a

24  policyholder's vehicle is a total loss, State Farm will pay the policyholder "the actual cash value"

25  of the vehicle (less deductibles) "at the time the loss occurred."  (Ex. A, Garner Policy, § IV,

26  p. 17 [Doc. 210].)  State Farm further argues that "actual cash value," which is the same as "fair

27  market value," is "'[t]he amount at which property would change hands between a willing buyer

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1690407v1

and a willing seller.'"  (State Farm Mem. at 9 (citing *In re Two "S" Corp.*, 875 F.2d 240, 244 n.4 (9th Cir. 1989) (quoting *Black's Law Dictionary* 536 (5th ed. 1979)); *accord United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1446 (9th Cir. 1984).)

Although the Court has not decided this issue, it has previously indicated that this might be an appropriate way to measure damages, and expressed reservations about Plaintiff's proposed measure. (*See* Transcript of June 17, 2008 at 16:16-17:24; Motion to Dismiss and Compel Order, Doc. 47, at 5, n.2, Doc. 159; Summary Judgment Order, Doc. 159, at 5, n.1.) While Plaintiff strongly disagrees that State Farm's proposed measure would be proper, Plaintiff acknowledges that the issue of how Class damages should be measured was undecided at the time of the Settlement.  Plaintiff notes that were the Court to have adopted State Farm's proposed measure, or any other measure that significantly differed from that proposed by Plaintiffs, the recovery for the Class in this case would almost certainly be significantly lower than the $15,000,000 monetary payment provided for in the Agreement, even assuming Plaintiffs prevailed at trial on the issue of liability. The Agreement allows the Class to avoid the risk of such a result, while still providing Class members with a large percentage of the potential recovery under Plaintiff's proposed measure of damages.

### B.      Complexity and Expense of Litigation

The second fairness factor – the complexity, expense, and likely duration of the litigation – also weighs in favor of approval.  "Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."  *Curtis-Bauer*, 2008 WL 4667090, at *4.  Indeed, there is no doubt that the time and expense of continuing the litigation would be substantial, and that such transactional costs could significantly reduce whatever judgment, if any, Plaintiff could recover through litigation.  The *Rodriguez* court found that approval under this factor was favored where, as here, significant procedural hurdles remained, including an anticipated summary judgment motion, *Daubert* motions, and appeals.  *See Rodriguez*, 563 F.3d at 966.  Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.  *See*

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-14-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    *Enron Corp.*, 228 F.R.D. at 565; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200,

2    210 (S.D.N.Y. 1995).

3          Thus, the Agreement also provides the Class with another significant benefit that they

4    would not receive if the case proceeded to trial – prompt relief.

5          **C.      The Risk of Maintaining Class Action Status Throughout the Trial**

6          The third factor, which concerns the risk of maintaining class certification, favors

7    settlement as well.  As discussed above, State Farm raised significant objections to Plaintiff's

8    theory of damages, which could undermine the manageability of the proposed class action.

9          **D.      The Settlement Amount**

10         The fourth fairness factor, the amount of recovery offered, *see Rodriguez*, 563 F.3d at

11   963, also strongly favors final approval of the Settlement.  The Settlement Agreement was

12   proposed after protracted arms-length and adversarial negotiation, during which time an

13   experienced impartial mediator helped the Parties arrive at a compromise amount that both

14   Parties find satisfactory.  In particular, the Settlement Class Members will receive substantial

15   financial benefit, as State Farm will fund the Settlement with $15 million, resulting in a recovery

16   of approximately $100 to $1,000 for most Settlement Class Members.  The Agreement is

17   designed to maximize the recovery for each of the Settlement Class Members.  The Notice Plan

18   used a list of names, addresses, and claim numbers for all potential Settlement Class Members

19   that was culled from State Farm's internal documents to provide each identified Settlement Class

20   Member with actual mailed notice of the Settlement.  (*See* Agreement ¶¶ 5.1-5.3.)  All identified

21   Settlement Class Members who have not affirmatively opted out of the Settlement Class and are

22   entitled to a distribution will receive a check in the mail.  (*Id.* ¶¶ 6.3, 9.5.)  Finally, State Farm

23   does not retain a reversionary interest in either the Gross Settlement Fund or the Net Settlement

24   Fund.

25         Indeed, courts have recognized that even where – unlike here – "the total settlement fund

26   is small," it may not be "unreasonable in light of the perils plaintiffs face in obtaining a

27   meaningful recovery on their claims."  *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL

28



FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SF/1690407v1

32627559, at *7 (N.D. Cal. June 18, 2002) (Alsup, J.); *accord Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) (Henderson, J.) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial."); *see also Hanlon*, 150 F.3d at 1027 (holding that the possibility "that the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate").  As discussed above, Plaintiff certainly faces such perils here.  Yet the proposed Settlement nevertheless provides the Settlement Class with real, substantial monetary benefit, notwithstanding these difficulties with their claims and the fact that they face serious procedural hurdles to recovery.

Notably, Plaintiff's expert, Dr. Richard Drogin, opined that the total aggregate loss to the Settlement Class due to Mitchell's use of projected sales price and age of ad adjustments is $23,544,458.  (Drogin Decl., Doc. 197, ¶¶ 10, 11.)  The Gross Settlement Fund of $15 million is approximately 64 percent of Dr. Drogin's estimated loss.  Even assuming that costs and fees reduce the Net Settlement amount to approximately $10,000,000, the Settlement Class will still receive approximately 42 percent of the total aggregate alleged loss according to Plaintiff's expert's numbers.  The Ninth Circuit has found that settlement amounts of about 20 percent – i.e., less than half of what the Settlement Class will receive here – were fair and adequate.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").

Significantly, the Agreement provides for equal and fair relief for each and every Class member.  Pursuant to the Agreement, every Class member will receive the exact same percentage of the Projected Sale Price and Age of Ad adjustments that were applied to their total loss claims.  Rather than be faced with the expense and uncertainty of what would doubtless be protracted litigation, members of the Settlement Class are offered certain monetary recovery now based on readily ascertainable criteria.  In short, this Settlement affords substantial relief to the Settlement

-16-

1    Class.

2           In addition to the substantial monetary payment to the Class, State Farm has also agreed

3    that it will no longer use the "Projected Sold" or "Age of Ad" adjustments in California.  Rather,

4    Mitchell (or any other total loss vendor used by State Farm) will use any one or some

5    combination of the following for comparable vehicles when preparing a Total Loss Comparable

6    Vehicle Valuation Report for State Farm:  (i) the high point of VLF Data obtained from the

7    DMV (even though this Court has previously found that the DMV would actually permit using

8    the lower midpoint of that data); (ii) actual sales prices from other sources compliant with the

9    TLR; or (iii) the asking price of advertised vehicles (without a projected sold or age of ad

10   adjustment).  (*Id.* ¶¶ 11.1, 11.2.) Accordingly, the fourth fairness factor strongly indicates that the

11   proposed Settlement is fair and adequate.

12           **E.      Extent of Discovery Completed**

13           The fifth fairness factor, the extent of discovery and the current stage of the proceedings,

14   likewise supports final approval.  Substantial discovery has been conducted in this case, giving

15   Plaintiff "a good grasp on the merits of [her] case before settlement talks began." *Rodriguez*, 563

16   F.3d at 967; *see also Jaffe*, 2008 WL 346417, at *9 (finding approval appropriate where parties

17   had engaged in extensive discovery prior to settlement).

18           As a result, the Agreement is informed by Class Counsel's thorough investigation and

19   discovery efforts, and comes after extensive, hard-fought litigation by the Parties in this case.

20   Class Counsel has undertaken substantial investigation and discovery in this case, including,

21   without limitation: (a) reviewing and analyzing extensive email correspondence and tens of

22   thousands of pages of other documents produced by State Farm, Mitchell, J.D. Power &

23   Associates, and the California Department of Insurance, among other entities; (b) deposing

24   employees of State Farm and Mitchell, California Department of Insurance officials, State

25   Farm's expert witness, and other witnesses; (c) reviewing and analyzing a substantial selection of

26   the more than 24,000 total loss valuation reports provided by State Farm to the Class members;

27   (d) working extensively with experts regarding the complexities of the TLR and the appraisal

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    process; (e) researching the legislative history of the TLR; (f) completing a detailed statistical

2    analysis, working with experts, of the valuation methodology used by Mitchell; (g) working

3    extensively with experts to analyze Class damages; and (h) propounding extensive written

4    discovery.

5         Further, this case has been heavily litigated.  The Parties have litigated multiple

6    dispositive and other important motions raising complex legal and factual issues, including State

7    Farm's motion to dismiss and motion to compel appraisal, the Parties' cross-motions for

8    summary judgment/adjudication regarding the applicability of the TLR, and Plaintiff's pending

9    motion for class certification.  The Parties further engaged in an extensive appraisal process

10   regarding the Class representative's total loss vehicle.  Moreover, both Parties have engaged

11   expert witnesses and submitted expert reports, and have litigated multiple discovery disputes.

12        **F.      Absence of Collusion**

13        "Before approving a class action settlement, the district court must reach a reasoned

14   judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

15   among, the negotiating parties."  *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the

16   product of arms-length negotiations conducted by capable and experienced counsel, the court

17   begins its analysis with a presumption that the settlement is fair and reasonable. See 4 Newberg

18   § 11.41.

19        The Agreement here is the product of arms-length negotiations between the Parties.  The

20   Parties engaged in a full day mediation before an experienced mediator, Judge Daniel Weinstein,

21   and thereafter reached an agreement in principle with the further capable assistance of Judge

22   Weinstein.  For two months thereafter, the Parties worked together extensively to finalize the

23   Agreement.  Both Parties were represented throughout the negotiations by counsel experienced in

24   the prosecution, defense, and settlement of complex class actions, and were guided by this

25   Court's prior rulings in this case.

26        **G.      Experience and Views of Counsel**

27        The experience and views of counsel also weighs in favor of approving the Settlement.

28

SF/1690407v1

-18-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1   Counsel for State Farm and proposed Class Counsel, both of whom have substantial experience

2   in prosecuting and negotiating the settlement of class action and insurance litigation, concur that

3   the Settlement is fair, and proposed Class Counsel have recommended approval of the proposed

4   Settlement as in the best interests of the putative Settlement Class.  *See Rodriguez*, 563 F.3d at

5   967 ("'[P]arties represented by competent counsel are better positioned than courts to produce a

6   settlement that fairly reflects each party's expected outcome in litigation[.]'") (citation omitted);

7   *see also Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (noting that a district court is "entitled

8   to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable,

9   and adequate").

10   **H.   The Presence of a Governmental Participant**

11   Although no governmental entity is a party to this action, forty-four governmental entities

12   – including the CDI, the United States Attorney General, and the insurance commissioners in

13   forty-two other states where potential Settlement Class Members may reside – have been notified

14   of the proposed Settlement pursuant to the notice provision of CAFA, 28 U.S.C. § 1715.  (*See*

15   Decl. of Justin Parks re: Service of CAFA Notice, Doc. 265, ¶¶ 4, 6, 7.)  Although CAFA does

16   not create an affirmative duty for either state or federal officials to take any action in response to

17   a class action settlement, CAFA presumes that, once put on notice, state or federal officials will

18   raise any concerns that they may have during the normal course of the class action settlement

19   procedures.  *See generally* Fed. R. Civ. P. 23(e)(2) (court must conduct a fairness hearing before

20   approving class action settlement).  To date, no state or federal official has raised any objection

21   or concern regarding the Agreement.

22   **I.   The Reaction of the Class Members to the Proposed Settlement**

23   The reaction of the Settlement Class Members to the proposed Settlement has been

24   overwhelmingly positive and strongly supports final approval.   Following the Court's

25   preliminary approval, the Parties and Rust Consulting have fully implemented the Court-

26   approved Notice Plan.  Under the Agreement, all Settlement Class Members choosing to object

27   to, or opt out of, the Settlement had until March 26, 2010 to do so.  As of March 31, 2010, only

28

-19-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    one Settlement Class Member has objected to the Settlement.  (Decl. of Melissa D. Eisert, Doc.

2    264, ¶ 13.)  Courts have repeatedly recognized "that the absence of a large number of objections

3    to a proposed class action settlement raises a strong presumption that the terms of a proposed

4    class settlement action are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D.

5    at 529.  Thus, the Court "may appropriately infer that a class action settlement is fair, adequate,

6    and reasonable when few class members object to it." *Create-A-Card, Inc. v. Intuit, Inc.*, 2009

7    U.S. Dist. LEXIS 93989, at *15 (N.D. Cal.); *see also Barcia v. Contain-A-Way, Inc.*, No.

8    07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009) (absence of objectors

9    "strongly supports the fairness, reasonableness, and adequacy of the settlement"); *Stoetzner v.*

10   *U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that 29 objections out of a 281-

11   member class "strongly favors settlement").

12        Moreover, the lone objector raises no concern that should preclude approval of the

13   settlement.[4]  The objector voices concern regarding how payments to the Settlement Class

14   Members are calculated.  In particular, she is concerned that the Parties will have unfettered

15   discretion in determining what amount she will receive under the Agreement.  This is not so.

16   The Agreement requires the amount that each Settlement Class Member receives be computed in

17   strict compliance with the formula set out in the Agreement.  (Agreement ¶ 9.3.)  Class Counsel

18   will then have an opportunity to review and comment on the results of State Farm's

19   computations in the Distribution Plan.  Only after State Farm and Class Counsel agree that the

20   Distribution Plan complies with the formula provided for in the Agreement will the

21   Administrator distribute the funds to the Settlement Class Members.  (*Id.* ¶ 9.5.)

22        The objector also raises a concern that State Farm may have a reversionary interest in the

23   Settlement Fund, which it does not under the terms of the Agreement.  The Settlement Class

24   Members are entitled to the ***entire*** balance of the Settlement Fund after deducting the costs of

25   notice, other administrative expenses, a court-approved award of attorneys' fees and expenses for

26

27        [4] *See* Exh. A to Declaration of Laura Goodman, Doc. 275.  The objector has since withdrawn her objections.

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1690407v1

-20-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1   proposed Class Counsel, and any amount awarded to Plaintiff.  (*Id.* ¶ 9.1.)  Finally, the objector

2   suggests that the payments to the Class Representative and Class Counsel are excessive.

3   However, counsel fees and expenses, as well as payment to the Class Representative, are subject

4   to review and approval by this Court, and are addressed by separate order.

5        In addition, as of March 30, 2010, only 101 out of the over 24,000 who received notice

6   have elected to opt out of the Settlement Class.  (Eisert Decl., Doc. 264, ¶ 12.)  This means that

7   over 99.5% of the recipients of the Class Notice chose to remain part of the Settlement Class,

8   which is a further indication of the fairness of the Settlement.  *See Brailsford v. Jackson Hewitt*

9   *Inc.*, No. C 06-00700 CW, 2007 WL 1302978, at *4 (N.D. Cal. May 3, 2007) (Wilken, J.)

10  (observing that low opt-out rate is an indication of fairness).

11       Notably, the fact that a potential Settlement Class Member chooses to opt out does not

12  necessarily indicate that he or she finds the Settlement objectionable.  Indeed, several of the

13  opt-outs indicated that they chose to exclude themselves from the class because they felt that they

14  "were treated and compensated fairly and efficiently by [their] State Farm Claims Representative

15  . . . and do not want to pursue any claim against State Farm"[5] or "have been customers with State

16  Farm for over 50 years [and State Farm has] always dealt fairly, honestly and in a timely manner

17  [with them]."[6]

18  **III.    Adequate Notice Has Been Provided to the Settlement Class and to the Appropriate**
19          **State and Federal Officials**

20          **A.    The Notice Plan Has Been Fully and Successfully Implemented**

21       Under Federal Rule 23(c), the parties need only provide notice "'reasonably certain to

22  inform the absent members of the plaintiff class.'"  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir.

23  1994) (citation omitted).  The notice need only "'generally describe[] the terms of the settlement

24  in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

25  _____

26  [5] *See* Exh. B to Decl. of Laura Goodman, Doc. 275.
    [6] *See* Exh. C to Decl. of Laura Goodman; *see also* Exh. D to Decl. of Laura Goodman
27  ("Please exclude us from the class action suit against State Farm.  We were very satisfied with
    the settlement of our claims.").
28

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SF/1690407v1

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    be heard.'"  *Churchill*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Mendoza v. Tucson Sch. Dist.*

2    *No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("Notice in a class suit may consist of a very general

3    description of the proposed settlement.").

4        In its Preliminary Approval Order, the Court found that the proposed Notice Plan "will

5    provide the best practicable notice to the putative Class under the circumstances" (Doc. 252,

6    at 1), and "satisfies all applicable requirements of law, including, but not limited to Rule 23 of

7    the Federal Rules of Civil Procedure and the Constitutional requirement of due process." (*Id.* at

8    4.)    The Settlement Notice clearly and concisely informed Settlement Class Members of the

9    relevant aspects of the litigation and the Settlement, including:  (i) the definition of who is a

10   Settlement Class Member; (ii) the history of the litigation; (iii) the terms of the Settlement;

11   (iv) the binding effect of any judgment for those persons who are Settlement Class Members;

12   (v) the right of Settlement Class Members to request exclusion (opt out) from the Settlement

13   Class and the procedures and deadlines for doing so; (vi) the right of Settlement Class Members

14   to object to any aspect of the Settlement and/or to appear at the Fairness Hearing and the

15   procedures and deadlines for doing so; (vii) the date, time, and location of the Fairness Hearing;

16   (viii) how to obtain additional information; (ix) the benefits of the Settlement and how to

17   participate in the Settlement; and (x) information on Class Counsel's fees and expenses.  *See*

18   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

19       The Court-approved Notice Distribution Plan has now been fully implemented by the

20   Parties and the Administrator.  (*See* Eisert Decl., Doc. 264, ¶¶ 3-13.)  Accordingly, the Court

21   finds that the Settlement Notice and Notice Plan as carried out by the Administrator complied

22   with this Court's Preliminary Approval Order [Doc. 252] dated January 15, 2010, and this

23   Court's Order on Proposed Attorneys' Fees and Revisions to Notice to Class Members [Doc.

24   253], and satisfied the requirements of Federal Rule of Civil Procedure 23 and due process.

25   **B.    Notice Has Been Given to the Appropriate Federal and State Officials**
          **Pursuant to CAFA**

26

27       CAFA requires that notice of all federal class action settlements be sent to the appropriate

28   state and federal officials as a condition of obtaining court approval of the settlement.  In non-

-22-

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1690407v1

1  banking cases, the "appropriate federal official" is the Attorney General of the United States. *See*
2  28 U.S.C. § 1715(a)(1)(A).  Notice must also be sent to the "appropriate State official of each
3  State in which a class member resides."  28 U.S.C. § 1715(b).  The "appropriate State official" is

> the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant, or who licenses or otherwise authorizes the defendant to conduct business in the State, if some or all of the matters alleged in the class action are subject to regulation by that person.

7  28 U.S.C. § 1715(a)(2).  In this case, the CDI is the entity with the primary regulatory authority
8  over State Farm in California.  The Administrator provided notice of the Settlement to the
9  Attorney General of the United States, the Commissioner of the California Department of
10  Insurance, as well as the commissioners of insurance departments in 42 other states where
11  potential Settlement Class Members reside, together with a disk containing all of the information
12  required under 28 U.S.C. § 1715.  (*See* Parks Decl., Doc. 265, ¶¶ 3-10.)  In addition, each state
13  commissioner received a list of the potential Settlement Class Members who may currently
14  reside in their respective states, together with each Settlement Class Member's estimated
15  proportionate share of the Settlement.  (*Id.* ¶ 7.)

16  On January 26, 2010, Rust Consulting, at the direction of State Farm's counsel, served on
17  the appropriate state and federal officials a supplemental notice indicating that this Court had
18  issued its Preliminary Approval Order, and provided a copy of this Court's orders and the revised
19  Settlement Notice.  (*Id.* ¶ 8.)

20  Accordingly, notification to appropriate federal and state officials has been given in
21  accordance with CAFA.

22  **IV.  The Court Has Considered The Objections Of The Single Objector And Overrules The Objections**

24  The Court has considered the objections filed by the lone Objector, Laura Maltin, and
25  finds each of her objections to be unpersuasive.[7]

---

[7] Although Ms. Maltin has withdrawn her objections, the Court nevertheless addresses her concerns.

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

SF/1690407v1

First, Maltin objects to the requested incentive award for the Class representative, Arnesha Garner.  "Incentive *awards* are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis in original); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D 118, 143 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.") (citation and internal quotation marks omitted).

Contrary to Maltin's contention, Ms. Garner's commitment and contribution to this case have been considerable.  In addition to lending her name to this case, and thus subjecting herself to public attention, Ms. Garner has devoted considerable time and attention to this case for the benefit of the Class.  Among other things, she has made herself available for deposition on two separate occasions, wherein she was subjected to questioning regarding her personal financial affairs and other sensitive subjects; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests.  *See* Docket No. 221, ¶¶ 4-5. Under the circumstances of this case, the Court finds that an award of $20,000 is well justified, given Ms. Garner's commitment to the Class.[8] Moreover, unlike many class actions, where there are several class representatives, each of whom are entitled to incentive awards, here there was just one.

---

[8]   Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class.  *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (approving incentive awards of $25,000 to named plaintiffs who were deposed); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award); *In re Conn. Gen. Life Ins. Co.*, 1997 WL 910387, at *14 (C.D. Cal. Feb. 13, 1997) (approving $25,000 incentive payments); *Van Vranken.*, 901 F.Supp. at 299-300 (awarding $50,000 incentive fee); *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (in estimated $18 million settlement, incentive awards ranged from $35,000 to $55,000); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (awarding $50,000 incentive awards); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 700 F.Supp. 208, 210 (S.D.N.Y. 1988) (in estimated $4 million settlement, granting a $20,085 incentive award).

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

-24-

SF/1690407v1

1    Second, Maltin objects regarding the method of calculation for each Class member's

2    settlement payment, suggesting that the determination of payment amounts is discretionary and

3    uncertain.  However, the Settlement expressly requires that each Class Member's payment will

4    be calculated in strict compliance with the formula set forth in the Settlement.  (Settlement, ¶

5    9.3.)  Moreover, Maltin's concern regarding the fairness of the payment amounts is unfounded.

6    Each Class member's payment will be directly proportional to the amount of the "projected sold

7    price" and "age of ad" adjustments that were applied to their total loss claims; *i.e.*, every Class

8    member will receive the exact same percentage of the adjustments that were made to their

9    claims.  (Settlement, ¶¶ 9.1-9.5.)  Moreover, the amount of each Class member's settlement

10   payment—estimated to be between $100 and $1000 for most Class members—is an outstanding

11   result given the size of their claims and the risks and uncertainties of continued litigation.

12   Maltin's third concern—that unspent settlement funds might revert back to State Farm—

13   is unfounded because the Settlement is clear that all uncashed settlement checks and any unspent

14   portions of the administrative cost reserve will be distributed to Class members as part of a

15   second distribution, or, if the amount remaining is not sufficient to justify the cost of a second

16   distribution, then such monies will be paid to well-deserving, agreed-upon *cy pres* recipients.

17   (Settlement, ¶ 9.7.)

18   Fourth, the Maltin objects that Class Counsel's requested fee award is excessive.

19   However, for the reasons set forth in the Court's separate order on attorneys' fees and expenses,

20   the Court finds that an award of $4,500,000 in attorneys' fees and $317,903.90 in litigation

21   expenses is reasonable and appropriate under applicable law.  The Court notes that if Class

22   Counsel's fee were calculated pursuant to Maltin's suggested approach—*i.e.,* $1000 for each

23   Class member who receives relief—then Class Counsel's fee award would be considerably

24   higher than the amount the Court has ordered.

25   / / /

26   / / /

27   / / /

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1690407v1

-25-

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1

## CONCLUSION

2         For all the foregoing reasons, the Court finds that the Agreement, is fair, adequate, and

3 reasonable and in the best interests of the Settlement Class; that it satisfies Federal Rule of Civil

4 Procedure 23(e) and the fairness and adequacy factors of this Circuit; and should be approved

5 and implemented as set out in this Court's Final Order and Judgment.

6 Dated this 22nd day of April, 2010.

7 _____

8 The Honorable Claudia Wilken
  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1690407v1